# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| MARCUS CASTER, LAKEISHA CHESTNUT, BOBBY LEE DUBOSE, BENJAMIN JONES, RODNEY ALLEN LOVE, MANASSEH POWELL, RONALD SMITH, and WENDELL THOMAS, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN H. MERRILL, in his official capacity as Alabama Secretary of State, <br><br> Defendant. | Case No. 2:21-CV-751-WKW |

## PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

LEGAL STANDARD...........................................................................3

ARGUMENT .......................................................................................4

    I.   Transferring Plaintiffs' suit will not promote judicial efficiency or serve the interests of justice because *Caster* cannot be consolidated with *Singleton*. .4

        A.  Only cases pending before the same court may be consolidated. ...........5

        B.  *Singleton* is properly before a three-judge court convened under § 2284 and *Caster* is not. .................................................................5

        C.  The three-judge court in *Singleton* is a separate, standalone court from the U.S. District Court for the Northern District of Alabama.................9

        D.  Because *Singleton* and *Caster* cannot be consolidated, transfer would not serve the interests of justice or conserve judicial resources. ..........13

    II.  Even if the cases could be consolidated, consolidation would not serve the interests of efficiency or fairness to the parties...........................................13

    III. The remaining relevant factors counsel against transfer. ...........................15

CONCLUSION ................................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                               **Page(s)**

*Abbott v. Perez*,
    138 S. Ct. 2305 (2018)....................................................................................15

*Armour v. State of Ohio*,
    775 F. Supp. 1044 (N.D. Ohio 1991) ..............................................................9

*Bowles v. Russell*,
    551 U.S. 205 (2007)........................................................................................7

*Campos v. City of Hous.*,
    968 F.2d 446 (5th Cir. 1992) ..........................................................................8

*Castañon v. United States*,
    444 F. Supp. 3d 118 (D.D.C. 2020)..............................................................8, 9

*Chestnut v. Merrill*,
    356 F. Supp. 3d 1351 (N.D. Ala. 2019)...........................................................6

*Fid. & Deposit Co. of Md. v. Casablanca Constr., Inc.*,
    2020 WL 1238194 (S.D. Miss. Mar. 13, 2020)................................................5

*Harris v. Fisher-Price Inc.*,
    2014 WL 1330933 (N.D. Ala. Apr. 1, 2014)..................................................16

*Hart v. Kennedy*,
    314 F. Supp. 823 (W.D. Okla. 1969)..............................................................12

*Jacobs v. Tawes*,
    250 F.2d 611 (4th Cir. 1957) ..........................................................................12

*Jehovah's Witnesses in State of Wash. v. King Cnty. Hosp.*,
    278 F. Supp. 488 (W.D. Wash. 1967) .........................................................8, 11

*Johnson v. Ardoin*,
    2019 WL 2329319 (M.D. La. May 31, 2019) ..................................................7

*Kontrick v. Ryan*,
    540 U.S. 443 (2004)........................................................................................7

*Manuel v. Convergys Corp.*,
430 F.3d 1132 (11th Cir. 2005) ........................................................................3, 16

*Mitchell v. Donovan*,
398 U.S. 427 (1970).........................................................................................12

*Nixon v. Richey*,
513 F.2d 430 (D.C. Cir. 1975)........................................................................8, 12

*Pet Friendly, Inc. v. Catapult Grp., LLC*,
2006 WL 3690737 (S.D. Ala. Dec. 12, 2006) ....................................................3

*Pigott v. Sanibel Dev., LLC*,
2007 WL 3245019 (S.D. Ala. Nov. 1, 2007)........................................................5

*In re Ricoh Corp.*,
870 F.2d 570 (11th Cir. 1989) .........................................................................13

*Sands v. Wainwright*,
491 F.2d 417 (5th Cir. 1973) .............................................................................8

*Swindell-Dressler Corp. v. Dumbauld*,
308 F.2d 267 (3d Cir. 1962) ..............................................................................5

*Thomas v. Reeves*,
961 F.3d 800 (5th Cir. 2020) .............................................................................7

*United States v. Texas*,
523 F. Supp. 703 (E.D. Tex. 1981).....................................................................8

*Villalobos v. Cooper Tire & Rubber Co.*,
2005 WL 8179132 (N.D. Ill. Oct. 25, 2005) ......................................................3

*Wilson v. Gooding*,
431 F.2d 855 (5th Cir. 1970) .............................................................................8

**Statutes**

28 U.S.C. § 46(b) ..................................................................................................10

28 U.S.C. § 132(b) ................................................................................................11

28 U.S.C. § 1404(a) .......................................................................................*passim*

28 U.S.C. § 2284 ................................................................................................*passim*

**INTRODUCTION**

On November 4, 2021, moments after Alabama enacted its new congressional map, Plaintiffs filed a complaint in this Court challenging that map, Act 2021-555, on the grounds that it strategically cracks and packs Alabama's Black communities, diluting Black voting strength and confining Black voting power to a single majority-Black district, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. Because Plaintiffs assert only a statutory claim, this case is properly before a single judge of this district.

In the Northern District of Alabama, a different set of plaintiffs filed a very different challenge to the newly enacted plan. In that case, which bears the caption *Singleton v. Merrill*, No. 2:21-CV-01291-AMM, the plaintiffs allege that the plan is unconstitutional under the Fourteenth and Fifteenth Amendments to the U.S. Constitution because it fails to keep counties whole and was enacted with discriminatory intent. *Singleton*, ECF No. 15, Am. Compl. Because *Singleton* asserts constitutional claims, it is now properly before a three-judge court established pursuant to 28 U.S.C. § 2284(a).

On November 8, 2021, this Court issued a *sua sponte* order asking the parties to brief whether this suit should be transferred to the Northern District of Alabama,

the District where *Singleton* was originally filed.[1] Order to Show Cause at 2, ECF No. 7.

The Court should not transfer this case for at least three reasons. *First*, transfer will not facilitate consolidation of the two matters; even if this case ("*Caster*") were transferred to the Northern District, it cannot be consolidated with *Singleton*. This is because *Caster*, which brings only a statutory claim, must be heard before a single judge of a traditional district court, while *Singleton*, which brings a claim that arises from the U.S. Constitution itself, must be heard before a "district court of three judges," "convened" pursuant to 28 U.S.C. § 2284(a). *Second*, even if the cases could be consolidated, interests in efficiency still would not justify consolidation because the facts, evidence, witnesses, and arguments in each case will differ materially. *Third*, the Middle District is more convenient for the parties and witnesses relevant to this case, and the locus of operative facts all transpired in the Middle District.

Thus, transferring Plaintiffs' suit to the Northern District will conserve neither judicial nor the parties' resources, nor will it serve the interests of justice. Plaintiffs respectfully request that the Court decline to transfer this case to the Northern District.

---

[1] As discussed further below, because a three-judge court has since been convened under 28 U.S.C. § 2284(a), *Singleton* is now pending before a different and entirely unique type of district court. *See infra* at I.B.

## LEGAL STANDARD

Section 1404(a) of Title 28 of the United States Code permits district courts to transfer a case, "[f]or the convenience of parties and witnesses" and "in the interest of justice[,] . . . to any other district or division where it might have been brought." The Eleventh Circuit has identified nine factors that a court should consider before transferring a case: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Courts often consider the potential for consolidation upon transfer when determining whether to transfer a case. *See, e.g.*, *Villalobos v. Cooper Tire & Rubber Co.*, 2005 WL 8179132, at *2 (N.D. Ill. Oct. 25, 2005) (noting the interest of judicial economy is served where transfer allows for potential consolidation).

Applied here, these factors each weigh against transferring Plaintiffs' suit to the Northern District, and therefore this case does not represent "one of those rare situations warranting the disturbance of plaintiff's choice of forum." *Pet Friendly, Inc. v. Catapult Grp., LLC*, 2006 WL 3690737, at *2 (S.D. Ala. Dec. 12, 2006)

(*citing In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989) ("The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. . . .Thus, in the usual motion for transfer under § 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.")).

## ARGUMENT

Transferring this case to the Northern District would not serve justice and would not conserve judicial resources. While *Caster* is before an ordinary district court, *Singleton* is before a three-judge court constituted under 28 U.S.C. § 2284(a). As a result, the two proceedings cannot be consolidated upon transfer. Transferring this case thus will no more avoid the need for two separate proceedings than if this Court were to maintain jurisdiction itself. Even if that were not the case, the interests of efficiency still would not warrant transfer here. The *Singleton* plaintiffs assert claims entirely distinct from the claim at issue here; there is almost no overlap between the plaintiffs, facts, evidence, and witnesses related to each case.

**I.    Transferring Plaintiffs' suit will not promote judicial efficiency or serve the interests of justice because *Caster* cannot be consolidated with *Singleton*.**

As indicated by the Court's order, the question of whether to transfer *Caster* to the Northern District is driven by an interest in conserving judicial and party resources, but that result will only follow if this case is not only transferred to the Northern District, but also consolidated with *Singleton* when it gets there. But

transferring this case will not lead to consolidation because *Singleton* is before a special three-judge court with limited jurisdiction, and *Caster* cannot be consolidated with that proceeding. Because *Singleton* and *Caster* cannot be consolidated, it is no more efficient if this case is transferred to the Northern District than if it remains before this Court.

### A. Only cases pending before the same court may be consolidated.

For two cases to be consolidated under Federal Rule of Civil Procedure 42(a), they must be pending before the same court. "[A] cause of action pending in one jurisdiction cannot be consolidated with a cause of action pending in another jurisdiction. Rule 42(a) . . . will not permit such a course." *Swindell-Dressler Corp. v. Dumbauld*, 308 F.2d 267, 273 (3d Cir. 1962); *see also, e.g.*, *Fid. & Deposit Co. of Md. v. Casablanca Constr., Inc.*, 2020 WL 1238194, at *1 (S.D. Miss. Mar. 13, 2020) ("The Court may consolidate actions only if they are pending in the same district."); *Pigott v. Sanibel Dev., LLC*, 2007 WL 3245019, at *1 (S.D. Ala. Nov. 1, 2007) (explaining consolidation is available only "[w]hen actions involving a common question of law or fact are pending before the court").

### B. *Singleton* is properly before a three-judge court convened under § 2284 and *Caster* is not.

The rule against consolidating cases pending before different courts precludes consolidation of *Singleton* and *Caster*. *Singleton* brings constitutional challenges to Alabama's congressional plan, and therefore falls squarely within § 2284's three-

judge court provision. *See* 28 U.S.C § 2284(a) ("A district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."). *Caster*, in contrast, brings only a statutory challenge and is properly before an ordinary federal district court. *Caster* therefore falls outside the scope of § 2284's three-judge court provision, because it does not "challeng[e] the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284(a).

Courts across the country have held that wholly statutory challenges to congressional redistricting plans are properly heard by an ordinary district court and do not fall within § 2284's provisions for the convening of a three-judge court. The Northern District of Alabama itself found as much when it rejected the argument that a case challenging a congressional plan under only Section 2 of the Voting Rights Act, as Plaintiffs do here, falls within § 2284. *Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1354 (N.D. Ala. 2019) ("A claim solely alleging a Section 2 violation falls outside a plain reading of § 2284."); *see also Johnson v. Ardoin*, 2019 WL 2329319, at *3 (M.D. La. May 31, 2019) ("[Section 2284] applies only when the constitutionality of apportionment is being challenged."). Likewise, eleven judges of the Fifth Circuit came to the same conclusion when they addressed this issue, finding that § 2284 does not provide for the convening of a three-judge court to hear

purely statutory challenges to congressional maps. *See Thomas v. Reeves*, 961 F.3d 800, 802 (5th Cir. 2020) (en banc) (Costa, J., concurring) (writing on behalf of six judges that § 2284 "require[s] a three-judge court only for constitutional challenges" to both state and federal maps); *id.* at 811 (Willett, J., concurring) (writing on behalf of five judges that although § 2284 may require a three-judge court for statutory challenges to state legislative maps, "only *constitutional* challenges to *federal* maps require three judges").

Moreover, the limitations on the convening of a three-judge court are jurisdictional. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Statutes "delineating the classes of cases . . . falling within a court's adjudicatory authority" therefore serve as limits on federal courts' "subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). That is exactly what § 2284 does in specifying which cases a three-judge court may be convened to hear. *See* 28 U.S.C. § 2284(a). As a result, where a case falls outside of § 2284(a), "there is no . . . jurisdiction" to convene a three-judge court to hear the case. *Wilson v. Gooding*, 431 F.2d 855, 858 (5th Cir. 1970); *see also Castañon v. United States*, 444 F. Supp. 3d 118, 128 (D.D.C. 2020) (referring to § 2284 as the three-judge court's "statutory jurisdictional grant"). And this limitation on the court's jurisdiction is closely guarded. "The three-judge district court is . . . an extraordinary court and

technical requirements relating to its jurisdiction are to be strictly construed." *Jehovah's Witnesses in State of Wash. v. King Cnty. Hosp.*, 278 F. Supp. 488, 493 (W.D. Wash. 1967), *aff'd*, 390 U.S. 598 (1968); *see also Campos v. City of Hous.*, 968 F.2d 446, 451 (5th Cir. 1992) (explaining that "a three-judge court convened under Section 5" of the VRA and § 2284 "is a court of limited jurisdiction and limited authority"); *Sands v. Wainwright*, 491 F.2d 417, 421 (5th Cir. 1973) (quoting *Phillips v. United States*, 312 U.S. 246, 250 (1941)) (the three-judge court requirement is "'a serious drain upon the federal judicial system'" and must "be narrowly construed"). Three-judge courts therefore may be "convened only where compelled by the express terms of the statute." *United States v. Texas*, 523 F. Supp. 703, 725 (E.D. Tex. 1981). As such, they are to be used "only and strictly as Congress has prescribed." *Nixon v. Richey*, 513 F.2d 430, 446 (D.C. Cir. 1975).

To be sure, once the three-judge court's jurisdiction has been properly invoked in a case, it may be able to "exercise a brand of supplemental jurisdiction" over additional questions in that same case. *See Castañon*, 444 F. Supp. 3d at 128. Section 2284 courts have done so where a single set of plaintiffs brought *both* constitutional and Section 2 claims in the *same* case. *See, e.g., Armour v. State of Ohio*, 775 F. Supp. 1044, 1046 (N.D. Ohio 1991). But that does not excuse the requirement that there be adequate statutory authority to place the case before the three-judge court in the first instance, which is simply not the case here. Unlike in

*Armour*, at issue here is not a single complaint with multiple claims but consolidation of two distinct cases, and the case presently before this Court only brings claims outside the jurisdictional reach of § 2284.

**C.    The three-judge court in *Singleton* is a separate, standalone court from the U.S. District Court for the Northern District of Alabama.**

For *Caster* to be consolidated with *Singleton*, it would therefore need to be transferred to the same court that is hearing *Singleton*. That would require transfer not to the Northern District of Alabama, but specifically to the *Singleton* three-judge court, because under a plain reading of § 2284, the three-judge *Singleton* Court is a separate court from the Northern District of Alabama, not a mere arm or panel of the district court.

Section 2284 creates an independent "district court of three judges" of limited jurisdiction to consider claims within its ambit, not a mere "panel" of an existing court. *See* 28 U.S.C. § 2284(a) ("A *district court* of three judges shall be convened . . . ."); *id.* § 2284(b) ("In any action required to be heard and determined by a *district court* of three judges . . . ."); *id.* § 2284(b)(1) (judges designated to serve "shall serve as *members of the court* to hear and determine the action or proceeding") (emphases added). Title 28 elsewhere carefully distinguishes between "panels" and "courts," as when it provides that "[i]n each circuit the *court* may authorize the hearing and determination of cases and controversies by separate *panels*, each consisting of three judges . . . ." 28 U.S.C. § 46(b) (emphases added). Had Congress sought to provide

for apportionment challenges to be heard by a three-judge panel of an existing district court, rather than convening a new three-judge district court, it could easily have said so.

Section 2284(b) reinforces this conclusion by providing rules for "the composition and procedure of the court" convened pursuant to § 2284(a) that differ from the composition and procedure of an ordinary district court. For instance, "the chief judge of the *circuit*"—notably, not the chief judge of the district court in which the case was initially filed—"shall designate two other judges, at least one of whom shall be a circuit judge," 28 U.S.C. § 2284(b)(1) (emphasis added), a rule that ensures that the three-judge court will not be composed solely of judges from the district court in which the case is filed.[2] And while § 2284(b)(3) allows a single judge to conduct certain proceedings, it specifies that "[a]ny action of a single judge may be reviewed *by the full court* at any time before final judgment." *Id.* § 2284(b)(3) (emphasis added). This provision only makes sense if the three-judge district court is a separate "court," rather than an arm or panel of an existing district court. Otherwise, the statute would seem unavoidably to empower only the entire district court—that is, all active judges of the district court in which the case was originally filed, *id.* § 132(b)—to review decisions made by a single judge in a three-judge case

---

[2] Indeed, the *Singleton* Court is comprised of one judge from the Northern District Alabama, one judge from the Southern District of Alabama, and one judge from the Eleventh Circuit.

pursuant to § 2284(b). That would make no sense in the context of a statute that elsewhere makes clear that it is the three designated judges who must "serve as members of the court to hear and determine the action or proceeding." *Id*. § 2284(b)(1).

Section 2284's text thus demonstrates that a three-judge district court convened pursuant to that provision is a separate court from the ordinary district court in which the case was originally filed. Precedent confirms this conclusion. Three-judge courts have consistently held that "[t]he three-judge district court is . . . an extraordinary court and technical requirements relating to its jurisdiction are to be strictly construed." *Jehovah's Witnesses*, 278 F. Supp. at 493. And they have explained that "[a] three-judge court does not exist until it has been created by the Chief Judge of the Circuit." *Hart v. Kennedy*, 314 F. Supp. 823, 824 (W.D. Okla. 1969). Each of those descriptions is consistent with § 2284's text in describing the three-judge court as a separate court, not just as a panel of the existing district court in which suit was filed.[3]

_____

[3] In a 1957 case, the Fourth Circuit stated without consideration of the statutory text that a "court of three judges is not a different court from the District Court, but is the District Court composed of two additional judges sitting with the single District Judge before whom the application for injunction has been made." *Jacobs v. Tawes*, 250 F.2d 611, 614 (4th Cir. 1957). That statement was dictum, as the court's holding turned on the scope of the three-judge court requirement, not on the relationship between the three-judge court and the district court in which suit was filed. *See id.*

The statutory text and case law confirm that "the three-judge-court legislation is not 'a measure of broad social policy to be construed with great liberality,' but is rather 'an enactment technical in the strict sense of the term and to be applied as such.'" *Mitchell v. Donovan*, 398 U.S. 427, 432 (1970) (quoting *Phillips v. United States*, 312 U.S. 246, 251 (1941)). The statute therefore "is to be literally construed." *Id*. at 432. And the literal terms of § 2284 make it clear that the three-judge court is a separate court, not merely a subdivision of the district court in which suit is originally brought.

Thus, for *Caster* to be consolidated with *Singleton*, *Caster* would need to be transferred not to the Northern District of Alabama, but specifically to the three-judge court that is hearing *Singleton*. No such transfer is possible. Absent consent, a case may be transferred only to a "district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). Even assuming that this statute authorizes transfer to a three-judge district court specially convened pursuant to § 2284, which is far from clear, it would not allow the transfer of *Caster* to the three-judge court in *Singleton* because *Caster* could not "have been brought" in that court, as it does not fall within § 2284's three-judge court provision. *Supra* Part I.B. Thus, because § 2284 both *requires* that *Singleton* be heard by a three-judge court and *precludes* *Caster* from being brought before such a court, no transfer of venue could possibly bring the two cases before the same "court" so as to allow consolidation.

**D. Because *Singleton* and *Caster* cannot be consolidated, transfer would not serve the interests of justice or conserve judicial resources.**

Because the cases cannot be consolidated even if this Court transfers *Caster* to the Northern District, it is no more efficient to transfer this case to the Northern District than it is for this Court to retain jurisdiction in this venue, which is the plaintiffs' choice of forum. *See In re Ricoh Corp.,* 870 F.2d at 573. If transferred, *Caster* would proceed along a separate track before a separate court from *Singleton*—just as it would if the case remains before this Court. In either scenario two different courts will hear each set of plaintiffs' claims, and issue separate rulings, requiring the expenditure of the same judicial resources that this Court would expend to hear the case.[4]

**II.   Even if the cases could be consolidated, consolidation would not serve the interests of efficiency or fairness to the parties.**

The Court's order indicates that, at first blush, the cases "appear to be identical." Order to Show Cause at 2, ECF No. 7. But to the contrary, *Caster* and *Singleton* raise fundamentally different claims and neither the "underlying facts" nor the "functional arguments" in the two cases overlap—let alone are they "identical." *Id*. *Singleton* challenges the state's enacted congressional map on the basis that the

---

[4] Any risk of inconsistent rulings is minimized by the existing case schedules. *Singleton* has already been set for a preliminary injunction hearing just seven weeks from now. Even proceeding on an expedited basis, there is little risk that this Court would issue a substantive ruling before the *Singleton* Court does.

inclusion of a majority-minority district is an unconstitutional racial gerrymander. *See, e.g.*, Am. Comp. at ¶¶ 1-3 *Singleton v. Merrill* (No. 2:21-cv-01291-AMM), ECF No. 15. *Singleton* also alleges that the map was enacted with discriminatory intent. *Id.* at ¶¶ 75-79. By contrast, Plaintiffs assert that Section 2 of the Voting Rights Act requires the creation of two-majority Black congressional districts and do *not* bring any intent claims. Compl. ¶¶ 89-95, ECF No. 3.

The applicable legal standards for these distinct claims will require primarily different evidence. *Singleton* will involve evidence of legislative intent and whether racial considerations predominated over other traditional redistricting criteria in the map-drawing process for the enacted plan. *See Abbott v. Perez*, 138 S. Ct. 2305, 2324-25 (2018). Discovery and evidence are likely to focus on examining legislative proceedings and the statements and motivations of legislators and map drawers. *Id.* In contrast, *Caster* will require no proof of legislative intent and will focus instead on expert testimony regarding the geographical distribution of Alabama's Black population and whether Black Alabamians are both sufficiently populous and geographically compact to form the majority of two congressional districts. *Ala. State NAACP v. Ala.*, 2020 WL 583803, at *9-10 (M.D. Ala. Feb. 5, 2020). Additional expert testimony will relate to whether voting in Alabama is racially polarized such that Black Alabamians' candidates of choice are routinely defeated by white bloc voting. *Id.* at *27 ("[P]laintiffs must rely on expert testimony and

statistical evidence to assess the voting patterns of minority and white voters.").

Finally, *Caster* will involve the evaluation of the Senate Factors, which are unique

to Section 2 claims. *Id.* at \*10. In sum, the facts, witnesses, evidence, and arguments

relevant to each case are distinct, and trying the cases together is likely to multiply

and complicate the proceedings, not conserve resources.[5]

For these reasons, transferring *Caster* would promote neither judicial

efficiency nor the interests of justice.

## III.   The remaining relevant factors counsel against transfer.

The remaining Section 1404(a) factors support retaining Plaintiffs' case in the

Middle District. First, most of the parties and many of the likely witnesses reside

within the Middle District and will be inconvenienced if forced to travel to the

Northern District. *See, e.g.*, Compl. ¶¶ 12-19, ECF No. 3. Additionally, and

relatedly, Alabama's capital and state legislature are in the Middle District, and

evidence related to this case is more easily obtained if the case remains here, as it

serves as the "locus of operative facts." *Manuel*, 430 F.3d at 1135 n.1. The

congressional plan at issue here was created and enacted in the Middle District, and

Plaintiffs' claim for a second majority-minority district under Section 2 arises in part

in the Middle District. *See, e.g.*, Compl. ¶¶ 12-19, 42-43. The Middle District is also

---

[5] To the extent there is any overlap of State's witnesses between the two cases, Plaintiffs are willing to coordinate related discovery with the *Singleton* parties. There is no need to transfer this case to the Northern District to do so.

the Plaintiffs' chosen forum. *Harris v. Fisher-Price Inc.*, 2014 WL 1330933, at *2 (N.D. Ala. Apr. 1, 2014) (giving "considerable weight to Plaintiffs' choice of forum"). Finally, for the reasons stated above, the jurisdictional bar preventing consolidation of *Singleton* and *Caster* combined with the distinctive claims in the two cases means transferring Plaintiffs' suit to the Northern District will only frustrate their access to justice and the courts' ability to efficiently manage these proceedings.

**<u>CONCLUSION</u>**

For these reasons, Plaintiffs respectfully request that the Court decline to transfer this proceeding to the Northern District of Alabama.

Dated: November 15, 2021

Respectfully submitted,

By /s/ *Richard P. Rouco*

Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies & Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
Email: rrouco@qcwdr.com

Aria C. Branch*
Lalitha D. Madduri*
Joseph N. Posimato*
**Elias Law Group LLP**
10 G St. NE, Suite 600
Washington, D.C. 20002
Phone: (202) 968-4518
Email: ABranch@elias.law
Email: LMadduri@elias.law
Email: JPosimato@elias.law

Abha Khanna*
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Phone: (206) 656-0177
Email: AKhanna@elias.law

*Attorneys for Plaintiffs*
*\*Admitted pro hac vice*