## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NOTHERN DIVISION

MARCUS CASTER, et. al.,                )
                                       )
     *Plaintiffs*,                       )
                                       )
v.                                     )     Case No. 2:21-cv-00751-WKW-JTA
                                       )
JOHN MERRILL, in his official capacity )
as Alabama Secretary of State,         )
                                       )
     *Defendant*.                         )

## DEFENDANT'S RESPONSE TO SHOW CAUSE ORDER

Defendant John H. Merrill, sued in his official capacity as Alabama Secretary of State, states in response to the Court's November 8, 2021 Order that this action is due to be transferred to the Northern District of Alabama where *Singleton v. Merrill*, 2:21-cv-01291-AMM, is already pending. First, the Court can transfer this action to the Northern District of Alabama under 28 U.S.C. § 1404(a) for the convenience of the parties and in the interest of justice. Second, even if the Court cannot transfer this action under § 1404(a), it should nevertheless transfer (or stay) this action under the Court's inherent authority because *Singleton* was the first-filed action. Transferring the case will, at a minimum, ensure that the presiding judge in *Singleton* can coordinate and conduct a significant portion of all proceedings in both *Singleton* and *Caster*; and if the *Singleton* Court joins the *Caster* Plaintiffs to the *Singleton* case, the three-judge court will be able to exercise supplemental jurisdiction over the

*Caster* Plaintiffs' claims. Alternatively, if the Court stays this case, it can at least have the benefit of the *Singleton* court's ruling on the constitutionality of Alabama's redistricting map (and any new map if one is ordered by the *Singleton* court) before it considers whether the Voting Rights Act requires Alabama to draw a new map.

**I.    This action should be transferred to the Northern District of Alabama under 28 U.S.C. § 1404(a).**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "In determining the propriety of transferring venue in a case, the court must first determine whether the action could originally have been brought in the proposed transferee district court." *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999). And second, "the court must decide whether the balance of convenience favors transfer." *Id.* (citation omitted). Each of these two prongs is satisfied here.

   *A.    This action could have been brought in the Northern District of Alabama at the time of filing because* Singleton *was already pending there at that time.*

First, venue in this case would have been proper in the Northern District of Alabama at the time of filing because it shares a common nucleus of operative fact with *Singleton*, a case pending in the Northern District of Alabama in which Secretary Merrill had already consented to venue. In determining whether venue is such that an action "might have been brought" in the Northern District of Alabama,

it is important to note that "venue must be determined based on the facts at the time of filing." *Flowers Indus., Inc. v. F.T.C.*, 835 F.2d 775, 777 n.1 (11th Cir. 1987). When this lawsuit was filed on November 4, 2021, Secretary Merrill had already consented to venue in the Northern District of Alabama in another challenge to Alabama's new Congressional districts. *See Singleton* (Doc. 11) (Oct. 21, 2021) (Rule 12 motion not objecting to venue). And because "venue may be proper for the entire proceeding under pendent venue"[1] where "all claims arise out of a common nucleus of operative facts," *Nissei ASB Co. v. R&D Tool & Eng'g Co.*, No. 1:18-CV-553-TCB, 2018 WL 9961069, at *4 (N.D. Ga. Nov. 9, 2018), and because *Singleton* and *Caster* share a common nucleus of operative fact, venue in this action would have been proper in the Northern District of Alabama at the time of filing.

To be sure, a court may not transfer an action under § 1404(a) based only on the fact that it "might have been brought" in the transferee district based on the defendant's consent to the transfer. *See generally Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). But that is not what Secretary Merrill now suggests. Rather, it is only

---

[1] "Pendent venue is judge-made and is not rooted in any statute. This does not render the doctrine objectionable. Indeed, it seems necessary to give full effect to the supplemental jurisdiction statute. It would make no sense to permit federal courts to extend subject matter jurisdiction to supplemental claims, which implicates Article III of the Constitution, and then to thwart the assertion of those claims on the basis of venue, which is a wholly non-constitutional doctrine. Both doctrines facilitate the efficient and convenient joinder of claims that are so closely related that they constitute one case." Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3808 (4th ed.).

Case 2:21-cv-01536-AMM   Document 29   Filed 11/15/21   Page 4 of 23


because Secretary Merrill *already* consented in *Singleton* that venue would then be proper in *Caster* in the Northern District at the time of filing. Based on Secretary Merrill's consent to venue in the Northern District of Alabama, he could not object to venue in that district in *Caster* or another lawsuit based on a common nucleus of operative fact—namely, a lawsuit challenging the apportionment of Alabama's Congressional map for the 2022 elections—so long as *Singleton* remains before that court.

In deciding whether two claims are part of the same case or controversy and share a common nucleus of operative fact, courts "look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996); *see Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). Even where the legal elements of the two claims are "quite different," the claims are nevertheless part of the same case or controversy and share a common nucleus of operative fact where "each claim involves the same facts, occurrences, witnesses, and evidence. This commonality is sufficient to satisfy the constitutional minimum required by section 1367(a)." *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566 (11th Cir. 1994).

Both the *Singleton* Plaintiffs' constitutional claims and the *Caster* Plaintiffs' Section 2 claims share a common nucleus of operative fact: the Alabama Legislature's passage of a new congressional districting plan based on the 2020

Census. Each relates to the same controversy surrounding alleged racial gerrymandering in those maps—specifically whether Congressional District 7 is "packed" and whether a voter in the alleged gerrymandered district can satisfy the three *Gingles* criteria. Secretary Merrill anticipates calling many of the same witnesses (the cartographer who helped draw the maps, members of the Legislature, and former and current members of the State's Congressional delegation), relying on at least two of the same experts (a demographer and a political scientist), and putting forth similar evidence (e.g., the communities of interested that each congressional district serves) to defend against those claims. As this Court recognized, "the underlying facts of both lawsuits, as well as the functional arguments, appear to be almost identical." Doc. 7 at 2. And, of course, the requested remedy from each set of plaintiffs is a new map, though Mr. Singleton and Mr. Caster do not agree on what the new map should look like. Because *Singleton* and *Caster* share a common nucleus of operative fact, the Northern District of Alabama is a proper venue for *Caster* such that this action can be transferred to the Northern District.

It matters not that proper venue in *Singleton* is based only on Secretary Merrill's consent. *See Omega Pats., LLC v. CalAmp Corp.*, No. 613CV1950ORL40DCI, 2017 WL 4990654 (M.D. Fla. Sept. 22, 2017). In *Omega Patents*, a defendant consented by agreement to jurisdiction and venue in the Middle

District of Florida as to one specific patent claim. *Id.* at *3. "Hence, venue was proper as to the [patent claim] based upon the facts at the time the Complaint was filed." *Id.* The defendant sought to dismiss various other claims based on improper venue. The court rejected the argument, holding that the defendant "should have known that pendent venue would render venue proper as to the remaining patents-in-suit if the infringement claim relating to the patents-in-suit arose from a common nucleus of fact." *Id.*

The same is true here. Secretary Merrill has already consented to venue in the Northern District of Alabama, making venue for *Singleton* proper in that district. That consent had already occurred with the Complaint was filed in this case. And *Singleton* is based on a common nucleus of operative fact as this lawsuit. Accordingly, the Northern District of Alabama was a proper venue at the time of filing the Complaint in this case.[2]

  B. *Discretionary factors heavily favor transfer.*

"The court faced with a motion to transfer must engage in 'an individualized case-by-case consideration of convenience and fairness.'" *Hutchens v. Bill Heard Chevrolet Co.*, 928 F. Supp. 1089, 1090 (M.D. Ala. 1996) (quoting *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)). Under 1404(a), the Court

---

[2] Further, there is no jurisdictional bar that prevents a court in the Northern District of Alabama from hearing this case. *See infra* Part III.

6

"may properly transfer a case to 'the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be most easy, expeditious and inexpensive.'" *Id.* at 1090-91(quoting *Howell v. Tanner,* 650 F.2d 610, 616 (5th Cir. Unit B July 13, 1981)).[3]

    As the Court has recognized, *Singleton* is a "parallel lawsuit" with "underlying facts" and "functional arguments" that are "almost identical" to the facts and arguments at issue in this action. Doc. 7 at 2. In each lawsuit, the court will consider evidence, including documentary evidence and witness testimony, about the map-drawing process and how the Alabama Legislature developed the Congressional map. Each court will consider the same expert witness reports and hear testimony from the same expert witnesses hired by the State to explain the Legislature's reasoning for drawing the map the way it did. And each court will hear other evidence about communities of interest in different Alabama districts to further show the importance of how Alabama Congressional districts are drawn the way they are. It would make no sense—and would be a tremendous waste of judicial resources—for two federal courts to hear all of this evidence twice, for no reason

---

[3]     Factors for the Court's consideration include "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

other than the lawsuits were filed in different federal courts. Accordingly, this Court should transfer this action to the Northern District of Alabama.

## II.   This action should be transferred to the Northern District of Alabama under the Court's inherent authority pursuant to the first-filed rule.

Alternatively, this action is due to be transferred to the Northern District of Alabama (or stayed pending the outcome of *Singleton*) pursuant to the Court's inherent authority[4] under the first-filed rule. The first-filed rule "provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1136 (11th Cir. 2005) (citations omitted) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.").

The rule is "a well established rule of comity" whose purpose is "'to avoid the

---

[4]     *See Goldsby v. Ash*, No. 2:09-CV-975-TFM, 2010 WL 1658703, at *4 (M.D. Ala. Apr. 22, 2010) ("The Court notes that this case is being transferred pursuant to the Court's inherent authority under the first-filed rule."); *McGarry v. Delta Air Lines, Inc.*, No. 1:18-CV-2794-TWT, 2018 WL 6928799, at *6 (N.D. Ga. Nov. 20, 2018) ("Rather, the first-filed rule provides an independent basis for the transfer of actions like the one before this Court."). *But see In re SK hynix Inc.*, 847 F. App'x 847, 854 (Fed. Cir. 2021) (holding that federal courts' inherent authority under first-filed rule cannot circumvent requirements of § 1404(a)); *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018) (same).

waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Goldsby*, 2010 WL 1658703, at *1, *2 (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985)). "To determine whether actions are duplicative and the first-to-file rule applies, courts consider three factors: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Goldsby*, 2010 WL 16588703, at *2 (citing *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005)).

Each factor is satisfied. The *Singleton* plaintiffs filed suit on September 27, 2021, *see Singleton*, ECF No. 1, while Plaintiffs here filed their action on November 4, 2021, *see* Doc. 3. Additionally, the parties and issues substantially overlap. *See Goldsby*, 2010 WL 16588703, at *2 ("It is important to note that the parties and issues need not be identical, but rather the parties and issues should substantially overlap.") (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950–51 (5th Cir. 1997)). Secretary Merrill is the defendant in both suits and the plaintiffs in both are voters who seek to remedy alleged gerrymandering of Congressional maps and to maximize their ability to elect candidates of their choice to Congress. Though the *Singleton* plaintiffs bring constitutional claims while Plaintiffs here bring claims under the Voting Rights Act, "the underlying facts of both lawsuits, as well as the functional arguments, appear to be almost identical." Doc. 7 at 2. Along these lines,

9

courts recognize that "statutory Voting Rights Act challenges to statewide legislative apportionment are generally inextricably intertwined with constitutional challenges to such apportionment." *Page v. Bartels*, 248 F.2d 175, 189 (3d Cir. 2001). The chronology of the cases and the substantial overlap between the parties and issues thus warrant application of the first-filed rule here.

Because the first-filed rule applies, Plaintiffs must show "compelling circumstances" to overcome the strong presumption in favor of the Northern District suit. *Manuel*, 430 F.3d at 1135 (citing *Merrill Lynch*, 675 F.2d at 1174). The Eleventh Circuit "require[s] that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Id.* No such compelling circumstances exist here as Secretary Merrill is unaware of any "extraordinary circumstances, inequitable conduct, bad faith, or forum shopping" that would warrant departure from the rule. *See E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969 (3d Cir. 1988).

And because this Court possesses "an ample degree of discretion" in applying the first-filed rule, it "may elect to stay, transfer, or dismiss a duplicative later-filed action." *Strother v. Hylas Yachts, Inc.*, No. 12-80283-CV, 2012 WL 4531357, at *1 (S.D. Fla. Oct. 1, 2012); *see also Edwards v. Cofield*, No. 3:17-CV-321-WKW (M.D. Ala. July, 26, 2019) (granting a motion to stay and deferring to a similar, first-filed case to allow the Eleventh Circuit to resolve the first-filed case, to preserve

judicial resources, and to prevent duplicating efforts). Thus, Secretary Merrill respectfully requests that this Court transfer this action to the Northern District of Alabama, or in the alternative, to stay these proceedings until the Northern District resolves *Singleton*, with or without the *Caster* Plaintiffs.   After all, for its Congressional elections, Alabama can use only one map.

## III.   That a three-judge court has been convened in *Singleton* does not disfavor transfer.

Upon transfer, Secretary Merrill would move for consolidation under Rule 42(a). To be sure, in a consolidated action under Rule 42, *Caster* and *Singleton* would "retain their separate identities." *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018). Thus, if the *Caster* Plaintiffs are not joined to the *Singleton* action, where a three-judge court has been convened, *see* 28 U.S.C. § 2284(a), it may be that the *Caster* Plaintiffs' claim might be resolvable only by a single judge in the Northern District, while the *Singleton* Plaintiffs' claim might be resolvable only by all three judges. But consolidation would still be beneficial for these proceedings because it would allow a single court to, among other things, oversee discovery, consider evidentiary issues, and set the timeline for what might be an expedited decision. *See* 28 U.S.C. § 2284(b)(3) ("A single judge may conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure except as provided in this subsection."). Moreover, if a single judge has to decide *Caster*, consolidation would at least guarantee that that judge would also be participating in *Singleton*, meaning

only three federal judges—rather than four—will need to devote further time to these proceedings.

Moreover, in *Singleton*, Secretary Merrill plans to file a motion asking that court to join the *Caster* Plaintiffs as necessary parties under Rule 19(a)(1)(B)(ii) because Secretary Merrill is otherwise at "substantial risk of incurring . . . inconsistent obligations." The *Caster* Plaintiffs would then be parties in that case, allowing the three-judge court to consider the claims of both sets of plaintiffs in a single action and conduct proceedings in a way that could not subject Secretary Merrill to inconsistent injunctions from federal courts.

There would be no jurisdictional bar to the joinder of the *Caster* Plaintiffs to *Singleton*, and the three-judge court that has already convened in *Singleton* would have jurisdiction to preside over the claims of the *Caster* Plaintiffs in a single action for at least three reasons. First, three-judge courts regularly exercise supplemental jurisdiction over single-judge claims, and there is no reason the *Singleton* court could not do so here. Second, 28 U.S.C. § 1367—which codified supplemental jurisdiction and specifically provides for jurisdiction over claims brought by different parties— gives the three-judge court jurisdiction to decide the *Caster* Plaintiffs' claims. And third, even if § 1367 does not expand the jurisdiction of the three-judge court, traditional principles of pendent party jurisdiction show that the three-judge court can exercise supplemental jurisdiction over the *Caster* Plaintiffs' claims under 28

U.S.C. § 2284.

A.     *Traditional principles of federal court jurisdiction.*

Under the three-judge court's general jurisdictional authority under 28 U.S.C. § 1331, there are two reasons that it can hear the *Caster* Plaintiffs' Section 2 claims. First, a three-judge district court can properly exercise supplemental jurisdiction over claims that normally are heard by only a single judge by exercising supplemental jurisdiction over such claims. "In cases involving claims subject to review by a three-judge court, supplemental jurisdiction has generally been found to be proper where . . . the core and ancillary claims are 'so related . . . that they form part of the same case of controversy.'" *Ted Cruz for Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 95 (D.D.C. 2020) (three-judge court) (quoting *Adams v. Clinton*, 40 F. Supp. 2d 1, 4–5 (D.D.C. 1999) (quoting, in turn, 28 U.S.C. § 1367)). And as set out *infra* Part I.A, both *Caster* and *Singleton* plainly form part of the same case or controversy.

Three-judge courts with jurisdiction over a constitutional challenge to reapportionment regularly consider Section 2 claims in the same case. *See, e.g.*, Michael E. Solimine, *The Three-Judge District Court in Voting Rights Litigation*, 30 U. MICH. J.L. REFORM 79, 96 (1996) ("[T]hree-judge courts, virtually without discussion, apparently have exercised a form of pendent jurisdiction to adjudicate VRA claims concurrently with the constitutional (i.e., apportionment) claim."). And

for good reason. "The theories of liability and the proof underlying both the constitutional and statutory claims are intimately related, and the normal method of adjudicating such claims is by a three-judge district court convened under § 2284." *Armour v. State of Ohio*, 925 F.2d 987, 988 (6th Cir. 1991) (en banc); *see also Page v. Bartels*, 248 F.3d 175, 188 (3d Cir. 2001). Therefore, the three-judge court can— and should—exercise this supplemental jurisdiction over the *Caster* Plaintiffs' claims.

 Second, the three-judge court can hear the *Caster* Plaintiffs' claims under its standard subject-matter jurisdiction under 28 U.S.C. § 1331. Though composed of three members, a "three-judge district court is still a district court within the ordinary hierarchical structure of the federal judiciary." *Ala. Legis. Black Caucus v. Alabama*, 988 F. Supp. 2d 1285, 1306 (M.D. Ala. 2013) (three-judge court) (W. Pryor, J.). A Section 2 claim, which arises under the laws of the United States, is obviously a claim that a federal district court could hear under 28 U.S.C. § 1331.

Supreme Court precedent regarding appellate review of three-judge court decisions shows that a three-judge court is a district court for jurisdictional purposes. For instance, "the Supreme Court has refused to exercise mandatory appellate review over decisions of three-judge courts" when a three-judge court decides an issue that could properly be decided by a single judge. *Ala. Legis. Black Caucus*, 988 F. Supp. 2d at 1306. Instead of immediate review by the Supreme Court, these

decisions—though decided by three judges—are simply appealed to the Courts of Appeal, as would any decision by a district court. Importantly, the Supreme Court does not vacate decisions of three-judge courts that a single-judge court could have adjudicated. *See, e.g.*, *Pub. Serv. Comm'n of Mo. v. Brashear Freight Lines*, 312 U.S. 621, 626 (1941) ("But the fact that it was mistakenly assumed that the motion should be passed upon by the district judge in association with the two judges previously called did not of itself invalidate the District Court's judgment dismissing the motion.").

In other words, it should be undisputed that the three-judge court has *jurisdiction* to hear a claim that might otherwise be heard by only a single judge. *Ringsby Truck Lines, Inc. v. United States*, 490 F.2d 620, 624 (10th Cir. 1973); *Middlewest Motor Freight Bureau v. United States*, 433 F.2d 212, 219 (8th Cir. 1970). To be sure, under this theory,[5] a ruling by the three-judge court on the *Caster* Plaintiffs' Section 2 claim arguably would be appealable to the Eleventh Circuit, not directly to the United States Supreme Court. But that result does not affect whether the three-judge court has *jurisdiction* to hear the claim and enter a judgment on it. *See generally* Lawrence Gebhardt, *Pendent Claims in Three Judge Court Litigation*,

---

[5] To be clear, Secretary Merrill does not concede that an appeal of the *Caster* Plaintiffs' Section 2 claims would only lie at the Eleventh Circuit. Instead, the point here is that *even if* the three-judge court did not have the authority to decide the *Caster* Plaintiffs' claims under § 2284, it can nevertheless decide the claim under its general authority as a district court.

30 WASH. & LEE L. REV. 487 (1973) ("If a pendent claim is not properly before the three judge court, a decision on that claim is still as valid as a decision by the single judge court before which it should be heard.") (collecting cases).

B.     *Supplemental jurisdiction under 28 U.S.C. § 1367.*

In 28 U.S.C. § 1367(a), Congress granted "district courts . . . supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This supplemental jurisdiction "include[s] claims that involve the joinder or intervention of additional parties." *Id.* As set forth above, because the three-judge court is a district court, it has supplemental jurisdiction over claims that are part of the same case or controversy, even when such claims include the joinder of additional parties.

In deciding whether two claims are part of the same case or controversy, courts "look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996). Even where the legal elements of the two claims are "quite different," the claims are nevertheless part of the same case or controversy where "each claim involves the same facts, occurrences, witnesses, and evidence. This commonality is sufficient to satisfy the constitutional minimum required by section 1367(a)." *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1566 (11th Cir.

1994). And, to reiterate, supplemental jurisdiction expressly includes "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). That *Caster* and *Singleton* involve different plaintiffs is of no matter.

Both the *Singleton* Plaintiffs' constitutional claims and the *Caster* Plaintiffs' Section 2 claims arise out of the same case or controversy. Each arises from the same facts: the Alabama Legislature's passage of a new congressional districting plan based on the 2020 Census. Each relates to the same controversy surrounding alleged racial gerrymandering in those maps—specifically whether Congressional District 7 is "packed" and whether a voter in the alleged gerrymandered district can satisfy the three *Gingles* criteria. Secretary Merrill anticipates calling many of the same witnesses (the cartographer who helped draw the maps, members of the Legislature, and former and current members of the State's Congressional delegation), relying on at least two of the same experts (a demographer and a political scientist), and putting forth similar evidence (e.g., the communities of interested that each congressional district serves) to defend against those claims. As this Court has recognized, "the underlying facts of both lawsuits, as well as the functional arguments, appear to be almost identical." Doc. 7 at 2. Thus, the three-judge court would have jurisdiction under 28 U.S.C. § 1367 to hear the *Caster* Plaintiffs' Section 2 claims.

C.    *Traditional principles of pendent party jurisdiction.*

Even if three-judge courts could not generally exercise supplemental jurisdiction and even if § 1367 did not apply to the jurisdiction of three-judge courts, the text of § 2284 nevertheless permits pendent party jurisdiction over the *Caster* Plaintiffs' claims where a three-judge court is already properly convened to hear a constitutional claim. Section 2284 provides for the jurisdiction of a three-judge court in certain "action[s]" related to redistricting, so a three-judge court has jurisdiction over related claims that are part of the same "action," such as the *Caster* Plaintiffs' Section 2 claims.

"[I]n defining the scope of jurisdictional statutes in federal court, heavy emphasis should be placed on the language of the particular statute in question." *Nolan v. Boeing Co.*, 919 F.2d 1058, 1064 (5th Cir. 1990). It is true that, "with respect to the addition of parties, as opposed to the addition of only claims, [courts] will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Finley v. United States*, 490 U.S. 545, 549 (1989) (superseded by 28 U.S.C. § 1367). But where a jurisdictional statute uses "open-ended language" like "any civil action" and is "not otherwise limited by accompanying language, a companion statute, or legislative history" that counsels against pendent party supplemental jurisdiction, the statute allows for jurisdiction over an "entire case," which includes supplemental claims

Case 2:21-cv-01536-AMM   Document 29   Filed 11/15/21   Page 19 of 23

involving separate parties. *In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1259–60 (11th Cir. 1992) (quoting 28 U.S.C. § 1441(d)).

In relevant part, the three-judge court statute provides: "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an *action* is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a) (emphasis added). It contains no language limiting its application to claims brought by or against specific parties, and it does not restrict a three-judge court's jurisdiction to any specific "claims" apart from the requirement that the action include a constitutional challenge. No part of Section 2284 indicates any limitation on what types of claims might be brought as part of an "action" challenging the constitutionality of the apportionment process.

The context of Section 2284's enactment and its legislative history[6] confirm that Congress did not intend to restrict the statute's reach to only plaintiffs bringing only constitutional claims. *See Page v. Bartels*, 248 F.3d 175, 188 (3d Cir. 2001). In *Page*, challengers of New Jersey's legislative reapportionment scheme brought claims under both the Constitution and Section 2, and the District Court of New Jersey denied the challengers' application for relief without convening a three-judge

---

[6]    *See In re Surinam*, 974 F.2d at 1258-60 (considering legislative history of Foreign Sovereign Immunities Act to in holding that it permitted pendent party jurisdiction).

19

court. *Id.* at 180. The Third Circuit vacated the district court's decision and remanded the case for consideration by a "district court of three judges" after deciding that a three-judge court *had* jurisdiction to consider the Section 2 claims. *Page*, 248 F.3d at 189.

The Third Circuit held that it "d[id] not believe that Congress made a deliberate choice to distinguish between constitutional apportionment challenges and apportionment challenges brought under § 2 of the Voting Rights Act." *Id.* It reasoned that "when the three-judge court statutes were revised in 1976 to require that this specialized tribunal hear challenges to the 'constitutionality of . . . the apportionment of any statewide legislative body,' § 2 of the Voting Rights Act was not available to litigants seeking to challenge apportionment." *Page*, 248 F.3d at 189.

The *Page* court emphasized that the legislative history of § 2284 shows that "Congress was concerned less with the source of the law on which an apportionment challenge was based than on the unique importance of apportionment cases generally. The Senate Report, for example, consistently states that 'three-judge courts would be retained . . . *in any case involving congressional reapportionment.*'" 248 F.3d at 190 (emphasis added) (citing S. Rep. No. 94-204 (1976)). Moreover, all the reasons why Congress called for three judges to decide constitutional challenges to apportionment plans—the importance of the claim and the sensitivity of the matter

—apply equally to a Section 2 challenge. *Id.* Thus, § 2284 does not preclude the joinder of additional parties bringing a Section 2 claim, and the three-judge court can properly exercise jurisdiction over the *Caster* Plaintiffs' claims under traditional principles of pendent party jurisdiction.

* * *

Ultimately, *Singleton* and *Caster* are two lawsuits before two federal courts that ask Secretary Merrill to do two inconsistent things. The two cases involve the same defendant and will involve nearly identical facts and evidence. One way or another, in the interest of efficiency and to protect the rights of all parties, the cases should be considered together by a single court. Because the first-filed action—and the only three-judge court—is in the Northern District of Alabama, Secretary Merrill asks that that court consider the claims of each set of plaintiffs. Alternatively, Secretary Merrill requests that this Court stay this action until the conclusion of the *Singleton* action. Otherwise, the two courts will face what has already begun: a race to judgment by competing sets of plaintiffs seeking their own preferred relief.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

James W. Davis (ASB-4063-I58J)
*Deputy Attorney General*

/s/ A. Reid Harris
A. Reid Harris (ASB-1624-D29X)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama  36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

**Counsel for Secretary Merrill**

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ A. Reid Harris
*Counsel for Secretary Merrill*