FILED
2021 Dec-23 PM 06:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



U.S. Department of Justice

Civil Rights Division

---

*Office of the Assistant Attorney General*  *Washington, D.C. 20530*

March 27, 1992

Honorable Jimmy Evans
Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama  36130

Dear Mr. Attorney General:

    This refers to Act No. 92-63 (1992), which provides the redistricting plan for Congressional districts and Act No. 92-152 (1992), which provides for a change in the qualifying deadline for the June 2, 1992, primary election for members of Congress for the State of Alabama, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c.  We received the Congressional redistricting submission on March 11, 1992; supplemental information was received on March 12, 17, 18, 23, 24, 25, and 26, 1992.  The submission of the change in qualifying deadline was received on March 26, 1992.

    With respect to the change in qualifying deadline, the Attorney General does not interpose any objection to the change.  However, we note that the failure of the Attorney General to object does not bar subsequent litigation to enjoin enforcement of the change.  In addition, as authorized by Section 5, we reserve the right to reexamine this submission if additional information that would otherwise require an objection comes to our attention during the remainder of the sixty-day review period.  See the Procedures for the Administration of Section 5, 28 C.F.R. 51.41 and 51.43.

    With respect to the far more complex Congressional redistricting, we note at the outset the extreme time constraints imposed by the order of the Court in Wesch v. Hunt, No. 91-0787 (S.D. Ala. March 9, 1992), which allowed the state until noon today to obtain preclearance of its proposed plan under Section 5.  For that reason, our review to date necessarily has been limited, and similarly, the short time available has limited the state's ability to meet its burden under Section 5.  To the extent possible, however, we have given careful consideration to the materials and information you have so diligently made available to us.

    As you are aware, a concern has been raised that an underlying principle of the Congressional redistricting was a predisposition on the part of the state political leadership to limit black voting potential to a single district.  The proposed

plan provides for one such district based on black population concentrations in Jefferson County, Montgomery County and intervening areas. The remainder of the state's concentrated black population, however, is fragmented under the submitted plan among a number of districts none of which has a black population of as much as 30 percent. In light of the prevailing pattern of racially polarized voting throughout the state, it does not appear that black voters are likely to have a realistic opportunity to elect a candidate of their choice in any of the districts.

Our analysis further indicates that the fragmentation of black population concentrations outside of the one district with a black voting age population majority was unnecessary. Indeed, it is clear that at least the outlines of alternative plans that avoided such fragmentation were available or readily discernable by state officials and that such alternatives would provide for two Congressional districts with black voting age population majorities. These included plans with one district based on the black communities of Montgomery and Mobile Counties and the intervening and adjacent black-populated areas, and the other based upon the black population of Jefferson County and southern Tuscaloosa County, together with black-populated areas to the south and west. Moreover, it appears that the elimination of this identified fragmentation would enhance the ability of black voters to elect representatives of their choice.

The fragmentation of black population in areas of the state outside of the proposed black majority district, under these circumstances, has not been adequately explained. The reasons for this fragmentation appear to be related to the desire to protect incumbent members or to serve parochial political interests. While such considerations in themselves are not inappropriate, they may not be accomplished at the expense of the rights of black voters. Garza v. City of Los Angeles, 918 F.2d 763 (9th Cir. 1990); Ketchum v. Byrne, 740 F.2d 1398, 1408-09 (7th Cir. 1984), cert. denied, 471 U.S. 1135 (1985).

Under Section 5, as noted above, the state has the burden of demonstrating that a proposed change was not adopted with a racially discriminatory purpose and that it will not have a racially discriminatory effect. In addition, a redistricting plan may not be precleared if the plan clearly violates Section 2 of the Act, 42 U.S.C. 1973. See the Section 5 Procedures, 28 C.F.R. 51.55(b)(2).

Under the circumstances discussed above, and particularly in light of the time constraints which the legislative and court schedules have imposed, I cannot conclude, as I must under the Voting Rights Act, that the proposed districts are entitled to Section 5 preclearance. Accordingly, I must, on behalf of the Attorney General, interpose an objection to the proposed redistricting plan for Congressional districts for the State of Alabama.

- 3 -

Of course, as provided by Section 5 of the Voting Rights Act, you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed Alabama Congressional redistricting plan has neither the purpose nor will have the effect of denying or abridging the right to vote on account of race or color.  In addition, Section 51.45 of the guidelines permits you to request that the Attorney General reconsider the objection.  However, until the objection is withdrawn or a judgment from the District of Columbia Court is obtained, the proposed Alabama Congressional redistricting plan continues to be legally unenforceable.  Clark v. Roemer, 59 U.S.L.W. 4583 (U.S. June 3, 1991); 28 C.F.R. 51.10 and 51.45.

If you have any questions, feel free to call Voting Section attorney John Tanner (202-307-2897), who has been assigned to handle this matter.

Sincerely,

John R. Dunne
Assistant Attorney General
Civil Rights Division