FILED

2021 Dec-23  PM 07:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

87a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Choctaw County | 16,018 100.00% | 8,913 55.64% | 7,077 44.18% | 10 0.06% | 12 0.07% | 6 0.04% |
| Clarke County | | | | | | |
| Gosport | 359 100.00% | 45 12.53% | 312 86.91% | 0 0.00% | 2 0.56% | 0 0.00% |
| Salitpa | | | | | | |
| Tract 9579 | | | | | | |
| Block Group 1 | | | | | | |
| Block 120 | 10 100.00% | 10 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Block Group 1 | 10 100.00% | 10 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Tract 9579 | 10 100.00% | 10 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Salitpa | 10 100.00% | 10 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |

DB: Alabama
Plan: Redistrict

**Units Assigned to a District**
**District 7**
**Total Populations, All Ages**

Plan type: **Congressional Districts**

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Winn/Zimco | | | | | | |
| Tract 9579 | | | | | | |
| Block Group 1 | | | | | | |
| Block 129 | 4 100.00% | 4 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Block Group 1 | 4 100.00% | 4 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Tract 9579 | 4 100.00% | 4 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Winn/Zimco | 4 100.00% | 4 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Andersons | 600 100.00% | 224 37.33% | 375 62.50% | 0 0.00% | 1 0.17% | 0 0.00% |
| Seyrene | 1,421 100.00% | 888 62.49% | 531 37.37% | 1 0.07% | 1 0.07% | 0 0.00% |
| Chance | 213 100.00% | 36 16.90% | 177 83.10% | 0 0.00% | 0 0.00% | 0 0.00% |

| | Total | | | | | |
|---|---|---|---|---|---|---|
| Morvin/Campbell | 510 100.00% | 175 34.31% | 335 65.69% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Clarke County | 3,117 100.00% | 1,382 44.34% | 1,730 55.50% | 1 0.03% | 4 0.13% | 0 0.00% |
| Dallas County | 48,130 100.00% | 20,121 41.81% | 27,825 57.81% | 41 0.09% | 129 0.27% | 14 0.03% |
| Greene County | 10,153 100.00% | 1,966 19.36% | 8,181 80.58% | 3 0.03% | 0 0.00% | 3 0.03% |
| Hale County | 15,498 100.00% | 6,255 40.36% | 9,214 59.45% | 20 0.13% | 9 0.06% | 0 0.00% |
| Jefferson County Barrett School | 3,780 100.00% | 1,461 38.65% | 2,290 60.58% | 5 0.13% | 21 0.56% | 3 0.08% |
| Charles Brown School | 4,836 100.00% | 1,824 37.72% | 2,996 61.95% | 7 0.14% | 2 0.04% | 7 0.14% |
| Ensley Community House | 4,807 100.00% | 1,322 27.50% | 3,470 72.19% | 6 0.12% | 1 0.02% | 8 0.17% |
| Wylam Fire Station | 3,211 100.00% | 1,658 51.64% | 1,552 48.33% | 0 0.00% | 1 0.03% | 0 0.00% |
| Fairfield High Civic Club | 2,828 100.00% | 2,422 85.64% | 385 13.61% | 5 0.18% | 16 0.57% | 0 0.00% |
| Glen Oaks School | 5,129 100.00% | 1,803 35.15% | 3,312 64.57% | 2 0.04% | 7 0.14% | 5 0.10% |
| Bessemer State Technical | 3,053 100.00% | 2,518 82.48% | 526 17.23% | 0 0.00% | 8 0.26% | 1 0.03% |

DB: Alabama
Plan : Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type:  Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Eastern Valley Community | | | | | | |
| Tract 0141.04 | | | | | | |
| Block Group 1 | | | | | | |
| Block 128 | 2 100.00% | 2 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 129 | 4 100.00% | 4 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Block Group 1 | 6 100.00% | 6 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Tract 0141.04 | 6 100.00% | 6 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Tract 0141.05 | | | | | | |
| Block Group 2 | | | | | | |
| Block 204B | 43 100.00% | 43 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 204E | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Block 213A | 15 100.00% | 15 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 213B | 17 100.00% | 17 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 213C | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 213D | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 213E | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 2 | 75 100.00% | 75 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block Group 9 | | | | | | |
| Block 901A | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 901B | 53 100.00% | 50 94.34% | 3 5.66% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 902A | 14 100.00% | 13 92.86% | 1 7.14% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 902B | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 902C | 67 100.00% | 67 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 908A | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 903B | 62 100.00% | 61 98.39% | 1 1.61% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 903C | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 903D | 24 100.00% | 24 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |

92a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 903E | 11 100.00% | 11 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 904 | 13 100.00% | 13 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 905 | 3 100.00% | 3 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 906 | 16 100.00% | 16 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 907A | 20 100.00% | 20 100.00% | 0 0.00% | 0 00.00% | 0 0.00% | 0 0.00% |
| Block 907B | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 907C | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 908 | 12 100.00% | 12 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Block Group 9 | 295 100.00% | 290 98.31% | 5 1.69% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Tract 0141.05 | 370 100.00% | 365 98.65% | 5 1.35% | 0 0.00% | 0 0.00% | 0 0.00% |

| | C1 | C2 | C3 | C4 | C5 | C6 |
|---|---|---|---|---|---|---|
| Tract 0142.03 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block Group 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 101 | 37 / 100.00% | 37 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 102 | 33 / 100.00% | 33 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 103 | 7 / 100.00% | 7 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 104 | 16 / 100.00% | 16 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 105 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 106 | 16 / 100.00% | 16 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 107 | 42 / 100.00% | 42 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 108 | 44 / 100.00% | 43 / 97.73% | 0 / 0.00% | 1 / 2.27% | 0 / 0.00% | 0 / 0.00% |
| Block 109 | 4 / 100.00% | 4 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 110 | 25 / 100.00% | 24 / 96.00% | 0 / 0.00% | 0 / 0.00% | 1 / 4.00% | 0 / 0.00% |
| Block 111 | 20 / 100.00% | 20 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 112 | | | | | | |
| Block 113 | | | | | | |

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 114 | 80 | 80 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 115 | 15 | 15 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 116 | 15 | 15 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 117 | 44 | 44 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 118 | 21 | 21 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 119 | 24 | 24 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 120 | 59 | 59 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 121 | 37 | 37 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 122 | 13 | 12 | 0 | 0 | 0 | 1 |
| | 100.00% | 92.31% | 0.00% | 0.00% | 0.00% | 7.69% |

95a

| | | | | | | |
|---|---|---|---|---|---|---|
| Block 123 | 54 100.00% | 47 87.04% | 6 11.11% | 1 1.85% | 0 0.00% | 0 0.00% |
| Block 126 | 7 100.00% | 7 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 127 | 85 100.00% | 10 11.76% | 75 88.24% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 129 | 84 100.00% | 84 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 130 | 82 100.00% | 25 30.49% | 57 69.51% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 132 | 25 100.00% | 25 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 133 | 3 100.00% | 3 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 184 | 11 100.00% | 11 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 135 | 550 100.00% | 529 96.18% | 20 3.64% | 0 0.00% | 1 0.18% | 0 0.00% |
| Block 136 | 36 100.00% | 35 97.22% | 0 0.00% | 0 0.00% | 1 2.78% | 0 0.00% |
| Block 137 | 127 100.00% | 125 98.43% | 2 1.57% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 138A | 12 100.00% | 12 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 188B | 0 | 0 | 0 | 0 | 0 | 0 |

96a

DB: Alabama
Plan: **Redistrict**

Units Assigned to a District
District 7
**Total Populations, All Ages**

Plan type: **Congressional Districts**

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 138C | 13 100.00% | 13 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 138D | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 139A | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 139B | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 140 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 141 | 20 100.00% | 20 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 142 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 143 | 69 100.00% | 68 98.55% | 0 0.00% | 0 0.00% | 1 1.45% | 0 0.00% |
| Block 144 | 9 100.00% | 9 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 145 | 20 100.00% | 16 80.00% | 4 20.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 146 | 25 100.00% | 8 32.00% | 17 68.00% | 0 0.00% | 0 0.00% | 0 0.00% |

97a

| | C1 | C2 | C3 | C4 | C5 | C6 |
|---|---|---|---|---|---|---|
| Block 147 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 149 | 4 100.00% | 4 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 150 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 151 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 152 | 36 100.00% | 11 30.56% | 25 69.44% | 0 0.00% | 0 0.00% | 0 0.00% |
| Water block 199 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Total Block Group 1** | 1,824 100.00% | 1,611 88.32% | 206 11.29% | 2 0.11% | 4 0.22% | 1 0.05% |
| **Block Group 2** | | | | | | |
| Block 218 | 182 100.00% | 182 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 222 | 39 100.00% | 36 92.31% | 0 0.00% | 0 0.00% | 0 0.00% | 3 7.69% |
| **Total Block Group 2** | 221 100.00% | 218 98.64% | 0 0.00% | 0 0.00% | 0 0.00% | 3 1.36% |

98a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block Group 3 | | | | | | |
| Block 301 | 90 | 82 | 8 | 0 | 0 | 0 |
| | 100.00% | 91.11% | 8.89% | 0.00% | 0.00% | 0.00% |
| Block 802 | 87 | 35 | 52 | 0 | 0 | 0 |
| | 100.00% | 40.23% | 59.77% | 0.00% | 0.00% | 0.00% |
| Block 303 | 245 | 244 | 0 | 0 | 1 | 0 |
| | 100.00% | 99.59% | 0.00% | 0.00% | 0.41% | 0.00% |
| Block 305 | 45 | 45 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 306 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 307 | 13 | 9 | 4 | 0 | 0 | 0 |
| | 100.00% | 69.23% | 30.77% | 0.00% | 0.00% | 0.00% |
| Block 308 | 11 | 11 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 309 | 26 | 26 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 310 | 0 | 0 | 0 | 0 | 0 | 0 |

99a

| Block | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 | Col 6 |
|---|---|---|---|---|---|---|
| Block 311 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 312 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 313 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 314 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 315 | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 5 / 100.00% | 5 / 100.00% |
| Block 316 | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 49 / 100.00% | 49 / 100.00% |
| Block 317 | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 115 / 100.00% | 115 / 100.00% |
| Block 318 | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 53 / 100.00% | 53 / 100.00% |
| Block 319 | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 14 / 100.00% | 14 / 100.00% |
| Block 320 | 0 | 0 | 0 | 0 | 0 | 0 / 100.00% |
| Block 321 | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 1 / 0.38% | 265 / 99.62% | 266 / 100.00% |
| Block 322 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 323 | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 3 / 100.00% | 3 / 100.00% |
| Block 324 | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 4 / 100.00% | 4 / 100.00% |
| Block 325 | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 55 / 100.00% | 55 / 100.00% |

100a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 326 | 38 100.00% | 38 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 327 | 12 100.00% | 12 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 328 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 329 | 39 100.00% | 39 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 330 | 10 100.00% | 10 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 331 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 332 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 333 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399A | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399B | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399D | 0 | 0 | 0 | 0 | 0 | 0 |

101a

| | C1 | C2 | C3 | C4 | C5 | C6 |
|---|---|---|---|---|---|---|
| Water block 399E | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399F | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399G | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399H | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399J | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399K | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399L | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399M | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399N | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 3 | 0 0.00% | 1 0.08% | 0 0.00% | 65 5.51% | 1,114 94.41% | 1,180 100.00% |
| Block Group 9 | | | | | | |
| Block 901A | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 901B | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 191 100.00% | 191 100.00% |
| Block 902 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 12 100.00% | 12 100.00% |
| Block 903 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 17 100.00% | 17 100.00% |
| Block 904 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 7 100.00% | 7 100.00% |
| Block 905 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 11 100.00% | 11 100.00% |

102a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 906 | 6<br>100.00% | 6<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Block 907 | 87<br>100.00% | 87<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Block 908 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 909A | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 909B | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 910 | 35<br>100.00% | 35<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Block 911 | 3<br>100.00% | 3<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Block 912A | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 912B | 15<br>100.00% | 15<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Block 913 | 16<br>100.00% | 16<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Block 914A | 0 | 0 | 0 | 0 | 0 | 0 |

103a

| | | | | | | |
|---|---|---|---|---|---|---|
| Block 914B | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 914C | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 915A | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 915B | 1 100.00% | 1 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Block Group 9 | 401 100.00% | 401 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Tract 0142.03 | 3,626 100.00% | 3,344 92.22% | 271 7.47% | 2 0.06% | 5 0.14% | 4 0.11% |
| Tract 0143.01 | | | | | | |
| Block Group 4 | | | | | | |
| Block 401A | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 401B | 134 100.00% | 69 51.49% | 65 48.51% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 402 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 403A | 61 100.00% | 58 95.08% | 2 3.28% | 0 0.00% | 1 1.64% | 0 0.00% |
| Block 403B | 13 100.00% | 13 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 404 | 13 100.00% | 13 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 405 | 20 100.00% | 20 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 406 | 13 100.00% | 13 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |

106a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Lee School | 2,869 100.00% | 230 8.02% | 2,633 91.77% | 4 0.14% | 2 0.07% | 0 0.00% |
| Harrison Park Community Center | 6,344 100.00% | 191 3.01% | 6,144 96.85% | 2 0.03% | 5 0.08% | 2 0.03% |
| Hemphill School Recreation | 6,250 100.00% | 684 10.94% | 5,545 88.72% | 15 0.24% | 1 0.02% | 5 0.08% |
| Wenonah Elementary School | 2,323 100.00% | 314 13.52% | 2,005 86.31% | 3 0.13% | 1 0.04% | 0 0.00% |
| Jackson School | 2,452 100.00% | 22 0.90% | 2,421 98.74% | 9 0.37% | 0 0.00% | 0 0.00% |
| Hill School | 6,233 100.00% | 505 8.10% | 5,710 91.61% | 14 0.22% | 1 0.02% | 3 0.05% |
| Graymont Elementary School | 5,260 100.00% | 147 2.79% | 5,107 97.09% | 3 0.06% | 1 0.02% | 2 0.04% |
| Center Street School | 4,205 100.00% | 74 1.76% | 4,127 98.15% | 3 0.07% | 0 0.00% | 1 0.02% |
| Washington School | 4,832 100.00% | 20 0.41% | 4,807 99.48% | 3 0.06% | 0 0.00% | 2 0.04% |

| Location | Total | | | | | |
|---|---|---|---|---|---|---|
| Elyton School | 2,397 100.00% | 227 9.47% | 2,165 90.32% | 1 0.04% | 3 0.13% | 1 0.04% |
| Forty-Fifth Street Baptist Church | 1,591 100.00% | 38 2.39% | 1,550 97.42% | 3 0.19% | 0 0.00% | 0 0.00% |
| Norwood Armory | 3,771 100.00% | 146 3.87% | 3,619 95.97% | 4 0.11% | 2 0.05% | 0 0.00% |
| McArthur School | 3,557 100.00% | 516 14.51% | 3,034 85.30% | 3 0.08% | 3 0.08% | 1 0.03% |
| City Auditorium | 4,174 100.00% | 19 0.46% | 4,151 99.45% | 2 0.05% | 1 0.02% | 1 0.02% |
| Wilkerson School/5411 Carrie Tuggl | 3,271 100.00% | 38 1.16% | 3,217 98.35% | 2 0.06% | 7 0.21% | 7 0.21% |
| Avondale Library | 1,828 100.00% | 914 50.00% | 893 48.85% | 5 0.27% | 10 0.55% | 6 0.33% |
| Southtown Housing Community Center | 1,280 100.00% | 80 6.25% | 1,193 93.20% | 1 0.08% | 6 0.16% | 4 0.31% |
| Bethel Baptist Church | 715 100.00% | 3 0.42% | 706 98.74% | 0 0.00% | 6 0.84% | 0 0.00% |
| Southside Homes Community | 5,819 100.00% | 93 1.60% | 5,718 98.26% | 5 0.09% | 2 0.03% | 1 0.02% |
| Thompson Manor Community | 1,961 100.00% | 1,357 69.20% | 595 30.34% | 5 0.25% | 2 0.10% | 2 0.10% |
| St Francis School | 6,090 100.00% | 702 11.53% | 5,376 88.28% | 6 0.10% | 0 0.00% | 6 0.10% |
| Bessemer City Hall | 2,402 100.00% | 1,578 65.70% | 815 33.93% | 6 0.25% | 0 0.00% | 3 0.12% |

108a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Bessemer Fire Station | 1,966 100.00% | 591 30.06% | 1,367 69.53% | 3 0.15% | 5 0.25% | 0 0.00% |
| National Guard Armory | 2,722 100.00% | 414 15.21% | 2,305 84.68% | 2 0.07% | 0 0.00% | 1 0.04% |
| Jonesboro Elementary School | 6,349 100.00% | 4,631 72.94% | 1,703 26.82% | 7 0.11% | 3 0.05% | 5 0.08% |
| Addison School | 743 100.00% | 30 4.04% | 713 95.96% | 0 0.00% | 0 0.00% | 0 0.00% |
| Woodward Elementary School | 1,854 100.00% | 652 35.17% | 1,197 64.56% | 1 0.05% | 3 0.16% | 1 0.05% |
| Fairfield City Hall | 3,057 100.00% | 1,105 36.15% | 1,942 63.53% | 1 0.03% | 8 0.26% | 1 0.03% |
| Fairfield Fire Station | 4,020 100.00% | 115 2.86% | 3,900 97.01% | 4 0.10% | 0 0.00% | 1 0.02% |
| Midfield Community Center | 2,973 100.00% | 2,590 87.12% | 354 11.91% | 13 0.44% | 16 0.54% | 0 0.00% |
| Brighton High School | 1,771 100.00% | 69 3.90% | 1,701 96.05% | 0 0.00% | 1 0.06% | 0 0.00% |

109a

| | Total | | | | |
|---|---|---|---|---|---|---|
| Roosevelt School | 2,511 100.00% | 56 2.23% | 2,452 97.65% | 2 0.08% | 1 0.04% | 0 0.00% |
| Lipscomb City Hall | 3,049 100.00% | 1,564 51.30% | 1,475 48.38% | 2 0.07% | 8 0.26% | 0 0.00% |
| Bryants Chapel AME Church | 4,317 100.00% | 38 0.88% | 4,279 99.12% | 0 0.00% | 0 0.00% | 0 0.00% |
| Riley School | 5,401 100.00% | 398 7.37% | 4,986 92.32% | 1 0.02% | 14 0.26% | 2 0.04% |
| Fire Station 29 | 9,112 100.00% | 5,371 58.94% | 3,717 40.79% | 14 0.15% | 6 0.07% | 4 0.04% |
| Curry School | 4,419 100.00% | 2,824 63.91% | 1,560 35.30% | 4 0.09% | 22 0.50% | 9 0.20% |
| Willowwood Recreation Center | 5,559 100.00% | 1,031 18.55% | 4,484 80.66% | 16 0.29% | 20 0.36% | 8 0.14% |
| Al Youth Services Vaca | 3,092 100.00% | 1,425 46.09% | 1,643 53.14% | 0 0.00% | 19 0.61% | 5 0.16% |
| Oporto Armory/5801 Tarrant City Ha | 4,144 100.00% | 205 4.95% | 3,937 95.00% | 1 0.02% | 0 0.00% | 1 0.02% |
| Inglenook School/5910 Mt Park Firs | 4,240 100.00% | 1,650 38.92% | 2,570 60.61% | 2 0.05% | 3 0.07% | 15 0.35% |
| Morton Simpson Community Center | 5,513 100.00% | 694 12.59% | 4,814 87.32% | 3 0.05% | 1 0.02% | 1 0.02% |
| Hudson School | 3,604 100.00% | 0 0.00% | 3,600 99.89% | 2 0.06% | 2 0.06% | 0 0.00% |

110a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/ PI | Total Other |
|---|---|---|---|---|---|---|
| North Bham Recreation Center | 3,629 100.00% | 504 13.89% | 3,121 86.00% | 2 0.06% | 2 0.06% | 0 0.00% |
| Wrights Chapel United Methodist | 2,700 100.00% | 41 1.52% | 2,657 98.41% | 0 0.00% | 0 0.00% | 2 0.07% |
| Hooper City Recreation Center | 2,362 100.00% | 2 0.08% | 2,357 99.79% | 0 0.00% | 1 0.04% | 2 0.08% |
| Lewis School | 1,458 100.00% | 0 0.00% | 1,457 99.93% | 0 0.00% | 1 0.07% | 0 0.00% |
| Harriman Park Recreation | 613 100.00% | 1 0.16% | 612 99.84% | 0 0.00% | 0 0.00% | 0 0.00% |
| Mount Hebron Baptist Church | 4,494 100.00% | 450 10.01% | 4,042 89.94% | 1 0.02% | 1 0.02% | 0 0.00% |
| Woodrow Wilson School | 6,604 100.00% | 1,727 26.15% | 4,841 73.30% | 3 0.05% | 28 0.42% | 5 0.08% |
| Fairview School | 6,168 100.00% | 1,401 22.71% | 4,737 76.80% | 17 0.28% | 11 0.18% | 2 0.03% |
| Ensley High School Gym | 3,846 100.00% | 80 2.08% | 3,755 97.63% | 2 0.05% | 9 0.23% | 0 0.00% |

111a

| | | | | | | |
|---|---|---|---|---|---|---|
| East Ensley Branch Public Library | 2,720 100.00% | 15 0.55% | 2,697 99.15% | 1 0.04% | 7 0.26% | 0 0.00% |
| Howze Sanford Recreation | 1,859 100.00% | 32 1.72% | 1,827 98.28% | 0 0.00% | 0 0.00% | 0 0.00% |
| Pratt City Fire Station | 2,692 100.00% | 428 15.90% | 2,261 83.99% | 0 0.00% | 3 0.11% | 0 0.00% |
| George N Scott School | 4,584 100.00% | 109 2.38% | 4,468 97.47% | 0 0.00% | 6 0.13% | 1 0.02% |
| Total Jefferson County | 258,515 100.00% | 62,630 24.23% | 195,135 75.48% | 252 0.10% | 346 0.13% | 152 0.06% |
| Lowndes County | 12,658 100.00% | 3,185 25.16% | 9,456 74.70% | 10 0.08% | 4 0.08% | 3 0.02% |
| Marengo County | 23,084 100.00% | 11,314 49.01% | 11,745 50.88% | 11 0.05% | 11 0.05% | 3 0.01% |
| Montgomery County | | | | | | |
| Normandale Library | | | | | | |
| Tract 0022 | | | | | | |
| Block Group 3 | | | | | | |
| Block 301 | 30 100.00% | 3 10.00% | 27 90.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 811 | 53 100.00% | 1 1.89% | 52 98.11% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Block Group 3 | 83 100.00% | 4 4.82% | 79 95.18% | 0 0.00% | 0 0.00% | 0 0.00% |

112a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Total Tract 0022 | 83 100.00% | 4 4.82% | 79 95.18% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Normandale Library | 83 100.00% | 4 4.82% | 79 95.18% | 0 0.00% | 0 0.00% | 0 0.00% |
| Bellingrath Community Center | 2,277 100.00% | 102 4.48% | 2,166 95.18% | 0 0.00% | 0 0.00% | 9 0.40% |
| Beulah Baptist Church | 8,252 100.00% | 380 4.60% | 7,861 95.26% | 3 0.40% | 2 0.02% | 6 0.07% |
| Carver High School | 3,535 100.00% | 43 1.22% | 3,478 98.39% | 4 0.11% | 6 0.17% | 4 0.11% |
| Capital City Boys Club | 3,524 100.00% | 387 10.98% | 3,103 88.05% | 8 0.23% | 17 0.48% | 9 0.26% |
| Montgomery Boys Club | 2,472 100.00% | 1,198 48.46% | 1,249 50.53% | 6 0.24% | 16 0.65% | 3 0.12% |
| Hayneville Road Community Center | 3,177 100.00% | 320 10.07% | 2,847 89.61% | 5 0.16% | 5 0.16% | 0 0.00% |
| Fort Sheperd Armory | 3,013 100.00% | 374 12.41% | 2,635 87.45% | 0 0.00% | 3 0.10% | 1 0.03% |

| | Total | | | | | |
|---|---|---|---|---|---|---|
| William Harrison Elementary | 1,688 100.00% | 145 8.59% | 1,540 91.23% | 1 0.06% | 1 0.06% | 1 0.06% |
| Southlawn Elementary | 5,345 100.00% | 157 2.94% | 5,179 96.89% | 2 0.04% | 4 0.07% | 3 0.06% |
| Houston Hill Community Center | 3,648 100.00% | 406 11.13% | 3,228 88.49% | 13 0.36% | 1 0.03% | 0 0.00% |
| Alabama State University | 4,151 100.00% | 480 11.56% | 3,652 87.98% | 7 0.17% | 9 0.22% | 3 0.07% |
| Hamner Hall Fire Station | 2,524 100.00% | 499 19.77% | 1,999 79.20% | 12 0.48% | 12 0.48% | 2 0.08% |
| Goode Street School | 5,764 100.00% | 394 6.84% | 5,365 92.90% | 2 0.03% | 8 0.14% | 5 0.09% |
| McIntyre Community Center | 4,767 100.00% | 67 1.41% | 4,697 98.53% | 3 0.06% | 0 0.00% | 0 0.00% |
| Newtown Community Center | 4,252 100.00% | 1,111 26.13% | 3,115 73.26% | 7 0.16% | 16 0.38% | 3 0.07% |
| North Community Center | 5,882 100.00% | 2,165 36.81% | 3,664 62.29% | 8 0.14% | 40 0.68% | 5 0.09% |
| Union Academy Baptist Church | 323 100.00% | 121 37.46% | 202 62.54% | 0 0.00% | 0 0.00% | 0 0.00% |
| Union Chapel Ame Zion Church | 1,599 100.00% | 599 34.96% | 1,036 64.79% | 3 0.19% | 1 0.06% | 0 0.00% |
| King Hill Community Center | 1,687 100.00% | 712 42.21% | 958 56.79% | 4 0.24% | 13 0.77% | 0 0.00% |

114a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Catoma School | 1,975 100.00% | 1,691 85.62% | 267 13.52% | 6 0.30% | 10 0.51% | 1 0.05% |
| Hope Hull Church of Christ | 718 100.00% | 348 48.47% | 354 49.30% | 1 0.14% | 2 0.28% | 13 1.81% |
| Snowdown Women's Club | 565 100.00% | 222 39.29% | 338 59.82% | 4 0.71% | 1 0.18% | 0 0.00% |
| Newell Brothers Construction | 1,064 100.00% | 746 70.11% | 311 29.23% | 2 0.19% | 0 0.00% | 5 0.47% |
| Fleta Masonic Lodge | 1,431 100.00% | 867 60.59% | 558 38.99% | 4 0.28% | 2 0.14% | 0 0.00% |
| Lapine Community Center | 1,000 100.00% | 577 57.70% | 420 42.00% | 0 0.00% | 3 0.30% | 0 0.00% |
| Alabama National Bank-Ramer | | | | | | |
| Tract 0058 | | | | | | |
| Block Group 1 | | | | | | |
| Block 101 | 39 100.00% | 5 12.82% | 34 87.18% | 0 0.00% | 0 0.00% | 0 0.00% |

| | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 | Col 6 |
|---|---|---|---|---|---|---|
| Block 102 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 103 | 14 / 100.00% | 14 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 104 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 105 | 3 / 100.00% | 3 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 106 | 93 / 100.00% | 20 / 21.51% | 73 / 78.49% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 107 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 109 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 119 | 176 / 100.00% | 120 / 68.18% | 56 / 31.82% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 120 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 121 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 122 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 123 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 152 | 13 / 100.00% | 0 / 0.00% | 13 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 153 | 39 / 100.00% | 36 / 92.31% | 3 / 7.69% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 154 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |

116a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 199C | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 1 | 377 100.00% | 198 52.52% | 179 47.48% | 0 0.00% | 0 0.00% | 0 0.00% |

117a

**Block Group 2**

| | | | | | | |
|---|---|---|---|---|---|---|
| Block 206 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 207 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 2 100.00% | 2 100.00% |
| Block 208 | 0 0.00% | 0 0.00% | 0 0.00% | 30 37.50% | 50 62.50% | 80 100.00% |
| Block 217 | 0 0.00% | 0 0.00% | 4 2.84% | 93 65.96% | 44 31.21% | 141 100.00% |
| Block 218 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 219 | 0 0.00% | 0 0.00% | 0 0.00% | 22 81.48% | 5 18.52% | 27 100.00% |
| Block 220 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 7 100.00% | 7 100.00% |
| Block 221 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 3 100.00% | 3 100.00% |
| Block 222 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 223 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 18 100.00% | 18 100.00% |
| Block 224 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 1 100.00% | 1 100.00% |
| Block 225 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 2 100.00% | 2 100.00% |
| Water block 299E | 0 | 0 | 0 | 0 | 0 | 0 |

118a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Water block 299F | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 299G | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 299H | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 2 | 281 | 132 | 145 | 4 | 0 | 0 |
| | 100.00% | 46.98% | 51.60% | 1.42% | 0.00% | 0.00% |
| Block Group 3 | | | | | | |
| Block 302 | 50 | 40 | 10 | 0 | 0 | 0 |
| | 100.00% | 80.00% | 20.00% | 0.00% | 0.00% | 0.00% |
| Block 303 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 304 | 57 | 48 | 9 | 0 | 0 | 0 |
| | 100.00% | 84.21% | 15.79% | 0.00% | 0.00% | 0.00% |
| Block 305 | 18 | 18 | 0 | 0 | 0 | 0 |
| | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 306 | 7 | 6 | 1 | 0 | 0 | 0 |
| | 100.00% | 85.71% | 14.29% | 0.00% | 0.00% | 0.00% |

119a

| | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 | Col 6 |
|---|---|---|---|---|---|---|
| Block 307 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 5 100.00% | 5 100.00% |
| Block 308 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 10 100.00% | 10 100.00% |
| Block 309 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 26 100.00% | 26 100.00% |
| Block 310 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 311 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 15 100.00% | 15 100.00% |
| Block 312 | | | | | | |
| Block 313 | 0 0.00% | 0 0.00% | 0 0.00% | 3 10.34% | 26 89.66% | 29 100.00% |
| Block 314 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 322 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 1 100.00% | 1 100.00% |
| Block 324 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 325 | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% | 1 100.00% | 1 100.00% |
| Block 326 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 327 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 328 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 329 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 330 | 0 | 0 | 0 | 0 | 0 | 0 |

120a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 331 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399A | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399B | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399C | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 3 | 219 100.00% | 196 89.50% | 23 10.50% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block Group 4 | | | | | | |
| Block 401 | 30 100.00% | 28 93.33% | 2 6.67% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 402 | 5 100.00% | 5 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Water block 499G | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 4 | 35 100.00% | 33 94.29% | 2 5.71% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Tract 0058 | 912 100.00% | 559 61.29% | 349 38.27% | 4 0.44% | 0 0.00% | 0 0.00% |

121a

| | | | | | | |
|---|---|---|---|---|---|---|
| Total Alabama National Bank-Ramer | 912<br>100.00% | 559<br>61.29% | 349<br>38.27% | 4<br>0.44% | 0<br>0.00% | 0<br>0.00% |
| Total Montgomery County | 75,628<br>100.00% | 14,634<br>19.35% | 60,640<br>80.18% | 109<br>0.14% | 172<br>0.23% | 73<br>0.10% |
| Perry County | 12,759<br>100.00% | 4,503<br>35.29% | 8,219<br>64.42% | 16<br>0.13% | 14<br>0.11% | 7<br>0.05% |
| Pickens County<br>Cochrane | 587<br>100.00% | 171<br>29.13% | 416<br>70.87% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Ethelsville | 408<br>100.00% | 47<br>11.52% | 361<br>88.48% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Carrollton | | | | | | |
| Tract 9879 | | | | | | |
| Block Group 3<br>Block 306B | 3<br>100.00% | 3<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Total Block Group 3 | 3<br>100.00% | 3<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Total Tract 9879 | 3<br>100.00% | 3<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Total Carrollton | 3<br>100.00% | 3<br>100.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Pine Grove | 174<br>100.00% | 106<br>60.92% | 68<br>39.08% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |
| Spring Hill | 126<br>100.00% | 46<br>36.51% | 80<br>63.49% | 0<br>0.00% | 0<br>0.00% | 0<br>0.00% |

122a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Pickensville | 702 100.00% | 204 29.06% | 497 70.80% | 1 0.14% | 0 0.00% | 0 0.00% |
| Sapps | | | | | | |
| Tract 9879 | | | | | | |
| Block Group 3 | | | | | | |
| Block 311 | 248 100.00% | 35 14.11% | 213 85.89% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 312 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 313 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 314 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 320 | 31 100.00% | 24 77.42% | 7 22.58% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 321 | 73 100.00% | 16 21.92% | 57 78.08% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 322 | 0 | 0 | 0 | 0 | 0 | 0 |

123a

| | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 | Col 6 |
|---|---|---|---|---|---|---|
| Block 323 | 66 100.00% | 0 0.00% | 66 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 324 | 17 100.00% | 0 0.00% | 17 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 325 | 140 100.00% | 0 0.00% | 140 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Water block 399C | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399D | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399E | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399F | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399G | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399H | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399J | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399K | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 3 | 575 100.00% | 75 13.04% | 500 86.96% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block Group 4 | | | | | | |
| Block 439 | 28 100.00% | 0 0.00% | 28 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 440 | 119 100.00% | 20 16.81% | 99 83.19% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 469 | 17 100.00% | 17 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |

124a

DB : Alabama
Plan : Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type : Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 470 | 3 100.00% | 3 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Water block 499W | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 499X | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 4 | 167 100.00% | 40 23.95% | 127 76.05% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Tract 9879 | 742 100.00% | 115 15.50% | 627 84.50% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Sapps | 742 100.00% | 115 15.50% | 627 84.50% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Pickens County | 2,742 100.00% | 692 25.24% | 2,049 74.78% | 1 0.04% | 0 0.00% | 0 0.00% |
| Sumter County | 16,174 100.00% | 4,759 29.42% | 11,369 70.29% | 6 0.04% | 30 0.19% | 10 0.06% |
| Tuscaloosa County Stillman College | 9,591 100.00% | 419 4.37% | 9,159 95.50% | 8 0.08% | 3 0.03% | 2 0.02% |

| | A | B | C | D | E | F |
|---|---|---|---|---|---|---|
| McDonald Hughes Comm Center | 3,599 / 100.00% | 17 / 0.47% | 3,578 / 99.42% | 2 / 0.06% | 0 / 0.00% | 2 / 0.06% |
| Army Reserve Center | 9,021 / 100.00% | 4,219 / 46.77% | 4,736 / 52.50% | 11 / 0.12% | 38 / 0.42% | 17 / 0.19% |
| Bama Mall | 9,714 / 100.00% | 5,805 / 59.76% | 3,804 / 39.16% | 24 / 0.25% | 65 / 0.67% | 16 / 0.16% |
| Regional Education Center | | | | | | |
| Tract 0104.03 | | | | | | |
| Block Group 1 | | | | | | |
| Block 101A | 2 / 100.00% | 2 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 101B | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 101C | 10 / 100.00% | 10 / 100.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |
| Block 102 | 198 / 100.00% | 160 / 80.81% | 35 / 17.68% | 0 / 0.00% | 3 / 1.52% | 0 / 0.00% |
| Block 103 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 104A | 262 / 100.00% | 187 / 71.37% | 74 / 28.24% | 0 / 0.00% | 1 / 0.38% | 0 / 0.00% |
| Block 104B | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 104C | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 105 | 139 / 100.00% | 97 / 69.78% | 42 / 30.22% | 0 / 0.00% | 0 / 0.00% | 0 / 0.00% |

126a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 106 | 12 | 7 | 5 | 0 | 0 | 0 |
|  | 100.00% | 58.33% | 41.67% | 0.00% | 0.00% | 0.00% |
| Block 107 | 16 | 12 | 4 | 0 | 0 | 0 |
|  | 100.00% | 75.00% | 25.00% | 0.00% | 0.00% | 0.00% |
| Block 108 | 82 | 14 | 68 | 0 | 0 | 0 |
|  | 100.00% | 17.07% | 82.93% | 0.00% | 0.00% | 0.00% |
| Block 109 | 24 | 24 | 0 | 0 | 0 | 0 |
|  | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 110 | 14 | 14 | 0 | 0 | 0 | 0 |
|  | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 111 | 72 | 72 | 0 | 0 | 0 | 0 |
|  | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 112 | 11 | 11 | 0 | 0 | 0 | 0 |
|  | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 113 | 11 | 11 | 0 | 0 | 0 | 0 |
|  | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |
| Block 114 | 7 | 7 | 0 | 0 | 0 | 0 |
|  | 100.00% | 100.00% | 0.00% | 0.00% | 0.00% | 0.00% |

127a

| | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 | Col 6 |
|---|---|---|---|---|---|---|
| Block 115 | 19 100.00% | 19 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 116 | 20 100.00% | 16 80.00% | 4 20.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 117 | 62 100.00% | 7 11.29% | 55 88.71% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 118 | 25 100.00% | 6 24.00% | 19 76.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 119 | 19 100.00% | 19 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 120 | 7 100.00% | 7 100.00% | 0 0.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 121 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 122 | 0 | 0 | | 0 | 0 | 0 |
| Total Block Group 1 | 1,012 100.00% | 702 69.37% | 306 30.24% | 0 0.00% | 4 0.40% | 0 0.00% |
| Total Tract 0104.03 | 1,012 100.00% | 702 69.37% | 306 30.24% | 0 0.00% | 4 0.40% | 0 0.00% |
| Tract 0104.04 | | | | | | |
| Block Group 1 | | | | | | |
| Block 102 | 34 100.00% | 0 0.00% | 34 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 108 | 25 100.00% | 0 0.00% | 25 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |

128a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 104 | 32 | 1 | 31 | 0 | 0 | 0 |
| | 100.00% | 3.13% | 96.88% | 0.00% | 0.00% | 0.00% |
| Block 105 | 49 | 2 | 47 | 0 | 0 | 0 |
| | 100.00% | 4.08% | 95.92% | 0.00% | 0.00% | 0.00% |
| Block 106 | 10 | 0 | 10 | 0 | 0 | 0 |
| | 100.00% | 0.00% | 100.00% | 0.00% | 0.00% | 0.00% |
| Block 107 | 8 | 0 | 8 | 0 | 0 | 0 |
| | 100.00% | 0.00% | 100.00% | 0.00% | 0.00% | 0.00% |
| Block 108 | 43 | 0 | 43 | 0 | 0 | 0 |
| | 100.00% | 0.00% | 100.00% | 0.00% | 0.00% | 0.00% |
| Block 109 | 21 | 0 | 21 | 0 | 0 | 0 |
| | 100.00% | 0.00% | 100.00% | 0.00% | 0.00% | 0.00% |
| Block 110 | 13 | 0 | 13 | 0 | 0 | 0 |
| | 100.00% | 0.00% | 100.00% | 0.00% | 0.00% | 0.00% |
| Block 111 | 24 | 1 | 23 | 0 | 0 | 0 |
| | 100.00% | 4.17% | 95.83% | 0.00% | 0.00% | 0.00% |
| Block 112 | 19 | 1 | 18 | 0 | 0 | 0 |
| | 100.00% | 5.26% | 94.74% | 0.00% | 0.00% | 0.00% |

129a

| | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 | Col 6 |
|---|---|---|---|---|---|---|
| Block 113 | 93<br>100.00% | 0<br>0.00% | 93<br>100.00% | 0 | 0<br>0.00% | 0<br>0.00% |
| Block 114 | 38<br>100.00% | 0<br>0.00% | 38<br>100.00% | 0 | 0<br>0.00% | 0<br>0.00% |
| Block 115 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 116 | 31<br>100.00% | 0<br>0.00% | 31<br>100.00% | 0 | 0<br>0.00% | 0<br>0.00% |
| Block 117 | 15<br>100.00% | 0<br>0.00% | 15<br>100.00% | 0 | 0<br>0.00% | 0<br>0.00% |
| Block 118 | 16<br>100.00% | 0<br>0.00% | 16<br>100.00% | 0 | 0<br>0.00% | 0<br>0.00% |
| Total Block Group 1 | 471<br>100.00% | 5<br>1.06% | 466<br>98.94% | 0 | 0<br>0.00% | 0<br>0.00% |
| Block Group 2 | | | | | | |
| Block 201 | 17<br>100.00% | 1<br>5.88% | 16<br>94.12% | 0 | 0<br>0.00% | 0<br>0.00% |
| Block 202 | 77<br>100.00% | 0<br>0.00% | 77<br>100.00% | 0 | 0<br>0.00% | 0<br>0.00% |
| Block 203 | 36<br>100.00% | 0<br>0.00% | 36<br>100.00% | 0 | 0<br>0.00% | 0<br>0.00% |
| Block 204 | 67<br>100.00% | 0<br>0.00% | 67<br>100.00% | 0 | 0<br>0.00% | 0<br>0.00% |
| Block 205 | 14<br>100.00% | 0<br>0.00% | 14<br>100.00% | 0 | 0<br>0.00% | 0<br>0.00% |

130a

DB:  Alabama
Plan :  Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type :  Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Block 206 | 16 100.00% | 0 0.00% | 16 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 207 | 96 100.00% | 0 0.00% | 96 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 208 | 5 100.00% | 0 0.00% | 5 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 209 | 25 100.00% | 0 0.00% | 25 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 210 | 102 100.00% | 5 4.90% | 97 95.10% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 211 | 110 100.00% | 3 2.73% | 107 97.27% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 212 | 30 100.00% | 0 0.00% | 30 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 213 | 1 100.00% | 0 0.00% | 1 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 214 | 37 100.00% | 7 18.92% | 30 81.08% | 0 0.00% | 0 0.00% | 0 0.00% |

131a

| | Col 1 | Col 2 | Col 3 | Col 4 | Col 5 | Col 6 |
|---|---|---|---|---|---|---|
| Block 215 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 299 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 2 | 633 100.00% | 16 2.53% | 617 97.47% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block Group 3 | | | | | | |
| Block 310 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 311 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 312 | 7 100.00% | 1 14.29% | 6 85.71% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 317 | 14 100.00% | 0 0.00% | 14 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 318 | 7 100.00% | 0 0.00% | 7 100.00% | 0 0.00% | 0 0.00% | 0 0.00% |
| Block 319 | 0 | 0 | 0 | 0 | 0 | 0 |
| Block 323 | 0 | 0 | 0 | 0 | 0 | 0 |
| Water block 399A | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Block Group 3 | 28 100.00% | 1 3.57% | 27 96.43% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Tract 0104.04 | 1,132 100.00% | 22 1.94% | 1,110 98.06% | 0 0.00% | 0 0.00% | 0 0.00% |
| Total Regional Education Center | 2,144 100.00% | 724 33.77% | 1,416 66.04% | 0 0.00% | 4 0.19% | 0 0.00% |

132a

DB: Alabama
Plan: Redistrict

Units Assigned to a District
District 7
Total Populations, All Ages

Plan type: Congressional Districts

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| McFarland Mall | 13,467 100.00% | 10,532 78.21% | 2,726 20.24% | 19 0.14% | 172 1.28% | 18 0.13% |
| Cottondale Methodist Church | 3,492 100.00% | 3,447 98.71% | 39 1.12% | 2 0.06% | 1 0.03% | 3 0.09% |
| Coaling Community Center | 2,476 100.00% | 2,203 88.97% | 247 9.98% | 21 0.85% | 5 0.20% | 0 0.00% |
| Vance Community Center | 1,519 100.00% | 1,491 98.16% | 28 1.84% | 0 0.00% | 0 0.00% | 0 0.00% |
| Masonic Lodge/Bucksville Baptist/L | 4,398 100.00% | 4,176 94.95% | 204 4.64% | 13 0.30% | 5 0.11% | 0 0.00% |
| BF Goodrich Union Hall | 972 100.00% | 518 53.29% | 453 46.60% | 0 0.00% | 1 0.10% | 0 0.00% |
| Hillcrest High | 3,276 100.00% | 2,727 83.24% | 531 16.21% | 7 0.21% | 11 0.34% | 0 0.00% |
| Big Sandy Baptist Church | 2,302 100.00% | 1,547 67.20% | 751 32.62% | 3 0.13% | 1 0.04% | 0 0.00% |

| | | | | | | |
|---|---|---|---|---|---|---|
| Duncanville Church/Community Cente | 3,212 100.00% | 3,072 95.64% | 131 4.08% | 3 0.09% | 2 0.06% | 4 0.12% |
| Total Tuscaloosa County | 69,183 100.00% | 40,897 59.11% | 27,803 40.19% | 113 0.16% | 308 0.45% | 62 0.09% |
| Wilcox County | 18,568 100.00% | 4,203 30.98% | 9,353 68.93% | 6 0.04% | 6 0.04% | 0 0.00% |
| Total District 7 | 577,227 100.00% | 185,454 32.13% | 389,796 67.53% | 599 0.10% | 1,045 0.18% | 333 0.06% |

134a

APPENDIX B

135a

IN THE UNITED STATES COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

————

Civil Action No. 91-0787

PAUL CHARLES WESCH,

*Plaintiff,*

MICHAEL FIGURES, *et al.,*
*Intervenor-Plaintiffs,*

vs.

GUY HUNT, *et al.,*

*Defendants.*

————

MEMORANDUM OPINION

[Filed Mar. 9, 1992]

Before COX, Circuit Judge, HAND, Senior District
Judge, and ALBRITTON, District Judge.

BY THE COURT

INTRODUCTION

On September 23, 1991, Plaintiff Paul Charles Wesch
brought this action seeking declaratory and injunctive re-
lief against the Governor of Alabama, as well as other
state officials, contending, *inter alia*, that the present
State law defining congressional districts in the State of
Alabama violates Art. I, § 2 of the Constitution. Based
on 1990 census data, Wesch specifically alleges that if
the 1992 congressional elections were to be held under the
present districting plan, it would violate his right to the
constitutionally mandated "one-person, one-vote" scheme
of representation.

136a

Pursuant to 28 U.S.C. § 2284(a), this three-judge court was convened. On December 9, 1991, Michael Figures and others, who assert a claim under the Voting Rights Act, 42 U.S.C. § 1973 *et seq.*, were granted leave to intervene. A two day trial was held.

Having considered the evidence and the post-trial submissions of the parties, the court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The Plaintiff Paul Charles Wesch is a citizen of the United States and is a resident and registered voter in the First Congressional District of Alabama as presently configured.

2. The Intervenor-Plaintiffs, Michael Figures and others, are African-American citizens of the United States and the State of Alabama. They have been allowed to intervene in this litigation both on their own behalf and on behalf of all African-American citizens of the State of Alabama.

3. It was agreed by all parties, including the Plaintiff-Intervenors, that the complaint of intervention would proceed on an allegation that § 2 of the Voting Rights Act has been violated, insofar as the class represented by the intervenors had been denied meaningful access to the voting process that would allow them to elect candidates of their choice.

4. The court notes that the original complaint was filed in September, a fact known to the Plaintiff-Intervenors who chose not to intervene until December 4, 1991. Therefore, the Plaintiff-Intervenors were permitted to intervene only after they agreed to comply with all procedures and deadlines in place.

5. The Defendant Guy Hunt is the Governor of Alabama. The Defendant Billy Joe Camp is the Secretary of State of Alabama. The Defendants Lionel W. Noonan,

137a

Harry D'Olive, Devon Wiggins, Otha Lee Biggs, Jerry Bogan, Clarence Watters, and Tom W. Turner are the Probate Judges of the seven counties which presently comprise the First Congressional District of Alabama. All Defendants are sued both in their individual and official capacities. All Defendants have significant duties in the administration of congressional elections in Alabama.

6. This court advised the parties of its intent to employ Professor Harold W. Stanley as the court's expert to assist in considering any and all plans for redistricting that might be submitted, and to advise the court on the statistical issues in regard to any possible redistricting. The court extended to the parties the opportunity to state if there were any objections to the court's selection of this expert. No objections were filed. After the trial, the parties were also given the opportunity to object to the statistical information relied on by Professor Stanley, the same information underlying this order. No objections were filed.

7. In 1981, the Alabama Legislature enacted the current version of Ala. Code § 17-20-1 (1987), which divided the state into seven congressional districts. During 1990, the Bureau of the Census of the United States Department of Commerce conducted a census of the United States, including the State of Alabama, pursuant to constitutional authority. On January 16, 1991, the Clerk of the United States House of Representatives notified Governor Hunt that Alabama would retain seven seats in the House of Representatives following the 1990 census. (Statement of Agreed Facts and Exhibit A thereto.)

8. According to the 1990 census, Alabama's total population is 4,040,587 persons. In order to achieve exact population equality among each of Alabama's seven congressional districts, the ideal population of each district would be 577,227 persons. (Statement of Agreed Facts and Exhibit B thereto.)

9. Alabama's most populous congressional district is District 5, which has 603,726 persons. Accordingly, Dis-

138a

trict 5 varies from the "ideal" population by 26,499 persons, or 4.59%. Alabama's least populous congressional district is District 6, which has 532,748 persons. Accordingly, District 6 varies from the "ideal" population by 44,479 persons, or 7.71%. The difference between the populations of the most populous and least populous districts is 70,978 persons, which constitutes a relative overall variance from the ideal population of 12.3%. (Statement of Agreed Facts, Exhibit B.)

10. African-Americans do not constitute a majority in any of Alabama's existing congressional districts. (Statement of Agreed Facts, Exhibit C.) However, according to the 1990 census data, the African-American population in Alabama is sufficiently compact and contiguous to permit the creation of a congressional district in which 65% or more of the residents are African-Americans. The parties agree that such a district should be created. (Supplemental Stipulation filed January 3, 1992.)

11. On February 8, 1991, the Alabama Legislature received the 1990 census data on magnetic tape from the Bureau of Census, and this information was loaded, as received, into the computer system maintained by the Alabama Legislature's Permanent Joint Legislative Committee on Reapportionment ("Reapportionment Committee"). The population data in the Reapportionment Committee's computer data base is the official 1990 census data compiled and released by the Bureau of the Census and is accurate and reliable information for redistricting purposes. (Statement of Agreed Facts.) On July 15, 1991, the Secretary of Commerce advised that there would be no adjustment to the 1990 census figures as originally transmitted to the Alabama Legislature.

12. The total population of each existing congressional district is reflected in Appendix A to this opinion. The total population of each existing congressional district by race is reflected in Appendix B; the total population by race of each of Alabama's 67 counties is reflected in Appendix C; and the voting age population by race of each

139a

of the 67 counties is reflected in Appendix D. The names, dates when first elected, and home addresses of Alabama's incumbent congressmen are reflected in Appendix E.

13. On April 2, 1991, the Reapportionment Committee adopted a set of guidelines for redistricting. (Plaintiff's Exhibit 1; deposition of Marilyn Terry, pp. 24-25.) The Guidelines set forth a fair set of criteria for congressional redistricting. In addition to mandating compliance with population equality or the "one-person, one-vote" rule and the requirements of the Voting Rights Act, these guidelines included the following criteria:

3. All legislative and congressional districts will be composed of contiguous and reasonably compact geography.

4. Where possible, legislative and congressional districts should attempt to preserve communities of interest, including without limitation municipalities and concentrations of blacks and other ethnic minorities, where such efforts do not violate the other stated criteria.

5. Counties should be used as district building blocks where possible, and to the extent consistent with other aspects of these criteria.

a. Where county lines cannot be maintained, district boundaries should follow as closely as practicable the local voting precinct boundary lines in order to minimize voter confusion and cost of election administration.

b. Where voting precinct boundary lines cannot be followed and also meet the geographic guidelines as stated in this section, district lines must follow census block geography in order to maintain the integrity of the statistical analysis.

6. Efforts will be made to preserve cores of existing districts where such efforts are consistent with and do not violate the other criteria stated herein.

140a

14. The Alabama Legislature adjourned its 1991 regular session on July 29, 1991, without enacting a congressional redistricting plan. (Statement of Agreed Facts, Paragraph 13.) It was argued that the Legislature might delay the primaries for congressional elections, allowing it time to adopt and have precleared a constitutional redistricting plan. If that were done, two primaries would have to be held, entailing added cost to the taxpayers.

15. By statute, Alabama's congressional primaries will be held June 2, 1992. The qualifying deadline for candidates is sixty days prior to the primary, or April 3, 1992.[1] In order for a legislatively-enacted congressional redistricting plan to receive the "preclearance" from the Justice Department required by § 5 of the Voting Rights Act, 42 U.S.C. § 1973c, in time for the April 3 qualifying deadline, such a plan should have been submitted to the Justice Department no later than February 3, 1992.

16. Under Alabama law, the calling of special sessions of the Legislature is a discretionary call on the part of the Governor. Ala. Const. Art. V, § 122. The Governor's answer filed on October 29, 1991, indicated that the Governor did not plan to call a special session of the Legislature for the purposes of redistricting.

17. At the time this case was filed, this court considered it highly unlikely that the legislative process could produce a congressional redistricting plan and have it precleared in time for the 1992 congressional primaries to be held as scheduled. Nothing was presented to this court to indicate that the Legislature would convene for the purpose of adopting a plan of redistricting in time to be precleared for these elections. Nothing was presented to indicate that even if a special session was called for the purpose of considering redistricting, that a successful effort would follow, or that even if the Legislature

---

[1] Ala. Code §§ 17-16-6 to -11 (Supp. 1990).

141a

was allowed to consider the matter after the regular term commenced on February 4, 1992, that a plan would be forthcoming, and if forthcoming, there would be time to have such plan precleared. The court considered this case on a fast track in light of the impending primary. All parties participating in this case were put on notice of this fact.

18. Consequently, the court finds that the only means by which Alabama's 1992 congressional primaries may be held in a timely manner (other than under the current districting scheme which, for reasons enumerated in the Conclusions of Law, the court rejects) is pursuant to an interim redistricting plan ordered by this court.

19. The parties have submitted six proposed redistricting plans to the court for its consideration: (1) the "Reed Plan," Plaintiff's Exhibits 3 and 7; (2) the "Sam Pierce Zero Plan," Plaintiff's Exhibits 2 and 6 (hereafter the "Pierce Plan"); (3) the "Hilliard Plan," Intervenors' Exhibits 3 and 3A; (4) the "Unity Plan," Intervenors' Exhibits 1 and 1A; (5) the "Modified Unity Plan," Intervenors' Exhibits 2 and 2A; and (6) the "CD25 Plan," Intervenors' Exhibits 4 and 4A.

20. Of the six plans submitted, only the Reed Plan was considered in its final form by the Reapportionment Committee. The Pierce Plan, however, is a modification of a plan called the "Larry Dixon Plan" which was considered by the Reapportionment Committee. The Pierce Plan modified the Larry Dixon Plan to some extent, but the basic format is similar. The Legislature of the State of Alabama created an Interim Task Force on Reapportionment by Act #87-356. By Act #90-388 that task force became the staff to the Permanent Committee on Reapportionment of the Alabama Legislature. The task force scheduled a series of public hearings in regard to redistricting matters, and under the instructions given to the Reapportionment Committee, as set forth in the Guide-

142a

lines for Legislative and Congressional Redistricting, the Reapportionment Committee meetings and public hearings were open to the public and all plans presented to the Reapportionment Committee were to be made available to the public for its input. These public meetings were held in accordance with the schedule outlined in the appendix to the motion to dissolve filed by Evans (Tab #14). Among those plans considered by the Reapportionment Committee, and one that apparently was to be presented to the Legislature, was the Larry Dixon Plan.

The Reapportionment Committee conducting the hearings was made up both African-Americans and Whites. Public input to the Reapportionment Committee in regard to the respective plans was from both African-Americans and Whites.

21. Neither The Pierce Plan nor the Larry Dixon Plan was adopted by the Alabama Legislature.

22. We take judicial notice of the fact that the Legislature has since adopted a plan which substantially differs from any plan that was submitted to this court. We also note the fact that the adopted Plan has neither been pre-cleared by the Justice Department nor approved by the District Court for the District of Columbia.

23. Only two of the plans submitted—the Pierce Plan and the Reed Plan—achieve population equality among the districts. Under the Pierce Plan two districts contain one person less than the ideal district population of 577,227. Under the Reed Plan, one district has two fewer voters than the ideal. The Hilliard Plan has a total deviation of .71% and an average deviation of .63%. The Modified Unity Plan shows a deviation of 1.6% with an average of .52%. The Unity Plan exhibits a total deviation of 1.15% and an average of .27%. Finally, the CD25 Plan has a deviation of .02%. Deviations in all these plans are not justified by any particular goal or interest.

143a

24. Both the Pierce and Reed Plans contain a district with more than 65% African-American population. Under the Pierce Plan, District 7 contains an African-American population comprising 67.69% of the total residents of that District and 63.58% of that District's voting age residents. These percentages slightly exceed those in the majority African-American district (District 4) created by the Reed Plan: 66.69% total population and 62.93% voting age population. (Plaintiff's Exhibits 2 and 3; TR 15-16.) More significantly, as of December 1990, the African-American percentage of registered voters in the Pierce Plan's District 7 was 55.55%, which is 3% greater than the African-American percentage of registered voters in the Reed Plan's District 4.

25. Both the Reed Plan and the Pierce Plan provide African-Americans in Alabama with a substantial majority so as to permit them an opportunity to elect a candidate of their choice. The district in the Pierce Plan is slightly more weighted because it includes higher percentages of African-Americans in total population, voting age population and registered voter population.

26. The Hilliard Plan includes two majority African-American districts, with an African-American population of 59.33% and 61.98% respectively. Although this plan was submitted by the intervenors, they took the position that the Hilliard Plan probably provided obstacles of sufficient nature to cast doubt on their opportunity to elect candidates of their choice in these districts.

27. There are significant differences between the Pierce Plan and the Reed Plan in terms of compactness of their districts. District 1 of the Pierce Plan includes six closely contiguous counties in southwest Alabama, whereas District 1 under the Reed Plan includes Mobile County to the south and Tuscaloosa County to the north. District 2 under the Pierce Plan is largely composed of counties in the southeast corner of the state, while the Reed Plan's

144a

District 2 stretches from Mobile County, in the extreme southwest corner of the State, to Lee County, in east central Alabama. The Pierce Plan is superior to the Reed Plan in terms of compactness.[2]

28. The Pierce Plan maintains the integrity of individual voting precincts to a far greater degree than does the Reed Plan. The Pierce Plan splits only 10 voting precincts statewide, whereas the Reed Plan splits at least 57. (Plaintiff's Exhibits 2 and 3.) A redistricting plan should minimize precinct splitting when possible because of administrative problems encountered in the conduct of elections when precincts are split.

Furthermore, it is possible to construct a majority African-American district in Alabama using precincts as building blocks.

29. The Pierce Plan splits seven counties. The Reed Plan splits eight counties. The Hilliard Plan splits thirty-one counties.

30. The Pierce Plan also maintains the cores of existing districts to a much greater extent than the Reed Plan. Again, the most striking differences between the plans in this regard are apparent in Districts 1 and 2. There are also significant differences in District 3. The following table reflects the percentage of residents of existing Districts 1, 2, and 3 who remain in those districts under the Pierce and Reed Plans:

---

[2] The Reock Test indicates that the Reed Plan contains a district which is the *least* compact of any of the 35 districts analyzed by the Reapportionment Office. The Reed Plan's District 1 has a Reock Test measurement with less than 0.2 and by comparison, the average of the Pierce districts under the Reock Test is 0.41.

The Reock Test is a relatively simple method of measuring the relationship between the area of the district and the area of the smallest possible circumscribing circle. The resulting measure is a number between 1 to 0, with numbers closer to one being more compact. *See Karcher v. Dagget,* 462 U.S. 725, 756-57 (1983).

145a

| District | Pierce | Reed |
|----------|--------|------|
| 1 | 97.2 | 64.3 |
| 2 | 86.7 | 57.0 |
| 3 | 85.2 | 75.0 |

31. As a consequence of its apparent disregard for maintaining the cores of existing Districts 1 and 2, the Reed Plan would also separate the incumbent congressmen in those districts from a large percentage of their current constituents. Under the Reed Plan, Congressman Callahan, the incumbent in the present District 1, would be placed in District 2. (Plaintiff's Exhibit 20.) District 2 under the Reed Plan contains only 25.6% of Congressman Callahan's existing constituents. Likewise, the Reed Plan would place Congressman Dickinson, the present incumbent in District 2, in District 3 against District 3's incumbent, Congressman Browder. (Plaintiff's Exhibit 20.) 75.0% of the current residents of District 3—Congressman Browder's present constituents—are included in the Reed Plan's District 3. However, only 19.0% of Congressman Dickinson's present constituents are included in that District.

32. Another consequence of the Reed Plan's distortion of Districts 1 and 2 is that the Pierce Plan better preserves the communities of interests in those two districts.

## CONCLUSIONS OF LAW

33. The court has jurisdiction pursuant to the authority contained in 28 U.S.C. §§ 1331, 1343, 2284 and 42 U.S.C. § 1971 et seq.

34. Congressional redistricting is primarily and foremost a state legislative responsibility. It is therefore with great reluctance that we order an interim plan to become effective for the upcoming 1992 elections. It is out of deference to the Legislature that we have delayed our ruling until this time. In fact, we have afforded it every

146a

opportunity to fashion its own plan in order that it could fulfill its responsibility under the Constitution.[3]

35. Unfortunately, the Legislature has not yet pre-cleared its adopted plan so that it can be in place for the impending elections, and we are bound by the Constitution not to permit these elections under the present districts.[4]

36. First and foremost, any court ordered redistricting plan must achieve precise population equality among its districts. *Wesberry v. Sanders*, 376 U.S. 1 (1964); *Kirkpatrick v. Preisler*, 394 U.S. 526 (1969). This is to ensure that "as nearly as is practicable one man's vote in a congressional election will be worth as much as

---

[3] It was argued that the Legislature was unable to fulfill its obligation to redistrict because the census information it received in February 1991 might be subject to correction. This argument fails because the Supreme Court has previously indicated that the fact that the latest correction of the census is not available at the time the problem is addressed is of no moment to that effort. *Karcher v. Dagget*, 462 U.S. 725, 729 (1983).

[4] The Alabama law establishes the qualifying date for upcoming primary elections at April 3, 1992, and as noted *supra*, the ability of the Legislature to preclear its newly adopted plan appears illusory. Those who may desire to seek congressional office, and who must qualify by April 3, 1992, are left in a quandary as to what will be their district, when they are to qualify, when will the primaries actually be conducted, and, potentially, whether an election will be held at all. In addition to candidates being left in such a quandary, certain requirements of the law impact on the election officials, including the Probate Judges and others, who must conduct these elections. Lastly, the voters are impacted by the effect of potential delays as it affects the quality of their representation in the national legislature. For these reasons, this court finds that there is an emergency that requires judicial attention under the law in order to provide adequate relief for all affected, including the plaintiff. Since this is so, it becomes necessary for the court to consider an appropriate plan in light of the judicial standards imposed in drafting such plans as against those that might be considered by a legislature. *Chapman v. Meier*, 420 U.S. 1 (1975); *Connor v. Finch*, 431 U.S. 407 (1977).

147a

another's." *Wesberry*, 376 U.S. at 7-8. Put another way, Art. I, § 2 prohibits any population deviations among districts in a congressional redistricting plan without proper justification. *Kirkpatrick*, 394 U.S. at 531.

37. Among the plans submitted, only two meet this rigorous standard [5]—the Pierce Plan and the Reed Plan. All the other plans which were submitted have unacceptable deviations. Further, none of the proponents of these plans provide an adequate justification for the deviation and we have "no authority to depart from the constitutional mandate of perfect equality in order to achieve some non-constitutional policy" that we believe will serve the public good.[6] *Connor*, 431 U.S. at 417.

38. If it is possible under constitutional restrictions, a court should consider expressed state policies and preferences. The Reapportionment Committee established

---

[5] Precise population equality is a demanding standard requiring the states to "justify each variance no matter how small." *Karcher*, 462 U.S. at 730 (quoting *Kirkpatrick*, 394 U.S. at 530-31 (citations omitted)). *See Hastert v. State Bd. of Elections*, 777 F. Supp. 634 (N.D. Ill. 1991) (rejecting a plan with a .00297% population deviation because the plan's proponent could not justify its equality inferiority in comparison with another submitted plan with a .00017% deviation).

The advancement of information processing technologies in the last decade since *Karcher* have raised the deviation standard to an "absolute population equality," giving greater authority to the Court's 1983 statement that "rapid advances in computer technology and education during the last two decades make it relatively simply to draw contiguous districts of equal population and at the same time to further whatever secondary goals the state has." *Karcher*, 462 U.S. at 732.

[6] Some of these parties argue that the population deviations in their plans can be zeroed out easily. This may be so, but we remind the parties that this type of computation is not this court's responsibility. If a party wishes to propose a plan for adoption by a court, then it is incumbent upon that party to fashion a plan that comports with the law.

148a

guidelines by which to measure a proposed apportionment plan. These guidelines reflect constitutional considerations established by case and statutory law. Any redistricting plan should take into consideration: compactness/contiguity; preservation of political subdivisions; maintenance of communities of interest; and preservation of the core areas of existing districts.

39. Compactness addresses the geographic shape of districts. The most compact district is the district that is configured in the smallest possible area. *See Karcher*, 462 U.S. at 756-57. Preservation of political subdivisions promotes efficient representation, empowers a constituency's ability to organize productively, and serves as a deterrent to partisan gerrymandering. *Burton v. Hobbie*, 561 F. Supp. 1029, 1035 (M.D. Ala. 1983); *Ely v. Klahr*, 403 U.S. 108 (1971). Protecting communities of interest is meant to keep intact "distinctive units which share common concerns with respect to one or more identifiable features such as geography, demography, ethnicity, culture, socio-economic status or trade." *Carstens v. Lamm*, 543 F. Supp. 68 (D.C. Colo. 1982). Preserving cores of existing congressional districts prevents needless modifications and avoids pitting two incumbent congressmen against one another. *Karcher*, 462 U.S. at 740. Based on the findings made above, we conclude that the Pierce Plan better satisfies the above criteria than does the Reed Plan, or any of the other plans.

40. With regard to the majority African-American district, the parties entered into the following stipulation:

> According to 1990 data compiled and released by the United States Bureau of the Census, the African American population in the State of Alabama is sufficiently compact and contiguous to comprise a single member significant majority (65% or more) African American Congressional district. Consequently, all parties agree that a significant majority African American Congressional district should be created.

149a

(Supplemental Stipulation dated January 3, 1992.) This stipulation avoided the necessity of the court considering prolonged testimony regarding whether § 2 of the Voting Rights Act requires the creation of such a district under the circumstances present in this case. This court will honor the stipulation, and accordingly, will not make an independent determination of whether § 2 of the Voting Rights Act requires the creation of a majority African-American congressional district in Alabama at this time. The court has found that the Pierce Plan creates a majority African-American district that provides African-Americans a reasonable opportunity to elect a candidate of their choice, and does so without the need for extensive gerrymandering. The court deems it inappropriate to make a judicial determination relative to what § 2 requires under the circumstances present in this case in light of the stipulation; the parties do not contest the matter and therefore it would be imprudent for the court to address it. This case does not require this court to decide whether the creation of a majority African-American district is mandated by either § 2 or the Constitution and as a matter of judicial restraint we do not undertake to do so.

41. Therefore, having followed the mandate in *Karcher*, while keeping in mind the desirability of preserving compactness, cores of all districts, communities of interest, and political subdivisions, we adopt the Pierce Plan except to the extent mentioned below.[7]

First, we have discovered no justifiable basis for the fact that the Pierce Plan places Congressman Erdreich and Congressman Harris in the same district. The Su-

---

[7] When no plan submitted to a court fully comports with objectives and criteria that should be incorporated in a judicially approved plan, a court should fashion its own plan to satisfy relevant legal criteria and incorporate the most desirable aspects of the plans presented to the court. *Carstens v. Lamm*, 543 F. Supp. 68 (D.C. Colo. 1982).

150a

preme Court has recognized the policy of "avoiding contests between incumbent representatives" as a legitimate objective. *Karcher*, 462 U.S. at 740. *See also Burton v. Hobbie*, 561 F. Supp. at 1035. Accordingly, we have modified the Pierce Plan so that the two congressmen will not be in the same district. Second, in working to achieve zero population deviation and redesign Districts 6 and 7, the affected districts were made marginally more compact in Jefferson and Tuscaloosa counties.

42. The court adopts a redistricting plan to be used in the conduct of congressional elections for the State of Alabama (to be called "The 1992 Alabama Redistricting Plan") in the event the Alabama Legislaure fails to have precleared a redistricting plan in time for the conduct of those elections without delay under applicable state and federal laws. The plan is verbally described in Appendix A to Professor Stanley's report dated January 22, 1992. (*See* Order, Doc. #97). Appendix B to that report is a map depicting the plan. The map is appended simply to illustrate the plan, and Appendix A shall control in the event of any conflict between it and Appendix B. Appendix C to that report includes certain statistical data which the court finds to be accurate, none of the parties having posed objections to that data in response to this court's order.

43. A motion pending seeks a stay of any order by this court adopting a plan pending preclearance. We have reserved ruling on the motion until now. We conclude that there is no requirement that the plan which we now adopt be precleared before it becomes operative.[8]

---

[8] Section 5 of the Voting Rights Act, as amended, 42 U.S.C. § 1973c, requires a governmental body to obtain preclearance of a proposed plan either by securing a declaratory judgment from the United States District Court for the District of Columbia or by submitting the change to the Attorney General of the United States. As long as the Attorney General has not interposed an objection within sixty days after such submission, the state may enforce the change.

151a

44. First, the plan that we now adopt is a "court de-creed" plan. *Connor v. Johnson*, 402 U.S. 690 (1971). It is clear that a plan must be precleared only if it is a "legislative plan." *McDaniel v. Sanchez*, 452 U.S. 130, 137 (1981). "[T]he essential characteristic of a legisla-tive plan is the exercise of legislative judgment . . . [that is], a proposal reflecting the policy choices of the elected representatives of the people . . . ." *Id.* at 152-53. *See also* 28 C.F.R. § 51.18 (1991) (stating that, in general, "changes affecting voting that are ordered by a federal court are subject to the preclearance requirements of section 5 to the extent that they reflect the policy choices of the submitting authority.").

The plan which this court adopts today is substantially the same as the plan offered by Plaintiff Wesch. Neither he, nor the party he is affiliated with, can claim to be exercising legislative judgment. We are certain that the Pierce Plan does not reflect the policy choices of the elected representative of the people. *Cf. McDaniel v. Sanchez*, 452 U.S. 130 (1981) (holding that a reappor-tionment plan submitted to a court by the *legislative body* of a covered jurisdiction was a legislative plan); *Campos v. City of Baytown, Texas*, 840 F.2d 1240 (5th Cir. 1988) (holding that plan proposed by *the city* was a legislative plan), *cert. denied*, 492 U.S. 905 (1989); *Farnum v. Burns*, 561 F. Supp. 83, 92 (D. R.I. 1983) (holding that plan drafted by a legislative consultant under the direction of the *legislative body* reflected the policy choices of the elected representative and was therefore a legislative plan).

45. Alternatively, it appears that the Legislature will not have a plan precleared in time to be in place for the April 3, 1992 qualifying deadline. For that reason, the situation calls for emergency action by this court. The Supreme Court acknowledged this exception to preclear-ance in *Upham v. Seamon*, 456 U.S. 37, 44 (1982):

It is true that we have authorized District Courts to order or to permit elections to be held pursuant

to apportionment plans that do not in all respects measure up to the legal requirements, even constitutional requirements. Necessity has been the motivating factor in these situations. (citations omitted).

The Court later reaffirmed this exception in *McDaniel v. Sanchez*, 452 U.S. 130, 153 n.35 (1981), noting the ample power of the district courts to fashion interim plans. *See also Burton v. Hobbie*, 561 F. Supp. at 1036 (recognizing the authority of a court to implement an interim plan so that an election can be held); 28 C.F.R. § 51.18 (c) (1991) (acknowledging a federal court's authority to approve a plan without preclearance: "A federal court's authorization of the emergency interim use without preclearance of a voting change does not exempt from section 5 review any use of the practice not explicitly authorized by the court.").

For the foregoing reasons, the Motion is Denied.

46. We find that, at a minimum, district lines should become fixed one week prior to the April 3, 1992 qualifying date for candidates to allow both candidates and election officials the necessary time to evaluate them and choose their future conduct accordingly.

## CONCLUSION

Congressional redistricting is a state legislature's fundamental task, but it becomes a judicial duty when a legislature fails to adopt and preclear a plan after having adequate opportunity to do so.

At the time this opinion is released, it is reported, although evidence of such is not before the court, that the Alabama legislature has passed a redistricting plan. It is also reported that the plan has not received preclearance by the Attorney General of the United States under § 5 of the Voting Rights Act of 1965.

Since this court recognizes that congressional redistricting is properly a matter to be determined by the legisla-

ture and that the federal courts should intervene only if the legislature fails to act in a constitutional manner, the question arises: Why should the court not consider the legislature's belatedly adopted plan and, if it is found by the court to comply with constitutional and legal requirements, adopt this expression of the legislative will as the court's plan and order it into effect immediately? The answer is that this court has no legal authority to do so.

Section 5 of the Voting Rights Act requires a legislative plan to be submitted to the Attorney General for approval before it can be put into effect. The Attorney General has a period of 60 days to study the plan and express any objections he might have to it or to any of its provisions.

The Supreme Court has made clear that this requirement of the Voting Rights Act cannot be put aside by having a legislative plan approved by a federal district court (other than the U.S. District Court for the District of Columbia). *McDaniel v. Sanchez*, 452 U.S. at 130; *United States v. Board of Supervisors*, 429 U.S. 642 (1977).

Thus, if we adopted the reported legislative plan, it would still be subject to the preclearance requirement, which might well require postponement of the primaries. This we are unwilling to do.

It should be clearly understood that this court does not wish to compete with the state legislature as to where congressional district lines should be drawn. It is, however, our responsibility to ensure that the voters of this state have the opportunity to choose their members of Congress from constitutionally drawn districts when elections are held at the time set by state law.

If the plan reportedly adopted by the legislature should be precleared by some expedited method no later than 12:00 noon, Central Time, March 27, 1992, one week before the statutory deadline for candidates to qualify to run, as set out herein, then that plan will take effect and

154a

those will be the congressional districts for the 1992 election. Otherwise, the legislature will have defaulted in its obligation to the people of the state and the plan described herein will take effect.

The plan adopted by this court shall become operative and controlling for the 1992 congressional elections. Additionally, it shall govern the conduct of congressional elections after 1992 unless and until the Legislature for the State of Alabama adopts a plan and has it precleared in time for such elections to proceed without delay under applicable law.

The court will by separate document enter judgment consistent with this opinion.

155a

# APPENDIX A

### 1990 Total Population
### State of Alabama Congressional Districts

DB: Alabama

### District Statistics
### Total Populations, All Ages
### Plan: Cong. Districts

Plan type: Congressional Districts

| District Name | Number Members | Total Population | Ideal Population | District Variance |
|---|---|---|---|---|
| District 1 | 1 | 593,911 | 577,227 | 16,684 |
| District 2 | 1 | 569,423 | 577,227 | −7,804 |
| District 3 | 1 | 565,135 | 577,227 | −12,092 |
| District 4 | 1 | 573,868 | 577,227 | −3,359 |
| District 5 | 1 | 603,726 | 577,227 | 26,499 |
| District 6 | 1 | 532,748 | 577,227 | −44,479 |
| District 7 | 1 | 601,776 | 577,227 | 24,549 |

PLANWIDE STATISTICS:

| | |
|---|---|
| Range of populations: | 532,748 to 603,726 |
| Ratio range: | 1.1332 |
| Absolute range: | −44,479 to 26,499 |
| Absolute overall range: | 70,978 |
| Relative range: | −7.71 to 4.59% |
| Relative overall range: | 12.30% |
| Absolute mean deviation: | 19352.29 |
| Relative mean deviation: | 3.35% |
| Standard deviation: | 23237.8677 |

156a

## APPENDIX B

### District Summary
#### Total Populations, All Ages, with percents
#### Plan: Cong. Districts

DB: Alabama

Plan type: Congressional Districts

| District Name | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| District 1 | 593,911 100.00% | 408,778 68.83% | 175,531 29.56% | 4,951 0.83% | 3,786 0.64% | 865 0.15% |
| District 2 | 569,423 100.00% | 381,279 66.96% | 182,021 31.97% | 1,593 0.28% | 3,285 0.58% | 1,245 0.22% |
| District 3 | 565,135 100.00% | 403,218 71.35% | 156,724 27.73% | 1,133 0.20% | 3,132 0.55% | 928 0.16% |
| District 4 | 573,868 100.00% | 530,503 92.44% | 40,004 6.97% | 1,647 0.29% | 1,063 0.19% | 651 0.11% |
| District 5 | 603,726 100.00% | 503,616 83.42% | 88,353 14.63% | 5,505 0.91% | 5,158 0.85% | 1,094 0.18% |
| District 6 | 532,748 100.00% | 331,711 62.26% | 196,872 36.95% | 730 0.14% | 2,936 0.55% | 499 0.09% |
| District 7 | 601,776 100.00% | 416,692 69.24% | 181,200 30.11% | 947 0.16% | 2,437 0.40% | 500 0.08% |
| Total | 4,040,587 100.00% | 2,975,797 73.65% | 1,020,705 25.26% | 16,506 0.41% | 21,797 0.54% | 5,782 0.14% |

157a

DB: Alabama

District Summary
Total Populations, All Ages
Plan: Cong. Districts

Plan type: Congressional Districts

| District Name | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| District 1 | 593,911 | 408,778 | 175,531 | 4,951 | 3,786 | 865 |
| District 2 | 569,423 | 381,279 | 182,021 | 1,593 | 3,285 | 1,245 |
| District 3 | 565,135 | 403,218 | 156,724 | 1,133 | 3,132 | 928 |
| District 4 | 573,868 | 530,503 | 40,004 | 1,647 | 1,063 | 651 |
| District 5 | 603,726 | 503,616 | 88,353 | 5,505 | 5,158 | 1,094 |
| District 6 | 532,748 | 331,711 | 196,872 | 730 | 2,936 | 499 |
| District 7 | 601,776 | 416,692 | 181,200 | 947 | 2,437 | 500 |

158a

DB : Alabama

APPENDIX C
Attributes of Census Units
Within Alabama
Total Populations, All Ages

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Autauga County | 34,222 100.00% | 27,144 79.32% | 6,845 20.00% | 71 0.21% | 120 0.35% | 42 0.12% |
| Baldwin County | 98,280 100.00% | 84,565 86.04% | 12,640 12.86% | 630 0.64% | 221 0.22% | 224 0.23% |
| Barbour County | 25,417 100.00% | 14,118 55.55% | 11,194 44.04% | 46 0.18% | 44 0.17% | 15 0.06% |
| Bibb County | 16,576 100.00% | 13,052 78.74% | 3,478 20.98% | 25 0.15% | 11 0.07% | 10 0.06% |
| Blount County | 39,248 100.00% | 38,397 97.83% | 521 1.33% | 133 0.34% | 33 0.08% | 164 0.42% |
| Bullock County | 11,042 100.00% | 3,036 27.50% | 7,986 72.32% | 8 0.07% | 10 0.09% | 2 0.02% |
| Butler County | 21,892 100.00% | 13,049 59.61% | 8,798 40.19% | 24 0.11% | 19 0.09% | 2 0.01% |
| Calhoun County | 116,034 100.00% | 92,873 80.04% | 21,578 18.60% | 296 0.26% | 869 0.75% | 418 0.36% |
| Chambers County | 36,876 100.00% | 23,575 63.93% | 13,221 35.85% | 41 0.11% | 13 0.04% | 26 0.07% |
| Cherokee County | 19,543 100.00% | 18,154 92.89% | 1,291 6.61% | 51 0.26% | 24 0.12% | 23 0.12% |

159a

| County | Total | | | | | |
|---|---|---|---|---|---|---|
| Chilton County | 32,458 100.00% | 28,647 88.26% | 3,674 11.32% | 63 0.19% | 38 0.12% | 36 0.11% |
| Choctaw County | 16,018 100.00% | 8,913 55.64% | 7,077 44.18% | 10 0.06% | 12 0.07% | 6 0.04% |
| Clarke County | 27,240 100.00% | 15,527 57.00% | 11,625 42.68% | 45 0.17% | 35 0.13% | 8 0.03% |
| Clay County | 13,252 100.00% | 11,044 83.34% | 2,166 16.34% | 23 0.17% | 13 0.10% | 6 0.05% |
| Cleburne County | 12,730 100.00% | 12,084 94.93% | 587 4.61% | 20 0.16% | 13 0.10% | 26 0.20% |
| Coffee County | 40,240 100.00% | 32,702 81.27% | 6,917 17.19% | 163 0.41% | 317 0.79% | 141 0.35% |
| Colbert County | 51,666 100.00% | 42,820 82.88% | 8,568 16.58% | 137 0.27% | 93 0.18% | 48 0.09% |
| Conecuh County | 14,054 100.00% | 8,063 57.37% | 5,925 42.16% | 43 0.31% | 13 0.09% | 10 0.07% |
| Coosa County | 11,063 100.00% | 7,242 65.46% | 3,782 34.19% | 34 0.31% | 4 0.04% | 1 0.01% |
| Covington County | 36,478 100.00% | 31,551 86.49% | 4,777 13.10% | 72 0.20% | 48 0.13% | 30 0.08% |
| Crenshaw County | 13,635 100.00% | 10,048 73.69% | 3,544 25.99% | 27 0.20% | 11 0.08% | 5 0.04% |
| Cullman County | 67,613 100.00% | 66,744 98.71% | 560 0.83% | 134 0.20% | 117 0.17% | 58 0.09% |
| Dale County | 49,633 100.00% | 39,365 79.31% | 8,847 17.82% | 239 0.48% | 731 1.47% | 451 0.91% |

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Dallas County | 48,130 100.00% | 20,121 41.81% | 27,825 57.81% | 41 0.09% | 129 0.27% | 14 0.03% |
| DeKalb County | 54,651 100.00% | 52,980 96.94% | 1,028 1.88% | 481 0.88% | 77 0.14% | 85 0.16% |
| Elmore County | 49,210 100.00% | 37,850 76.92% | 11,039 22.43% | 137 0.28% | 129 0.26% | 55 0.11% |
| Escambia County | 35,518 100.00% | 24,326 68.49% | 10,046 28.28% | 1,047 2.95% | 58 0.16% | 41 0.12% |
| Etowah County | 99,840 100.00% | 85,274 85.41% | 13,799 13.82% | 250 0.25% | 419 0.42% | 98 0.10% |
| Fayette County | 17,962 100.00% | 15,717 87.50% | 2,190 12.19% | 9 0.05% | 19 0.11% | 27 0.15% |
| Franklin County | 27,814 100.00% | 26,463 95.14% | 1,249 4.49% | 57 0.20% | 35 0.13% | 10 0.04% |
| Geneva County | 23,647 100.00% | 20,682 87.46% | 2,824 11.94% | 93 0.39% | 15 0.06% | 33 0.14% |
| Greene County | 10,153 100.00% | 1,966 19.36% | 8,181 80.58% | 3 0.03% | 0 0.00% | 3 0.03% |
| Hale County | 15,498 100.00% | 6,255 40.36% | 9,214 59.45% | 20 0.13% | 9 0.06% | 0 0.00% |
| Henry County | 15,374 100.00% | 9,918 64.51% | 5,395 35.09% | 31 0.20% | 6 0.04% | 24 0.16% |
| Houston County | 81,331 100.00% | 61,513 75.63% | 18,954 23.30% | 287 0.35% | 470 0.58% | 107 0.13% |

161a

| | | | | | | |
|---|---|---|---|---|---|---|
| Jackson County | 47,796 | 44,696 | 1,968 | 1,020 | 90 | 22 |
| | 100.00% | 93.51% | 4.12% | 2.13% | 0.19% | 0.05% |
| Jefferson County | 651,525 | 418,317 | 228,521 | 889 | 3,222 | 576 |
| | 100.00% | 64.21% | 35.07% | 0.14% | 0.49% | 0.09% |
| Lamar County | 15,715 | 13,805 | 1,862 | 24 | 10 | 14 |
| | 100.00% | 87.85% | 11.85% | 0.15% | 0.06% | 0.09% |
| Lauderdale County | 79,661 | 71,560 | 7,695 | 165 | 196 | 45 |
| | 100.00% | 89.83% | 9.66% | 0.21% | 0.25% | 0.06% |
| Lawrence County | 31,513 | 24,563 | 4,798 | 2,124 | 19 | 9 |
| | 100.00% | 77.95% | 15.23% | 6.74% | 0.06% | 0.03% |
| Lee County | 87,146 | 64,889 | 20,407 | 132 | 1,584 | 134 |
| | 100.00% | 74.46% | 23.42% | 0.15% | 1.82% | 0.15% |
| Limestone County | 54,185 | 46,658 | 7,127 | 148 | 158 | 44 |
| | 100.00% | 86.19% | 13.17% | 0.27% | 0.29% | 0.08% |
| Lowndes County | 12,658 | 3,185 | 9,456 | 10 | 4 | 3 |
| | 100.00% | 25.16% | 74.70% | 0.08% | 0.03% | 0.02% |
| Macon County | 24,928 | 3,443 | 21,340 | 24 | 99 | 22 |
| | 100.00% | 13.81% | 85.61% | 0.10% | 0.40% | 0.09% |
| Madison County | 238,912 | 184,197 | 48,116 | 1,601 | 4,232 | 766 |
| | 100.00% | 77.10% | 20.14% | 0.67% | 1.77% | 0.32% |
| Marengo County | 23,084 | 11,314 | 11,745 | 11 | 11 | 3 |
| | 100.00% | 49.01% | 50.88% | 0.05% | 0.05% | 0.01% |
| Marion County | 29,830 | 28,759 | 967 | 57 | 35 | 12 |
| | 100.00% | 96.41% | 3.24% | 0.19% | 0.12% | 0.04% |
| Marshall County | 70,832 | 69,361 | 1,087 | 231 | 111 | 42 |
| | 100.00% | 97.92% | 1.53% | 0.33% | 0.16% | 0.06% |

162a

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| Mobile County | 378,643 100.00% | 254,853 67.31% | 117,872 31.13% | 1,940 0.51% | 3,398 0.90% | 580 0.15% |
| Monroe County | 23,968 100.00% | 14,320 59.75% | 9,372 39.10% | 215 0.90% | 54 0.23% | 7 0.03% |
| Montgomery County | 209,085 100.00% | 119,420 57.12% | 87,312 41.76% | 414 0.20% | 1,533 0.73% | 406 0.19% |
| Morgan County | 100,043 100.00% | 89,122 89.08% | 10,081 10.08% | 310 0.31% | 370 0.37% | 160 0.16% |
| Perry County | 12,759 100.00% | 4,503 35.29% | 8,219 64.42% | 16 0.13% | 14 0.11% | 7 0.05% |
| Pickens County | 20,699 100.00% | 12,002 57.98% | 8,645 41.77% | 24 0.12% | 27 0.13% | 1 0.00% |
| Pike County | 27,595 100.00% | 17,814 64.56% | 9,548 34.60% | 146 0.53% | 68 0.25% | 19 0.07% |
| Randolph County | 19,881 100.00% | 15,138 76.14% | 4,686 23.57% | 29 0.15% | 21 0.11% | 7 0.04% |
| Russell County | 46,860 100.00% | 28,473 60.76% | 18,088 38.60% | 90 0.19% | 117 0.25% | 92 0.20% |
| St. Clair County | 50,009 100.00% | 45,138 90.26% | 4,561 9.12% | 136 0.27% | 77 0.15% | 97 0.19% |
| Shelby County | 99,358 100.00% | 90,715 91.30% | 7,718 7.77% | 264 0.27% | 575 0.58% | 86 0.09% |
| Sumter County | 16,174 100.00% | 4,759 29.42% | 11,369 70.29% | 6 0.04% | 30 0.19% | 10 0.06% |

| County | Total | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Talladega County | 74,107 | 100.00% | 50,970 | 68.78% | 22,773 | 30.73% | 174 | 0.23% | 113 | 0.15% | 77 | 0.10% |
| Tallapoosa County | 38,826 | 100.00% | 28,493 | 73.39% | 10,212 | 26.30% | 62 | 0.16% | 37 | 0.10% | 22 | 0.06% |
| Tuscaloosa County | 150,522 | 100.00% | 109,398 | 72.68% | 39,377 | 26.16% | 253 | 0.17% | 1,264 | 0.84% | 230 | 0.15% |
| Walker County | 67,670 | 100.00% | 63,042 | 93.16% | 4,405 | 6.51% | 84 | 0.12% | 107 | 0.16% | 32 | 0.05% |
| Washington County | 16,694 | 100.00% | 10,984 | 65.80% | 4,623 | 27.69% | 1,068 | 6.40% | 14 | 0.08% | 5 | 0.03% |
| Wilcox County | 13,568 | 100.00% | 4,203 | 30.98% | 9,353 | 68.93% | 6 | 0.04% | 6 | 0.04% | 0 | 0.00% |
| Winston County | 22,053 | 100.00% | 21,925 | 99.42% | 57 | 0.26% | 42 | 0.19% | 26 | 0.12% | 3 | 0.01% |
| Total Alabama | 4,040,587 | 100.00% | 2,975,797 | 73.65% | 1,020,705 | 25.26% | 16,506 | 0.41% | 21,797 | 0.54% | 5,782 | 0.14% |

DB: Alabama

APPENDIX D
Attributes of Census Units
Within Alabama
Ethnic Breakdown of Voting Age Populations

| Census Unit | Total Vot. Age | Vot. Age White | Vot. Age Black | Vot. Age Am. Ind. | Vot. Age Asian/PI | Vot. Age Other |
|---|---|---|---|---|---|---|
| Autauga County | 24,124 70.49% | 19,593 57.25% | 4,366 12.76% | 48 0.14% | 90 0.26% | 27 0.08% |
| Baldwin County | 72,747 74.02% | 64,059 65.18% | 7,938 8.08% | 459 0.47% | 159 0.16% | 132 0.13% |
| Barbour County | 17,953 70.63% | 10,744 42.27% | 7,130 28.05% | 36 0.14% | 30 0.12% | 13 0.05% |
| Bibb County | 11,783 71.08% | 9,617 58.02% | 2,138 12.90% | 16 0.10% | 8 0.05% | 4 0.02% |
| Blount County | 29,212 74.43% | 28,615 72.91% | 366 0.93% | 94 0.24% | 24 0.06% | 113 0.29% |
| Bullock County | 7,661 69.38% | 2,513 22.76% | 5,131 46.47% | 7 0.06% | 8 0.07% | 2 0.02% |
| Butler County | 15,301 69.89% | 9,919 45.31% | 5,357 24.47% | 15 0.07% | 9 0.04% | 1 0.00% |
| Calhoun County | 87,056 75.03% | 71,217 61.38% | 14,702 12.67% | 241 0.21% | 603 0.52% | 293 0.25% |
| Chambers County | 27,244 73.88% | 18,499 50.17% | 8,685 23.55% | 30 0.08% | 10 0.03% | 20 0.05% |
| Cherokee County | 14,851 75.99% | 13,881 71.03% | 898 4.59% | 39 0.20% | 18 0.09% | 15 0.08% |

| County | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Chilton County | 23,771 | 73.24% | 21,320 | 65.68% | 2,361 | 7.27% | 47 | 0.14% | 24 | 0.07% | 19 | 0.06% |
| Choctaw County | 11,310 | 70.61% | 6,700 | 41.83% | 4,592 | 28.67% | 7 | 0.04% | 8 | 0.05% | 3 | 0.02% |
| Clarke County | 19,085 | 70.06% | 11,684 | 42.89% | 7,346 | 26.97% | 29 | 0.11% | 22 | 0.08% | 4 | 0.01% |
| Clay County | 9,934 | 74.96% | 8,497 | 64.12% | 1,407 | 10.62% | 16 | 0.12% | 10 | 0.08% | 4 | 0.03% |
| Cleburne County | 9,418 | 73.98% | 8,983 | 70.57% | 388 | 3.05% | 15 | 0.12% | 11 | 0.09% | 21 | 0.16% |
| Coffee County | 29,913 | 74.34% | 24,882 | 61.83% | 4,577 | 11.37% | 118 | 0.29% | 234 | 0.58% | 102 | 0.25% |
| Colbert County | 39,118 | 75.71% | 33,112 | 64.09% | 5,825 | 11.27% | 96 | 0.19% | 54 | 0.10% | 31 | 0.06% |
| Conecuh County | 10,136 | 72.12% | 6,278 | 44.67% | 3,815 | 27.15% | 27 | 0.19% | 11 | 0.08% | 5 | 0.04% |
| Coosa County | 8,181 | 73.95% | 5,579 | 50.43% | 2,576 | 23.28% | 21 | 0.19% | 4 | 0.04% | 1 | 0.01% |
| Covington County | 27,241 | 74.68% | 24,039 | 65.90% | 3,086 | 8.46% | 56 | 0.15% | 32 | 0.09% | 28 | 0.08% |
| Crenshaw County | 9,991 | 73.27% | 7,613 | 55.83% | 2,345 | 17.20% | 22 | 0.16% | 7 | 0.05% | 4 | 0.03% |
| Cullman County | 50,601 | 74.84% | 49,994 | 73.94% | 386 | 0.57% | 98 | 0.14% | 80 | 0.12% | 43 | 0.06% |
| Dale County | 35,757 | 72.04% | 29,228 | 58.89% | 5,529 | 11.14% | 184 | 0.37% | 518 | 1.04% | 298 | 0.60% |

166a

| Census Unit | Total Vot. Age | Vot. Age White | Vot. Age Black | Vot. Age Am. Ind. | Vot. Age Asian/PI | Vot. Age Other |
|---|---|---|---|---|---|---|
| Dallas County | 33,025 68.62% | 15,449 32.10% | 17,445 36.25% | 32 0.07% | 91 0.19% | 8 0.02% |
| DeKalb County | 40,744 74.55% | 39,666 72.58% | 694 1.27% | 283 0.52% | 43 0.08% | 58 0.11% |
| Elmore County | 36,418 74.01% | 28,496 57.91% | 7,696 15.64% | 105 0.21% | 87 0.18% | 34 0.07% |
| Escambia County | 26,051 73.35% | 18,450 51.95% | 6,840 19.26% | 703 1.98% | 32 0.09% | 26 0.07% |
| Etowah County | 75,251 75.37% | 65,349 65.45% | 9,299 9.31% | 182 0.18% | 353 0.35% | 68 0.07% |
| Fayette County | 13,360 74.38% | 11,801 65.70% | 1,523 8.48% | 6 0.03% | 11 0.06% | 19 0.11% |
| Franklin County | 20,910 75.18% | 19,978 71.83% | 867 3.12% | 39 0.14% | 19 0.07% | 7 0.03% |
| Geneva County | 17,757 75.09% | 15,821 66.90% | 1,837 7.77% | 71 0.30% | 12 0.05% | 16 0.07% |
| Greene County | 6,811 67.08% | 1,641 16.16% | 5,165 50.87% | 3 0.03% | 0 0.00% | 2 0.02% |
| Hale County | 10,616 68.50% | 4,772 30.79% | 5,829 37.61% | 11 0.07% | 4 0.03% | 0 0.00% |
| Henry County | 11,273 73.33% | 7,667 49.87% | 3,561 23.16% | 24 0.16% | 6 0.04% | 15 0.10% |
| Houston County | 68,858 72.37% | 46,249 56.87% | 12,041 14.80% | 214 0.26% | 288 0.35% | 66 0.08% |

167a

| County | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jackson County | 35,482 | 74.24% | 33,503 | 70.10% | 1,342 | 2.81% | 563 | 1.18% | 57 | 0.12% | 17 | 0.04% |
| Jefferson County | 488,937 | 75.05% | 328,268 | 50.38% | 157,208 | 24.13% | 697 | 0.11% | 2,359 | 0.36% | 405 | 0.06% |
| Lamar County | 11,725 | 74.61% | 10,434 | 66.40% | 1,253 | 7.97% | 17 | 0.11% | 10 | 0.06% | 11 | 0.07% |
| Lauderdale County | 60,580 | 76.05% | 55,008 | 69.05% | 5,275 | 6.62% | 128 | 0.16% | 137 | 0.17% | 32 | 0.04% |
| Lawrence County | 22,874 | 72.59% | 18,702 | 59.35% | 3,095 | 9.82% | 1,061 | 3.37% | 12 | 0.04% | 4 | 0.01% |
| Lee County | 68,058 | 78.10% | 52,769 | 60.55% | 13,846 | 15.89% | 108 | 0.12% | 1,226 | 1.41% | 109 | 0.13% |
| Limestone County | 40,529 | 74.87% | 35,087 | 64.81% | 5,197 | 9.60% | 113 | 0.21% | 101 | 0.19% | 31 | 0.06% |
| Lowndes County | 8,263 | 65.28% | 2,513 | 19.85% | 5,742 | 45.36% | 4 | 0.03% | 3 | 0.02% | 1 | 0.01% |
| Macon County | 18,286 | 73.36% | 2,780 | 11.15% | 15,397 | 61.77% | 18 | 0.07% | 74 | 0.30% | 17 | 0.07% |
| Madison County | 180,157 | 75.41% | 142,174 | 59.51% | 33,542 | 14.04% | 945 | 0.40% | 2,999 | 1.26% | 497 | 0.21% |
| Marengo County | 16,091 | 69.71% | 8,524 | 36.93% | 7,550 | 32.71% | 10 | 0.04% | 7 | 0.03% | 7 | 0.00% |
| Marion County | 22,508 | 75.45% | 21,733 | 72.86% | 712 | 2.39% | 33 | 0.11% | 23 | 0.08% | 7 | 0.02% |
| Marshall County | 53,366 | 75.34% | 52,343 | 73.90% | 766 | 1.08% | 161 | 0.23% | 76 | 0.11% | 20 | 0.08% |

| Census Unit | Total Vot. Age | Vot. Age White | Vot. Age Black | Vot. Age Am. Ind. | Vot. Age Asian/PI | Vot. Age Other |
|---|---|---|---|---|---|---|
| Mobile County | 270,610 71.47% | 190,842 50.40% | 75,791 20.02% | 1,286 0.34% | 2,279 0.60% | 412 0.11% |
| Monroe County | 16,590 69.22% | 10,597 44.21% | 5,806 24.22% | 152 0.63% | 31 0.13% | 4 0.02% |
| Montgomery County | 151,701 72.55% | 92,603 44.29% | 57,450 27.48% | 303 0.14% | 1,072 0.51% | 273 0.13% |
| Morgan County | 74,027 74.00% | 66,930 66.90% | 6,538 6.54% | 208 0.21% | 244 0.24% | 107 0.11% |
| Perry County | 8,757 68.63% | 3,719 29.15% | 5,009 39.26% | 9 0.07% | 14 0.11% | 6 0.05% |
| Pickens County | 14,805 71.53% | 9,369 45.26% | 5,401 26.09% | 17 0.08% | 17 0.08% | 1 0.00% |
| Pike County | 20,729 75.12% | 14,208 51.49% | 6,348 23.00% | 92 0.33% | 63 0.23% | 18 0.07% |
| Randolph County | 14,696 73.92% | 11,650 58.60% | 3,012 15.15% | 19 0.10% | 12 0.06% | 3 0.02% |
| Russell County | 34,380 73.37% | 21,762 46.44% | 12,396 26.45% | 67 0.14% | 95 0.20% | 60 0.13% |
| St. Clair County | 36,699 73.38% | 33,259 66.51% | 3,230 6.46% | 106 0.21% | 51 0.10% | 53 0.11% |
| Shelby County | 72,167 72.63% | 66,406 66.84% | 5,147 5.18% | 179 0.18% | 379 0.38% | 56 0.06% |
| Sumter County | 11,202 69.26% | 3,869 23.92% | 7,291 45.08% | 5 0.03% | 28 0.17% | 9 0.06% |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Talladega County | 53,614 | 72.35% | 38,551 | 52.02% | 14,805 | 19.98% | 129 | 0.17% | 79 | 0.11% | 50 | 0.07% |
| Tallapoosa County | 28,899 | 74.43% | 22,100 | 56.92% | 6,718 | 17.30% | 41 | 0.11% | 25 | 0.06% | 15 | 0.04% |
| Tuscaloosa County | 114,857 | 76.31% | 86,831 | 57.69% | 26,623 | 17.69% | 195 | 0.13% | 1,022 | 0.68% | 186 | 0.12% |
| Walker County | 50,560 | 74.72% | 47,546 | 70.26% | 2,847 | 4.21% | 67 | 0.10% | 79 | 0.12% | 21 | 0.03% |
| Washington County | 11,611 | 69.55% | 8,033 | 48.12% | 2,916 | 17.47% | 645 | 3.86% | 12 | 0.07% | 5 | 0.03% |
| Wilcox County | 8,956 | 66.01% | 3,297 | 24.30% | 5,649 | 41.63% | 6 | 0.04% | 4 | 0.03% | | 0.00% |
| Winston County | 16,621 | 75.37% | 16,530 | 74.96% | 38 | 0.17% | 31 | 0.14% | 19 | 0.09% | 3 | 0.01% |
| Total Alabama | 2,981,799 | 73.80% | 2,273,845 | 56.28% | 677,681 | 16.77% | 10,809 | 0.27% | 15,529 | 0.38% | 3,935 | 0.10% |

170a

## APPENDIX E

| District | Name/Address | Census Residence |
|---|---|---|
| 1 | Sonny Callahan (R)<br>3251 Riviere Du Chien Drive<br>Mobile, AL | Mobile County<br>Tract 20<br>Block 231<br>Voting District #0360 |
| | FIRST ELECTED: NOVEMBER, 1984 | |
| 2 | Bill Dickinson (R)<br>2350 Woodley Road<br>Montgomery, AL | Montgomery County<br>Tract 20<br>Block 311<br>Voting District #0180 |
| | FIRST ELECTED: NOVEMBER, 1964 | |
| 3 | Glen Browder (D)<br>517 Pelham Street, North<br>Jacksonville, AL | Calhoun County<br>Tract 21<br>Block 510<br>Voting District #0010 |
| | FIRST ELECTED: APRIL, 1989 | |
| 4 | Tom Bevill (D)<br>1600 Alabama Avenue<br>Jasper, AL | Walker County<br>Tract 203<br>Block 173<br>Voting District #0010 |
| | FIRST ELECTED: NOVEMBER, 1989 | |
| 5 | Bud Cramer (D)<br>417 Eustis Street<br>Huntsville, AL | Madison County<br>Tract 1<br>Block 234<br>Voting District #0060 |
| | FIRST ELECTED: NOVEMBER, 1982 | |
| 6 | Ben Erdreich (D)<br>2625 Highland Avenue, South<br>Birmingham, AL | Jefferson County<br>Tract 47.01<br>Block 723<br>Voting District #5408 |
| | FIRST ELECTED: NOVEMBER, 1982 | |
| 7 | Clause Harris (D)<br>3121 Azalea Lane East<br>(41st Avenue)<br>Tuscaloosa, AL | Tuscaloosa County<br>Tract 123.01<br>Block 143<br>Voting District #0160 |
| | FIRST ELECTED: NOVEMBER, 1986 | |

171a

Hand, Senior District Judge, concurring in judgment:

I concur in the Judgment and Order of the Court for the reasons expressed therein, except as noted below, but I write separately to emphasize a point which the opinion does not address as squarely as I feel it should. Accepting as fact the statements contained in the stipulation of the parties that this State has a substantial African-American minority that is relatively geographically compact so as to comprise a minority district which complies with the population equality requirement of *Karcher v. Daggett*, 462 U.S. 725 (1983), and no evidence or argument being presented that the establishment of such a district would violate any requirement of the law, I agree with the decision to accept the parties' joint request for the creation of such a district as a remedy and as a remedy only. In so doing, my concurrence should in no way be considered as an agreement that such a result is constitutionally mandated. It simply is not.

Those in high and low places who advocate racial gerrymandering to create African-American congressional districts would do well to remember the reasoned dissents of the first Mr. Justice Harlan wherein he stated in *Plessy v. Ferguson*: "There is no caste here. Our Constitution is color-blind, and neither knows nor tolerates classes among citizens." 163 U.S. 537, 558 (1895); and of Mr. Justice William O. Douglas who later addressed this point with an equally persuasive dissent in *Wright v. Rockefeller*, 376 U.S. 52; 59-67 (1964):

> Here no Negroes are deprived of the franchise. Rather, zigzag tortuous lines are drawn to concentrate Negroes and Puerto Ricans into Manhattan's Eighteenth Congressional District and practically to exclude them from the Seventeenth Congressional District.
>
> . . .
>
> The intervenors are persons who apparently have a vested interest in control of the segregated Eighteenth

172a

District. [footnote #4: Adam Clayton Powell has represented the Eighteenth District in Congress since 1945] They and the State seem to support this segregation not on the "separate but equal" theory of Plessy v. Ferguson but on another theory. Their theory might be called the theory of "separate but better off"—a theory that has been used before.

. . .

Here the individual is important, not his race, his creed, or his color. The principle of equality is at war with the notion that District A must be represented by a Negro, as it is with the notion that District B must be represented by a Caucasian, District C by a Jew, District D by a Catholic, and so on. . . . That system, by whatever name it is called, is a divisive force in a community, emphasizing differences between candidates and voters that are irrelevant in the constitutional sense. Of course race, like religion, plays an important role in the choices which individual voters make from among various candidates. [footnote omitted]. But government has no business designing electoral districts along racial or religious lines.

. . .

When racial or religious lines are drawn by the State, the multiracial, multireligious communities that our Constitution seeks to weld together as one becomes separatist; antagonisms that relate to race or to religion rather than to political issues are generated; communities seek not the best representative but the best racial or religious partisan. Since that system is at war with the democratic ideal, it should find no footing here.

"Separate but equal" and "separate but better off" have no more place in voting districts than they have in schools, parks, railroad terminals, or any other facility serving the public.

173a

As I perceive it, the chief danger, which these Justices recognized and so eloquently articulated, is judicial and legislative ghettoizing of the vote. The resulting balkanization is antithetical to the American dream, and I do not wish to be associated with any such action or effort, thus I write separately to this point.

174a

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

————

Civil Action No. 91-0787
(Three Judge Court)

PAUL CHARLES WESCH,

vs.                    *Plaintiff,*

GUY HUNT, BILLY JOE CAMP, LIONEL W. NOONAN,
HARRY D'OLIVE, DEVON WIGGINS, OTHA LEE BIGGS,
JERRY BOGAN, CLARENCE WATTERS, and TOM TURNER,
                    *Defendants.*

————

MOTION TO STAY

COMES NOW defendant Billy Joe Camp, Secretary of
State of the State of Alabama, and pursuant to Rule
62(c) of the Federal Rules of Civil Procedure moves the
Court to stay proceedings to enforce its final judgment
and order of March 9, 1992 pending adjudication of his
appeal, and in support of such motion relies on the ac-
companying memorandum of law.

Respectfully submitted this 16th day of March, 1992.

JAMES H. EVANS
Attorney General

/s/ Marc Givhan
MARC GIVHAN (GIVHR 4774)
Assistant Attorney General

/s/ Mort P. Ames
MORT P. AMES (AMESM 7570)
Deputy Attorney General

Two of the Attorneys for
Defendant Camp

175a

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 16th day of March, 1992, served a copy of the foregoing on all parties of record by mailing a copy of same by United States Mail, postage prepaid and properly addressed as follows:

John H. England, Jr., Esq.
England & Bivens, P.C.
2616 8th Street
Tuscaloosa, Alabama

Ronnie L. Williams, Esq.
814 St. Francis
Mobile, Alabama 36602

David Boyd, Esq.
Dorman Walker, Esq.
Balch & Bingham
P. O. Box 78
Montgomery, Alabama 36101

Ferrel S. Anders, Esq.
David A. Boyett, III, Esq.
Hamilton, Butler, Riddick, Tarlton,
   & Sullivan, P.C.
P. O. Box 1743
Mobile, Alabama 36633

Algert S. Agricola, Jr., Esq.
(Attorney for defendant, Guy Hunt)
Interstate Park Center
2000 Interstate Park Drive
Suite 204
Montgomery, Alabama 36109

James C. Wood, Esq.
(Attorney for defendant, Lionel W. Noonan)
1010 Van Antwerp Building
Mobile, AL 36602

176a

Honorable Harry D'Olive
Probate Judge
Probate Court of Baldwin County
Baldwin County Courthouse
Bay Minette, Alabama 36507

Honorable Devon Wiggins
Probate Judge
Probate Court of Escambia County
Escambia County Courthouse
Brewton, Alabama 36427

Honorable Otha Lee Biggs
Probate Judge
Probate Court of Monroe County
Monroe County Courthouse
Monroeville, Alabama 36461

Honorable Jerry Bogan
Probate Judge
Probate Court of Wilcox County
Wilcox County Courthouse
Camden, Alabama 36726

Honorable Clarence Watters
Probate Judge
Probate Court of Clarke County
Clarke County Courthouse
Grove Hill, Alabama 36451

Honorable Tom W. Turner
Probate Judge
Probate Court of Washington County
Washington County Courthouse
Chatom, Alabama 36518

/s/ Mort P. Ames
MORT P. AMES
Deputy Attorney General

177a

**Address of Counsel:**

Office of the Attorney General
Alabama State House
11 South Union Street
Montgomery, Alabama 36130
(205) 242-7300
1273A

178a

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

————

Civil Action No. 91-0787
(Three Judge Court)

PAUL CHARLES WESCH,

*Plaintiff,*

vs.

GUY HUNT, BILLY JOE CAMP, LIONEL W. NOONAN,
HARRY D'OLIVE, DEVON WIGGINS, OTHA LEE BIGGS,
JERRY BOGAN, CLARENCE WATTERS, AND TOM TURNER,

*Defendants.*

————

DEFENDANT CAMP'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO STAY

COMES NOW defendant Billy Joe Camp, Secretary of State of the State of Alabama, and respectfully submits this memorandum of law in support of his motion to stay.

Although defendant Camp has already filed notice, on March 13, 1992, that he is appealing the Court's final judgement in this case, dated March 9, 1992, and the Court's order, dated March 9, 1992, this Court still retains jurisdiction to rule on his motion to stay. Under *Matter of Miranne*, 852 F.2d 805 (5th Cir. 1988), a federal district court retains jurisdiction to grant appellant's request for stay pending appeal even though notice of appeal to the Court of Appeals was filed before the request to stay. *Also See Rakovich v. Wade*, 834 F.2d 673 (7th Cir. 1987), in which the Seventh Circuit held that notice of appeal does not deprive a district court of jurisdiction over motion for stay of its judgement; the power of the district court to grant stay of judgement pending appeal continues to reside in the district court until such time as the Court of Appeals issues its mandate.