FILED

2021 Dec-23  PM 07:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

238a

S. 73

Senate 3-5-92

I hereby certify that the within Act originated in and passed the Senate, the Executive veto to the contrary notwithstanding.

Yeas 21
Nays 09

McDowell Lee
Secretary

———————

House of Representatives

Passed 3-5-92, the Executive veto to the contrary notwithstanding.

Yeas 64
Nays 29

———————

I hereby certify that the vote shown above of the two Houses of the Legislature overriding the Governor's veto is true and correct.

McDowell Lee
Secretary

———————

By: Senators Ghee and Bennett

Passed, the Governor's veto to the contrary notwithstanding on March 5, 1992.

I hereby certify that the foregoing copy of an Act of the Legislature of Alabama has been compared with the enrolled Act and it is a true and correct copy thereof.

Given under my hand this 5th day of March 1992.

McDowell Lee
Secretary

239a

# EXHIBIT B

### Senate Bill 73 Substituted in House 2/27/92
### Senate Concurred 2/27/92

REAPP 92-16



240a

DB: Alabama

### District Statistics
### Total Populations, All Ages
### Plan: Reapp92-16

Plan type: Congressional Districts

| District Name | Number Members | Total Population | Ideal Population | District Variance | % District Variance |
|---|---|---|---|---|---|
| District 1 | 1 | 577,226 | 577,227 | −1 | 0.00% |
| District 2 | 1 | 577,228 | 577,227 | 1 | 0.00% |
| District 3 | 1 | 577,227 | 577,227 | 0 | 0.00% |
| District 4 | 1 | 577,224 | 577,227 | −3 | 0.00% |
| District 5 | 1 | 577,227 | 577,227 | 0 | 0.00% |
| District 6 | 1 | 577,228 | 577,227 | 1 | 0.00% |
| District 7 | 1 | 577,227 | 577,227 | 0 | 0.00% |
| Total | 7 | 4,040,587 | 4,040,589 | −2 | 0.00% |

PLANWIDE STATISTICS:

| | |
|---|---|
| Range of populations: | 577,224 to 577,228 |
| Ratio range: | 1.0000 |
| Absolute range: | −3 to 1 |
| Absolute overall range: | 4 |
| Relative range: | 0.00 to 0.00% |
| Relative overall range: | 0.00% |
| Absolute mean deviation: | 0.86 |
| Relative mean deviation: | 0.00% |
| Standard deviation: | 1.3093 |

241a

DB: Alabama

**District Summary**
**Total Populations, All Ages**
**Plan: Reapp92-16**

Plan type: **Congressional Districts**

| District Name | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| District 1 | 577,226 100.00% | 403,662 69.93% | 163,986 28.41% | 4,943 0.86% | 3,770 0.65% | 867 0.15% |
| District 2 | 577,228 100.00% | 432,727 74.97% | 137,078 23.75% | 1,600 0.28% | 4,516 0.78% | 1,307 0.23% |
| District 3 | 577,227 100.00% | 463,942 80.37% | 109,034 18.89% | 1,340 0.23% | 2,017 0.35% | 894 0.15% |
| District 4 | 577,224 100.00% | 537,767 93.16% | 34,140 5.91% | 3,693 0.64% | 1,040 0.18% | 584 0.10% |
| District 5 | 577,227 100.00% | 484,015 83.85% | 83,580 14.48% | 3,401 0.59% | 5,146 0.89% | 1,085 0.19% |
| District 6 | 577,228 100.00% | 464,488 80.47% | 108,114 18.73% | 839 0.15% | 3,209 0.56% | 578 0.10% |
| District 7 | 577,227 100.00% | 189,196 32.78% | 384,773 66.66% | 690 0.12% | 2,099 0.36% | 469 0.08% |
| Total | 4,040,587 100.00% | 2,975,797 73.65% | 1,020,705 25.26% | 16,506 0.41% | 21,797 0.54% | 5,782 0.14% |

DB: Alabama

District Summary
Ethnic Breakdown of Voting Age Populations
Plan: Reapp92-16

Plan type: Congressional Districts

| District Name | Total Vot. Age | Vot. Age White | Vot. Age Black | Vot. Age Am. Ind. | Vot. Age Asian/PI | Vot. Age Other |
|---|---|---|---|---|---|---|
| District 1 | 414,612 100.00% | 302,961 73.07% | 105,264 25.39% | 3,272 0.79% | 2,532 0.61% | 587 0.14% |
| District 2 | 428,822 100.00% | 333,519 77.78% | 89,942 20.97% | 1,188 0.28% | 3,268 0.76% | 905 0.21% |
| District 3 | 424,781 100.00% | 349,138 82.19% | 72,682 17.11% | 987 0.23% | 1,380 0.32% | 594 0.14% |
| District 4 | 432,494 100.00% | 406,242 93.93% | 22,961 5.31% | 2,126 0.49% | 773 0.18% | 392 0.09% |
| District 5 | 433,667 100.00% | 369,550 85.22% | 57,739 13.31% | 2,066 0.48% | 3,597 0.83% | 715 0.16% |
| District 6 | 435,908 100.00% | 360,482 82.70% | 71,983 16.51% | 648 0.15% | 2,373 0.54% | 422 0.10% |
| District 7 | 411,515 100.00% | 151,953 36.93% | 257,110 62.48% | 522 0.13% | 1,606 0.39% | 324 0.08% |
| Total | 2,981,799 100.00% | 2,273,845 76.26% | 677,681 22.73% | 10,809 0.36% | 15,529 0.52% | 3,935 0.13% |

243a

DB: Alabama
Plan: Reapp92-16

Plan type: Congressional Districts

County Population by District
Total Populations, All Ages

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| **District 1** | | | | | | |
| Baldwin County | 98,280 | 84,565 | 12,640 | 630 | 221 | 22 |
| Clarke County | 27,240 | 15,527 | 11,625 | 45 | 85 | |
| Escambia County | 35,518 | 24,326 | 10,046 | 1,047 | 58 | 4 |
| Mobile County | 378,643 | 254,853 | 117,872 | 1,940 | 3,398 | 58 |
| Monroe County | 20,851 | 13,407 | 7,180 | 213 | 44 | |
| Washington County | 16,694 | 10,984 | 4,623 | 1,068 | 14 | |
| Total District 1 | 577,226 | 403,662 | 163,986 | 4,943 | 3,770 | 86 |
| **District 2** | | | | | | |
| Barbour County | 25,417 | 14,118 | 11,194 | 46 | 44 | 15 |
| Butler County | 21,892 | 13,049 | 8,798 | 24 | 19 | 2 |
| Coffee County | 40,240 | 32,702 | 6,917 | 163 | 317 | 141 |
| Conecuh County | 14,054 | 8,063 | 5,925 | 43 | 13 | 10 |
| Covington County | 36,478 | 31,551 | 4,777 | 72 | 48 | 30 |
| Crenshaw County | 13,635 | 10,048 | 3,544 | 27 | 11 | 5 |
| Dale County | 49,633 | 39,365 | 8,847 | 239 | 731 | 451 |

244a

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| District 2—Continued | | | | | | |
| Geneva County | 23,647 | 20,682 | 2,824 | 93 | 15 | 33 |
| Henry County | 15,374 | 9,918 | 5,395 | 31 | 6 | 24 |
| Houston County | 81,331 | 61,513 | 18,954 | 287 | 470 | 107 |
| Lee County | 87,146 | 64,889 | 20,407 | 132 | 1,584 | 134 |
| Monroe County | 3,117 | 913 | 2,192 | 2 | 10 | 0 |
| Montgomery County | 90,809 | 79,629 | 9,668 | 205 | 1,063 | 244 |
| Pike County | 27,595 | 17,814 | 9,548 | 146 | 68 | 19 |
| Russell County | 46,860 | 28,473 | 18,088 | 90 | 117 | 92 |
| Total District 2 | 577,228 | 432,727 | 187,078 | 1,600 | 4,516 | 1,807 |
| District 3 | | | | | | |
| Autauga County | 23,423 | 20,173 | 3,037 | 61 | 115 | 37 |
| Calhoun County | 116,034 | 92,873 | 21,578 | 296 | 869 | 418 |
| Chambers County | 36,876 | 23,575 | 13,221 | 41 | 13 | 26 |
| Chilton County | 32,458 | 28,647 | 3,674 | 63 | 38 | 36 |
| Clay County | 13,252 | 11,044 | 2,166 | 23 | 13 | 6 |
| Cleburne County | 12,730 | 12,084 | 587 | 20 | 13 | 26 |
| Coosa County | 11,063 | 7,242 | 3,782 | 34 | 4 | 1 |
| Elmore County | 49,210 | 37,850 | 11,039 | 137 | 129 | 55 |
| Randolph County | 19,881 | 15,138 | 4,686 | 29 | 21 | 7 |
| St. Clair County | 50,009 | 45,138 | 4,561 | 136 | 77 | 97 |
| Shelby County | 99,358 | 90,715 | 7,718 | 264 | 575 | 86 |

245a

| | | | | | | |
|---|---|---|---|---|---|---|
| Talladega County | 74,107 | 50,970 | 22,773 | 174 | 113 | 77 |
| Tallapoosa County | 38,826 | 28,493 | 10,212 | 62 | 37 | 22 |
| Total District 3 | 577,227 | 463,942 | 109,034 | 1,340 | 2,017 | 894 |
| District 4 | | | | | | |
| Blount County | 39,248 | 38,397 | 521 | 133 | 33 | 164 |
| Cherokee County | 19,543 | 18,154 | 1,291 | 51 | 24 | 23 |
| Cullman County | 67,613 | 66,744 | 560 | 134 | 117 | 58 |
| DeKalb County | 54,651 | 52,980 | 1,028 | 481 | 77 | 85 |
| Etowah County | 99,840 | 85,274 | 13,799 | 250 | 419 | 98 |
| Fayette County | 17,962 | 15,717 | 2,190 | 9 | 19 | 27 |
| Franklin County | 27,814 | 26,463 | 1,249 | 57 | 35 | 10 |
| Jefferson County | 17,620 | 17,379 | 183 | 36 | 15 | 7 |
| Lamar County | 15,715 | 13,805 | 1,862 | 24 | 10 | 14 |
| Lawrence County | 31,513 | 24,563 | 4,798 | 2,124 | 19 | 9 |
| Marion County | 29,830 | 28,759 | 967 | 57 | 35 | 12 |
| Marshall County | 65,818 | 64,399 | 1,062 | 211 | 104 | 42 |
| Pickens County | 334 | 166 | 168 | 0 | 0 | 0 |
| Walker County | 67,670 | 63,042 | 4,405 | 84 | 107 | 32 |
| Winston County | 22,053 | 21,925 | 57 | 42 | 26 | 3 |
| Total District 4 | 577,224 | 587,767 | 34,140 | 3,693 | 1,040 | 584 |
| District 5 | | | | | | |
| Colbert County | 51,666 | 42,820 | 8,568 | 137 | 93 | 48 |
| Jackson County | 47,796 | 44,696 | 1,968 | 1,020 | 90 | 22 |
| Lauderdale County | 79,661 | 71,560 | 7,695 | 165 | 196 | 45 |

246a

| Census Unit | Total Pop. | Total White | Total Black | Total Am. Ind. | Total Asian/PI | Total Other |
|---|---|---|---|---|---|---|
| District 5—Continued | | | | | | |
| Limestone County | 54,135 | 46,658 | 7,127 | 148 | 158 | 44 |
| Madison County | 238,912 | 184,197 | 48,116 | 1,601 | 4,232 | 766 |
| Marshall County | 5,014 | 4,962 | 25 | 20 | 7 | 0 |
| Morgan County | 100,043 | 89,122 | 10,081 | 310 | 370 | 160 |
| Total District 5 | 577,227 | 484,015 | 83,580 | 3,401 | 5,146 | 1,085 |
| District 6 | | | | | | |
| Choctaw County | 16,018 | 8,913 | 7,077 | 10 | 12 | 6 |
| Hale County | 2,565 | 1,794 | 764 | 5 | 2 | 0 |
| Jefferson County | 348,500 | 316,474 | 29,305 | 530 | 1,863 | 328 |
| Marengo County | 23,084 | 11,314 | 11,745 | 11 | 11 | 3 |
| Pickens County | 20,365 | 11,836 | 8,477 | 24 | 27 | 1 |
| Sumter County | 16,174 | 4,759 | 11,369 | 6 | 30 | 10 |
| Tuscaloosa County | 150,522 | 109,398 | 39,377 | 253 | 1,264 | 230 |
| Total District 6 | 577,228 | 464,488 | 108,114 | 839 | 3,209 | 578 |
| District 7 | | | | | | |
| Autauga County | 10,799 | 6,971 | 3,808 | 10 | 5 | 5 |
| Bibb County | 16,576 | 13,052 | 3,478 | 25 | 11 | 10 |
| Bullock County | 11,042 | 3,036 | 7,986 | 8 | 10 | 2 |
| Dallas County | 48,180 | 20,121 | 27,825 | 41 | 129 | 14 |
| Greene County | 10,153 | 1,966 | 8,181 | 3 | 0 | 3 |

247a

| | | | | | | |
|---|---|---|---|---|---|---|
| Hale County | 12,933 | 4,461 | 8,450 | 15 | 7 | 0 |
| Jefferson County | 285,405 | 84,464 | 199,033 | 323 | 1,344 | 241 |
| Lowndes County | 12,658 | 3,185 | 9,456 | 10 | 4 | 3 |
| Macon County | 24,928 | 3,443 | 21,340 | 24 | 99 | 22 |
| Montgomery County | 118,276 | 39,791 | 77,644 | 209 | 470 | 162 |
| Perry County | 12,759 | 4,503 | 8,219 | 16 | 14 | 7 |
| Wilcox County | 13,568 | 4,203 | 9,353 | 6 | 6 | 0 |
| Total District 7 | 577,227 | 189,196 | 384,773 | 690 | 2,099 | 469 |

248a

DB: Alabama

County Population by District
Ethnic Breakdown of Voting Age Populations

Plan: Box Substitute 2

Plan type: Congressional Districts

| Census Unit | Total Vot. Age | Vot. Age White | Vot. Age Black | Vot. Age Am. Ind. | Vot. Age Asian/PI | Vot. Age Other |
|---|---|---|---|---|---|---|
| **District 1** | | | | | | |
| Baldwin County | 72,747 | 64,059 | 7,938 | 459 | 159 | 132 |
| Clarke County | 19,085 | 11,684 | 7,346 | 29 | 22 | 4 |
| Escambia County | 26,051 | 18,450 | 6,840 | 703 | 32 | 26 |
| Mobile County | 270,610 | 190,842 | 75,791 | 1,286 | 2,279 | 412 |
| Monroe County | 14,508 | 9,893 | 4,433 | 150 | 28 | 4 |
| Washington County | 11,611 | 8,033 | 2,916 | 645 | 12 | 5 |
| Total District 1 | 414,612 | 302,961 | 105,264 | 3,272 | 2,532 | 583 |
| **District 2** | | | | | | |
| Barbour County | 17,953 | 10,744 | 7,130 | 36 | 30 | 13 |
| Butler County | 15,301 | 9,919 | 5,357 | 15 | 9 | 1 |
| Coffee County | 29,913 | 24,882 | 4,577 | 118 | 234 | 102 |
| Conecuh County | 10,136 | 6,278 | 3,815 | 27 | 11 | 5 |
| Covington County | 27,241 | 24,039 | 3,086 | 56 | 32 | 28 |
| Crenshaw County | 9,991 | 7,613 | 2,345 | 22 | 7 | 4 |
| Dale County | 35,757 | 29,228 | 5,529 | 184 | 518 | 298 |

|  |  |  |  |  |  |  |
|---|---:|---:|---:|---:|---:|---:|
| Geneva County | 17,757 | 15,821 | 1,837 | 71 | 12 | 16 |
| Henry County | 11,273 | 7,667 | 3,561 | 24 | 6 | 15 |
| Houston County | 58,858 | 46,249 | 12,041 | 214 | 288 | 66 |
| Lee County | 68,058 | 52,769 | 13,846 | 108 | 1,226 | 109 |
| Monroe County | 2,082 | 704 | 1,373 | 2 | 3 | 0 |
| Montgomery County | 69,393 | 61,636 | 6,701 | 152 | 734 | 170 |
| Pike County | 20,729 | 14,208 | 6,348 | 92 | 63 | 18 |
| Russell County | 34,380 | 21,762 | 12,396 | 67 | 95 | 60 |
| Total District 2 | 428,822 | 333,519 | 89,942 | 1,188 | 3,268 | 905 |
| District 3 |  |  |  |  |  |  |
| Autauga County | 16,684 | 14,581 | 1,955 | 38 | 85 | 25 |
| Calhoun County | 87,056 | 71,217 | 14,702 | 241 | 608 | 293 |
| Chambers County | 27,244 | 18,499 | 8,685 | 30 | 10 | 20 |
| Chilton County | 23,771 | 21,320 | 2,361 | 47 | 24 | 19 |
| Clay County | 9,934 | 8,497 | 1,407 | 16 | 10 | 4 |
| Cleburne County | 9,418 | 8,983 | 388 | 15 | 11 | 21 |
| Coosa County | 8,181 | 5,579 | 2,576 | 21 | 4 | 1 |
| Elmore County | 36,418 | 28,496 | 7,696 | 105 | 87 | 34 |
| Randolph County | 14,696 | 11,650 | 3,012 | 19 | 12 | 3 |
| St. Clair County | 36,699 | 33,259 | 3,230 | 106 | 51 | 53 |
| Shelby County | 72,167 | 66,406 | 5,147 | 179 | 379 | 56 |
| Talladega County | 53,614 | 38,551 | 14,805 | 129 | 79 | 50 |
| Tallapoosa County | 28,899 | 22,100 | 6,718 | 41 | 25 | 15 |
| Total District 3 | 424,781 | 349,138 | 72,682 | 987 | 1,380 | 594 |

250a

DB : Alabama

County Population by District
Ethnic Breakdown of Voting Age Populations

Plan : Box Substitute 2

Plan type : Congressional Districts

| Census Unit | Total Vot. Age | Vot. Age White | Vot. Age Black | Vot. Age Am. Ind. | Vot. Age Asian/PI | Vot. Age Other |
|---|---|---|---|---|---|---|
| **District 4** | | | | | | |
| Blount County | 29,212 | 28,615 | 366 | 94 | 24 | 113 |
| Cherokee County | 14,851 | 13,881 | 898 | 39 | 18 | 15 |
| Cullman County | 50,601 | 49,994 | 386 | 98 | 80 | 43 |
| DeKalb County | 40,744 | 39,666 | 694 | 283 | 43 | 58 |
| Etowah County | 75,251 | 65,349 | 9,299 | 182 | 353 | 68 |
| Fayette County | 13,360 | 11,801 | 1,523 | 6 | 11 | 19 |
| Franklin County | 20,910 | 19,978 | 867 | 39 | 19 | 7 |
| Jefferson County | 13,444 | 13,277 | 125 | 28 | 11 | 3 |
| Lamar County | 11,725 | 10,434 | 1,253 | 17 | 10 | 11 |
| Lawrence County | 22,874 | 18,702 | 3,095 | 1,061 | 12 | 4 |
| Marion County | 22,508 | 21,733 | 712 | 33 | 23 | 7 |
| Marshall County | 49,592 | 48,607 | 746 | 148 | 71 | 20 |
| Pickens County | 241 | 129 | 112 | 0 | 0 | 0 |
| Walker County | 50,560 | 47,546 | 2,847 | 67 | 79 | 21 |
| Winston County | 16,621 | 16,530 | 38 | 31 | 19 | 3 |
| Total District 4 | 432,494 | 406,242 | 22,961 | 2,126 | 773 | 392 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **District 5** | | | | | | |
| Colbert County | 39,118 | 33,112 | 5,825 | 96 | 54 | 31 |
| Jackson County | 35,482 | 33,503 | 1,342 | 563 | 57 | 17 |
| Lauderdale County | 60,580 | 55,008 | 5,275 | 128 | 137 | 32 |
| Limestone County | 40,529 | 35,087 | 5,197 | 113 | 101 | 31 |
| Madison County | 180,157 | 142,174 | 33,542 | 945 | 2,999 | 497 |
| Marshall County | 3,774 | 3,736 | 20 | 13 | 5 | 0 |
| Morgan County | 74,027 | 66,930 | 6,538 | 208 | 244 | 107 |
| Total District 5 | 433,667 | 369,550 | 57,739 | 2,066 | 3,597 | 715 |
| **District 6** | | | | | | |
| Choctaw County | 11,310 | 6,700 | 4,592 | 7 | 8 | 3 |
| Hale County | 1,835 | 1,330 | 501 | 3 | 1 | 0 |
| Jefferson County | 266,049 | 243,988 | 20,137 | 411 | 1,290 | 223 |
| Marengo County | 16,091 | 8,524 | 7,550 | 10 | 7 | 0 |
| Pickens County | 14,564 | 9,240 | 5,289 | 17 | 17 | 1 |
| Sumter County | 11,202 | 3,869 | 7,291 | 5 | 28 | 9 |
| Tuscaloosa County | 114,857 | 86,831 | 26,623 | 195 | 1,022 | 186 |
| Total District 6 | 435,908 | 360,482 | 71,983 | 648 | 2,373 | 422 |
| **District 7** | | | | | | |
| Autauga Count | 7,440 | 5,012 | 2,411 | 10 | 5 | 2 |
| Bibb County | 11,783 | 9,617 | 2,138 | 16 | 8 | 4 |
| Bullock County | 7,661 | 2,513 | 5,131 | 7 | 8 | 2 |
| Dallas County | 33,025 | 15,449 | 17,445 | 32 | 91 | 8 |
| Greene County | 6,811 | 1,641 | 5,165 | 3 | 0 | 2 |

252a

DB: Alabama

County Population by District
Ethnic Breakdown of Voting Age Populations

Plan: Box Substitute 2

Plan type: Congressional Districts

| Census Unit | Total Vot. Age | Vot. Age White | Vot. Age Black | Vot. Age Am. Ind. | Vot. Age Asian/PI | Vot. Age Other |
|---|---|---|---|---|---|---|
| Hale County | 8,781 | 3,442 | 5,328 | 8 | 3 | 0 |
| Jefferson County | 209,444 | 71,003 | 136,946 | 258 | 1,058 | 179 |
| Lowndes County | 8,263 | 2,513 | 5,742 | 4 | 3 | 1 |
| Macon County | 18,286 | 2,780 | 15,397 | 18 | 74 | 17 |
| Montgomery County | 82,308 | 30,967 | 50,749 | 151 | 338 | 103 |
| Perry County | 8,757 | 3,719 | 5,009 | 9 | 14 | 6 |
| Wilcox County | 8,956 | 3,297 | 5,649 | 6 | 4 | 0 |
| Total District 7 | 411,515 | 151,953 | 257,110 | 522 | 1,606 | 324 |

253a

DB: Alabama

### District Summary
### 1988 Pres. and Supreme Ct. Place #2 Election
### Plan: Box Substitute 2

Plan type: Congressional Districts

| District Name | 1988 Pres Dukakis | 1988 Pres Bush | Sup Court Adams (D) | Sup Court Lyon (R) |
|---|---|---|---|---|
| District 1 | 61,299 36.86% | 105,021 63.14% | 74,298 51.04% | 71,274 48.96% |
| District 2 | 51,994 33.88% | 101,477 66.12% | 69,857 57.03% | 52,633 42.97% |
| District 3 | 43,447 34.84% | 81,249 65.16% | 57,163 59.43% | 39,024 40.57% |
| District 4 | 71,182 43.10% | 93,978 56.90% | 80,528 58.68% | 56,715 41.32% |
| District 5 | 70,726 40.59% | 103,533 59.41% | 88,654 59.23% | 61,031 40.77% |
| District 6 | 60,761 30.79% | 136,574 69.21% | 84,975 46.83% | 96,498 53.17% |
| District 7 | 121,052 64.20% | 67,517 35.80% | 130,265 74.14% | 45,428 25.86% |
| Total | 480,461 41.07% | 689,349 58.93% | 585,740 58.09% | 422,603 41.91% |

254a

DB: Alabama

District Summary
Voter Registration, 1990 Governor & Lt. Governor Elections
Plan: Box Substitute 2

Plan type: Congressional Districts

| District Name | Reg. Vot. White | Reg. Vot. Black | 1990 Gov Hubbert | 1990 Gov Hunt | '90 LtGov Folsom | '90 LtGov McKee |
|---|---|---|---|---|---|---|
| District 1 | 262,533 80.37% | 64,112 19.63% | 68,708 48.63% | 72,572 51.37% | 81,298 63.13% | 47,489 36.87% |
| District 2 | 223,341 79.31% | 58,260 20.69% | 62,155 44.80% | 76,599 55.20% | 87,754 69.03% | 39,372 30.97% |
| District 3 | 204,670 82.45% | 43,568 17.55% | 53,278 44.99% | 65,150 55.01% | 75,072 69.86% | 32,393 30.14% |
| District 4 | 276,108 93.91% | 17,915 6.09% | 77,614 49.18% | 80,192 50.82% | 104,628 68.35% | 48,455 31.65% |
| District 5 | 305,094 88.51% | 39,613 11.49% | 71,010 43.46% | 92,393 56.54% | 100,588 65.87% | 52,128 34.13% |
| District 6 | 257,708 83.08% | 52,476 16.92% | 65,486 36.59% | 113,470 63.41% | 96,078 56.01% | 75,474 43.99% |
| District 7 | 143,950 48.99% | 149,904 51.01% | 111,927 67.12% | 54,832 32.88% | 127,679 80.41% | 31,104 19.59% |
| Total | 1,673,404 79.71% | 425,848 20.29% | 510,178 47.89% | 555,208 52.11% | 673,097 67.34% | 326,415 32.66% |

255a

DB: Alabama

### District Summary
### 1990 U.S. Senate Election & 1990 PSC Election
### Plan: Box Substitute 2

Plan type: Congressional Districts

| District Name | 1990 Sen. Heflin | 1990 Sen. Cabaniss | 1990 PSC Martin | 1990 PSC Walker |
|---|---|---|---|---|
| District 1 | 76,205 55.55% | 60,976 44.45% | 66,355 59.94% | 44,351 40.06% |
| District 2 | 76,450 57.36% | 56,822 42.64% | 66,964 63.40% | 38,650 36.60% |
| District 3 | 69,415 60.91% | 44,547 39.09% | 59,635 64.83% | 32,357 35.17% |
| District 4 | 92,940 63.57% | 53,268 36.43% | 84,586 65.33% | 44,891 34.67% |
| District 5 | 101,701 63.97% | 57,288 36.03% | 84,940 63.08% | 49,716 36.92% |
| District 6 | 85,340 49.05% | 88,641 50.95% | 77,757 49.71% | 78,660 50.29% |
| District 7 | 118,895 74.11% | 41,531 25.89% | 114,710 78.37% | 31,653 21.63% |
| Total | 620,946 60.64% | 403,073 39.36% | 554,947 63.41% | 320,278 36.59% |

256a

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

————

Civil Action No. 91-0787

PAUL CHARLES WESCH,

*Plaintiff,*

MICHAEL FIGURES, *et al.,*

*Intervenor-Plaintiffs,*

vs.

GUY HUNT, *et al.,*

*Defendants.*

————

ORDER

[Filed Mar. 9, 1992]

Before COX, Circuit Judge HAND, Senior District
Judge, and ALBRITTON, District Judge.

BY THE COURT

The motion of Defendant Billy Joe Camp to adopt the
plan enacted by the Legislature (Doc. #106) is DENIED
for the reasons stated in the Memorandum Opinion filed
this date.

257a

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

———

Civil Action No. 91-0787

PAUL CHARLES WESCH,

*Plaintiff*,

vs.

GUY HUNT, JAMES H. EVANS, BILLY JOE CAMP, LIONEL W. NOONAN, HARRY D'OLIVE, DEVON WIGGINS, OTHA LEE BIGGS, JERRY BOGAN, CLARENCE WATTERS, and TOM W. TURNER, all sued in their official or representative capacities only,

*Defendants*.

———

## COMPLAINT FOR DECLARATORY
## JUDGMENT, INJUNCTIVE AND OTHER RELIEF

———

### BACKGROUND AND JURISDICTION

1. This action arises under the Constitution of the United States, Article I, Section 2, the Fourteenth Amendment, Sections 1 and 2, and the Fifteenth Amendment; and 42 U.S.C. § 1983. The action challenges the constitutionality of the apportionment of the congressional districts of the State of Alabama as they presently exist under §§ 17-20-1 and 17-20-2 of the *Code of Alabama*.

2. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343 and 2284.

3. The Plaintiff seeks, *inter alia*, declaratory relief pursuant to 28 U.S.C. 2201 and 2202.

258a

## VENUE

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because (a) the Plaintiff's claims arise in the Southern District of Alabama in that the conduct of the Defendants threaten to cause immediate and irreparable harm, loss and damage to the constitutional rights of the Plaintiff, who resides and votes in this District and (b) the Defendants are all residents of the State of Alabama and the Defendants Noonan, D'Olive, Wiggins, Biggs, Bogan, Watters and Turner reside in the Southern District of Alabama.

## THREE-JUDGE COURT

5. The convening of a District Court of three judges in this action is required by 28 U.S.C. § 2284(a) because the action challenges the constitutionality of the apportionment of the congressional districts of the State of Alabama.

## PARTIES

6. The Plaintiff Paul Charles Wesch is a citizen of the United States and the State of Alabama and a resident and registered voter in the First Congressional District of the State of Alabama.

7. The Defendant Guy Hunt is the Governor of the State of Alabama. Pursuant to § 17-20-4 of the *Code of Alabama*, the Defendant Hunt is charged with the responsibility of estimating the returns of congressional elections in Alabama, determining which candidates have been elected, and notifying the successful candidates by proclamation. He is also entitled to notice of this action in accordance with 28 U.S.C. § 2284(b)(2). The Defendant Hunt is sued in his representative or official capacity only.

8. The Defendant James H. Evans is the Attorney General of the State of Alabama. § 17-20-4 of the *Code of Alabama* contemplates that the Defendant Evans may

259a

attend and assist the Governor in the execution of the Governor's duties with respect to determining and declaring the outcome of congressional elections. He is also entitled to notice of this action in accordance with 28 U.S.C. § 2284(b)(2). The Defendant Evans is sued in his representative or official capacity only.

9. The Defendant Billy Joe Camp is the Secretary of State of the State of Alabama. Under Alabama law, the Defendant Camp is vested with numerous duties with respect to the election of members of Congress. These duties include (a) certifying to the probate judge of each county the names of candidates for primary election, (b) certifying the names of the persons nominated in the primary elections, and (c) certifying the election of members of Congress following the general elections. The Defendant Camp is sued in his representative or official capacity only.

10. The Defendant Lionel W. Noonan is the Probate Judge of Mobile County, Alabama. He is sued in his representative or official capacity only.

11. The Defendant Harry D'Olive is the Probate Judge of Baldwin County, Alabama. He is sued in his representative or official capacity only.

12. The Defendant Devon Wiggins is the Probate Judge of Escambia County, Alabama. He is sued in his representative or official capacity only.

13. The Defendant Otha Lee Biggs is the Probate Judge of Monroe County, Alabama. He is sued in his representative or official capacity only.

14. The Defendant Jerry Bogan is the Probate Judge of Wilcox County, Alabama. He is sued in his representative or official capacity only.

15. The Defendant Clarence Watters is the Probate Judge of Clarke County, Alabama. He is sued in his representative or official capacity only.

260a

16. The Defendant Tom W. Turner is the Probate Judge of Washington County, Alabama. He is sued in his representative or official capacity only.

17. In their capacities as Probate Judges, the Defendants Noonan, D'Olive, Wiggins, Biggs, Bogan, Watters and Turner are all charged with numerous duties relating to the election of congressional representatives from the First Congressional District of Alabama. These duties include, *inter alia*, the preparation of ballots and the certification and return of election results in their respective counties to the Secretary of State.

18. At all material times, the Defendants have acted and will act under color of state law within the meaning of 42 U.S.C. § 1983.

## THE NEED FOR REDISTRICTING
## OR REAPPORTIONMENT

19. In 1981, the Alabama Legislature enacted the current version of § 17-20-1 of the *Code of Alabama*, which divided the state into seven congressional districts as more specifically set forth therein.

20. During 1990, the Bureau of the Census of the United States Department of Commerce conducted a census of the United States, including the State of Alabama, pursuant to the Constitution of the United States, Article I, Section 2.

21. Based upon the report from this census enumerating the population of the State of Alabama, it is the duty of the Alabama Legislature, under the Constitution of the United States, Article I, Section 2, the Fourteenth Amendment, Sections 1 and 2, and the Fifteenth Amendment, to enact a plan of redistricting or reapportionment for the election of members to the United States House of Representatives which meets the requirements of the one-person, one-vote rule and all other requirements imposed by law.

22. The Alabama Legislature has adjourned its regular session for the year without enacting a plan of redistricting. Based on public statements made by the Defendant Hunt, the Plaintiff is informed and believes that said Defendant, as Governor, has no intention of calling a special session for the purpose of adopting a redistricting plan. Accordingly, there is little or no likelihood that the Legislature will adopt a valid redistricting plan in time for such a plan to be effectively implemented prior to the congressional primary election scheduled for June 2, 1992.

23. If not otherwise enjoined, the Defendants will prepare for and conduct primary and general elections in the State of Alabama on June 2, 1992 and November 3, 1992, respectively, in violation of the Constitution of the United States, Article I, Section 2, the Fourteenth Amendment, Sections 1 and 2, and the Fifteenth Amendment, 42 U.S.C. § 1983 and the rights of this Plaintiff in particular.

24. Such elections would be in plain violation of the constitutional mandate of the one person-one vote rule and other requirements imposed by law in that, *inter alia*, the 1990 census demonstrates substantial variations in the populations of the congressional districts of the State of Alabama as presently apportioned.

25. Elections held under the current apportionment of congressional districts for the State of Alabama would substantially impair the Plaintiff's voting rights and result in a deprivation of the Plaintiff's civil rights under color of law.

26. The Plaintiff is prepared to submit to this Court a map which constitutionally apportions the State of Alabama into seven congressional districts and meets all legal requirements.

27. The Plaintiff has no adequate remedy at law.

262a

WHEREFORE, the Plaintiff prays that the Court:

1. Declare that the existing apportionment of the congressional districts for the State of Alabama is unconstitutional and invalid;

2. Redistrict the State into seven congressional districts of substantially equal population pursuant to a plan which the Plaintiff will submit to this Court for adoption herein;

3. Enjoin the exercise by the Defendants, and any and all persons acting in concert with them, of their powers relating to the administration or supervision of congressional elections for the congressional districts of the State of Alabama as presently apportioned in an unconstitutional manner;

4. Allow the Plaintiff his costs and reasonable attorney's fees; and

5. Grant such other relief as the Court deems proper.

/s/ Ferrell S. Anders
    FERRELL S. ANDERS

/s/ David A. Boyett, III
    DAVID A. BOYETT, III
    Attorneys for Plaintiff
    Paul Charles Wesch

Of Counsel:

HAMILTON, BUTLER, RIDDICK,
   TARLTON & SULLIVAN, P.C.
Post Office Box 1743
Mobile, Alabama 36633
(205) 432-7517

263a

IN THE CIRCUIT COURT
OF BARBOUR COUNTY, ALABAMA

———

Case No. CV-91-145

LEON MORRIS, SR. and DR. MOSES M. JONES,
*Plaintiffs,*

vs.

GUY HUNT, JAMES CLARK, JAMES FOLSOM, JR.,
RYAN DEGRAFFENRIED, and THE ALABAMA LEGISLATURE,
*Defendants.*

———

ORDER

This matter came before the Court for hearing on the
Plaintiffs' request for a Temporary Restraining Order.
The Court heard testimony in open court on December 13,
1991, and allowed the parties until Wednesday, Decem-
ber 18, 1991, to file supplemental briefs and the Defend-
ants have filed said briefs. The Court has chosen to treat
the Plaintiffs' request for a Temporary Restraining
Order as a Petition for a Writ of Mandamus or Pre-
liminary Injunction against the Governor of Alabama,
Guy Hunt. Based on the evidence presented, which is un-
controverted to this point, it is clear to the Court that
the Defendant, Guy Hunt, has refused to exercise his
constitutionally mandated responsibilities to see that the
laws of the State of Alabama are faithfully executed.
Under Section 120 of the *Alabama Constitution*, the Gov-
ernor of Alabama has responsibility to see to it that the
laws of this State are faithfully executed. In this respect,
the Governor has abdicated his responsibilities.

The uncontradicted testimony in this case is that the
Alabama Legislature, has for more than one year, pre-

264a

pared itself to adopt and implement a plan of Congressional Redistricting. On September 19 and September 20 of 1991 according to the sworn and uncontradicted testimony of James S. Clark, the Defendant Hunt promised Clark and other Legislative leadership of the Legislature of Alabama that he would call a special session of the Legislature in October, 1991, to deal with the question of Congressional Redistricting. Again, the uncontroverted testimony up to this point is that the Defendant Hunt made this deal with the Legislative leaders of this State in order to obtain funding for his discretionary account. The uncontroverted testimony is that the Defendant Hunt has breached his promise and has failed to call a special session of the Legislature. Moreover, the Defendant Hunt has filed a pleading in the United States District Court for the Southern District of Alabama in which he admits the current Congressional Districts violate the United States Constitution and indicates that he will not call a special session of the Alabama Legislature. It seems clear to this Court that the Defendant Hunt would rather for a Federal Court to draw Congressional Districts, instead of allowing the Alabama Legislature to fulfill the mandate conferred on it by Article I, Section 4, of the United States Constitution. To admit that the current districts are unconstitutional on the one hand and not allow the Legislature to correct this infirmity on the other, violates the Defendant Hunt's duty as Governor to faithfully execute the laws and in this Court's opinion constitutes bad faith and an abuse of official power and discretion.

For the above stated reasons, this Court hereby orders the Defendant, Guy Hunt, the Governor of Alabama, to call into Special Session the Alabama Legislature for the purpose of adopting a plan for Congressional Redistricting for the State of Alabama. The Governor is ordered and directed to call the Legislature into session no later than December 27, 1991. In the event the Defendant Hunt disagrees with the findings of fact and would like

265a

a chance to offer testimony that would in any way contradict the finding of facts and show cause why this order should not be implemented he may do so by notifying the Court of his wishes no later than Monday, December 23, 1991 at 12:00 noon. In the event the Defendant Hunt wishes to appear and show cause a hearing is hereby set for Friday, December 27, 1991 at 9:00 A.M. provided the Court and the other parties receive notice of the Defendant Hunt's intention as hereinabove specified.

This Writ is issued in the alternative, so that the Defendant Hunt is allowed the option of not complying with the Writ. In the event that the Defendant does not comply with this Writ, the Court will adopt one of the two plans that have been approved by the Alabama Legislature's Joint Legislative Committee on Redistricting.

The Court finds that the two plans that were adopted by the Joint Legislative Committee on Redistricting were considered and negotiated at length during 1991 and are the result of public meetings held across the State and open public deliberations of the Joint Legislative Committee. These plans were adopted by said Committee after lengthly study and the expenditure of a considerable amount of taxpayers money. In the event the Defendant Hunt does not comply with this Writ the Court hereby sets a hearing on Thursday, January 2, 1992 at 10:00 A.M. at which the Court will take testimony on the two plans. Testimony may be offered by the Plaintiffs, the Defendants or any other interested party with permission of the Court first had. At the close of the testimony this Court will adopt one of the two plans as the Redistricting Plan for the State of Alabama. This plan shall remain in effect until such time as the Alabama State Legislature adopts a Congressional Redistricting plan in a Regular or Special Session or until the 1992 elections are held, which ever occurs first.

The Court enters this Order with great reluctance and trepidation. It is the fervent hope and prayer of this

266a

Court that a point of light will shine through and that the Defendant Hunt will allow the duly elected representatives of the State of Alabama to do their constitutionally mandated duty and redistrict the State in time for the 1992 Congressional elections. However, should this not happen it is the opinion of the Court that it would be more appropriate for an elected Judge of the State of Alabama to decide the issue rather than appointed Federal Judges that have no accountability to the people of the State of Alabama.

The Court will set the other issues brought by the Plaintiffs in their complaint for hearings at a future date.

DONE this the 19th day of December, 1991.

/s/ William H. Robertson
WILLIAM H. ROBERTSON
Circuit Judge

267a

IN THE CIRCUIT COURT
OF BARBOUR COUNTY, ALABAMA
EUFAULA DIVISION

———

Civil Action No. CV 91-145

Leon Morris, Sr. and Dr. Moses M. Jones,
*Plaintiffs,*

v.

Guy Hunt, *et al.,*
*Defendants.*

———

### FINAL ORDER

THIS COURT held a Hearing in this case on December 13, 1991 at which time testimony was taken. The Court issued it's initial Order in this case on December 19, 1991. In the December 19, 1991 Order the Court made specific findings of fact and gave the Defendant, Gov. Guy Hunt, the opportunity to appear in Court if he so chose on December 27, 1991 to present additional testimony. The Governor appeared through counsel on December 27, 1991, but he did not testify himself. However, Defendant Guy Hunt's counsel was given opportunity to present whatever evidence, including some testimony taken by telephone. Further, Defendant Guy Hunt was given the opportunity to present any additional documentary evidence that he chose to enter into the record.

Based upon the evidence taken at the December 13, 1991 hearing and the December 27, 1991 hearing the Court finds that its original findings contained in the December 19, 1991 Order should remain intact. Based upon those findings and based upon the testimony taken on December 27, 1991 the Court Orders the Defendant, Guy Hunt, to issue a call, no later than January 8, 1992,

268a

to the Alabama Legislature to convene in special session for the purpose of considering Congressional Redistricting. To clarify the point of the dates the Governor is ordered to issue the call no later than January 8, 1992 for the Legislature to convene itself no later than January 14, 1992.

Some question has been raised about the jurisdiction of this Court since the Defendant, Guy Hunt, has filed a Notice of Appeal. This Court finds that the Order of December 19, 1991 was not an appealable Order but rather was in the nature of a Preliminary Injunction issued pursuant to Rule 65 ARCP. The Order issued today, December 27, 1991 is a Final Order on the Plaintiff's request for a Permanent Injunction pursuant to the same Rule 65 ARCP.

The Court does note with respect to the jurisdictional question that Defendant Guy Hunt's attorney, Al Agricola, indicated in open Court that he might well dismiss the prior Appeal and file a new Notice of Appeal of the Order being entered today. In the event that such a Dismissal does occur then there is no question about the jurisdiction of the Court. However, if the prior Notice of Appeal is allowed to remain intact this Court states again that the Order being issued today, December 27, 1991, is a Permanent Injunction and a Final Order within the meaning of the Alabama Rules of Civil Procedure.

In the event that the Governor does not issue a call for a special session of the Legislature on or before January 8, 1992, then this Court will be called upon to fashion an appropriate remedy. The Plaintiffs have suggested that the Court issue an Order requiring the Alabama Legislature to convene itself in special session. The Court declines to take that action at this time in hopes that when this case is addressed by the Alabama Supreme Court that some guidance as to the future handling of this case will be given to this Trial Judge.

269a

This Court withdraws and rescinds the portions of the December 19, 1991 Order in which the Court indicated that this Court would hold a Hearing on January 2, 1992 and develop its own plan of Congressional redistricting. That portion of the December 19, 1991 Order is deleted.

Done this the 27th day of December, 1991.

/s/ William Robertson
WILLIAM ROBERTSON
Circuit Judge

270a

THE STATE OF ALABAMA
JUDICIAL DEPARTMENT

IN THE SUPREME COURT OF ALABAMA

January 7, 1992

———

Barbour Circuit Court CV-91-145

———

1910421

GOVERNOR GUY HUNT

v.

LEON MORRIS, SR., and MOSES M. JONES

———

ORDER

The appellant having filed a motion for stay or injunction pending appeal, and the same having been submitted and duly considered by the Court,

IT IS ORDERED that the motion for stay is granted, and the order of the trial court of December 27, 1991, is hereby stayed.

Hornsby, C. J., and Maddox, Almon, Shores, Adams, Steagall, Kennedy, and Ingram, JJ., concur.

Houston, J., concurs specially (See attached).

I, Robert G. Esdale, as Clerk of the Supreme Court of Alabama, do hereby certify that the foregoing is a full, true and correct copy of the instrument(s) herewith set out as same appear(s) of record in said Court.

Witness my hand this 7th day of Jan. 1992.

/s/ Robert G. Esdale
Clerk, Supreme Court of Alabama

271a

1910421   *Governor Guy Hunt v. Leon Morris, Sr. and
Moses M. Jones*

HOUSTON, JUSTICE (concurring specially and
writing).

I vote to grant the motion to stay.

It is probable that no one in the State Judiciary has
the power to direct the Governor of Alabama to call a
special session of the legislature for the purpose of chang-
ing existing Congressional Districts so that they do not
violate the United States Constitution. Alabama Consti-
tution of 1901, §§ 42, 43. That is what this appeal must
determine.

The Governor knows that the existing Congressional
Districts within the State of Alabama violate the United
States Constitution. The Governor knows that the Ala-
bama Legislature is the ELECTED BRANCH OF
STATE GOVERNMENT that has the primary respons-
ibility to change the Congressional Districts so that they
will be constitutional. ONLY THE GOVERNOR HAS
THE POWER TO CALL A SPECIAL SESSION of the
Alabama Legislature so that it may do its duty. Consti-
tution, § 122. The law presumes that the Governor knows
his duty.

I am concerned with the following that appears in the
"Application for Stay or Injunction Pending Appeal"
filed in this Court by the Governor:

> "At this time, a trial is set to begin before a three-
> judge federal panel in Mobile, Alabama on January
> 3, 1992, in the case of *Wesch v. Hunt*, No. 91-0787-
> BH (S.D. Ala.). *The purpose of that litigation will
> insure timely and orderly congressional elections in
> the state. The [State] trial court's order, if not
> stayed, may frustrate that objective and create need-
> less voter confusion.*"

(Emphasis added.)

272a

I have the deepest respect for each of the federal judges on this three-judge panel. They are men of great personal integrity, with bright and principled judicial minds; however, I am not certain that the Governor will be properly discharging his duty if he purposely permits UNELECTED federal judges to redraw the Congressional Districts in Alabama, without first giving the duly ELECTED legislature that opportunity. It appears to me from the Governor's application to this Court that the Governor has refused to call a special session of the legislature and is resisting a court order requiring him to call a special session, because if he did, the legislature may redistrict the state and thereby "frustrate" the Governor's objective of having a "three-judge federal panel" redraw these Congressional Districts. The law presumes that the Governor knows his duty. As an Associate Justice of the Alabama Supreme Court, I presume that the Governor will not neglect his duty. The law requires that this Court grant this stay.

273a

THE STATE OF ALABAMA
JUDICIAL DEPARTMENT

IN THE SUPREME COURT OF ALABAMA

March 10, 1992

---

Barbour Circuit Court
CV-91-145

---

1910421

GOVERNOR GUY HUNT

v.

LEON MORRIS, SR. and MOSES M. JONES

---

## ORDER

The appellant having filed a motion to dismiss the appeal, and the same having been duly submitted to the Court,

IT IS ORDERED that the appeal of the issue of congressional redistricting is dismissed, and this cause is hereby remanded to the trial court for consideration of other matters pending in said cause.

Hornsby, C. J., and Maddox, Almon, Shores, Adams, Houston, Steagall, Kennedy, and Ingram, JJ., concur.

I, Robert G. Esdale, as Clerk of the Supreme Court of Alabama, do hereby certify that the foregoing is a full, true and correct copy of the instrument(s) herewith set out as same appear(s) of record in said Court.

Witness my hand this 11th day of Mar. 1992.

/s/ Robert G. Esdale
Clerk, Supreme Court of Alabama

274a

IN THE CIRCUIT COURT WITHIN AND FOR
THE COUNTY OF BARBOUR
STATE OF ALABAMA

EUFAULA DIVISION

————

Civil Action No. CV-91-145

LEON MORRIS, SR., AND DR. MOSES M. JONES,
*Plaintiffs,*

—vs—

GUY HUNT, JAMES CLARK, JAMES FOLSOM, JR.,
RYAN deGRAFFENREID AND THE ALABAMA LEGISLATURE,
*Defendants.*

————

BEFORE:   HON. WILLIAM H. ROBERTSON, Circuit Judge

Date:   Friday, December 13, 1991

Place:   Eufaula, Alabama

Time:   10:00 A.M.

### APPEARANCES

For the Plaintiffs:

DRAKE & PIERCE
Attorneys-at-Law
1509 University Boulevard
Tuscaloosa, Alabama
By:   HON. JACKSON R. DRAKE

For the Defendant Guy Hunt:

HON. ALGERT S. AGRICOLA, JR.
Attorney-at-Law
2000 Interstate Park Drive
Montgomery, Alabama

For the Defendant Legislature and
  All Other Defendants Except the Governor:

> HON. RON FOREHAND and HON. WALTER TURNER
> Assistant Attorneys General
> Room 303, 11 South Union Street
> Montgomery, Alabama

\*     \*     \*     \*

[31]                  DIRECT EXAMINATION

BY MR. DRAKE:

Q  Mr. Speaker, would you state your name, please.
A  James S. Clark.
Q  And where do you live?
A  I live at Apartment 13B, Oak Hill Subdivision, Eufaula, Alabama.
Q  Okay. Are you a resident of Barbour County, Alabama?
A  Yes, sir.
Q  Do you hold public office in the State of Alabama?
A  Yes, sir.
Q  What is that office?
A  Representative, 84th District of the Legislature of Alabama.
Q  And does that include Barbour County, Alabama?
A  That includes Barbour, and all of Russell but Phenix City, and a couple of small other beats around Phenix City.
Q  Okay. And you are a member of the Alabama House of Representatives?
A  Yes, sir.
[32]  Q  And are you also the Speaker of that house?
A  Yes, sir.
Q  Speaker Clark, in general can you tell the court when the Legislature began to deal with the issue of congressional redistricting?
A  We began by forming committee appointments— first, appointment of committees to the Constitutional

276a

Amendment in the House, and then we appointed under a statute, 10, 12 members to a reapportionment committee, and selected a chairman for that committee.

Q   Is that committee a joint committee?

A   That is a joint House-Senate committee.

Q   And who is the chair of that committee?

A   The chair—I believe it is a joint chairmanship. For the house is Jim Campbell—Representative Jim Campbell. For the Senate, I believe it is Wendall—Senator Ryan deGraffenried.

Q   Senator Ryan deGraffenried?

A   Yes, sir.

Q   And has that committee met throughout the year 1991 to study census data and develop a plan of redistricting for the State of Alabama?

A   Yes, sir. I might say that they studied what they had. Certain parts of that were late in coming and, so, there were problems with it when we received that [33] information.

Q   We alleged in our complaint that the census data were not complete until July 15, 1991. Is that correct, Mr. Speaker?

A   That is my understanding, yes, sir.

Q   Has there been a session of the Legislature since July 15, 1991?

A   Yes, sir.

Q   How many? Mr. Agricola said there had been two?

A   I believe that is correct.

Q   One or two?

A   I believe there has been—I believe there has been one. That's correct, September the 9th.

Q   One special session?

A   Yes, sir.

Q   And, was—did the Governor put the issue of congressional redistricting on that agenda for that special session?

A   No, sir.

277a

Q   Okay.  Have you and other leaders of the Legislature had conversations with Governor Hunt about calling a special session of the Legislature?

A   Yes, sir.

Q   Specifically on the issue of congressional [34] redistricting?

A   Yes, sir.

Q   What has the Governor said about that?

MR. AGRICOLA:   Object to hearsay, your Honor.

THE COURT:   What has the Governor said to Mr. Clark? What he heard?

MR. DRAKE:   He is a party.

THE COURT:   Certainly.

A   We had meetings to resolve the issue of the budgets that were still pending, correcting some things that were not done in a regular session.  We had a number of meetings, but two specific meetings in which we agreed to do certain things to resolve the budgetary process, and he, in turn, agreed to do other things.  He specifically stated that he would call a session on two occasions, two days during that time; that he would call a special session of the Legislature sometime around the first of October, and then we would carry out the commitment we made to him on other matters.

Q   Do I understand you to say that the Governor said he would call a special session of the Legislature around the first of October of 1991 to deal with the issue of congressional redistricting?

A   That's correct.

MR. DRAKE:   Thank you, Mr. Speaker.  These [35] other gentleman may have some questions.

## CROSS-EXAMINATION

BY MR. AGRICOLA:

Q   Mr. Speaker, my name is Al Agricola, and I represent Governor Hunt in this case.  Do you know a woman by the name of Marilyn Akers Terry?

A   Is that the secretary of Governor Hunt?

278a

Q   No, sir. She is the Chief of Staff for the Alabama Legislative Reapportionment Office.

A   Yes, sir.

Q   Do you know her?

A   Yes, sir.

Q   And she serves in that capacity as the chief staff person for the committee which is the Permanent Legislative Committee on Reapportionment?

A   Yes, sir.

Q   And, are you aware that it is her function to keep up with the activities of the committee and to assist the committee in the preparation and consideration of congressional redistricting plans for the State of Alabama?

A   She functions, as I see her role, in doing whatever the committee sets up her task for.

Q   And, is it also your understanding that she attends the meetings of the committee?

A   That's correct.

\*     \*     \*     \*

279a

# PUBLIC HEARING

# JOINT LEGISLATIVE COMMITTEE

## ON

## REAPPORTIONMENT

Joint Briefing Room
Alabama State House
Montgomery, Alabama

October 2, 1991

9:00 a.m.

280a

[20]   Mississippi where you have a district that's less than 65% that's not in an urban area. You have—Mike Epsey does have Jackson, and it goes out in the Mississippi Delta, but that's the only other place. Every other Black congressional district is located almost totally within an urban center where it's easier to turn out the vote and mobilize your voting population.

But under these two districts that's proposed by the NAACP, they rely upon a lot of rural counties to make up that population base to create those two districts. And I have serious concerns about whether either one of those districts could elect a Black.

The other thing that I don't know from looking at their plan is whether any of the incumbents, present incumbent congressmen are in those two districts.

As Joe talked about the captive vote, one thing that we know is that you do have Blacks, who will for whatever reasons, support White candidates in races. And particularly if you've got a White incumbent in either one of those two proposed districts, then you can see the problem that might create where you have a White incumbent [21] in one of those two, or in either one of those two proposed districts. And we don't know whether there is an incumbent congressman in one of those districts.

I think in all the other plans that have created a majority Black district, there is not a White incumbent in the majority Black district, maybe with the exception of, maybe, one or two plans that I saw. But I think usually the plans, most of the plans that came before this committee tried to avoid putting an incumbent in the majority Black district. But I can't say whether that NAACP plan dodges putting a White incumbent in those two districts. Thank you.

REPRESENTATIVE CAMPBELL: Anybody got any questions of Mr. Gray. We also have with us this morning, we have Ms. Lillian Jackson, who is, I understand, is the chairman of the state NAACP; is that correct?

281a

Ms. Jackson, we'd like to hear from you.  We're glad to have you with us today.

Ms. JACKSON:  Good morning.  I do represent the Alabama State Conference of Branches of the National Association for the Advancement of Colored People.  And I think first off I need to,

\*        \*        \*        \*

282a

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

———

CV-91-00787

———

PAUL CHARLES WESCH,

Plaintiff,

vs.

GUY HUNT, et al.,

Defendants.

———

This cause, coming on to be heard before the Honor-
able W. B. HAND, EMMETT R. COX, AND WILLIAM
H. ALBRITTON, III, Judges, in the United States Dis-
trict Court, Southern District of Alabama, Southern Di-
vision, Mobile, Alabama, on the 3rd and 4th days of Jan-
uary, 1992, commencing at approximately 9:00 a.m., the
following testimony was offered and proceedings had:

*    *    *    *

MR. ENGLAND: What are the concerns that you
have?

A   [By State Senator Michael Figures]   Well, I think,
first of all, the Pierce plan is clearly, in my opinion, a
plan designed to elect at least one more Republican Con-
gressman, that is one of the concerns. Of another con-
cern you have absolutely no input from anybody in the
African American community and frankly seem to have
only input, based on the testimony I have heard from
simply reading this disposition, from only Republican,
a Republican officials.

Mr. Pierce, himself, is chairman of the Lee County
Republicans and a Lee County Commissioner. He was in

283a

consultation with members of Dickinson's staff and members of Callahan's staff, the Montgomery County chairperson of the Republican Party, the Randolph County chairperson, the representative of—Curry, a Republican from Birmingham, and he was in contact with the Republican chairman of Jefferson County. I think it is clearly designed to do that.

284a

[216]  organization and what it has to offer, we are
open in our frame of mine and our philosophy to work
together for a plan that would be good for the state and
still comply with the civil rights law and the rights of all
people in the state, especially the African Americans who
have not had an opportunity to select one of our own to
represent not just us but all the people of Alabama in the
U. S. Congress.

JUDGE ALBRITTON: Do you have any problems
along those lines with what is called the Pierce "Zero"
plan that is not up there but have you seen it?

A  [By Carol Zippert]  I have but we do have some
problems with it, some reservations about it. I will have
to be looking at it again but I know the impact areas
around it concerned us and I forget how that district
was constructed and I think it is important to consult
with people that you are designing things for.

The philosophy of our organization is empowerment
and to help any and for the people to become empower-
ment, the people have to participate in decision making
process. So that was a basic concern, to our knowledge,
black Americans or Alabamians in this state were not
conferred with in regards to the development of that plan.

JUDGE ALBRITTON:  That's all I have.

\*      \*      \*      \*

285a

# CONSTITUTIONAL AND STATUTORY PROVISIONS

United States Constitution, Article 1, Section 4

The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

## 28 U.S.C. § 1253

Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges.

## 42 U.S.C. § 1973c

Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, * * * such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, * * * and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, stand-

286a

ard, practice, or procedure: Provided, that such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal office or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, or upon good cause shown, to facilitate an expedited approval within sixty days after such submission, the Attorney General has affirmatively indicated that such objection will not be made. Neither an affirmative indication by the Attorney General that no objection will be made, nor the Attorney General's failure to object, nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. In the event the Attorney General affirmatively indicates that no objection will be made within the sixty-day period following receipt of a submission, the Attorney General may reserve the right to reexamine the submission if additional information comes to his attention during the remainder of the sixty-day period which would otherwise require objection in accordance with this section. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court.