**FILED**
2021 Dec-23 PM 07:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Treva Thompson, Timothy Lanier, Pamela King, Darius Gamble, and Greater Birmingham Ministries, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 2:16-cv-783-ECM-SMD |
| John H. Merrill, in his official capacity as Secretary of State, Cindy Sahlie, in her official capacity as Chair of the Montgomery County Board of Registrars, and Leigh Gwathney, in her official capacity as Chair of the Board of Pardons and Paroles, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ALABAMA BOARD OF PARDONS AND PAROLES CHAIR LEIGH GWATHNEY'S OBJECTIONS AND ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO HER**

Pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 33, Alabama Board of Pardons and Paroles Chair Leigh Gwathney, who is sued in her official capacity in this litigation, hereby objects and responds to Plaintiffs' interrogatories to her dated March 11, 2020, as set out below.[1]

**General Statement**

Chair Gwathney has relied on the information presently available to her. Further or different information may be discovered during this phase of the litigation. Chair Gwathney will amend her Objections and Responses to the extent required under Fed. R. Civ. P. 26.

Chair Gwathney's Answers to each Interrogatory are made subject to all objections as to privilege, competence, relevance, materiality, propriety, and admissibility, as well as any and all

---

[1]   Due to the COVID-19 pandemic, in emails dated March 26, 2020, the State Defendants requested, and were granted, an extension of time until May 11, 2020 to respond.

other objections and grounds that would require the exclusion of evidence. Chair Gwathney reserves the right to make any and all such objections at the appropriate time.

**General Objections**

Chair Gwathney objects to each and every one of Plaintiffs' *Definitions* and *Instructions* to the extent they purport to impose any requirements or obligations different from, or greater than, those contained in the Federal Rules of Civil Procedure, applicable orders of the Court, and/or related agreements.

Chair Gwathney objects to each and every one of Plaintiffs' *Definitions* and *Instructions* as inconsistent with the GUIDELINES TO CIVIL DISCOVERY PRACTICE IN THE MIDDLE DISTRICT OF ALABAMA, which provide that "Lengthy and complex preambles and definitions in discovery requests are discouraged, particularly where they operate to give unexpected breadth or inappropriate effect to the meaning of words which are otherwise reasonably clear." GUIDELINES TO CIVIL DISCOVERY PRACTICE IN THE MIDDLE DISTRICT OF ALABAMA at § I. C.

Chair Gwathney objects to *Definition no. 1* and *Instruction no. 3*, which purport to impose a duty on her to consult with "all persons acting or purporting to act on her behalf, including but not limited to her predecessors, agents, representatives, employees, officers, consultants, and/or contractors" and consultants, respectively. Chair Gwathney will not look beyond current Pardons and Paroles employees.  Not only do her predecessors not act on her behalf, but it is unreasonable to expect her to provide sworn testimony about information unknown to her office, *e.g.,* consultants and contractors. Additionally, Plaintiffs' *Definition no. 1* and *Instruction no. 3* attempt to impose a burden that is not proportional to the needs of the case.

Chair Gwathney objects to *Instruction no. 1*, which states that "these Interrogatories seek responsive information and Documents authored, generated, disseminated, drafted, produced,

2

reproduced, or otherwise created or distributed relating to the period from January 1, 2015 to the present." While Chair Gwathney will read each Interrogatory as seeking information from no earlier than January 1, 2015, Interrogatories do not seek documents, and Plaintiffs' Instruction is thus contrary to Fed. R. Civ. P. 33 and the GUIDELINES TO CIVIL DISCOVERY PRACTICE IN THE MIDDLE DISTRICT OF ALABAMA. Should Chair Gwathney opt to produce business records to answer an Interrogatory, she will do so consistent with Fed. R. Civ. P. 33(d), and not with the Plaintiffs' contrary *Instruction No. 2.*

Chair Gwathney objects to *Instruction no. 8*, which purports to add a discrete subpart to each Interrogatory seeking a description of "all efforts made . . . to obtain the information necessary to answer the Interrogatory" if she lacks knowledge herself.

Chair Gwathney objects to *Instruction no. 10*, which purports to add a discrete subpart to each Interrogatory seeking identification of any individual whom she believes may have "knowledge necessary to respond to the Interrogatory" if she does not.

Chair Gwathney objects that some Interrogatories contain discrete subparts and should be fairly counted as more than one Interrogatory. She reserves the right to object to any subsequently-propounded Interrogatories that she believes take Plaintiffs beyond the number permitted by Fed. R. Civ. P. 33 or any Order of this Court.

Chair Gwathney objects to producing any information from pardon files on the basis of the State's pardon file privilege, which is codified at Ala. Code § 15-22-36(b). While Magistrate Judge Doyle rejected application of the privilege in this federal lawsuit, he recognized the great burden placed on Chair Gwathney in producing privileged records. Doc. 200 at 4-5. At a minimum, that burden is undeniably part of any Fed. R. Civ. P. 26(b)(1) analysis.

**Interrogatory No. 1**

Identify all individuals who have received pardons from YOUR office from January 1, 2015 to the present who had outstanding fines, fees, or restitution at the time of the pardon, the date of the pardon, and the amount of outstanding fines, fees, or restitution at the time of the pardon.

**Objections:**

Chair Gwathney objects to this Interrogatory as not "proportional to the needs of the case, considering . . . the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

This Interrogatory demands the Board of Pardons and Paroles conduct a review of records for persons who are not parties to this case. Because the Plaintiffs have not established "how information in non-parties' parole files is relevant to their individual claims," such a review of all pardon files is unduly burdensome in light of the needs of the case. Doc. 200 at 4.

To the extent that the Plaintiffs are trying to use this Interrogatory to secure an update to previously provided databases, Chair Gwathney objects on grounds that the Interrogatory is not proportional and is unduly burdensome insofar as she has already produced the databases—twice—and they contain thousands of records for non-parties. Chair Gwathney will not produce another update to the databases.

To the extent that this Interrogatory seeks a review of paper pardon files—since databases have already been provided to the Plaintiffs and updated—such a paper-based review would be disproportional and unduly burdensome. Between January 1, 2015 and April 30, 2020, the Board of Pardons and Paroles granted 3,080 pardons to non-parties. The Board will not undertake a paper-based review.

4

**Answer:**

The Board has previously produced databases, which include records of all individuals who applied for a pardon and were electronically tracked by the Board of Pardons and Paroles along with identifying information for each individual. The databases also include the result of the individual's application and a free text field used to provide additional details to application handlers. The database does not record amounts of outstanding fines, fees, or restitution owed. Thus, the databases would not be sufficient on their own to fully answer this Interrogatory, and a complete answer could only be obtained through an unduly burdensome physical review of paper pardon files. Between January 1, 2015 and April 30, 2020, the Board of Pardons and Paroles held 4,083 pardon hearings and granted a pardon about 75% of the time, resulting in 3,080 pardons. A physical file review of all 3,080 of these pardon files would be required to answer this Interrogatory.

**Interrogatory No. 2**

Identify all individuals who have received remission of fines from January 1, 2015 to the present, the date of the remission, and the amount of the remission.

**Objections:**

Chair Gwathney objects to this Interrogatory as not "proportional to the needs of the case, considering . . . the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

This Interrogatory demands the Board of Pardons and Paroles conduct a review records for persons who are not parties to this case. Because the Plaintiffs have not established "how information in non-parties' parole files is relevant to their individual claims," such a review of all remission files is unduly burdensome in light of the needs of the case. Doc. 200 at 4.

5

To the extent that the Plaintiffs are trying to use this Interrogatory to secure an update to the previously provided remittance database, Chair Gwathney objects on grounds that the Interrogatory is not proportional and is unduly burdensome insofar as she has already produced the database and it contains records for non-parties. Chair Gwathney will not produce an update to the database.

To the extent that this Interrogatory seeks a review of paper pardon files—since the remittance database has already been provided to the Plaintiffs—such a paper-based review would be disproportional and unduly burdensome. While there are many fewer entries in the remittance database and so fewer paper pardon files to pull, they are still the paper pardon files of non-parties. The Board will not undertake a paper-based review.

**Answer:**

The Board of Pardons and Paroles has a remissions database that currently contains roughly 250 entries. This database was produced to the Plaintiffs in its then-current form in 2018. The database includes records of all individuals who applied for a remission of fine and were electronically tracked by the Board of Pardons and Paroles along with identifying information for each individual. The database also includes the result of the individual's application but does not record the amount of the remission. Thus, the database would not be sufficient on its own to fully answer this Interrogatory, and a complete answer could only be obtained through an unduly burdensome physical review of paper pardon files.

**Interrogatory No. 3**

Describe in detail the process by which YOUR office identifies what outstanding fines, fees, and restitution are owed by a CERV applicant, including the officials involved, the databases consulted, and any procedures or guidelines used, with respect to applicants with Alabama convictions, applicants with federal convictions, and applicants with out-of-[S]tate convictions.

6

**Objections:**

Chair Gwathney objects to this Interrogatory as not "relevant to any parties' claim or defense and proportional to the needs of the case, considering . . . the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Plaintiffs Thompson and Gamble do not deny that they owe court-ordered monies, and this Interrogatory goes far beyond asking what they would need to pay in order to be eligible for a CERV. Additionally, Plaintiffs Thompson and Gamble do not have federal or out-of-State convictions, and Plaintiffs have already secured sworn deposition testimony about matters contained in this Interrogatory.

**Answer:**

Generally, the process that should be followed in the field offices for investigating an application for a CERV is as follows:

- Run an NCIC to determine all felony convictions involving moral turpitude. (Staff were trained on the list of felonies involving moral turpitude found in Ala. Act No. 2017-378.)

- Run a statewide index search on AOC to search for all felony convictions involving moral turpitude.

- Review any old PSIs (pre-sentence and post-sentence reports) for felony convictions involving moral turpitude.

- If a CERV applicant has a conviction for a felony involving moral turpitude, verify that all fines, court costs, fees, and victim restitution ordered at the time of sentencing on the disqualifying conviction(s) has/have been paid. Do so by checking AOC's Enforcement SSN Account Browse (screen EC02) by going to F-10 from the Face Sheet. If the applicant

7

has out-of-State or Federal convictions, contact that jurisdiction to verify all fines, court costs, fees, and victim restitution ordered at the time of sentencing on the disqualifying conviction(s) has/have been paid. For out-of-State or Federal convictions, document under the "Remarks" section the name of the person who verified the costs were paid.

- Check the Face Sheet on AOC to determine that the applicant is no longer under sentence. If the applicant was on Community Corrections, Unsupervised Probation, *etc.*, verify he/she has completed the sentence. If the conviction is an out-of-State or Federal conviction, document under the "Remarks" section the name of the person who verified the applicant has completed his/her sentence.

In addition to using AOC and NCIC databases, the Board of Pardons and Paroles' practice for investigating a CERV application also involves searching for pending criminal felony charges or active warrants. Records from the prosecuting District Attorney's Office may also be reviewed by investigating staff as well as the local Circuit Court Clerk's Office. For older cases, local probation and parole field office files may be reviewed. Alacourt.com is an additional resource used to review images of court documents by investigating staff. For applicants with federal or out-of-State convictions, established contacts with other jurisdictions are consulted as necessary. Also, the agency may contact the applicant for additional information as needed and applicants may contact the agency to bring errors to the attention of investigating staff.

Effective March 16, 2020, Pardons and Paroles' Administrative Rules, specifically Alabama Administrative Code Section 640-X-7-.02, provided interested individuals with an application form for a CERV. This rule and the CERV application are posted to the agency's official website.

8

**Interrogatory No. 4**

Identify, in order, the most common reasons why a CERV application is denied and the percentage of total denials attributed to outstanding fines, fees, or restitution.

**Objections:**

Chair Gwathney objects to this Interrogatory as not "proportional to the needs of the case, considering . . . the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

This Interrogatory seeks statistical information not currently maintained by the Board of Pardons and Paroles and which would be unduly burdensome to obtain and analyze. *Cf.* Fed. R. Civ. P. 26(b)(2)(B). Existing agency data has already been produced to Plaintiffs *via* databases, which may be responsive in part to this Interrogatory; however, the databases alone would be insufficient to fully respond, and a manual review of thousands of paper files of non-parties would be required.[2] It would be unduly burdensome to conduct a physical review of thousands of paper pardon files and collect statistical data not currently maintained or available in order to supplement databases previously produced to Plaintiffs. Moreover, if such a review were to be undertaken, expert analysis would likely be needed to ascertain the answer to this Interrogatory, and paying an expert for that purpose would be unduly burdensome and unnecessarily expensive for the Board of Pardons and Paroles. Thus, gathering and analyzing the information needed to respond to this Interrogatory would be unduly burdensome and not proportional to the needs of the case.

---

[2]    Because the Plaintiffs have not established "how information in non-parties' parole files is relevant to their individual claims," such a statistical review of all CERV files is unduly burdensome and not proportional in light of the needs of the case. Doc. 200 at 4.

**Answer:**

The only way to accurately ascertain this information would be for the Board of Pardons

and Paroles to conduct an unduly burdensome physical review of thousands of paper pardon files

and collect statistical data not currently maintained or available in order to supplement databases

previously produced to Plaintiffs in this case. Analysis of manually collected data in conjunction

with produced databases would be required. Analysis of the databases alone cannot answer this

Interrogatory. The databases include records of all individuals who applied for a CERV and were

electronically tracked by the Board of Pardons and Paroles along with identifying information for

each individual. The databases also include the result of the individual's application and a free text

field used to provide additional details to application handlers. However, these data were used to

assist in the processing of applications and were not recorded in a uniform way to produce statistics

such as frequency counts or percentages. Moreover, in cases where multiple applications were

received by the Board of Pardons and Paroles for the same applicant, data pertaining to previous

applications would have been overwritten due to database design and the agency's practice of

updating an applicant's existing record rather than creating a new record for each application.

Also, instances of duplicate records exist in the databases in error.

**Interrogatory No. 5**

Identify all court costs, fees, surcharges, criminal fines or other legal financial obligations
(other than restitution) imposed under Alabama [S]tate law that can disqualify an applicant from
obtaining a CERV, the payee for each legal financial obligation identified, the purpose of each
legal financial obligation identified, and the use for which the funds for each legal financial
obligations are directed.

**Objections:**

Chair Gwathney objects to this Interrogatory as not "proportional to the needs of the case,

considering . . . the parties' relative access to the relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the

10

proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Chair Gwathney does

not have this information, and it would be unduly burdensome for her to have to acquire it for

Plaintiffs, especially when they likely have access to many of the sources of information to which

she would look. Moreover, there is no dispute that (1) Plaintiff Thompson owes more than $33,000

in victim restitution that she has not made payments toward since 2015, (2) Plaintiff Gamble owes

nearly $49,000 on a fine, but is making $25 monthly payments toward a post-sentencing fee, and

(3) Plaintiff Thompson's restitution and Plaintiff Gamble's fine make these Plaintiffs ineligible for

a CERV.

**Answer:**

The Board of Pardons and Paroles investigates CERV applications to determine whether

the felon has outstanding fines, court costs, fees, and victim restitution ordered by the sentencing

court at the time of sentencing on disqualifying cases. *See* Ala. Code § 15-22-36.1(a)(3). The

Board of Pardons and Paroles does not determine or oversee the payees, purposes, and uses for the

court ordered monies imposed on felons, and thus does not have the information demanded by this

Interrogatory.

**Interrogatory No. 6**

Describe in detail the process by which YOUR office determines that a financial obligation
owed by an applicant is disqualifying, including the officials involved, the databases consulted,
and any procedures or guidelines used, with respect to applicants with Alabama convictions,
applicants with federal convictions, and applicants with out-of-[S]tate convictions.

**Objections:**

Chair Gwathney objects to this Interrogatory as not "relevant to any parties' claim or

defense and proportional to the needs of the case, considering . . . the parties' relative access to the

relevant information, the parties' resources, the importance of the discovery in resolving the issues,

and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.

R. Civ. P. 26(b)(1).  Plaintiffs Thompson and Gamble do not deny that they owe court-ordered

monies, and this Interrogatory goes far beyond asking what they would need to pay in order to be

eligible for a CERV.  Additionally, Plaintiffs Thompson and Gamble do not have federal or out-

of-State convictions.

Chair Gwathney further objects to this Interrogatory as vague and/or ambiguous.

**Answer:**

The response to Interrogatory No. 3, above, covers the general process for investigating a

CERV application.  The Board of Pardons and Paroles looks to an individual's case(s) of

conviction to determine whether each conviction is disqualifying for purposes of issuing a CERV.

If fines, court costs, fees, and/or victim restitution ordered by the sentencing court at the time of

sentencing is/are owed on any disqualifying conviction, the same must be paid for a CERV to be

granted under law.  *See* Ala. Code § 15-22-36.1(a)(3); Ala. Admin. Code § 640-X-7-.02.

**Interrogatory No. 7**

Describe in detail the process by which YOUR office determines whether an outstanding
balance on LFOs is applicable to a disqualifying LFO rather than a non-disqualifying LFO,
including the officials involved, the databases consulted, and any procedures or guidelines used,
with respect to applicants with Alabama convictions, applicants with federal convictions, and
applicants with out-of-[S]tate convictions.

**Objections:**

Chair Gwathney objects to this Interrogatory as not "relevant to any parties' claim or

defense and proportional to the needs of the case, considering . . . the parties' relative access to the

relevant information, the parties' resources, the importance of the discovery in resolving the issues,

and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.

R. Civ. P. 26(b)(1).  Plaintiffs Thompson and Gamble do not deny that they owe court-ordered

monies, and this Interrogatory goes far beyond asking what they would need to pay in order to be

eligible for a CERV. Additionally, Plaintiffs Thompson and Gamble do not have any non-disqualifying convictions, any federal convictions, or any out-of-State convictions.

Chair Gwathney further objects to this Interrogatory as vague and/or ambiguous.

**Answer:**

The response to Interrogatory No. 3, above, covers the general process for investigating a CERV application. The Board of Pardons and Paroles looks to an individual's case(s) of conviction to determine whether each conviction is disqualifying for purposes of issuing a CERV. If fines, court costs, fees, and/or victim restitution ordered by the sentencing court at the time of sentencing is/are owed on any disqualifying conviction, the same must be paid for a CERV to be granted under law. *See* Ala. Code § 15-22-36.1(a)(3); Ala. Admin. Code § 640-X-7-.02.

**Interrogatory No. 8**

Identify all instances where YOUR office initially denied a CERV but ultimately determined that the individual was in fact entitled to a CERV at the time of application and granted the CERV, including information about who identified the error, how quickly the error was identified, and how the applicant was notified.

**Objections:**

Chair Gwathney objects to this Interrogatory as not "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and therefore outside the scope of permissible discovery. Count 13 does not allege that the Board of Pardons and Paroles made errors in the processing of CERV applications; it alleges that the process as set forth in Ala. Code § 15-22-36.1(a)(3) amounts to wealth-based discrimination. Doc. 1 at ¶¶ 245-252; doc. 93 at ¶¶ 65-69. Evidence of errors in the processing of CERV applications is neither relevant nor probative in proving this Count.

Chair Gwathney objects to this Interrogatory as not "proportional to the needs of the case, considering . . . the parties' relative access to the relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Plaintiff's Interrogatory seeks for the Board of Pardons and Paroles to conduct an extensive review of databases already supplied to the Plaintiffs and thousands of paper pardon files of non-parties. Because the Plaintiffs have not established "how information in non-parties' parole files is relevant to their individual claims," such a review is unduly burdensome in light of the needs of the case. Doc. 200 at 4.

**Answer:**

The only way to accurately ascertain this information would be for the Board of Pardons and Paroles to conduct an unduly burdensome physical review of thousands of paper pardon files and collect statistical data not currently maintained or available in order to supplement databases previously produced to Plaintiffs in this case. These databases include records of all individuals who applied for a CERV and were electronically tracked by the Board of Pardons and Paroles along with identifying information for each individual. The databases also include the result of the individual's application and a free text field used to provide additional details to application handlers. However, these data were used to assist in the processing of applications and were not recorded to contain the level of detail sought by this Interrogatory. Moreover, in cases where multiple applications were received by the Board of Pardons and Paroles for the same applicant, data pertaining to previous applications would have been overwritten due to database design and the agency's practice of updating an applicant's existing record rather than creating a new record for each application. Thus, the databases alone would be insufficient and an unduly burdensome review of thousands of paper pardon files of non-parties would need to be reviewed to answer this Interrogatory.

14

**Interrogatory No. 9**

Describe in detail all policies and procedures in place to perform quality control of CERV applicant investigations and identify errors in the processing of CERV applications.

**Objections:**

Chair Gwathney objects to this Interrogatory as not "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), and therefore outside the scope of permissible discovery. Count 13 does not allege that the Board of Pardons and Paroles made errors in the processing of CERV applications; it alleges that the process as set forth in Ala. Code § 15-22-36.1(a)(3) amounts to wealth-based discrimination. Doc. 1 at ¶¶ 245-252; doc. 93 at ¶¶ 65-69. Evidence of errors in the processing of CERV applications is neither relevant nor probative in proving this Count.

Chair Gwathney objects to this Interrogatory as not "proportional to the needs of the case, considering . . . the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**Answer:**

Current Board of Pardons and Paroles' quality control practices involve promptly issuing the initial CERV assignment to the local field office for investigation where pertinent local records may be accessed as necessary, especially for older disqualifying felony convictions. After local supervisor review and approval, the initial investigation is returned to Pardons and Paroles Headquarters for specialized Board Operations staff in the Pardon Unit to conduct a review and correct any issues identified. Within Board Operations, supervisory staff conduct a secondary review as well. The Pardons and Paroles Director's designee conducts a final review and issues the CERV. During the investigation and review process, in-house attorneys are available to answer questions that require legal research or a legal opinion as they arise. Regular training is conducted

15

both formally and informally for impacted agency staff as to the CERV law, updates thereto, and

applicable processes, and procedures. Also, the agency may contact the applicant for additional

information as needed and applicants may contact the agency to bring errors to the attention of

investigating staff.

**Interrogatory No. 10**

Identify all instances where YOUR office has identified errors or problems in the processing of CERV applications and what actions YOUR office took to correct those errors or problems, including any efforts to notify applicants wrongly denied a CERV.

**Objections:**

Chair Gwathney objects to this Interrogatory as not "relevant to any party's claim or

defense," Fed. R. Civ. P. 26(b)(1), and therefore outside the scope of permissible discovery. Count

13 does not allege that the Board of Pardons and Paroles made errors in the processing of CERV

applications; it alleges that the process as set forth in Ala. Code § 15-22-36.1(a)(3) amounts to

wealth-based discrimination. Doc. 1 at ¶¶ 245-252; doc. 93 at ¶¶ 65-69. Evidence of errors in the

processing of CERV applications is neither relevant nor probative in proving this Count.

Chair Gwathney objects to this Interrogatory as not "proportional to the needs of the case,

considering . . . the parties' relative access to the relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Plaintiff's Interrogatory seeks for the Board of Pardons and Paroles to conduct an extensive

review of databases already supplied to the Plaintiffs and thousands of paper pardon files of non-

parties. Because the Plaintiffs have not established "how information in non-parties' parole files

is relevant to their individual claims," such a review is unduly burdensome in light of the needs of

the case. Doc. 200 at 4.

16

**Answer:**

The only way to accurately ascertain this information would be for the Board of Pardons and Paroles to conduct an unduly burdensome physical review of thousands of paper pardon files and collect statistical data not currently maintained or available in order to supplement databases previously produced to Plaintiffs in this case. These databases include records of all individuals who applied for a CERV and were electronically tracked by the Board of Pardons and Paroles along with identifying information for each individual. The databases also include the result of the individual's application and a free text field used to provide additional details to application handlers.  However, these data were used to assist in the processing of applications and were not recorded to contain the level of detail sought by this Interrogatory.  Moreover, in cases where multiple applications were received by the Board of Pardons and Paroles for the same applicant, data pertaining to previous applications for the same individual would have been overwritten due to database design and the agency's practice of updating an applicant's existing record rather than creating a new record for each application.  Thus, the databases alone would be insufficient and an unduly burdensome review of thousands of paper pardon files of non-parties would need to be reviewed to answer this Interrogatory.

\*\*\*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Answers to Interrogatories are true and correct to the best of my knowledge, information and belief.

Executed on: __5/11/2020__

_____
Leigh Gwathney
Chair
Alabama Board of Pardons and Paroles

18

Respectfully submitted,

Steve Marshall
 *Attorney General*

James W. Davis (ASB-4063-I58J)
 *Deputy Attorney General*

s/ Misty S. Fairbanks Messick
Winfield J. Sinclair (ASB-1750-S81W)
Misty S. Fairbanks Messick (ASB-1813-T71F)
Brad Chynoweth (ASB-0030-S63K)
*Assistant Attorneys General*

Office of the Attorney General
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
telephone:      334.353.8674
facsimile:      334.353.8400
Jim.Davis@AlabamaAG.gov
Winfield.Sinclair@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Brad.Chynoweth@AlabamaAG.gov

## Certificate of Service

Pursuant to an agreement memorialized in the Report of the Parties' Planning Meeting, electronic service is acceptable for this document. I hereby certify that I have served a copy of the foregoing document on Danielle Lang (dlang@campaignlegalcenter.org), Mark P. Gaber (mgaber@campaignlegal center.org), Molly Danahy (mdanahy@campaignlegal.org); Jim Blacksher (jblacksher@ns.sympatico.ca), Jason P. Hipp (JHipp@jenner.com), and J. Mitch McGuire (jmcguire@mandabusinesslaw.com), six of the counsel for Plaintiffs, *via* email on this the 11th day of May 2020.

s/ Misty S. Fairbanks Messick
Of Counsel