

# The Color of Justice

## Racial and Ethnic Disparity in State Prisons



**THE SENTENCING PROJECT**

RESEARCH AND ADVOCACY FOR REFORM

# THE SENTENCING PROJECT

**RESEARCH AND ADVOCACY FOR REFORM**

For more information, contact:

The Sentencing Project
1705 DeSales Street NW
8th Floor
Washington, D.C. 20036

(202) 628-0871

sentencingproject.org
twitter.com/sentencingproj
facebook.com/thesentencingproject
instagram.com/thesentencingproject/

This report was authored by Ashley Nellis, Ph.D., Senior Research Analyst at The Sentencing Project. Substantial research assistance was provided by former Research Fellows Skye Liston and Savannah En.

The Sentencing Project promotes effective and humane responses to crime that minimize imprisonment and criminalization of youth and adults by promoting racial, ethnic, economic, and gender justice.

Copyright © 2021 by The Sentencing Project. Reproduction of this document in full or in part, and in print or electronic format, only by permission of The Sentencing Project.

# TABLE OF CONTENTS

**Overview**                                     **4**

**The Scale of Disparity**                  **6**

**The Causes of Disparity**             **12**
     A Legacy of Racial Subordination       12
     Biased Policies and Practices          13
     Perpetuating Structural Disadvantage    15

**Recommendations**                          **17**

**Conclusion**                                 **18**

**Methodology**                             **19**

**Appendix**                                   **20**

**References**                                 **22**

# OVERVIEW

When former Minneapolis police officer Derek Chauvin killed George Floyd by kneeling on his neck in 2020, the world witnessed the most racist elements of the U.S. criminal legal system on broad display. The uprisings that followed Floyd's death articulated a vision for transforming public safety practices and investments. Almost one year later, Chauvin was convicted for Floyd's death, a rare outcome among law enforcement officers who kill unarmed citizens. The fight for racial justice within the criminal legal system continues, however. The data findings featured in this report epitomize the enormity of the task.

This report details our observations of staggering disparities among Black and Latinx people imprisoned in the United States given their overall representation in the general population. The latest available data regarding people sentenced to state prison reveal that Black Americans are imprisoned at a rate that is roughly five times the rate of white Americans. During the present era of criminal justice reform, not enough emphasis has been focused on ending racial and ethnic disparities systemwide.

Going to prison is a major life-altering event that creates obstacles to building stable lives in the community, such as gaining employment and finding stable and safe housing after release. Imprisonment also reduces lifetime earnings and negatively affects life outcomes among children of incarcerated parents.[1] These are individual-level consequences of imprisonment but there are societal level consequences as well: high levels of imprisonment in communities cause high crime rates and neighborhood deterioration, thus fueling greater disparities.[2] This cycle both individually and

societally is felt disproportionately by people who are Black. It is clear that the outcome of mass incarceration today has not occurred by happenstance but has been designed through policies created by a dominant white culture that insists on suppression of others.

At the same time, states have begun to chip away at mass incarceration. Nine states have lowered their prison population by 30% or more in recent years: Alaska, New Jersey, New York, Connecticut, Alabama, Rhode Island, Vermont, Hawaii, and California.[3] This decline has been accomplished through a mix of reforms to policy and practice that reduce prison admissions as well as lengths of stay in prison. Still, America maintains its distinction as the world leader[4] in its use of incarceration, including more than 1.2 million people held in state prisons around the country.[5]

Truly meaningful reforms to the criminal justice system cannot be accomplished without acknowledgement of its racist underpinnings. Immediate and focused attention on the causes and consequences of racial disparities is required in order to eliminate them. True progress towards a racially just system requires an understanding of the variation in racial and ethnic inequities in imprisonment across states and the policies and day-to-day practices that drive these inequities.[6]

This report documents the rates of incarceration for whites, African Americans, and Latinx individuals, providing racial and ethnic composition as well as rates of disparity for each state.[7] The Sentencing Project has produced state-level estimates twice before[8] and once again finds staggering disproportionalities.

> **Truly meaningful reforms to the criminal justice system cannot be accomplished without acknowledgement of its racist underpinnings.**

## KEY FINDINGS

- Black Americans are incarcerated in state prisons at nearly 5 times the rate of white Americans.

- Nationally, one in 81 Black adults in the U.S. is serving time in state prison. Wisconsin leads the nation in Black imprisonment rates; one of every 36 Black Wisconsinites is in prison.

- In 12 states, more than half the prison population is Black: Alabama, Delaware, Georgia, Illinois, Louisiana, Maryland, Michigan, Mississippi, New Jersey, North Carolina, South Carolina, and Virginia.

- Seven states maintain a Black/white disparity larger than 9 to 1: California, Connecticut, Iowa, Maine, Minnesota, New Jersey, and Wisconsin.

- Latinx individuals are incarcerated in state prisons at a rate that is 1.3 times the incarceration rate of whites. Ethnic disparities are highest in Massachusetts, which reports an ethnic differential of 4.1:1.

## RECOMMENDATIONS

**1. Eliminate mandatory sentences for all crimes.**

Mandatory minimum sentences, habitual offender laws, and mandatory transfer of juveniles to the adult criminal system give prosecutors too much authority while limiting the discretion of impartial judges. These policies contributed to a substantial increase in sentence length and time served in prison, disproportionately imposing unduly harsh sentences on Black and Latinx individuals.

**2. Require prospective and retroactive racial impact statements for all criminal statutes.**

The Sentencing Project urges states to adopt forecasting estimates that will calculate the impact of proposed crime legislation on different populations in order to minimize or eliminate the racially disparate impacts of certain laws and policies. Several states have passed "racial impact statement" laws. To undo the racial and ethnic disparity resulting from decades of tough-on-crime policies, however, states should also repeal existing racially biased laws and policies. The impact of racial impact laws will be modest at best if they remain only forward looking.

**3. Decriminalize low-level drug offenses.**

Discontinue arrest and prosecutions for low-level drug offenses which often lead to the accumulation of prior convictions which accumulate disproportionately in communities of color. These convictions generally drive further and deeper involvement in the criminal legal system.

# THE SCALE OF DISPARITY

> **Black Americans are incarcerated in state prisons at nearly 5 times the rate of white Americans. Latinx Americans are incarcerated at 1.3 times the rate of white Americans.**

We begin with a national view of the concentration of prisoners by race and ethnicity as a proportion of their representation in the state's overall general population, or the rate per 100,000 residents.[9] Looking at all states together (Figure 1) we see that at the national level, Black people are incarcerated at a rate of 1240 per 100,000 while white people are incarcerated at a rate of 261 per 100,000. Black Americans are incarcerated at 4.8 times the rate of white Americans. Nationally, Latinx individuals are held in state prisons at a rate of 349 per 100,000 residents, producing a disparity ratio of 1.3 to 1 when compared with white non-Latinx Americans.[10]

**Figure 1. Average Rate of Black, Latinx and White Imprisonment Per 100,000 Residents**



Data Source: Carson, E. A. (2021). Prisoners in 2019. Bureau of Justice Statistics; U.S. Census Bureau (n.d.). Age, sex, race, and Hispanic-origin–6 race groups. (SC EST 2019-ALLDATA6).

The following table presents state rates of incarceration by race and ethnicity according to their rank from highest Black incarceration rate to lowest (Table 1). The states with the highest rate of African American incarceration are Wisconsin, Oklahoma, Idaho, and Montana. Wisconsin has the highest rate of incarceration among its Black residents with 2,742 per 100,000 Black residents in prison. This statistic is remarkable given that Black people comprise only 6% of Wisconsin's general population. This table also presents the rate of incarceration for Latinx individuals, showing that it is highest in Arizona, where 742 per 100,000 Latinx adults in the state are in prison. The next highest rate of Latinx imprisonment is in Idaho, followed by Connecticut, Wyoming, and Colorado. Table 2 provides a slightly different view which shows the odds of imprisonment among Black individuals in each state given their overall representation in the state.

**Table 1. Imprisonment Rates by Race and Ethnicity, Ranked by Black Imprisonment Rates**

| State | Black | White | Latinx |
|---|---|---|---|
| Wisconsin | 2742 | 230 | 475 |
| Oklahoma | 2395 | 511 | 480 |
| Idaho | 2387 | 502 | 673 |
| Montana | 2272 | 371 | 293 |
| Arizona | 2105 | 428 | 742 |
| Iowa | 2084 | 225 | 327 |
| Alaska | 1987 | 417 | 238 |
| Oregon | 1932 | 344 | 376 |
| Vermont | 1737 | 239 | Not Provided |
| Nebraska | 1733 | 195 | 395 |
| Kansas | 1661 | 265 | 362 |
| South Dakota | 1660 | 280 | 432 |
| Delaware | 1654 | 324 | 355 |
| California | 1623 | 175 | 353 |
| Colorado | 1603 | 236 | 518 |
| Arkansas | 1597 | 450 | 252 |
| Texas | 1547 | 452 | 471 |
| Nevada | 1543 | 379 | 319 |
| Ohio | 1530 | 273 | 312 |
| Pennsylvania | 1523 | 206 | 469 |
| Connecticut | 1512 | 156 | 579 |
| Michigan | 1479 | 230 | Not Provided |
| Indiana | 1443 | 320 | 243 |
| Louisiana | 1411 | 381 | 28 |
| Florida | 1411 | 340 | 227 |
| Utah | 1383 | 167 | 299 |
| Kentucky | 1370 | 466 | 188 |
| West Virginia | 1337 | 348 | 155 |
| Wyoming | 1337 | 381 | 525 |
| Maine | 1331 | 143 | Not Provided |
| Missouri | 1297 | 336 | 214 |
| Virginia | 1246 | 287 | 135 |
| **State Average** | **1240** | **261** | **349** |
| New Mexico | 1229 | 216 | 393 |
| Washington | 1195 | 222 | 287 |
| Illinois | 1166 | 156 | 223 |
| Alabama | 1132 | 421 | Not Provided |
| Mississippi | 1107 | 398 | 211 |
| Minnesota | 1023 | 105 | 186 |
| New Jersey | 1009 | 81 | 162 |
| Georgia | 1006 | 361 | 216 |
| Tennessee | 989 | 296 | 163 |
| Hawaii | 947 | 410 | 84 |
| North Dakota | 848 | 172 | 407 |
| South Carolina | 823 | 217 | 172 |
| Rhode Island | 821 | 131 | 239 |
| North Carolina | 810 | 209 | 194 |
| New York | 754 | 96 | 285 |
| Maryland | 746 | 141 | 123 |
| New Hampshire | 742 | 269 | 241 |
| Massachusetts | 466 | 63 | 260 |

**Table 2. Rate of Black Imprisonment**

| State | Rate of Imprisonment |
|---|---|
| Wisconsin | 1 in 36 |
| Oklahoma | 42 |
| Idaho | 42 |
| Montana | 44 |
| Arizona | 48 |
| Iowa | 48 |
| Alaska | 50 |
| Oregon | 52 |
| Vermont | 58 |
| Nebraska | 58 |
| Kansas | 60 |
| South Dakota | 60 |
| Delaware | 60 |
| California | 62 |
| Colorado | 62 |
| Arkansas | 63 |
| Texas | 65 |
| Nevada | 65 |
| Ohio | 65 |
| Pennsylvania | 66 |
| Connecticut | 66 |
| Michigan | 68 |
| Indiana | 69 |
| Louisiana | 71 |
| Florida | 71 |
| Utah | 72 |
| Kentucky | 73 |
| West Virginia | 75 |
| Wyoming | 75 |
| Maine | 75 |
| Missouri | 77 |
| Virginia | 80 |
| **State Average** | **81** |
| New Mexico | 81 |
| Washington | 84 |
| Illinois | 86 |
| Alabama | 88 |
| Mississippi | 90 |
| Minnesota | 98 |
| New Jersey | 99 |
| Georgia | 99 |
| Tennessee | 101 |
| Hawaii | 106 |
| North Dakota | 118 |
| South Carolina | 121 |
| Rhode Island | 122 |
| North Carolina | 123 |
| New York | 133 |
| Maryland | 134 |
| New Hampshire | 135 |
| Massachusetts | 214 |

Data Source: Carson, E. A. (2021). Prisoners in 2019. Bureau of Justice Statistics; U.S. Census Bureau (n.d.). Age, sex, race, and Hispanic-origin–6 race groups. (SC EST 2019-ALLDATA6).

It is important to keep in mind that the absence or unreliability of ethnicity data in some states produces ethnic disparities in those states that may be understated. Since most Latinx people in those instances would be counted in the white prison population, the white rate of incarceration would therefore appear higher, and consequently the Black/white and Latinx/white ratios of disparity would be lower as well. Indeed, Alabama, Maine, Michigan, and Vermont did not report ethnicity figures to the U.S. Bureau of Justice Statistics in 2019. In additional states the figures are very likely to be undercounts. An example lies in Florida, which claims that 13% of its prison population is Latinx though more than one quarter of its residents are Latinx. There are most assuredly more Latinx people in prison than are officially reported but the exact number is unknown. Due to these potential underestimates the incarceration rates of whites are likely inflated; similarly, in states with larger undercounts of Latinx individuals, the disparity ratio between Blacks and whites is likely to be underestimated.

The maps presented below (Figs. 2 and 3) provide the Black/white differential in incarceration rates followed by the Latinx/white differentials. Appendix A (Tables 7

Figure 2. Black/white incarceration ratios



Data Source: Carson, E. A. (2021). Prisoners in 2019. Bureau of Justice Statistics; U.S. Census Bureau (n.d.). Age, sex, race, and Hispanic-origin--6 race groups. (SC EST 2019-ALLDATA6).

Figure 3. Latinx/white incarceration ratios



Data Source: Carson, E. A. (2021). Prisoners in 2019. Bureau of Justice Statistics; U.S. Census Bureau (n.d.). Age, sex, race, and Hispanic-origin--6 race groups. (SC EST 2019-ALLDATA6).
■ = Data was not provided.

and 8) provides this same information in a table format. In California, Connecticut, Iowa, Minnesota, New Jersey, Maine, and Wisconsin, the rate of imprisonment among Black people is more than nine times that for whites. In an additional 13 states, the incarceration rate for African Americans is greater than six times the incarceration rate of whites. And even in the state with the lowest racial disparity, Hawaii, the odds of imprisonment for Blacks are more than twice as high as for whites.

American prison populations have long been found to have a racial and ethnic profile that departs significantly from the demographics in the general population. U.S. Census Bureau data on incarcerated persons from 1870 through 1980 show that Black incarceration rates have ranged from three to nine times those of whites, depending upon the decade and region of the country.[11]

The particular drivers of disparity are known to be related to a mix of social policies that stretch beyond crime policies to those related to housing, education, receipt of public benefits, child care, and employment. Regardless of the causes, the simple presence of racial and ethnic disparities should be deeply worrisome given the consequences for individuals and communities. While chronic racial and ethnic disparity in imprisonment has been a known feature of the prison system for many decades,[12] there has been little adjustment to policy or practices—inside or outside the justice system—to address these patterns directly.

Racial disparities in incarceration arise from a variety of statistical combinations including a high rate of Black incarceration, a low rate of white incarceration, or varying degrees of the two. We note that the states with the highest ratio of disparity in imprisonment are generally those in the northeast or upper Midwest, while Southern states tend to have lower ratios. The low Southern ratios are generally produced as a result of high rates of incarceration for both Blacks and whites. For example, Arkansas has a Black/white ratio of 3.6:1 and Florida has a Black/white ratio of 4.1:1, considerably below the national average of 4.8:1. Yet both states incarcerate African Americans at higher than average rates, 29% higher in Arkansas and 14% higher in Florida. But these rates are somewhat offset by the particularly high white rates of incarceration, 72% higher than the national average in Arkansas and 30% higher in Florida.

Conversely, in the states with the highest degree of disparity, this is often produced by above average Black rate, but a relatively low white rate.[13] As seen in Table 3 below, seven of the 10 states with the greatest racial disparity also have high Black incarceration rates, while all have lower than average white rates.  In New Jersey, for example, Blacks are incarcerated at a rate over twelve times that of whites even though the Black incarceration rate is 19% below the national average. The high rate of Black/white racial disparity in New Jersey reflects a particularly low incarceration of whites: 81 per 100,000, or nearly one-third the national average (261).

**Table 3. Ten States with the Highest Black/White Differential**

| State | Black Imprisonment Rate | White Imprisonment Rate | B/W |
|---|---|---|---|
| New Jersey | 1009 | 81 | 12.5 |
| Wisconsin | 2742 | 230 | 11.9 |
| Minnesota | 1023 | 105 | 9.7 |
| Connecticut | 1512 | 156 | 9.7 |
| Maine | 1331 | 143 | 9.3 |
| California | 1623 | 175 | 9.3 |
| Iowa | 2084 | 225 | 9.3 |
| Nebraska | 1733 | 195 | 8.9 |
| Utah | 1383 | 167 | 8.3 |
| New York | 754 | 96 | 7.9 |
| State Average | 1240 | 261 | 4.8 |

Data Source: Carson, E. A. (2021). Prisoners in 2019. Bureau of Justice Statistics; U.S. Census Bureau (n.d.). Age, sex, race, and Hispanic-origin–6 race groups. (SC EST 2019-ALLDATA6).

The scale of racial disparity in incarceration can also be seen by comparing states that have lower than average Black incarceration rates to those with higher than average white incarceration rates. Here we find that the states with the highest white rates (Oklahoma, Idaho, Kentucky, Texas, and Arkansas) are still well below most of those with the lowest Black rates (Massachusetts,[14] New Hampshire, Maryland, and New York).[15]

Enduring racial disparities have long been a focus in criminological research and the presence of disparities is not disputed.[16] There is a strong empirical foundation for the persistence of racial and ethnic disparities in state imprisonment. Explanations range from variations in offending based on race to biased decision making in the criminal legal system, and also include a series of factors that have placed African Americans and others at significant disadvantage. These include but are not limited to poverty, education outcomes, unemployment history, and criminal history.[17] Research in this area finds a smaller amount of unwarranted disparity for serious crimes like homicide than for less serious crimes, especially drug crimes.[18]

Criminologist Alfred Blumstein's seminal research on imprisonment trends examined racial differences in arrests and compared these with the demographic composition of state prison populations. His findings were that as much as 20% of prison disparity among state prisoners could not be explained by differential offending by race. He concluded that if there was no discrimination at the point of arrest and points afterward, the racial makeup of people in prison should approximate the population of people who are arrested. The greatest amount of unexplained disparity was found among persons sentenced for drug offenses: nearly half of the racial disparity for prison among those convicted of drug crimes could not be explained by arrest. In a 1991 follow-up study, Blumstein found that the level of unexplained racial disparity was even greater (24%).[19]

Subsequent studies have replicated this work with newer datasets and found even higher amounts of unexplained disparity, particularly in the category of drug arrests.[20] In a study on arrest outcomes for felonies, multivariate analysis of court records between 2017 and 2018 in Denver showed that felony drug cases

against white defendants were statistically significantly more likely to be moved to drug court than similarly situated cases against Black defendants, holding all other factors constant.[21]

Reliance on arrest records as a reflection of criminal involvement has been contested on the grounds that arrests are a more accurate reflection of some criminal activity—usually where less discretion is available, as in the case with violent crime. In cases where a sizable amount of discretion exists, arrests can reflect police activity more so than criminal activity.[22]  In a study of the role of gentrification of neighborhoods, researchers found that citizen calls for police rose substantially in the early phase of "neighborhood renewal" for low-level nuisance crimes. Self-report data, or incident-based data circumvents the problems with arrest data as a measure; here too, we see unexplained race disparity. Cassia Spohn's research finds evidence of racial disparity at the point of sentencing and this is most evident for low-level crimes; in these matters, judges depart from the constraints of the law and in so doing may allow racial bias to enter into their judgment.[23]

The totality of the research literature on race and ethnic differentials in imprisonment leads to a similar conclusion: a sizable proportion of disparity in prison cannot be explained by patterns in criminal offending.[24]

Gaylene Armstrong and Nancy Rodriguez studied the county-level differences in juvenile justice outcomes across 65 counties in a northeastern state. They found that it is not solely individual-level characteristics that influence justice outcomes but the composition of the community where the juvenile resides that makes a difference as well. Specifically, they conclude that "juvenile delinquents who live within areas that have [more heterogenous populations] will more often be detained, regardless of their individual race or ethnicity."[25]

This is in line with observations by University of Berkeley's Loïc Wacquant, whose writing on race relations emphasizes the importance of location as a driver in disparity. Specifically, he contends that there has been a deliberate effort at correctional control of low-income Black communities that followed the end of America's legacy of slavery.[26]

University of Illinois at Chicago researchers tested aspects of this proposition empirically. They examined post-slavery county-level criminal justice developments in four states to test their theory that more severe felony case outcomes would occur in counties that had higher rates of slavery in 1860.[27]  Using proper controls for other possible contributing factors, they found that being charged in a county with a substantial legacy of slavery was associated with increases in pre-trial detention, imprisonment, and length of sentence. This finding held true for both Blacks and whites, leading the authors to conclude that slavery has had long-term negative consequences for all, not just African Americans.

# THE CAUSES OF DISPARITY

The data in this report document pervasive racial disparities in state imprisonment, and make clear that despite important improvements in public awareness of mass incarceration and some modest successes at decarceration, racial and ethnic disparities are still a substantial feature of our prison system.

Three recurrent explanations for racial disparities emerge from dozens of studies on the topic: a painful and enduring legacy of racial subordination, biased policies and practices that create or exacerbate disparities, and structural disadvantages that perpetuate disparities.

## A LEGACY OF RACIAL SUBORDINATION

Misperceptions about people of different races or ethnicities influences criminal justice outcomes. An abundance of evidence finds that beliefs about dangerousness and threats to public safety overlap with individual perceptions about Black people as well as other people of color. Racial prejudice exerts a large, negative impact on punishment preferences among whites but much less so for Blacks.[28]

America's legacy of white supremacy over Black people has taken many forms over the country's history from chattel slavery to housing policies that made it impossible for African Americans to buy homes. Mass incarceration can be viewed as the current iteration.[29]

Black youth as young as nine years old express feelings of disparate treatment by law enforcement. When subjected to sophisticated empirical analysis, University of South Florida criminologist James Unnever found that this perception of discrimination in his sample was associated with negative externalizing behaviors,[30] even when other possible contributors were ruled out. Though they may not have had encounters with police yet, the traumatic experiences of earlier generations are believed to be passed down.[31]

Racialized assumptions by key justice system decision makers unfairly influence outcomes for people who encounter the system. In research on presentence reports, for example, scholars have found that people of color are frequently given harsher sanctions because they are perceived as imposing a greater threat to public safety and are therefore deserving of greater social

> "At least in America, race has a subjective history and meaning associated with stereotypes and biases that are at times and places closely linked – both explicitly and unconsciously – to crime, fear, anxiety, disorder and, ultimately, a yearning for more laws, stepped-up enforcement, and harsher sanctions that are felt disproportionately by racial and ethnic minorities."[32]
>
> Eric Baumer, Ph.D. Department of Sociology and Criminology, Pennsylvania State University

control and punishment.[33] And survey data has found that, regardless of respondents' race, respondents associated African Americans with terms such as "dangerous," "aggressive," "violent," and "criminal."[34]

Media portrayals about crime tend to distort reality by disproportionately focusing on stories of those involving serious crimes and those committed by people of color, especially Black-on-white violent crime.[35] Since three-quarters of the public say that they form their opinions about crime from the news, this misrepresentation feeds directly into the public's crime policy preferences.[36]

Reforms to media reporting that more carefully and accurately represent the true incidence of specific crimes and their perpetrators, and victims, would change perceptions about crime but would not necessarily impact how these perceptions translate into policy preferences. A 2013 study by Stanford University scholars found that public awareness of racial disparities in prisons actually *increases support* for harsher punishments.[37] Using an experimental research design, researchers exposed subjects to facts about racial compositions. When prisons were described as "more Black," respondents were more supportive of harsh crime policies that contribute to those disparities.  On the other hand, some studies find that when individuals—practitioners in particular—are made consciously aware of their bias through implicit bias training, diversification of the workforce, and education on the important differences between implicit and explicit bias, this can mitigate or even erase the actions they would otherwise take based on unexplored assumptions.[38]  There is some evidence of the positive effects of this: a 2004 study found that whites were less in favor of federal sentencing laws that created a disparity between crack and powder cocaine offenses once they were informed about the law's disproportionate impact on African Americans.[39]

## BIASED POLICIES AND PRACTICES

The rise in incarceration that has come to be known as mass incarceration began in the early 1970s and is widely attributed to three major eras of policymaking, all of which had a disparate impact on people of color, especially African Americans. Until 1986, a series of policies was enacted to expand the use of imprisonment for a variety of felonies. After this point, the focus moved to greater levels of imprisonment for drug and sex offenses. There was a particularly sharp growth in state imprisonment for drug offenses between 1987 and 1991. In the final stage, beginning around 1995, the emphasis was on increasing both prison likelihood and significantly lengthening prison sentences.[40]

The criminal legal system is held together by policies and practices, both formal and informal, which influence the degree to which an individual penetrates the system. At multiple points in the system, race may play a role. Disparities mount as individuals progress through the system, from the initial point of arrest to the final point of imprisonment.[41]  Harsh punishment policies, some of which were put into effect after crime began to decline in the early 1990s, are the main cause of the historic rise in imprisonment that has occurred over the past 40 years.[42]

### Policing

As we have seen by continued unlawful engagement by police with the public, including the tragic killing of unarmed Black people by law enforcement officers, police-citizen relations continue to reflect bias within the criminal legal system.

Disparities are evident at the initial point of contact with police, especially through policies that target specific areas and low-level offenses that allow a high degree of discretion. Police should be instructed to limit their work to addressing actual crime but instead have been tasked with an growing array of responsibilities that fall under their purview dealing with public order, traffic, and misdemeanor offenses.[43]  Though police stops alone may not result in a conviction that would lead to a prison sentence, the presence of a criminal record that results from an arrest or conviction is associated with the decision to incarcerate for subsequent offenses, a sequence of events that disadvantages African Americans. Jeffrey Fagan's work in this area found that police officers' selection of who to stop in New York's now infamous "stop, question,

and frisk" policing program was dictated more by racial composition of the neighborhood than by actual crime in the area.[44] His research showed that the process of stopping, questioning and frisking individuals was based on little more than suspicion (or on nebulous terms such as "furtive behavior," which were the justification for many stops) and led to unnecessary criminal records for thousands. New York's policy was ruled unconstitutional in 2013 with a court ruling in *Floyd v. The City of New York*.  A recent study of more than 60 million police stops between 2011 and 2015 across the U.S. revealed that Black drivers were stopped more frequently than white drivers and controlling for age, sex, time, and location, Black and Latinx drivers were more likely to be ticketed, searched, and arrested. In addition, the study revealed evidence of a lower bar for searching vehicles with Black drivers than for white drivers.[45]

**Pre-trial detention**

Other stages of the system contribute to the racial composition of state prisons as well. Factors such as pre-trial detention—more likely to be imposed on Black defendants because of income inequality—contributes to disparities because those who are detained pretrial are more likely to be convicted and sentenced to longer prison terms.[46] Cassia Spohn's analysis of 40 state sentencing processes finds that, though crime seriousness and prior record are key determinants at sentencing, the non-legal factors of race and ethnicity also influence sentencing decisions. She notes that:

"Black and Hispanic offenders—particularly those who are young, male, and unemployed—are more likely than their white counterparts to be sentenced to prison than similarly situated white offenders. Other categories of racial minorities—those convicted of drug offenses, those who victimize whites, those who accumulate more serious prior criminal records, or those who refuse to plead guilty or are unable to secure pretrial release—also may be singled out for more punitive treatment."[47]

**Criminal history records**

Racial disparities are most evident in decisions to sentence a person to incarceration or divert them to community supervision.[48] Studies seeking to

better understand the processes between arrest and imprisonment, particularly at the stage of sentencing, have been pursued in order to better understand the unexplained disparities in state prisons.[49] To many, the role of prior convictions has been overlooked as a factor.

Arrest for low-level drug offenses create disparate outcomes by race. Black and white individuals use and sell drugs at comparable levels but Black people are nearly four times as likely as whites to be arrested for drug offenses and 2.5 times as likely to be arrested for drug possession.[50]

Differential responses by the criminal legal system create greater imprisonment odds for Black Americans. Research finds that presence of a prior criminal record carries substantial weight in sentencing. The American judicial system considers prior record heavily at sentencing and applies what sentencing scholar Kevin Reitz refers to as a "recidivist premium." In a system where a longer criminal history justifies a longer prison sentence, this means that criminal history factors disproportionately affect Black people.

In the most in-depth study completed on racial disparities in a single state's prison system, Richard Frase, co-director of the esteemed Robina Institute of Criminal Law and Criminal Justice at the University of Minnesota, found that two thirds of racial disparities in Minnesota's imprisonment rates resulted from criminal history factors weighed at sentencing.[51]

Weighing criminal history at sentencing may feel intuitively wise but can be problematic. If previous encounters with the system are the result of racially biased engagement with the system, subsequent sentences that rely on these prior records as a measure of dangerousness worsen those disparities even more.[52]

**Prosecutorial charging**

Still other research finds that prosecutorial charging decisions play out unequally when viewed by race, placing Blacks at a significant disadvantage to whites. Prosecutors are more likely to charge Black defendants under state habitual offender laws than similarly situated white defendants.[53] Researchers in Florida found

evidence for this relationship, and also observed that the relationship between race and use of the state habitual offender law was stronger for less serious crimes than it was for more serious crimes.[54] And California's three strikes law was identified as widening disparities because of the greater likelihood of prior convictions among African Americans. Californian's voted to repeal parts of the law in 2012 to limit the allowability of previous convictions as "strikes."[55]

## PERPETUATING STRUCTURAL DISADVANTAGE

A third explanation for persistent racial disparities in state prisons lies in the structural disadvantages that impact people of color long before they encounter the criminal legal system. In this view, disparities observed in imprisonment are partially a function of disproportionate social factors in African American communities that are associated with poverty, employment, housing, and family differences.[56] Other factors, not simply race, account for differences in crime across place. Criminologists Ruth Peterson and Lauren Krivo note that African Americans comprise a disproportionate share of those living in poverty-stricken neighborhoods and communities where a range of socio-economic vulnerabilities contribute to higher rates of crime, particularly violent crime.[57] In fact, 62% of African Americans reside in highly segregated, inner city neighborhoods that experience a high degree of violent crime, while the majority of whites live in more advantaged neighborhoods that experience little violent crime.[58] Their work builds on earlier research focused on the harms done to the African American community by disparate living environments, and extends this knowledge to evidence that this actually produces social problems including crime.

The impact of structural disadvantage begins early in life. When looking at juvenile crime rates across race, it should not be assumed that youth of color have a greater tendency to engage in delinquency, but that the uneven playing field created for people of color from the start, a part of larger American society, creates inequalities which are related to who goes on to commit crime and who is equipped to desist from crime.[59] More

specifically, as a result of structural differences by race and class, youth of color are more likely to experience unstable family systems, exposure to family and/or community violence, elevated rates of unemployment, and higher school dropout rates.[60] All of these factors are more likely to exist in communities of color, replicating social inequities that contribute to the decision to engage in crime.

### Moving forward

Criminal justice reform has become a regular component of mainstream domestic policy discussions in recent years. There is growing recognition among policymakers that the system of mass incarceration has not been an effective remedy for crime and has exacerbated racial inequities. Some jurisdictions have pursued reforms that include scaling back stop and frisk practices by law enforcement and enacting legislative changes that shift certain offenses from felonies to misdemeanors.[61] These may reduce overall incarceration rates with the prospect of greater impact on racial and ethnic minorities as well.

Even though the pace of criminal reform is relatively modest in addressing the scale of mass incarceration and its enduring racial and ethnic disparities, the higher levels of decarceration in some states are encouraging. New Jersey, which has the greatest Black/white disparity in the nation, provides an example of this potential. Despite its high ranking in disparity among sentenced prisoners, New Jersey has recently pursued a range of reforms that could ameliorate persistent disparities and accelerate progress if implemented to their fullest.

Like most states, New Jersey experienced a steady rise in incarceration from the 1970s through the 1990s. Between 2000 and 2019, however, the state has reduced its prison population by 38%. Table 4 shows that the state's decarceration so far appears to have had the greatest benefit to Black and Latinx individuals. The overall depopulation of New Jersey prisons has included a 39% reduction in African American prisoners, a 45% reduction in Latinx prisoners, and a 30% reduction in white prisoners.

**Table 4. Change in Prison Population and Composition, New Jersey 2000-2019**

| Year | Prison Total | White | Black | Latinx |
|---|---|---|---|---|
| 2000 | 29,784 | 5,665 | 18,716 | 5,279 |
| 2014 | 21,590 | 4,750 | 13,170 | 3,454 |
| 2019 | 18,613 | 3,978 | 11,372 | 2,911 |
| 2000-2014 | -28% | -16% | -30% | -35% |
| 2014-2019 | -14% | -16% | -14% | -16% |
| 2000-2019 | -38% | -30% | -39% | -45% |

Data Source: Carson, E. A. (2021). Prisoners in 2019. Bureau of Justice Statistics; U.S. Census Bureau (n.d.). Age, sex, race, and Hispanic-origin--6 race groups. (SC EST 2019-ALLDATA6).

In response to The Sentencing Project's 2016 report[62] that identified New Jersey as ranking highest in the nation in Black-to-white disparity, the state legislature quickly adopted "racial impact" legislation to mitigate the identified disparate impact of proposed crime legislation on Black and Latinx individuals going forward.[63] Since the bill's passage two years ago, however, only one racial impact statement has ever accompanied a bill, according to media reports.[64]

In contrast, Iowa has undergone 26 separate racial impact analyses since its racial impact law passed in 2009.[65] Since The Sentencing Project's initial analysis of Iowa's racial disparity in 2007,[66] in which we reported a Black/white disparity of 13.6:1, the Black-to-white disparity has dropped to 9.3:1.[67] Though we cannot be sure that this decline is related to the introduction of racial impact statements, it is encouraging to see the state embrace racial impact laws and also reduce the gap between Black and white incarceration levels. Making such analysis retroactive to correct for misguided policies already in place will likely result in quicker progress toward racial equity.

# RECOMMENDATIONS

## MITIGATE THE RACIAL INJUSTICE OF THE WAR ON DRUGS

The war on drugs has not been an effective approach to addressing either substance use disorders or the crimes associated with them. The policies enacted worsened racial disparities in incarceration. Yet, many laws are still in effect at both the state and federal levels that sentence individuals to lengthy prison terms for drug–related offenses when alternatives to incarceration would be more suitable. Official arrest statistics from the Federal Bureau of Investigation (FBI) indicate that there were over 600,000 arrests for marijuana possession in 2018, representing 6% of all arrests nationally.[68] Even when an arrest does not result in conviction or imprisonment, it creates a criminal record. Drug law enforcement is disproportionately aimed at low-income communities of color, creating downstream consequences for these residents that are not felt by those in affluent, primarily white communities.

Reforms should be enacted that scale back the use of prison for low-level drug offenses and instead redirect resources to prevention and drug intervention programming. One reform gaining favor eliminates or substantially limits the authority for law enforcement to make drug-related arrests. In Northern Virginia's Fairfax County, for instance, Commonwealth Attorney Steve Descano, in office since January 2020, has instructed law enforcement to discontinue arrests for simple possession of marijuana.[69] This has the potential to substantially decrease racial disparities in a county where African Americans were more than three times as likely to be arrested for marijuana possession than whites.[70]

## ENACT PROPORTIONAL SENTENCING

A host of mandatory minimum sentences and truth-in-sentencing provisions are still in place in most states. These remove judicial discretion from the sentencing process and tie up limited corrections resources by incarcerating those who may no longer be a threat to public safety. The states and federal government should revisit and revise mandatory minimum sentences and other determinate sentencing systems that deny an individualized approach.

In addition, states should scale back punishments for serious crimes, especially those that trigger long sentences for repeat offenses. Applying recidivism premiums to sentences—especially for low-level offenses—is not an effective public safety strategy. Indeed there is no evidence demonstrating that it actually improves public safety. While public safety is always a priority, imposing excessively long prison sentences has actually been shown to have diminishing returns on public safety.[71] Furthermore, these policies have had a disproportionate impact on people of color, especially African Americans, because they are more likely to have a prior record, either because of more frequent engagement in crime or because of more frequent engagement with law enforcement.[72]

## MEASURE IMPACT OF CRIME POLICIES ON ALL DEMOGRAPHIC GROUPS

Finally, several states are pursuing racial impact legislation, an idea that first became law in the state of Iowa in 2008. To date, Colorado, Connecticut, Florida, Maryland, Minnesota, New Jersey, and Oregon have implemented racial impact laws and nearly a dozen additional states have introduced similar legislation. The idea behind racial impact laws is to consider the outcome of changes in the criminal code *before* passing laws in order to provide an opportunity for policymakers to consider alternative approaches that do not exacerbate disparities. Similar to fiscal impact statements or environmental impact statements, racial impact statements forecast the effect of policy changes on people of different races and ethnicities. The theory behind racial impact statements is that there is a cost, both financial and moral, to maintaining racial and ethnic disparities.[73]

An improvement to the efficacy of racial impact statements would be to establish a retroactive look at existing criminal penalties that have caused undue harm to Black and Latinx communities. Identifying existing laws that have contributed to the current levels of disparity should be followed by reversal or reform of these laws.

# CONCLUSION

States exhibit astounding rates of racial and ethnic disparity in their rates of incarceration: African Americans are incarcerated in state prisons at nearly five times the rate of whites. This report also shows that racial disparities vary broadly across the states, from a high of 12.5:1 to a low of 2.3:1, but even in Hawaii—the state with the lowest Black/white disparity—African Americans are imprisoned at more than two times the rate of whites.

There is not enough attention paid or action required to end the chronic racial disparities that pervade state prisons. If we continue to ignore or tolerate these disparities, the United States is unlikely to achieve the serious, sustainable reforms that are needed to end mass incarceration. Overall, the pace of criminal justice reform has been too slow as well as too modest in its goals. Accelerated reforms that deliberately incorporate the goal of racial justice will lead to a system that is both much smaller and fairer.

Despite widespread acknowledgement that more needs to be done to achieve racial equity in the criminal legal system, reforms have stopped short of arriving at a system that is truly fair and responsive to all communities. Recent cases of police violence have accelerated calls for racial justice across the U.S. That urgency should extend to confronting racial injustices that pervade the entire criminal legal system.

# METHODOLOGY

This report relies primarily on two major sources of official data. The first is the U.S. Census, which counts the nation's residents every ten years and provides estimates based on projections for years between its official counts. The data in the report comes from 2019 projections based on the 2010 U.S. Census. The second source of data used to generate the findings in this report is the U.S Bureau of Justice Statistics. Each year, it publishes results from its National Prisoner Statistics (NPS) survey of the state departments of corrections. The data used to generate the National Prisoners Series, most recently *Prisoners in 2019*¸ are housed on the National Criminal Justice Archive's Inter-University Consortium for Political and Social Research. Data on race and ethnicity of prisoners sentenced to at least one year in prison (NPS survey question: "*On December 31, how many inmates under your jurisdiction -- a. Had a total maximum sentence of more than 1 year [Include inmates with consecutive sentences that add to more than 1 year]*). The *Prisoners in 2019* publication reports state totals in Table 4. Additionally, each state provides to BJS the demographic composition of its prison population, though this is not typically reported in the National Prisoners Series. In the following states, data on race and ethnicity provided directly from state departments of corrections to The Sentencing Project were used to augment the BJS data: Connecticut, Hawaii, Massachusetts, Mississippi, and Rhode Island.

Racial and ethnic composition of people in prison is reported in the BJS *Prisoners Series*. Readers of this report may notice differences between the BJS data on imprisonment rates and the reported disparity ratios. In particular, BJS shows higher incarceration rates when viewed by race. As noted by colleagues elsewhere,[74] BJS makes adjustments in certain states and these appear to lower the white imprisonment rates by a proportionately larger amount than they lower the Black imprisonment rates (compared to the rates in this report). As a result, the BJS black-white imprisonment disparity is slightly larger than the disparities reported here. The trends in the black-white disparity ratios in the BJS data, however, track closely with the trends shared in this report. The Latinx-white disparity reported in the *Prisoners Series* is larger than the one reported here.

**APPENDIX**

### Table 5. State Imprisonment 2019, by Percent Black

| State | Prison | % Black in Prison | % Black in Population |
|---|---|---|---|
| Maryland | 18,595 | 71% | 29% |
| Louisiana | 31,609 | 67% | 32% |
| Mississippi | 19,421 | 64% | 38% |
| New Jersey | 18,613 | 61% | 13% |
| Delaware | 5,692 | 60% | 22% |
| Georgia | 54,816 | 60% | 31% |
| South Carolina | 18,608 | 59% | 27% |
| Virginia | 36,091 | 55% | 19% |
| Illinois | 38,259 | 54% | 14% |
| Michigan | 38,053 | 53% | 14% |
| Alabama | 28,304 | 52% | 27% |
| North Carolina | 34,079 | 51% | 21% |
| New York | 43,500 | 49% | 14% |
| Florida | 96,009 | 47% | 15% |
| Pennsylvania | 45,702 | 46% | 11% |
| Ohio | 50,338 | 43% | 12% |
| Connecticut | 12,530 | 43% | 10% |
| Tennessee | 26,349 | 42% | 17% |
| Wisconsin | 23,956 | 42% | 6% |
| Arkansas | 17,759 | 41% | 15% |
| Minnesota | 9,982 | 36% | 6% |
| Missouri | 26,044 | 35% | 11% |
| Indiana | 27,180 | 33% | 9% |
| Texas | 158,429 | 33% | 12% |
| Nevada | 12,840 | 31% | 9% |
| Massachusetts | 7,602 | 29% | 7% |
| California | 122,687 | 29% | 6% |
| Nebraska | 5,682 | 27% | 5% |
| Kansas | 10,177 | 27% | 6% |
| Oklahoma | 25,679 | 26% | 7% |
| Iowa | 9,282 | 25% | 4% |
| Rhode Island | 1,957 | 25% | 6% |
| Kentucky | 23,082 | 21% | 8% |
| Colorado | 19,785 | 18% | 4% |
| Washington | 19,261 | 17% | 4% |
| Arizona | 42,441 | 15% | 4% |
| West Virginia | 6,800 | 13% | 4% |
| Maine | 2,185 | 11% | 1% |
| North Dakota | 1,794 | 10% | 3% |
| Alaska | 4,475 | 10% | 3% |
| Oregon | 14,961 | 10% | 2% |
| Vermont | 1,608 | 9% | 1% |
| South Dakota | 3,801 | 8% | 2% |
| Utah | 6,665 | 7% | 1% |
| New Mexico | 6,723 | 7% | 2% |
| Wyoming | 2,479 | 5% | 2% |
| New Hampshire | 2,691 | 5% | 1% |
| Hawaii | 5,552 | 4% | 2% |
| Idaho | 9,437 | 3% | 1% |
| Montana | 4,723 | 3% | 1% |

### Table 6: State Imprisonment 2019, by Percent Latinx

| State | Prison | % Latinx in Prison | % Latinx in Population |
|---|---|---|---|
| New Mexico | 6,723 | 60% | 49% |
| California | 122,687 | 44% | 39% |
| Arizona | 42,441 | 39% | 31% |
| Texas | 158,429 | 33% | 39% |
| Colorado | 19,785 | 32% | 22% |
| Massachusetts | 7,602 | 28% | 12% |
| Connecticut | 12,530 | 27% | 16% |
| New York | 43,500 | 24% | 19% |
| Nevada | 12,840 | 21% | 29% |
| Rhode Island | 1,957 | 20% | 15% |
| Utah | 6,665 | 19% | 14% |
| New Jersey | 18,613 | 16% | 20% |
| Idaho | 9,437 | 15% | 13% |
| Nebraska | 5,682 | 15% | 11% |
| Washington | 19,261 | 14% | 13% |
| Oregon | 14,961 | 14% | 13% |
| Illinois | 38,259 | 13% | 17% |
| Florida | 96,009 | 13% | 26% |
| Kansas | 10,177 | 12% | 12% |
| Wyoming | 2,479 | 12% | 10% |
| Pennsylvania | 45,702 | 10% | 7% |
| Wisconsin | 23,956 | 8% | 7% |
| Oklahoma | 25,679 | 8% | 11% |
| Iowa | 9,282 | 7% | 6% |
| North Dakota | 1,794 | 6% | 4% |
| Minnesota | 9,982 | 6% | 5% |
| North Carolina | 34,079 | 5% | 9% |
| Delaware | 5,692 | 5% | 9% |
| New Hampshire | 2,691 | 4% | 4% |
| Indiana | 27,180 | 4% | 7% |
| Maryland | 18,595 | 4% | 10% |
| Georgia | 54,816 | 4% | 10% |
| South Dakota | 3,801 | 4% | 4% |
| Arkansas | 17,759 | 3% | 8% |
| Virginia | 36,091 | 3% | 9% |
| Alaska | 4,475 | 3% | 7% |
| Ohio | 50,338 | 3% | 4% |
| South Carolina | 18,608 | 3% | 6% |
| Montana | 4,723 | 2% | 4% |
| Hawaii | 5,552 | 2% | 11% |
| Tennessee | 26,349 | 2% | 5% |
| Missouri | 26,044 | 2% | 4% |
| Kentucky | 23,082 | 1% | 4% |
| Mississippi | 19,421 | 1% | 3% |
| West Virginia | 6,800 | 1% | 2% |
| Louisiana | 31,609 | 0% | 5% |
| Alabama | 28,304 | Not Provided | 4% |
| Maine | 2,185 | Not Provided | 2% |
| Michigan | 38,053 | Not Provided | 5% |
| Vermont | 1,608 | Not Provided | 2% |

## Table 7: Black/White Differentials, High to Low

| State | White | Black | B/W |
|---|---|---|---|
| New Jersey | 81 | 1009 | 12.5 |
| Wisconsin | 230 | 2742 | 11.9 |
| Minnesota | 105 | 1023 | 9.7 |
| Connecticut | 156 | 1512 | 9.7 |
| Maine | 143 | 1331 | 9.3 |
| California | 175 | 1623 | 9.3 |
| Iowa | 225 | 2084 | 9.3 |
| Nebraska | 195 | 1733 | 8.9 |
| Utah | 167 | 1383 | 8.3 |
| New York | 96 | 754 | 7.9 |
| Illinois | 156 | 1166 | 7.5 |
| Massachusetts | 63 | 466 | 7.4 |
| Pennsylvania | 206 | 1523 | 7.4 |
| Vermont | 239 | 1737 | 7.3 |
| Colorado | 236 | 1603 | 6.8 |
| Wyoming | 381 | 2467 | 6.5 |
| Michigan | 230 | 1479 | 6.4 |
| Rhode Island | 131 | 821 | 6.3 |
| Kansas | 265 | 1661 | 6.3 |
| Montana | 371 | 2272 | 6.1 |
| South Dakota | 280 | 1660 | 5.9 |
| New Mexico | 216 | 1229 | 5.7 |
| Oregon | 344 | 1932 | 5.6 |
| Ohio | 273 | 1530 | 5.6 |
| Washington | 222 | 1195 | 5.4 |
| Maryland | 141 | 746 | 5.3 |
| Delaware | 324 | 1654 | 5.1 |
| North Dakota | 172 | 848 | 4.9 |
| Arizona | 428 | 2105 | 4.9 |
| Alaska | 417 | 1987 | 4.8 |
| Idaho | 502 | 2387 | 4.8 |
| Oklahoma | 511 | 2395 | 4.7 |
| Indiana | 320 | 1443 | 4.5 |
| Virginia | 287 | 1246 | 4.3 |
| Florida | 340 | 1411 | 4.1 |
| Nevada | 379 | 1543 | 4.1 |
| North Carolina | 209 | 810 | 3.9 |
| Missouri | 336 | 1297 | 3.9 |
| West Virginia | 348 | 1337 | 3.8 |
| South Carolina | 217 | 823 | 3.8 |
| Louisiana | 381 | 1411 | 3.7 |
| Arkansas | 450 | 1597 | 3.6 |
| Texas | 452 | 1547 | 3.4 |
| Tennessee | 296 | 989 | 3.3 |
| Kentucky | 466 | 1370 | 2.9 |
| Georgia | 361 | 1006 | 2.8 |
| Mississippi | 398 | 1107 | 2.8 |
| New Hampshire | 269 | 742 | 2.8 |
| Alabama | 421 | 1132 | 2.7 |
| Hawaii | 410 | 947 | 2.3 |

## Table 8: Latinx/White Differentials, High to Low

| State | White | Latinx | L/W |
|---|---|---|---|
| Massachusetts | 63 | 260 | 4.1 |
| Connecticut | 156 | 579 | 3.7 |
| New York | 96 | 285 | 3.0 |
| North Dakota | 172 | 407 | 2.4 |
| Pennsylvania | 206 | 469 | 2.3 |
| Colorado | 236 | 518 | 2.2 |
| Wisconsin | 230 | 475 | 2.1 |
| Nebraska | 195 | 395 | 2.0 |
| California | 175 | 353 | 2.0 |
| New Jersey | 81 | 162 | 2.0 |
| Rhode Island | 131 | 239 | 1.8 |
| New Mexico | 216 | 393 | 1.8 |
| Utah | 167 | 299 | 1.8 |
| Minnesota | 105 | 186 | 1.8 |
| Arizona | 428 | 742 | 1.7 |
| South Dakota | 280 | 432 | 1.5 |
| Iowa | 225 | 327 | 1.5 |
| Illinois | 156 | 223 | 1.4 |
| Wyoming | 381 | 525 | 1.4 |
| Kansas | 265 | 362 | 1.4 |
| Idaho | 502 | 673 | 1.3 |
| Washington | 222 | 287 | 1.3 |
| Ohio | 273 | 312 | 1.1 |
| Delaware | 324 | 355 | 1.1 |
| Oregon | 344 | 376 | 1.1 |
| Texas | 452 | 471 | 1.0 |
| Oklahoma | 511 | 480 | 0.9 |
| North Carolina | 209 | 194 | 0.9 |
| New Hampshire | 269 | 241 | 0.9 |
| Maryland | 141 | 123 | 0.9 |
| Nevada | 379 | 319 | 0.8 |
| South Carolina | 217 | 172 | 0.8 |
| Montana | 371 | 293 | 0.8 |
| Indiana | 320 | 243 | 0.8 |
| Florida | 340 | 227 | 0.7 |
| Missouri | 336 | 214 | 0.6 |
| Georgia | 361 | 216 | 0.6 |
| Alaska | 417 | 238 | 0.6 |
| Arkansas | 450 | 252 | 0.6 |
| Tennessee | 296 | 163 | 0.6 |
| Mississippi | 398 | 211 | 0.5 |
| Virginia | 287 | 135 | 0.5 |
| West Virginia | 348 | 155 | 0.4 |
| Kentucky | 466 | 188 | 0.4 |
| Hawaii | 410 | 84 | 0.2 |
| Louisiana | 381 | 28 | 0.1 |
| Alabama | 421 | Not Provided | N/A |
| Maine | 143 | Not Provided | N/A |
| Michigan | 230 | Not Provided | N/A |
| Vermont | 239 | Not Provided | N/A |

## REFERENCES

1. Clear, T. (2009). *Imprisoning communities: How mass incarceration makes disadvantaged communities worse*. Oxford University Press. Pager, D. (2007). Marked: Race, crime, and finding work in an era of mass incarceration. University of Chicago Press; Western, B. (2007). Punishment and inequality in America. Russell Sage Foundation.; Wildman, C., Goldman, A. W., & Turney, K., (2018). Parental incarceration and child health in the United States. *Epidemiologic Reviews*, 40(1), 146-158.

2. Clear, T. (2009). *Imprisoning communities: How mass incarceration makes disadvantaged communities worse*. Oxford University Press.

3. Ghandnoosh, N. (2021). *Can we wait 60 years to cut the prison population in half?* The Sentencing Project.

4. Among countries with a population of at least 100,000 residents.

5. Carson, E. A. (2021). *Prisoners in 2019*. Bureau of Justice Statistics.

6. Neill, K. A., Yusuf, J., & Morris, J.C. (2014). Explaining dimensions of state-level punitiveness in the United States: The roles of social, economic, and cultural factors. *Criminal Justice Policy Review*, 26(2), 751-772.

7. This report limits the presentation of data to these three categories because white, Black, and Latinx individuals comprise the vast majority of people in prison.

8. Mauer, M. & King, R. (2007). *Uneven justice: State rates of incarceration by race and ethnicity*. The Sentencing Project; Nellis, A. (2016). *The color of justice: Racial and ethnic disparity in state prisons*. The Sentencing Project.

9. U.S. Census Bureau (2020) *Age, sex, race, and Hispanic origin--6 race groups. (SCEST2019-ALLDATA6)*. U.S. Census.

10. We observe that 41% of people in state prisons are white, 39% are Black, and 17% are Latinx, a contrast with the overall general population where 76% are white, 13% are Black, and 19% are Latinx. In 12 states more than half of the prison population is African American. Though the reliability of data on ethnicity is not as strong as it is for race estimates, the Latinx population in state prisons is as high as 60% in New Mexico, and over 40% in both Arizona and in California. However, viewing the composition of prison populations from this perspective only tells some of the story of the profound difference imprisonment plays in the lives of people of various racial and ethnic backgrounds. In this report we present the rates of racial disparity, which allows an analysis of the overrepresentation of people of color in the prison system accounting for population in the general community. This view allows one to see the odds of imprisonment for individuals in various racial and ethnic categories.

11. Sabol, W. J., Johnson, T. L., & Caccavale, A. (2019). *Trends in correctional control by race and sex*. Council on Criminal Justice.

12. National Research Council (2014). T*he growth of incarceration in the United States: Exploring causes and consequences*. The National Academies Press.

13. This observation is documented elsewhere as well. See, for example, Blumstein, A. (1993). Racial disproportionality revisited. *University of Colorado Law Review*, 64, 743-760; Mauer, M. (1997). *Intended and unintended consequences: State racial disparities imprisonment*. The Sentencing Project; Bridges, G. & Crutchfield, R.D. (1982). Law, social standing and racial disparities in imprisonment. *Social Forces*, 66(3), 699-724.

14. Data from Massachusetts used this report should be interpreted with caution. The system of incarceration in Massachusetts is somewhat unique in that this state uses county-level houses of corrections to hold some people who have been convicted of felonies and sentenced up to 2.5 years. The population of prisoners in houses of corrections is approximately 275, but the racial composition of those incarcerated at these institutions is not publicly reported. For this reason, estimates in this report do not include those in houses of corrections. As a result, the rates of incarceration by race and ethnicity are underestimated. For more on the composition of Massachusetts prison system, see: Massachusetts Department of Corrections (2019). *Weekly Count Sheets*.

15. Massachusetts is an exception, with a rate of Black imprisonment of 466 per 100,000 residents.

16. Blumstein, A. (1993). Racial disproportionality of U.S. prison populations revisited. *University of Colorado Law Review* 64(3), 743-760; Bridges, G., & Crutchfield, R. D. (1988). Law, social standing and racial disparities in imprisonment. *Social Forces* 66(3), 699-724; Mauer, M. (1997). *Intended and unintended consequences: State racial disparities in imprisonment*. The Sentencing Project; Sorenson, J., Hope, R., & Stemen, D. (2003). Racial disproportionality in state prison admissions: Can regional variation be explained by differential arrest rates? *Journal of Criminal Justice* 31, 73-84; Mauer, M., & King, R. (2007). *Uneven justice: State rates of incarceration by race and ethnicity*. The Sentencing Project; Tonry, M. (1994). Racial disproportions in US prisons. *British Journal of Criminology* 34(1) 97-115; Tonry, M. (2011). *Punishing race: An American dilemma continues*. Oxford University Press.

17. Garland, B., Spohn, C., & Wodahl, E. (2008). Racial disproportionality in the American prison population: Using the Blumstein method to address the critical race and justice issues of the 21st Century. *Justice Policy Journal*, 5(2), 1-42.

18. Blumstein, A. (1982). On the racial disproportionality of United States' prison populations. *The Journal of Criminal Law and Criminology*, 73(2), 1259-1281.; Garland, B., Spohn, C., & Wodahl, E. (2008). Racial disproportionality in the American prison population: Using the Blumstein method to address the critical race and justice issues of the 21st Century. *Justice Policy Journal*, 5(2), 1-42.

19. Blumstein, A. (1993). Racial disproportionality of U.S. prison populations revisited. *University of Colorado Law Review*, 64(3), 743-760.

20. Baumer, E. (2010). Reassessing and redirecting research on race and sentencing. [Unpublished manuscript]. School of Criminal Justice, University at Albany; Tonry, M. (2011). *Punishing race: An American dilemma continues*. Oxford University Press.

21. Bosick, S. J. (2021). *Racial disparities in prosecutorial outcomes*. Sonoma State University.

22. Blumstein, A. (1982). On the racial disproportionality of United States' prison populations. *The Journal of Criminal Law and Criminology*, 73(2), 1259-1281.; Garland, B., Spohn, C., & Wodahl, E. (2008). Racial disproportionality in the American prison population: Using the Blumstein method to address the critical race and justice issues of the 21st Century. *Justice Policy Journal* 5(2), 1-42.

23. Crawford, C., Chiricos, T., & Kleck, G. (1998). Race, racial threat, and sentencing of habitual offenders. *Criminology*, 36, 481-511; Spohn, C., & Cederblom, J. (1991). Race and disparities in sentencing: A test of the liberation thesis. *Justice Quarterly*, 8, 305-327.

24. Baumer, E. (2010). Reassessing and redirecting research on race and sentencing. [Unpublished manuscript]. School of Criminal Justice, University at Albany; Sorenson, Hope, and Stemen (2003); Garland, B.E., Spohn, C., & Wodahl, E.J. (2008). Racial disproportionality in the American prison population: Using the Blumstein method to address the critical race and justice issue of the 21st century. *Justice Policy Journal*, 5(2), 1-42.; and Bridges and Crutchfield (1988); Tonry, M., & Melewski, M. (2008). The malign effects of drug and crime control policy on Black Americans. In M. Tony (Ed.) *Crime and Justice: A review of research*, 1-44. University of Chicago Press; For a review of a number of studies that have applied Blumstein's formula to identify the amount of disproportionality that can be attributed to crime, as measured by arrest, see: Garland, B.E., Spohn, C., & Wodahl, E.J. (2008). Racial disproportionality in the American prison population: Using the Blumstein method to address the critical race and justice issue of the 21st century. *Justice Policy Journal*, 5(2), 1-42; Mauer, M., & King, R. (2007). *Uneven justice: State rates of incarceration by race and ethnicity*. The Sentencing Project; Bridges, G., & Crutchfield, R. D. (1988). Law, social standing, and racial disparities in imprisonment. *Social Forces*, 66(3), 699-724.

25. Armstrong, G., & Rodriguez, N. (2005). Effects of individual and contextual characteristics on preadjudication detention of juvenile delinquents. *Justice Quarterly*, 22(4) 521-539.

26. Wacquant; L. (2000). The new 'peculiar institution': On the prison as surrogate ghetto. *Theoretical Criminology*, 4(3), 377-389.

27. Gottlieb, A., & FLynn, K. (2021). The legacy of slavery and mass incarceration: Evidence from felony case outcomes. *Social Science Review*, 3-35.

28. Bobo, L., & Thompson, V. (2010). *Racialized mass incarceration: Poverty, prejudice, and punishment*. In Doing Race: 21 Essays on the 21st Century. Hazel Markus and Paula Moya, (Eds.) Norton; Crawford, C., Chiricos, T., & Kleck, G. (1998). Race, racial threat, and sentencing of habitual offenders. *Criminology* 36(3), 481-511; Tonry, M. (2011). *Punishing race: An American dilemma continues*. Oxford University Press.

29. Tonry, M. (2011 *Punishing race: An American dilemma continues*. Oxford University Press; Western, B. (2006). *Punishment and inequality in America*. Russell Sage Foundation.

30. These included self-report behaviors such as "threatens to hurt people, screams a lot," stubborn sullen, or irritable, "sudden changes in moods and feelings," gets in many fights, "swearing and obscene language and "destroys things belonging to others."

31. Unnever, J. D. (2015). The racial invariance thesis revisited: Testing an African American theory offending. *Journal of Contemporary Criminal Justice*, 1(1), 1-20.

32. Baumer, E. (2015). Reassessing and redirecting research on race and sentencing. *Justice Quarterly*, 30(2), 231-261.

33. Caravelis, C., Chiricos, T., & Bales, W. (2013). Race, ethnicity, threat, and the designation of career offenders. *Justice Quarterly*, 30(5), 869-894; Crawford, C., Chiricos, T., & Kleck, G. (1998). Race, racial threat, and sentencing of habitual offenders. *Criminology* 36(3), 481-511.

34. Eberhardt, J.L., Goff, P.A., Purdie, V.J., & Davies, P.G. (2004). Seeing black: Race, crime, and visual processing. *Journal of Personality and Social Psychology*, 87(6), 876-893.

35. Lundman, R. J. (2003). The newsworthiness and selection bias in news about murder. Comparative and relative effects of novelty and race and gender typifications on newspaper coverage about homicide. *Sociological Forum*, 18(3), 357-386.

36. Dorfman, L., & Schiraldi, V. (2001). *Off balance: Youth, race, and crime in the news*. Building Blocks for Youth.

37. Hetey, R. C., & Eberhardt, J. L. (2014). Racial disparities in incarceration increase acceptance of punitive policies. *Psychological Science*, 25(10), 1949-1954.

38. Kang, J., Bennett, M., Carbado, D., Casey, P., Dasgupta, N., Faigman, D., Godsil, R., Greenwald, A., Levinson, J., & Mnookin, J. (2012). Implicit bias in the courtroom. *UCLA Law Review 59*: 1124:1186.

39. Bobo, L. D., & Johnson, D. (2004). A taste for punishment: Black and white Americans' views on the death penalty and the war on drugs. *DuBois Review 1*(1), 151-180.

40. Zimring, F. (2010). The scale of imprisonment in the United States: Twentieth century patterns and twenty-first century prospects. *The Journal of Criminal Law and Criminology, 100*(3), 1225-1241.

41. Kutateladze, B., Andirilo, N., Johnson, B.D., & Spohn, C.C. (2014). Cumulative disadvantage: Examining racial and ethnic disparity in prosecution and sentencing. *Criminology 52*(3) 514-551.

42. Frost, N., & Clear, T. (2013). *The punishment imperative: The rise and failure of mass incarceration in America*. New York University Press.

43. Tonry, M. (2011) Less imprisonment is no doubt a good thing: More policing is not. *Criminology and Public Policy, 10*(1), 137-152.

44. Fagan, J. (2010). *Second supplemental report*, Floyd v The City of New York, 2013 U.S. District. LEXIS 68790 (S.D.N.Y. 2013). (08 Civ. 01034).

45. Pierson, E. et al. (2020). A large-scale analysis of racial disparities in police stops across the United States. *Nature Human Behaviour*, 4, 736-745.

46. Schnake, T., Jones, M., & Brooker, C. (2010). *The history of bail and pretrial release*. Pretrial Justice Institute.

47. Spohn, C. (2000). Thirty years of sentencing reform: The quest for a racially neutral sentencing process. In J. Horney (Ed.), *Policies, Processes, and Decisions of the Criminal Justice System, Volume 3*, (427-501): page 481.

48. King, R. D., & Light, M. T. (2019). Have racial and ethnic disparities in sentencing declined? *Crime and Justice, 48*, 365-419.

49. Baumer, E. (2010). Reassessing and redirecting research on race and sentencing. [Unpublished manuscript]. School of Criminal Justice, University at Albany.

50. Rothwell, J. (2015). *Drug offenders in American prisons: The critical difference between stock and flow*. Brookings Institution.

51. Tonry, M. (2014). Legal and ethical issues in the prediction of recidivism. *Federal Sentencing Reporter, Volume 26* (3), 167-176.

52. Frase, R. & Roberts, J. V. (2019). *Paying for the past: The case against prior record sentencing enhancements*. Oxford University Press.

53. Warren, P. Chiricos, T., & Bales, B. (2011). The imprisonment penalty for young Black and hispanic males: A crime specific analysis. *Journal of Research in Crime and Delinquency 49*(1), 56-80.

54. Crawford, C., Chiricos, T., & Kleck, G. (1998). Race, racial threat, and sentencing of habitual offenders. *Criminology 36*(3): 481-511; Caravelis, C., Chricos, T., & Bales, W. (2013). Race, ethnicity, threat, and the designation of career offenders. *Justice Quarterly 30*(5), 869-894.

55. Chen, E. (2008). The liberation hypothesis and racial and ethnic disparities in the application of California's Three Strikes Law. *Journal of Ethnicity in Criminal Justice, 6*(2), 83-102.

56. Bridges, G., & Crutchfield, R.D. (1988). Law, social standing and racial disparities in imprisonment. *Social Forces, 66*(3), 699-724.

57. Krivo, L., & Peterson, R. (1996). Extremely disadvantaged neighborhoods and urban crime. *Social Forces, 75*(2), 619-647.

58. Krivo, L., Peterson, R., & Kuhl, D. C. (2009). Segregation, racial structure, and neighborhood violent crime. *American Journal of Sociology, 114*(6), 1765-1802.

59. Piquero, A. R., Moffitt, T., & Lawton, B. Race differences in life course persistent offending. In D. Hawkins, & K. Kempf-Leonard, (Eds). *Our Children, Their Children.* (202-224). University of Chicago Press.

60. Hawkins, D., Laub, J., Lauritsen, J., & Cothern L. (2000). *Race, ethnicity, and serious and violent juvenile offending.* Office of Juvenile Justice and Delinquency Prevention; Hsia, H., Bridges, G., and McHale, R. (2004). *Disproportionate Minority Confinement: 2002 Update*. Office of Juvenile Justice and Delinquency Prevention; Nellis, A. (2015). *A return to justice: Rethinking our approach to juveniles in the system*. Littlefield and Rowman.

61. Warren, P., Chiricos, T., & Bales, B. (2011). The imprisonment penalty for young Black and Hispanic males: A crime specific analysis. *Journal of Research in Crime and Delinquency, 49*(1), 56-80.

62. Nellis, A. (2016). *The color of justice: Racial and ethnic disparity in state prisons*. The Sentencing Project.

63. New Jersey Senate Bill 677: https://www.njleg.state.nj.us/2016/Bills/S1000/677_R3.PDF.

64. Balcerzak, A. (2020, August 4). *In two years, NJ wrote only one 'racial impact statement' to study criminal justice disparities.* NorthJersey.com.

65. Foley, R. J. (2015, January 21). *Racial-impact law has modest effect in Iowa*. NorthJersey.com. and on six occasions bills advanced even though racially disparate impacts were estimated to ensue. https://www.northjersey.com/story/news/politics/2015/01/21/racial-impact-law-effect-iowa-legislature/22138465/

66. Mauer, M. & King, R. (2007). *Uneven justice: State rates of incarceration by race and ethnicity.* The Sentencing Project.

67. This has come about during a period when the Black population in Iowa has increased substantially, which accounts for some of this decrease.

68. Federal Bureau of Investigation. *Uniform Crime Report, 2018.* FBI.

69. Descano, S. (2020). I won't prosecute adults for simple possession of marijuana: It's only fair. *Washington Post.*

70. Capitol News Service (2017). *The numbers behind racial disparities in marijuana arrests across Virginia.* CNS.

71. Nagin, D. (2013). Deterrence in the 21st century. In M. Tonry (Ed.) *Crime and Justice in America 1975-2025.* (199-264) University of Chicago Press.

72. Mauer, M. (2011). Addressing racial disparities in incarceration. *The Prison Journal 91* (87S-101S).

73. Ghandnoosh, N. (2015). *Black lives matter: Eliminating racial inequity in the criminal justice system*. The Sentencing Project.

74. Sabol, W., Johnson, T., & Caccavale, A. (2019). *Trends in correctional control by race and sex.* Council on Criminal Justice.

# The Color of Justice: Racial and Ethnic Disparity in State Prisons

**Ashley Nellis, Ph.D.**

October 2021



**THE SENTENCING PROJECT**

RESEARCH AND ADVOCACY FOR REFORM

1705 DeSales Street NW, 8th Floor
Washington, D.C. 20036
Tel: 202.628.0871
Fax: 202.628.1091
sentencingproject.org

Related publications by The Sentencing Project:

- Racial Disparities in Youth Incarceration Persist
- Report to the United Nations on Racial Disparities in the U.S. Criminal Justice System
- Black Lives Matter: Eliminating Racial Inequity in the Criminal Justice System

The Sentencing Project promotes effective and humane responses to crime that minimize imprisonment and criminalization of youth and adults by promoting racial, ethnic, economic, and gender justice.