FILED

2023 Jul-31  AM 07:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 1

```
 1                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ALABAMA
 2                            SOUTHERN DIVISION


 3


 4       BOBBY SINGLETON, et al.,          *
                 Plaintiffs,               *   2:21-cv-1291-AMM
 5                                         *   June 16, 2023
         vs.                               *   Birmingham, Alabama
 6                                         *   8:00 a.m.
         JOHN MERRILL, in his official *
 7       capacity as Alabama Secretary *
         of State, et al.,                 *
 8               Defendants.               *
         ******************************
 9                                         *
         EVAN MILLIGAN, et al.,            *
10               Plaintiffs,               *   2:21-cv-1530-AMM
                                           *
11       vs.                               *
                                           *
12       JOHN MERRILL, in his official *
         capacity as Alabama Secretary *
13       of State, et al.,                 *
                 Defendants.               *
14       ******************************
                                           *
15       MARCUS CASTER, et al.,            *
                 Plaintiffs,               *   2:21-cv-1536-AMM
16                                         *
         vs.                               *
17                                         *
         JOHN MERRILL, in his official *
18       capacity as Alabama Secretary *
         of State, et al.,                 *
19               Defendants.               *
         ******************************
20


21
                        TRANSCRIPT OF STATUS CONFERENCE
22                          VIA ZOOM CONFERENCE
                   BEFORE THE HONORABLE ANNA M. MANASCO,
23                    THE HONORABLE TERRY F. MOORER,
                       THE HONORABLE STANLEY MARCUS
24


25
```

**_CHRISTINA K. DECKER, RMR, CRR_**
Federal Official Court Reporter
101 Holmes Avenue, NE
Huntsville, AL 35801
256-506-0085/ChristinaDecker.rmr.crr@aol.com

1

2    Proceedings recorded by OFFICIAL COURT REPORTER, Qualified
     pursuant to 28 U.S.C. 753(a) & Guide to Judiciary Policies
3       and Procedures Vol. VI, Chapter III, D.2.  Transcript
                   produced by computerized stenotype.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                        APPEARANCES

2

    FOR THE SINGLETON PLAINTIFFS:
3   Henry C Quillen
    WHATLEY KALLAS LLP
4   159 Middle Street Suite 2D
    Portsmouth, NH 03801
5   603-294-1591
    Fax: 800-922-4851
6   Email: Hquillen@whatleykallas.com

7

8   FOR THE MILLIGAN PLAINTIFFS:
    Deuel Ross
9   NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
10  700 14th Street N.W. Ste. 600
    Washington, DC 20005
11  (202) 682-1300
    Dross@naacpldf.org

12

13

    FOR THE CASTER PLAINTIFFS:
14  Abha Khanna
    ELIAS LAW GROUP LLP
15  1700 Seventh Avenue, Suite 2100
    Seattle, WA 98101
16  206-656-0177
    Email: AKhanna@elias.law
17  Richard P Rouco
    QUINN CONNOR WEAVER DAVIES & ROUCO LLP
18  Two North Twentieth Street
    2 20th Street North
19  Suite 930
    Birmingham, AL 35203
20  205-870-9989
    Fax: 205-803-4143
21  Email: Rrouco@qcwdr.com

22

23

24

25
```

```
 1          FOR THE DEFENDANT:
            Edmund Gerard LaCour, Jr.
 2          OFFICE OF THE ATTORNEY GENERAL
            501 Washington Avenue
 3          P.O. Box 300152
            Montgomery, AL 36104
 4          334-242-7300
            Fax: 334-242-4891
 5          Email: Edmund.Lacour@AlabamaAG.gov

 6          James W Davis
            OFFICE OF THE ATTORNEY GENERAL
 7          501 Washington Avenue
            P O Box 300152
 8          Montgomery, AL 36130-0152
            334-242-7300
 9          Fax: 334-353-8400
            Email: Jim.davis@alabamaag.gov

10

11          J Dorman Walker
            BALCH & BINGHAM LLP
12          P O Box 78
            Montgomery, AL 36101
13          334-834-6500
            Fax: 334-269-3115
14          Email: Dwalker@balch.com

15

16

17

18

19          COURTROOM DEPUTY:  Frankie N. Sherbert

20

21          COURT REPORTER:  Christina K. Decker, RMR, CRR

22

23

24

25
```

1                          **P R O C E E D I N G S**

2                    (In open court.)

3          JUDGE MARCUS:  Good morning.  Let me ask you, Clerk,

4    if you will call the three cases.  If not, I will call it.

5          We're here on Milligan and Caster, and I suppose on

6    Singleton, as well.

7          And so if you would be kind enough to state your

8    appearances for the record.

9          First for the plaintiffs, for the Milligan plaintiffs.

10         MR. ROSS:  Yes, Your Honor.  This is Deuel Ross for

11   the Milligan plaintiffs.

12         THE COURT:  Good morning to you.

13         And for the Caster plaintiffs.

14         MS. KHANNA:  Good morning, Your Honor.  This is Abha

15   Khanna for the Caster plaintiffs.

16         THE COURT:  Good morning to you.

17         And for the Singleton plaintiffs.

18         MR. QUILLEN:  Yes, Your Honor.  This is Henry Quillen

19   for the Singleton plaintiffs.

20         THE COURT:  And good morning to you, as well.

21         And for the defendants?

22         MR. DAVIS:  Good morning, Judge.  Jim Davis here for

23   the defendants.  And with me is Edmund LaCour, also for the

24   defendants, and Dorman Walker for the intervenors.

25         JUDGE MARCUS:  Good morning to all of you.

1      We set this matter down promptly for a status conference

2  because of the critical problem of timing and how to proceed in

3  the case.

4      By way of backdrop, I should also say we received late

5  yesterday afternoon and last night two pleadings -- one from

6  the defendants about how to proceed, and issues concerning the

7  legislative body.  And then later last night, we received,

8  Mr. Ross, from you, an additional pleading as to your view of

9  how we ought to proceed in the case.  And, as I understand it,

10  that was joined in by all of the plaintiffs.

11      Do I have that right, Mr. Davis and Mr. Ross?

12          MR. QUILLEN:  The Singleton plaintiffs didn't join,

13  not necessarily because we didn't agree with it, but it came

14  together, as you noticed, late in the evening.

15      Our position today is that the injunction order pretty

16  clearly lays out what should happen from here on out.  And we

17  do not object to any of the dates in the proposed order.

18          JUDGE MARCUS:  I understand.  The history need not be

19  belabored before we begin.

20      The Legislature drew a new map, HB1, shortly after the

21  census came out.  The plaintiffs promptly challenged it,

22  alleging a violation of Section 2 of the Voting Rights Act and

23  the Constitution, as well.

24      We set the matter down promptly for discovery and hearing,

25  and we conducted a pretrial conference at some length, at which

1   time we concluded that HB1 likely violates Section 2 of the

2   Voting Rights Act.

3        At that point, we enjoined the Secretary of State from

4   conducting the '22 midterm elections pursuant to that plan.

5   And having found that an appropriate remedy is a congressional

6   redistricting plan that includes either an additional

7   majority-minority congressional district or an additional

8   district in which black voters otherwise have an opportunity to

9   elect a representative of their choice.

10       And as you know, we observed, and I observe again that

11   this is fundamentally a legislative task, and they obviously

12   should have the first opportunity to draw a map.

13       We appointed, after notice and discussion, Mr. Richard

14   Allen as a special master, and Professor Persily to assist with

15   the task of drawing a remedial map, if it were necessary to do

16   so.

17       The Supreme Court stayed the order, the matter.  It took

18   jurisdiction over all of the cases, and heard it in October of

19   '22, and ruled on June the 8th affirming the preliminary

20   injunction entered by the district court.  And on June

21   the 12th, the Supreme Court vacated the stay that they had

22   originally entered.

23       So where we are, I think procedurally, is the preliminary

24   injunction is in effect, at least at this point, until further

25   order of the Court, and from developments.  And the appointment

1    of Mr. Allen and Professor Persily remains in effect, as well.

2        How we should proceed from here is, obviously, the

3    essential question -- and we have some different approaches

4    suggested by the parties.

5        The one concern that I wanted to highlight for all of the

6    parties -- and this looks like the concern of each member of

7    the panel -- is the substantial time constraints that are upon

8    us.  And we've talked about them at some length, but there are

9    at least the following, and maybe others that I haven't

10   mentioned.

11       But, first, as we reviewed Alabama law, candidates for

12   election must qualify, and the political parties must adopt and

13   file a resolution stating the method by which delegates are to

14   be selected by their respective -- for their respective

15   primaries by November 10th, '23.  That was in the Alabama Code.

16       By December 20th, as we see the requirements of the

17   Alabama law, the political parties must certify their

18   candidates to election officials.

19       And under federal law, under the Uniformed and Overseas

20   Citizens Absentee Voting Act, absentee ballots must be

21   transmitted to identify voters by January 20, '24.  And, of

22   course, the primaries have been set by Alabama law for early

23   March.  So we have all of those time constraints upon us.

24       We also had the opinion of the Secretary of State.  We had

25   solicited his view to tell us what in his view was an

```
 1    appropriate time frame for a map, a remedial map to be in place
 2    in order to successfully implement Alabama law.  And if I have
 3    it correct, he opined that he thought a remedial plan must be
 4    in place by early October of '23.
 5         And so the time constraints struck the Court as very real
 6    and very immediate.  And so that's why we wanted to bring you
 7    in today to put our heads together and come up with the best,
 8    the most efficacious process for proceeding in the matter.
 9         Having said that, I thought we would begin with the
10    plaintiffs, and then turn, Mr. Davis, to you for your thoughts.
11         With that, Mr. Ross, fire away.
12              MR. ROSS:  Yes, Your Honor.
13         Plaintiffs, including the Caster plaintiffs, filed a
14    motion last night to lay out what we think is an appropriate
15    way for the Court to address the remedial proceedings going
16    forward.
17         My understanding from Mr. Davis is that the Legislature is
18    going to be in session for a special session beginning in July
19    and ending July 21st.  And we believe that our schedule is
20    consistent with the Supreme Court precedent which gives the
21    Legislature the first opportunity to enact a remedial map, and
22    then for this Court to evaluate the effectiveness of that map
23    in remedying the Section 2 violation.
24         We also think, given that the State has emphasized that it
25    needs a remedial map in place by October 1, that getting these
```

 1  proceedings over with as quickly as possible so that the Court

 2  has time to evaluate any proposals with its special masters,

 3  and perhaps, if necessary, enter its own remedial plan, that

 4  the schedule allows for that and is appropriate.

 5          JUDGE MARCUS:  Let me ask you just a couple of

 6  follow-up questions, Mr. Ross.

 7      I take it from the submission from Mr. Davis and

 8  Mr. LaCour that the Legislature is gearing up to go forward,

 9  and the Governor is going to go forward with calling a special

10  session.  And Mr. Davis, Mr. LaCour gave us the dates that they

11  thought worked for the Legislature.

12      What happens if by the 21st of July the Legislature is

13  unable to come up with a plan?  What would you have us do and

14  the parties do at that point?

15      I say that because we have set a tentative trial date for

16  July 31st.  We set that date only after -- tentatively only

17  after consulting at great length with all of the parties in the

18  case.

19      You would have, then, at that point a preliminary

20  injunction.  You would not have had a permanent injunction.

21  And presumably we would go forward on the 31st of July, but the

22  time for any supplemental discovery, to the extent the parties

23  seek any, would be very, very short.  You would have only

24  literally ten days.

25      So what happens in the eventuality that they're unable to

1  effect a plan and it becomes the task of the Court to address

2  the problem?  You have at that point a window of only ten days

3  between the 21st of July and the 31st, which is our tentative

4  trial date.

5            MR. ROSS:  Yes, Your Honor.  If I understand the

6  question correctly, you're saying what if -- if the Legislature

7  fails to act, would we go forward with trial at the end of

8  July?

9            JUDGE MARCUS:  Well, yeah.  I mean, presumably.

10    I mean, we have a preliminary injunction in place that has

11  concluded simply that there is a likely violation of Section 2.

12  No more, no less.

13        Obviously, if we were proceeding on the preliminary

14  injunction, it would fall to the Court, if the Legislature

15  chose not to proceed, to come up with a map, share it with the

16  parties, invite comment, and then come up with an ultimate

17  resolution of the matter.  But you would have only ten days.

18        What I'm really getting at with my question is:  Do we

19  need to go forward with discovery in the meantime?  In other

20  words, proceed on two tracks to make sure that everyone has as

21  much time as we reasonably and practicably can build into the

22  equation to proceed, if it becomes necessary to proceed with

23  the preliminary injunction and determine whether it ought or

24  ought not to be converted into a permanent injunction.

25        Do you get the drift of my question?

1           MR. ROSS:  I do, Your Honor.  I think that I would

2    need to consult with my clients and with my colleagues.

3        But I believe that it would be possible -- one option that

4    the Court could consider is to do a dual track, is to have the

5    Legislature come up with a remedy, the Court's preliminary

6    injunction still exists, have the Court consider whether or not

7    the Legislature's remedy is appropriate, and, if necessary,

8    enter a remedial plan that will be in place at least for the

9    time being so that there's no ambiguity.

10       And then have a dual track in which we perhaps move the

11   trial date a few weeks so that we have a little bit more time.

12       I think it's important that we get -- resolve this

13   remedial issue, given what the State has said.  But, you know,

14   I'm open to what other folks, including Ms. Khanna, think about

15   the proposal.

16           JUDGE MARCUS:  Let me ask you an additional question.

17       I was looking at your pleading that you had submitted on

18   behalf of the plaintiffs last night.  And in it, you say --

19   this is in your proposed remedial scheduling order -- you

20   write, Within seven days of the Legislature enacting a remedial

21   proposal, but no later than July 26, '23, defendant shall file

22   a status report notifying the Court about the Legislature's

23   efforts to enact a remedy.

24       It seems to me it's very easy for them to say here's the

25   remedy, they've adopted it.  So I don't -- I don't think that's

1   a lengthy time thing.

2        But then you write -- and this is the thrust of my

3   question -- If the Legislature does not enact -- does enact a

4   remedial -- proposed remedial plan, all defendants shall submit

5   a joint memorandum describing that proposal with supporting

6   evidence, including expert reports.  Defendants shall explain

7   whether the Legislature's proposed remedial plan completely

8   remediates the prior dilution of minority voting strengths.

9        Can you explain to me why you think we ought to proceed

10  that way?

11        MR. ROSS:  Yes, Your Honor.  In Covington -- in North

12  Carolina vs. Covington, a Supreme Court case from 2018, the

13  Court laid out the proper procedure for evaluating a remedial

14  redistricting plan.  There the Court said, which is consistent

15  with nearly 50 years of Supreme Court precedent, that when the

16  Legislature is found to have violated federal law, that the

17  Legislature gets the first opportunity to enact a remedial

18  plan.  But if the plaintiff -- the Court doesn't lose

19  jurisdiction merely because the State has enacted a new

20  proposed remedy.  The Court has to evaluate whether or not that

21  remedy actually addresses the violation that the Court found.

22        If the Court says -- you know, looks at the remedy and,

23  for example, an extreme example, if Alabama decides that

24  they're going to draw a new map, and have zero out of seven

25  majority-black districts, or draws a map in which, you know,

1    one of the districts goes from 30 percent black to 40 percent

2    black, but the evidence shows that it doesn't actually give

3    black voters an opportunity to elect their candidates of

4    choice, this Court is obligated to look at that and consider

5    whether or not that's a proper remedy.  And if it's not a

6    proper remedy, then the Court can and should adopt its own

7    remedial plan.

8        That's exactly what happened in the Covington case.  The

9    district court retained jurisdiction after the Legislature

10   passed a new plan.  The district court found, after the

11   plaintiffs objected, that that new plan did not cure the

12   violation.  And the Supreme Court affirmed the district court's

13   implementation of its own remedial plan that rejected what the

14   Legislature had done.

15       JUDGE MARCUS:  Let me ask you two sort of follow-up

16   questions.  The two alternative possibilities here.

17       The first, the Legislature goes forward and finds it's

18   unable to enact a plan.  How much discovery do you need, if

19   that were the reality, to address HB1 in a permanent

20   injunction?  And what discovery would you have to do?

21       MR. ROSS:  I think, Your Honor, we would probably need

22   at least a month between the decision by the -- finding out

23   that the Legislature was not going to pass a plan and a trial

24   date, just to conduct at least a few weeks of additional

25   discovery, that that's some, perhaps, expert deadline, a

1    deposition, and then, you know, for the Court to address any

2    motions in limine.

3         So I would say, you know, between -- assuming that we

4    learn the Legislature is not going to enact a plan by

5    July 21st, if the Court does want to hold a trial on the

6    permanent injunction, then we would need at least a month

7    between that date and trial.

8              JUDGE MARCUS:  If you followed that schedule, and they

9    concluded by the 21st of July, they, the legislative body, was

10   unable to reach agreement on a new plan and you needed a month

11   of discovery, that would take you to the 20th, 21st of August

12   to complete discovery, in which case we couldn't try the case

13   if we otherwise had to until late August, early September.

14        So if you followed that scenario without conducting

15   discovery sooner, we would be trying the case late August.  And

16   depending on the resolution, proceeding under an even tighter

17   time frame.

18        I simply am thinking aloud with you to seek everyone's

19   guidance about how we deal with these problems.

20        Can you tell me more particularly what expert discovery

21   you would have to do, with regard to the first possibility that

22   I've thrown out?

23             MR. ROSS:  I think for the plaintiffs, as far as the

24   Milligan plaintiffs at least, we still have our separate

25   constitutional claims, our intentional discrimination claim,

1    for example.  And we would need to -- we haven't done any

2    expert reports or disclosures around that.

3        And just to be clear, Your Honor, I -- to the extent the

4    Court is thinking of setting a trial date or, you know -- I

5    believe we can go forward with discovery now.  We can set

6    expert discovery dates that are earlier in July.

7        My point was merely that I think, you know, the trial date

8    should be sometime in mid August, not that discovery would run

9    necessarily to that point.  So I would ask that if the Court

10   does think that we, you know, we should set a trial date, I

11   would suggest moving it from -- at least moving it from the end

12   of July where it is now to sometime in the middle of August

13   after --

14        JUDGE MARCUS:  Let me ask the alternative question.

15        We've been told the Legislature is reasonably likely to go

16   forward.  Mr. Davis and Mr. LaCour have given us the dates that

17   they've proposed work for the State.

18        Let's assume they have a new map -- and let me just say

19   parenthetically that, at least speaking for myself, this is a

20   fundamental legislative choice, and they most assuredly ought

21   to have the first opportunity to do this.

22        You get a map from the Legislature 21 July.  You look at

23   the map and you say, We don't think it complies with Section 2.

24   Let's just assume worst-case scenario that's the conclusion you

25   reach.  And you choose to challenge the new map.

1          Obviously, time becomes even more of a factor under those
2   circumstances.  How would you have us proceed?  Just lay it out
3   for me specifically.
4          MR. ROSS:  Proceed to -- Your Honor, I think that that
5   is addressed in our schedule.
6          So what we are proposing in our schedule is basically to
7   give the Legislature about a month to come up with a new plan.
8   And then if they come up with a plan, you know, that the
9   defendants will then explain why this plan does or does not
10  comply with the Court's injunction.  And then plaintiffs would
11  file objections and perhaps their own alternative map that
12  would lay out why they think that whatever the Legislature came
13  up with does not comply and why some alternative maps, perhaps,
14  that the plaintiffs would look at, that the Court would
15  consider along with its special master, why those may be better
16  remedied and why the Court should instead order whatever the
17  plaintiffs or the Court devised to fully remedy the Section 2
18  violation.
19         JUDGE MARCUS:  Any further discovery that you would
20  see yourself having to do regarding a new map?  I guess what
21  I'm really asking is --
22         MR. ROSS:  Yes.
23         JUDGE MARCUS:  -- are you starting over?
24         MR. ROSS:  Not from our perspective, Your Honor.  I
25  think the law is clear that when the Legislature enacts a new

```
1   plan, that the question is -- given that there's an existing
2   injunction, the question is, then, you know, starting over with
3   a new lawsuit, the question is does what the Legislature has
4   put forward actually remedy what the Court -- the violations
5   that the Court has found.
6       And so that's for the Court to decide with input from the
7   plaintiffs.  And the Court can decide, you know, that this new
8   proposal doesn't remedy the Section 2 violation, and come up
9   with its own plan.
10      So I don't think that there is, you know, much discovery
11  beyond whether or not, you know, in our remedial -- in its
12  remedial process, the question is really defendants may put
13  forward a plan and say this plan remedies the Section 2
14  violation, and then plaintiffs will present their own largely
15  expert opinion identifying why, if they think so, it does not
16  comply with Section 2 and the Court's injunction.
17          JUDGE MARCUS:  One other thing I wanted to ask before
18  I turn it over to Judges Manasco and Moorer to follow up, and
19  before we go on to Mr. Davis and Mr. LaCour, was basically
20  this:  Should we have to go down that route, would you not have
21  to file some kind of amended complaint?  If you are challenging
22  a new plan, would you have to amend your pleadings to do it?
23          MR. ROSS:  No, Your Honor.  I don't think that that's
24  necessary.
25      You know, I think it's possible for us to amend our
```

1  complaint, if that is, you know, what the Court and the parties

2  think are -- would be helpful.

3       But I think it's very clear, again from decades of Supreme

4  Court precedent, that the issue is that the Legislature, when

5  they pass a new plan, it's simply putting forward its proposed

6  remedy, and that this Court considers the appropriateness of

7  that remedy.

8       It's all a part of the same lawsuit.  It's not -- it

9  doesn't create sort of a new issue, or a new case, or a new

10 claim.  It's merely did the Legislature's proposed plan comply

11 with the Court's injunction and with federal law.

12          JUDGE MARCUS:  Last question from me.

13      You reference in the course of your presentation this

14 morning the fact that there's a constitutional claim that you

15 have, as well, which we did not address in any way.  And, of

16 course, Mr. Quillen will presumably address that issue, too,

17 because his claim is a constitutional claim.

18      What additional discovery has to be done, and how long

19 would it take to present that from your perspective?  That body

20 of evidence that you think goes to the constitutional attack.

21          MR. ROSS:  Sure, Your Honor.  I think primarily what I

22 imagine is expert testimony, and perhaps some fact witness

23 testimony about the intent of the Legislature when they enacted

24 the 2021 plan.

25      Our claim, we have the racial-gerrymandering claim, but we

1   also have an intentional racial discrimination claim.  And I

2   believe it could be, you know, fairly limited trial testimony,

3   and perhaps one or two expert reports on the issue.

4          JUDGE MARCUS:  Thank you.

5       Judge Manasco, questions?

6          JUDGE MANASCO:  I think I am actually going to hold

7   mine until I have heard from everyone, because I think some of

8   what others say may impact the questions I ask.

9       So let's pass over me for now.

10          JUDGE MARCUS:  Judge Moorer, questions for Mr. Ross at

11   this point?

12          JUDGE MOORER:  Okay.  Mr. Ross, if the Legislature

13   passes a new map, you would need time to review it, you and the

14   other plaintiffs, and the Court.  And let's assume that your --

15   you and the Caster plaintiffs decide that the new map does not

16   satisfy Section 2.

17       When should we take our next steps?  Should we immediately

18   after the passage of the map send our cartographer and our

19   special master to work, or should we wait until a specific date

20   and then go forward?

21          MR. ROSS:  Yes, Your Honor.  And if you'd just give me

22   a moment, I am pulling up our proposed schedule.

23       So what the plaintiffs had proposed is that the Court give

24   the Legislature until July 21st to come up with its remedial

25   map.  That on July 26th the defendants would file a pleading of

some sort, in which presumably a brief perhaps with some expert
analysis identifying why they think that the Legislature's
remedy satisfies Section 2.  Plaintiff then would have another
week to file a response to whatever the State filed.

And your scenario, if the Legislature came up with an
ineffective plan, plaintiffs would present expert testimony
about why that plan was ineffective to remedy a Section 2
violation.  And the Court would then hold a hearing on the week
of August 14th to determine whether or not the Court should
adopt its own remedial plan.

And I believe the Court, given that you have already
appointed special masters for this purpose, could
simultaneously be doing its own analysis, and obviously would
have, you know, the benefit of whatever expert testimony and
report the plaintiffs and the board would put in -- excuse
me -- the State would put in.

JUDGE MOORER:  Okay.  That was all.

MR. ROSS:  And, Your Honor, I wasn't clear if you were
going to ask Ms. Khanna, just because she speaks for a separate
group of plaintiffs.  I wanted to make sure she had the
opportunity to --

JUDGE MARCUS:  I assure you, Mr. Ross, everyone will
get the chance to be heard.

If there's nothing further for Mr. Ross, let me turn to
Ms. Khanna.

1          MS. KHANNA:   Thank you, Your Honor.   I guess I just
2   want to -- in light of this discussion, I want to reframe maybe
3   the conversation a little bit.

4          I believe -- my understanding is where we are today on
5   June 16th, is pretty much exactly where we were at the end of
6   January 2022, which means this map, HB1, is enjoined.   No
7   election can be held under HB1, so the question is what map
8   will be in place for the next election.

9          And while -- just as envisioned by the Court in January of
10  last year, while the Legislature may get the first opportunity,
11  there is -- it's not like the -- it's not like the plaintiffs
12  are now -- the status quo is now there is no map.

13         So if the Legislature fails to take that opportunity, does
14  not -- is not able to draw a map, we go on to the Court's
15  map-drawing process that was envisioned by this Court's order.

16         I don't believe that the rush of trial or the rush of all
17  the hearings and discovery that happened during the preliminary
18  injunction phase, I believe that that was a function of a
19  preliminary injunction.   The rushed process.

20         But now that the preliminary injunction is affirmed and is
21  in place, to the extent that any party believes that there
22  needs be further trial on the merits on any issue, including
23  Section 2, but certainly on the issues, that is going to
24  proceed on a separate track.   And I don't see -- unless the
25  State wants to move for some kind of fast tracking here, there

1   is no basis, I think, for us to kind of presume that that also

2   needs to be expedited.  Because, of course, the status quo

3   right now is HB1's nullity.  It is enjoined.  And there needs

4   to be a map.  And the Court needs to ensure there's a map if

5   the Legislature fails to do so.

6         JUDGE MARCUS:  Let me follow up on that, if I can.

7   And help me with your view on this.

8       We have a ruling that HB1 likely violates Section 2.  We

9   have a ruling, as I said earlier, that we have enjoined the

10  Secretary of State from proceeding with HB1.

11      The defendant turns around and said, that's all right and

12  true.  We want a permanent injunction, trial on the merits.  We

13  have additional evidence we propose to offer.

14      I'm thinking aloud now.

15         MS. KHANNA:  Uh-huh.

16         JUDGE MARCUS:  We have a date July 31.  We will go

17  forward and try it on July 31.

18      What discovery has to be done from your perspective

19  between now and then?

20         MS. KHANNA:  I guess, first of all, Your Honor, I

21  might object to kind of the premise of the question, because my

22  understanding of the July 31 tentative trial date was in the --

23  was if basically we find ourselves back in the preliminary

24  injunction phase.

25      There is no injunction in place.  Plaintiffs have an

1   argument why there should be.  They need to proceed to trial

2   if -- proceed to an expedited hearing, an expedited trial if

3   they are going to achieve that injunction.

4       So I don't believe that the process envisioned -- the

5   process laid out in this Court's prior order with consultation

6   of the parties actually captures the status -- where we are

7   today.

8       So I would say that's my first point.  I actually don't

9   think we are in everybody-needs-to-rush-to-trial land on this

10  claim or others.  If the -- given where we are right now.

11  Right now we are in the go-to-remedy land.

12          JUDGE MARCUS:  If I understand the thrust of what

13  you're saying -- and correct me if I misunderstood.  You're

14  saying that in your view, assuming we don't have a new map, a

15  different map, that the Court ought to proceed to a remedial

16  stage, bypassing completely any trial on a permanent final

17  record.

18          MS. KHANNA:  I think the Court should view --

19          JUDGE MARCUS:  Do I have that right?

20          MS. KHANNA:  Kind of, Your Honor.  I am sorry if I am

21  not being clear.

22      I don't think it needs to be bypassed completely, the

23  federal rules, and things like that when it comes to the final

24  injunction.

25      I believe that the Court would find itself in the exact

same position as it was last January, which is proceed to the

remedy phase.  That is the phase we are in right now, in the

remedy phase.

       And after the preliminary injunction is effectuated

through a remedy process, such that the plaintiffs' win is

actually effectuated, as a preliminary win that gets a

preliminary remedy, then if the State believes that there needs

to be further trial in order to effectuate a final injunction,

that would proceed in the normal course on whatever claims --

Section 2 claims, racial-gerrymandering claims, whatever other

claims the various plaintiff groups might have.

       There would not then be this rush to a final trial that

would basically -- I mean, that basically would render the

preliminary injunction and the effect of the preliminary

injunction null, right?  The preliminary injunction is not just

a bookmark.  It has actual effect.

       And I believe that the Court and the parties today need to

discuss how to -- give effect to that injunction, and then

think about how do we then move on to the final proceedings.

       I will also say I think one reason that it was not -- one

reason that we did not address this in our pleadings from last

night is because in our conversations with the State, our

understanding is that they are not seeking to proceed to trial

with new evidence on Section 2.

       As Your Honor knows, as the Caster plaintiffs, we only

1   have Section 2 claims.

2        We have presented robust evidence that we believe gets

3   past the bar for a Section 2 violation.  And we have no

4   information from the State that they believe that there's some

5   other evidence out there that they believe is important in

6   order to get to a final injunction.

7        So to the extent that the parties and the Court could

8   agree that at least on the Section 2 claim, the evidence is in,

9   and we don't need to redo any of that evidence.

10       I think the -- we could proceed under Rule 65(a)(2) to

11   basically solidify that, to the extent that was important.  I

12   think that's really going to be a secondary question among the

13   parties and the Court of whether we all believe that the

14   Section 2 evidence is complete, such that there does not need

15   to be a second trial at that point or at any point.

16       But I guess then -- and like I said, my first priority is

17   that we proceed to a remedy to effectuate the preliminary

18   injunction, and then proceed to have you finalize the entire

19   case.

20       But there should not be a world in which -- I mean, I

21   believe that Section 2 plaintiffs are entitled to a remedy, and

22   there should not be another election that goes by without a

23   Section 2 remedy.  Nor is it incumbent upon plaintiffs to rush

24   to some new resolution in order to get that remedy.

25       And I guess my final point, Your Honor, is that, again, as

 1  the Caster plaintiffs have only one -- have a Section 2 claim,

 2  we would strenuously object to any procedure where the other

 3  claims that have not been fully litigated and not been fully

 4  decided are permitted to hold up the entitlement to a remedy on

 5  Section 2 relief.

 6        JUDGE MARCUS:  Let me ask you the other part of the

 7  question that I put to Mr. Ross.

 8     Let's assume alternatively that the Legislature goes

 9  forward and they have a new map and they adopt it no later than

10  21 July.  How would you have us proceed at that point?

11     You have, as you said, a Section 2 and only a Section 2

12  claim.

13        MS. KHANNA:  Uh-huh.  In that instance, Your Honor, I

14  believe that the process that was laid out in our joint motion

15  from last night, also filed in the Caster docket early this

16  morning, would be -- would then take effect.

17     The Legislature would enact a map, the Court would

18  evaluate that map with the input of the -- the defendants would

19  provide their analysis, the plaintiffs would provide their

20  analysis.

21     In an ideal world, Your Honor -- and I'm really hopeful

22  that that's the world we're in -- that is the map, and it is an

23  effective Section 2 remedy that we can all agree realizes what

24  the claim, and realizes the result of that claim.

25        If, in fact, there is a dispute whether or not it is a

1  lawful remedy, an effective remedy, I believe that per the

2  motion that we laid out, we would then have the opportunity to

3  present expert testimony as to why it's not effective.

4       I don't believe that is a new -- again, the way I envision

5  this process is it is now a remedial process.  It is not a new

6  litigation of the substance -- of the merits of the Section 2

7  claim.

8       It is a discussion of what does this map do.  There is a

9  Section 2 violation.  There is a Section 2 requirement in

10 Alabama.  Does the remedial map satisfy that requirement?

11      Your Honor, last cycle we litigated several cases where

12 this is exactly the process in some instances.  The Legislature

13 did come up with a map and in some ways it did not.  In all

14 instances, the Court retained jurisdiction, and we proceeded to

15 a remedial process just like the one I have outlined here.  And

16 then the Court, perhaps with the assistance of special masters,

17 is ultimately in the position to evaluate the legal arguments,

18 evaluate the map for performance, and decide whether or not the

19 Legislature's map is an effective remedy, and if not, what a

20 court-drawn map would be that would -- that would provide that

21 remedy.

22      JUDGE MARCUS:  Thank you.

23      Questions, Judge Manasco, for Ms. Khanna?  Any?

24      JUDGE MANASCO:  I will wait until the end, but thanks.

25      JUDGE MARCUS:  Judge Moorer, questions for Ms. Khanna

1  at this point?

2          JUDGE MOORER:  No, sir.

3          JUDGE MARCUS:  Let's turn to the State.  Mr. Davis?

4          MR. DAVIS:  Thank you, Judge.  I want to --

5          JUDGE MARCUS:  I'm sorry.  I really -- we should

6  really hear from Mr. Quillen first.

7      So, Mr. Quillen, what would you like to add to what we've

8  heard from Milligan and Caster?

9          MR. QUILLEN:  I have nothing to add at this time

10 unless there are questions for me.

11         JUDGE MARCUS:  Well, the only question I have for you

12 is you have a constitutional claim.

13     Essentially, I hear Ms. Khanna saying we proceed under

14 Section 2.  That's all she has.

15     I hear Mr. Ross saying we should proceed if we have to

16 with some evidential hearing, if necessary, on both the Section

17 2 claim he has and the constitutional claim he has.

18     I take it -- I just want to be sure I understand how you

19 see it, and how you see your role and the role that the

20 Singleton plaintiffs want to play in this undertaking.

21         MR. QUILLEN:  Sure.

22     So I think it depends on whether the State does enact a

23 new plan.  If the State enacts a new plan, then we are squarely

24 in the procedure that was in North Carolina v. Covington that

25 Mr. Ross mentioned earlier, where the Court retains

1    jurisdiction over the gerrymandering claim.  And when the new

2    plan is in place, the plaintiffs have the opportunity to

3    examine whether they think it, you know, remedies the

4    gerrymandering problem or not, and can challenge it without

5    filing a completely new lawsuit.

6         If the State does not pass a new plan, then we still have

7    our constitutional objections, but I do think that because we

8    already have a holding under Section 2, that the old plan, HB1,

9    is likely a violation of the Voting Rights Act, we really

10   should sort out the remedy first.  And then, you know -- and we

11   can deal with any constitutional problems in due time.

12             JUDGE MARCUS:  Thank you.

13        Any questions, Judge Manasco, Judge Moorer, for

14   Mr. Quillen?

15             JUDGE MANASCO:  None yet.

16             JUDGE MOORER:  No, sir.

17             JUDGE MARCUS:  Mr. Davis.

18             MR. DAVIS:  Thank you, Judge.

19        There are agreement on some very important points, it

20   sounds like.  You know, the 2021 plan is preliminarily

21   enjoined.  The parties and the Court agree that the Legislature

22   should have the first shot at it.  And the plaintiffs and the

23   defendants agree that it's reasonable to give the Legislature

24   until July 21.  And we proposed those dates after consultation

25   with legislative leadership about when they would be able to

1  call a special session.

2      I'm here with Mr. Walker and Mr. LaCour.  Mr. Walker could

3  tell you more.  The legislator -- there are legislators

4  actively looking at these issues and different options.  There

5  is serious genuine desire on them to address this and attempt

6  to draw a new map.

7      If the Legislature is successful and does pass a new map

8  in the special session, there seems to be some disagreement

9  among the parties about what the impact of that new plan would

10 be and how we should go forward.

11     While we're happy to answer the Court's questions about

12 that, Mr. LaCour would address that, if you want our

13 preliminary views.  What we would ask is that you give us until

14 say, Tuesday of next week to look at the Covington case more

15 closely than Mr. Ross has cited, to study what they filed last

16 night more closely, and to address the views of the State about

17 what we think the impact of the new plan would be, and how the

18 parties should proceed in the event that the Legislature is

19 successful and does pass a new plan.  And we think that would

20 give the Court plenty of time to order a schedule of what would

21 happen in that eventuality.

22     If the Legislature is unsuccessful and does not pass a new

23 plan, regretfully, we do not believe that there is time for a

24 trial on the merits.  We do agree that the State would be

25 entitled to a trial on the merits.

1        This Court has thus far only made preliminary findings

2   based on the record that the parties were able to put together

3   in a very short time period.

4        If the Legislature does not pass a new plan, the State has

5   a lot of additional discovery we would want to do.  We are not

6   fully prepared to discuss what that would be at this time, but

7   there's a great deal more.  There are experts and categories of

8   experts that we did not get at the preliminary injunction stage

9   because there wasn't time.

10        So we would think that if the Legislature is unsuccessful,

11   it would then go to the Court, a different plan would go in

12   place for the '24 elections, and we would probably ask for a

13   trial on the merits sometime next year.

14        But I think it would make more sense that after a new plan

15   is in place for the '24 elections, that the parties then confer

16   at that point and make a proposal to the Court for how the case

17   should proceed.  And, again, that is only if the Legislature is

18   unsuccessful in passing a new plan.

19        For today, we would ask, though, that the Court let us

20   know if it agrees with the parties' proposal that the

21   Legislature have until July 21, because we would need to get

22   the Governor involved in calling a special session, and because

23   we would want as much notice to legislators as possible.

24        If the Court does not agree with the parties' proposal of

25   July 21, it would be very important for the State to know that

1   as quickly as possible.  So we would like know if possible at
2   least today if the Court is in agreement that the Legislature
3   should have until that time period so that we can let other
4   state officials know.
5        And with that, I am happy to respond to any questions of
6   the Court.
7             JUDGE MARCUS:  Let me ask before you do, did your
8   colleagues want to add anything, either Mr. Walker or
9   Mr. LaCour?
10            MR. WALKER:  Nothing for Mr. Walker, Your Honor.
11   Mr. Davis stated our case accurately.
12            JUDGE MARCUS:  Thank you.
13            MR. LACOUR:  Not at the moment, Your Honor.
14            JUDGE MARCUS:  All right.  Thank you.
15        I guess I want to just ask a few things before I turn it
16   over to my colleagues.
17        As you see it, then, there's no need to go to, if,
18   assuming arguendo, the State is unsuccessful in passing a
19   plan -- let's start with that --
20            MR. DAVIS:  Okay.
21            JUDGE MARCUS:  -- proposition first or that
22   possibility first.
23        If the State is unable to come up with a new plan by the
24   21st of July, I hear you basically to be agreeing with the
25   plaintiffs and with Ms. Khanna -- and you will correct me if I

```
 1  have misunderstood you -- to the effect that we do not have to

 2  try the preliminary injunction and turn it into, if the

 3  evidence supported it, a permanent injunction now, but rather

 4  we would go directly to the remedial portion of the case.  Do I

 5  have that right?

 6          MR. DAVIS:  You have that exactly right, Judge.  We're

 7  not giving up our right to a trial on the merits --

 8          JUDGE MARCUS:  I understand.

 9          MR. DAVIS:  But that would come later.

10          JUDGE MARCUS:  Right.  So we'd give everybody more

11  time later with the view being that the Court, under those

12  circumstances, would come up with a preliminary map for the

13  seven congressional districts that would cover the election for

14  2024.  And thereafter somewhere along the way, you would have

15  the opportunity to come back, if you chose to do so, and

16  perfect your views on a full trial with an expanded record.  I

17  just want to be sure that I have that right.

18          MR. DAVIS:  You do have that correct, Judge.

19          JUDGE MARCUS:  And that's the position of all the

20  defendants?

21          MR. WALKER:  That also is the position of the

22  intervenors, Your Honor.

23          JUDGE MARCUS:  All right.  Let's go to the other

24  hypothesis.

25      The Legislature comes up with a new plan.  They promulgate
```

1   it by 21 July.  And let us just assume for the purposes of my

2   question that the plaintiffs find the new plan wanting.  They

3   say it doesn't comply with Section 2, and what we have already

4   said and already found based on the record evidence at least as

5   it exists at this point.  They, then, propose to move forward

6   on a particular schedule that's embodied in the pleading

7   Mr. Ross sent to us.

8        What are your comments about that?

9        MR. DAVIS:  I am going to turn it over to Mr. LaCour.

10       First, that's an issue -- that's the issue that we have

11   asked to have the opportunity to address in writing as soon as

12   next Tuesday.  But Mr. LaCour can give you some preliminary

13   views and respond to any questions the Court has at this time.

14       JUDGE MARCUS:  Thank you.

15       MR. LACOUR:  Your Honor, I don't think there's a lot

16   of daylight between us and the plaintiffs on that.  We think an

17   August 14th hearing, or a hearing that week might -- it would

18   make sense to go ahead and pencil that in, in the event it is

19   needed.

20       But even in the cases that plaintiffs have relied on, and

21   their submission from last night, there's only something for

22   the Court to do if the plaintiffs actually assert that there is

23   a problem with the new map.

24       As this Court laid out in the P.I. order, pages 210 to

25   211, if the new plan is forthcoming, it will be the governing

1  law unless it, too, is challenged and found to violate federal

2  law.

3       So it's not simply another proposal among many.  It's not

4  the 12th illustrative plan.  It is -- it would be the 2023

5  plan.  If it does not violate federal law, then it would

6  govern -- or it does not likely violate federal law, then it

7  would govern.

8       I think, for those reasons, I think the main issue we have

9  with the plaintiffs' proposal is it seems to get things

10 backwards.  We enact a new law, and before we even know whether

11 anyone has an issue with it, we have to bring it to the Court

12 and justify it.

13      Typically the burden is on plaintiffs to challenge

14 something that they deem to be unlawful.  So we would think it

15 would make more sense for the order of operations to be -- for

16 the plaintiffs to come forward and identify what they think is

17 problematic about the 2023 law assuming that it does pass, and

18 then for the defendants to respond before we have ultimately a

19 hearing on that.

20      And when plaintiffs come forward with their challenge,

21 they could also propose remedial maps so that we can have that

22 process moving forward in the event that we need to look at

23 those in mid August.

24      But, otherwise, we think that the key sticking point is

25 that this is new legislation that would be governing the 2024

1   elections unless it is challenged and this Court finds that it,

2   too, is likely to violate federal law.

3           JUDGE MARCUS:  Let me put my question to you this way.

4   I had asked it to Mr. Davis, and to Mr. Ross, and Ms. Khanna.

5           Assuming arguendo you have a new plan promulgated by the

6   Legislature by 21 July.  And as you say, if they don't quarrel

7   with it, then it becomes very easy.  If they do quarrel with

8   it, whether under Section 2 or the Constitution -- and I hear

9   Mr. Quillen basically to be saying it makes sense to proceed

10  with the Section 2 theme first and not go forward with the

11  constitutional thing at that point.

12          Assuming all of that is the case, is there sufficient time

13  in your view for discovery between 21 July and August 14th for

14  your presentation, assuming they challenge it?  It's kind of a

15  hard question, and it's difficult because you really don't know

16  what you are going to be facing and what they're going to be

17  facing.

18          Nevertheless, I do ask the question.  What is it that you

19  would have to do conceivably, and is there enough time to do it

20  between 21 July and a hearing on the wisdom and efficacy of the

21  new map on August 14th?

22          MR. LACOUR:  Your Honor, I think part of that will

23  turn on what the map ultimately looks like.  But I do think

24  there would be sufficient time.

25          As the plaintiffs have suggested in their pleading from

1    last night, that there will be expert reports from their

2    experts.  We will have experts to explain certain elements of

3    the 2023 plan and why we think it is lawful.

4         And there may be that we would be assessing some of the

5    remedial maps, as well, for potential flaws in those remedial

6    maps from the plaintiffs, that is.  But we do think that would

7    provide sufficient time with that October 1st deadline in mind.

8              JUDGE MARCUS:  Thank you.

9         Judge Manasco, questions for Mr. Davis, Mr. LaCour, or

10   Mr. Walker?

11             JUDGE MANASCO:  Great.  Thank you.

12        All right.  So I think I understand there to be a pretty

13   substantial amount of agreement among all parties on the way

14   forward.

15        You know, when I read the State's filing, you know, it

16   occurs to me the Legislature really doesn't need the Court's

17   permission to draw a map on any timetable or by any deadline.

18   But I take it to be a request that the Court take no steps to

19   proceed toward trial in the time between now and July the 21st.

20        My question is this:  Is there anything else that you're

21   requesting that the Court do or not do between now and

22   July 21st?

23             MR. DAVIS:  I don't think so, Judge.  I think it would

24   be helpful to know -- like if the Court were to intend, for

25   example, to say we are not going to give the Legislature more

 1   than a week, and then we are going to turn it to a special

 2   master, we would want to know that.  We would ask that the

 3   Court not engage in any such process until the Legislature has

 4   until at least July 21st.

 5        And it would be helpful to know that as soon as possible.

 6   And to also know that the parties do not need to be working

 7   towards a July 31st trial; that, instead, we are going to be

 8   focus on getting the new plan in place.

 9        JUDGE MANASCO:  Okay.  I think I understand the trial

10   point clearly.

11        Let me ask some more questions about the special master

12   point.  So I think I'm hearing that there's a request that the

13   special master undertake no work before the Legislature has had

14   a reasonable opportunity to draw a new map, which I take there

15   to be agreement between the parties, is July 21st.

16        MR. DAVIS:  That's correct, Judge.  I think there will

17   still be plenty of time if it becomes necessary for the special

18   master to do his work.

19        JUDGE MANASCO:  And my question is:  Is there

20   agreement among all parties on that last sentence?

21        MS. KHANNA:  Yes, for --

22        JUDGE MARCUS:  Mr. Ross, you or Ms. Khanna, did you

23   agree with that?

24        MR. ROSS:  Yes, Your Honor.

25        JUDGE MARCUS:  And Ms. Khanna?

1          MS. KHANNA:  Yes, Your Honor.

2          JUDGE MARCUS:  Okay.  Thank you.

3          JUDGE MANASCO:  All right.  That's very helpful.

4     I am very mindful of the time constraints and want to

5     avoid a situation where, if the Legislature is unable to pass a

6     new map, or if the Legislature passes a map and the plaintiffs

7     contest its effectiveness as a Section 2 remedy on whatever

8     schedule and substance that the Court dictates, that the

9     special masters' work does not begin until so late in the

10    process that it is then, you know, extraordinarily rushed by

11    the October 1st deadline.

12         So it is helpful for me to understand that all parties are

13    in agreement that that work should not commence before

14    July 21st at the earliest.

15         I think that's all my questions.

16         JUDGE MARCUS:  I take it everyone is in agreement with

17    that, Mr. Davis, Mr. Ross, and Ms. Khanna.

18         MR. DAVIS:  Defendants and intervenors are in

19    agreement, Judge.

20         JUDGE MARCUS:  Mr. Ross?

21         MR. ROSS:  Yes, Your Honor.

22         Although I was going to say to the extent the special

23    master would want to gather evidence, information, that the

24    State may have, like to conduct any of his analysis, I think

25    that may be helpful.  I don't want to preclude or say that

 1  we're -- the Court is precluded from requesting that

 2  information for the special master.

 3        JUDGE MARCUS:  What essentially Judge Manasco was

 4  asking is whether there was any objection from you or from

 5  Ms. Khanna to an order from us that, while we're continuing to

 6  retain the services of Mr. Allen and Dr. Persily, that they

 7  will not undertake any work until July the 21st.

 8        MR. ROSS:  Yes, Your Honor.  We agree with that.

 9        JUDGE MARCUS:  Ms. Khanna?

10        MS. KHANNA:  Yes, Your Honor.  We agree with that.

11     And I think, if I heard Mr. LaCour correctly, I think we

12  have maybe more agreement than I had originally understood, as

13  well.

14     If I understood Mr. LaCour correctly, he was saying that

15  once -- if the Legislature is able to pass a map on July 21st,

16  that the next step in the remedial process would be for the

17  plaintiffs to brief or provide evidence why they think it is

18  not an effective remedy, as opposed to requiring the State to

19  affirmatively explain why the map is an effective remedy.

20     And for the Caster plaintiffs, we are comfortable with

21  that approach.  And as long as it seems like we're all in

22  agreement that any map that's passed by the July 21st deadline

23  by the Legislature is then subject to a remedial kind of

24  evaluation and hearing and process in this Court, then I think

25  we are actually all on the same page.

1       And I will just add one last final note again, Your Honor.

2   I know Your Honor has spoken about what discovery would be

3   needed.  And, again, since we wouldn't be litigating the merits

4   of the claim again, I think where we would be, in terms of

5   discovery, is actually quite narrow.

6       The question would be effectiveness.  Is it an effective

7   remedy.

8       We know what Section 2 entitles plaintiffs to.  And I

9   think the dispute at that point would be is the additional

10  district or the two districts at that point, are they effective

11  for black voters.  And I think that's a pretty narrow band of,

12  you know, each of us might have an expert that says what they

13  have analyzed to determine effectiveness, but I don't think we

14  are going to be anywhere near where we were when it came to

15  this breadth of expertise, and expert reports, and discovery

16  that we had at trial.

17          JUDGE MARCUS:  Let me ask you this just to follow up

18  on what you just said, Ms. Khanna.  Would you anticipate more

19  work in the area from an expert on racial polarization?

20          MS. KHANNA:  No, Your Honor.  I wouldn't -- sitting

21  here, I don't.  I'm not trying to preclude anyone from

22  anything.

23          JUDGE MARCUS:  No, no.  And I don't mean to be

24  precluding anybody.

25      I mean to just be gathering your sense for our

1   decision-making process.  So the bottom line from your end is,

2   at least as you sit here today, you do not anticipate putting

3   on additional evidence from an expert on racial polarization.

4           MS. KHANNA:  Exactly, Your Honor.

5       I think the only question -- the only kind of remaining

6   fact question for the remedy phase will be looking at what the

7   Court has ordered as, you know, under Section 2, here is the

8   violation and here what is required to remedy it, and whether,

9   in fact, the maps authored or enacted by the Legislature meet

10  that standard by actually providing the opportunities to which

11  plaintiffs are entitled.

12          JUDGE MARCUS:  I take it, Mr. Ross, do you agree with

13  what Ms. Khanna just said?

14          MR. ROSS:  Not exactly, Your Honor.

15      I do think that there would be expert testimony on the

16  effectiveness of the remedy.  And that could include expert

17  testimony about racially-polarized voting.  So it could be

18  expert testimony that looks at the effectiveness of the

19  proposed plan and says, you know, given racially-polarized

20  voting, black voters don't have an actual opportunity in

21  whatever map the State comes up with.  And so it may --

22          JUDGE MARCUS:  I guess what I'm really getting at with

23  my question is whether you would anticipate putting on

24  supplemental evidence going to racial polarization to the

25  extent that there are any additional facts in the record that

1  may be germane that occurred subsequent to the last time we met
2  and you put on evidence about that matter, which was really,
3  you know, at the beginning of '22.
4         MR. ROSS:  If I understand your question correctly,
5  Your Honor, I don't anticipate us putting on evidence, for
6  example, that there was racially-polarized voting in the 2022
7  election, except to the extent it would be relevant to show
8  that a proposed map was effective or ineffective.
9      So we wouldn't be trying to present, you know, new
10 evidence that goes to the Section 2 violation.  It would only
11 be about the Legislature's proposed plan.
12        JUDGE MARCUS:  No.  I understand it would go to the
13 question of remedy.
14        MR. ROSS:  Yes, Your Honor.
15        JUDGE MARCUS:  Nevertheless, you would anticipate
16 conceivably putting on something else.
17     Mr. Davis, Mr. LaCour, any comments about that?
18        MR. LACOUR:  Yes, Your Honor.
19     I do think we are conceiving of what the 2023 plan would
20 be a little bit differently.  I know before it is a new -- it
21 would be a new law.  I don't think it would start with some
22 presumption against it.
23     If it is still likely a Section 2 violation, then it would
24 be preliminarily enjoined, as well.  And a lot of the evidence
25 that was already submitted in the case would likely be relevant

 1   to that determination, but not necessarily all of it.

 2        And I think there could be additional evidence that could

 3   shed light on whether the 2023 plan is likely to be in

 4   violation of federal law or in compliance with federal law.

 5        So I don't think it's going to be a lot of new evidence

 6   necessarily required.  Part of it, I suppose, will turn on what

 7   the 2023 plan looks like, and if there even is any concern with

 8   that plan at all from any of the plaintiffs.

 9        But in the case law, I think it's pretty clear -- and we

10   can brief this further.  I will be happy to file something on

11   Tuesday, if that would work for the Court.

12        But there are numerous decisions saying that the question

13   for the Court when a new map is passed, is whether it violates

14   a new constitutional or statutory voting rights.  And that is

15   where it fails to meet the same standards applicable to an

16   original challenge of a legislative plan in place.  That's

17   McGhee vs. Granville County, 860 F.2d 110, a Fourth Circuit

18   decision from 1988.

19        I mean, if you look to Covington, the plaintiffs there

20   asserted that they remained segregated on the basis of race.

21   They asserted that there was a racial gerrymander that they

22   were living in under the new plan.  And the Court looked at

23   that new plan to see whether it was in violation of the

24   Constitution or not.

25        So I think that's how we're conceiving of the next steps

1   in the event that there is a new Alabama law enacted by the

2   Alabama Legislature and signed into effect by the Governor.

3        If that process fails, then I do think we move to a

4   more -- a process that looks a lot more like what Ms. Khanna

5   was laying out, where we would still perhaps present a proposal

6   to you on behalf of defendants, rather than on behalf of the

7   Legislature, to be considered as one among many plans that this

8   Court would be looking at.

9        But if there is a new law in effect, the 2021 map is gone.

10  And, of course, much of the evidence from early 2022 would

11  still potentially be relevant.

12       But if there is new evidence the plaintiffs want to bring

13  out on the legality of a new plan, then I don't think the Court

14  could turn a blind eye to it.

15            JUDGE MARCUS:  Let me ask Judge Moorer more if you

16  have any questions for any of the attorneys for the defendant

17  Mr. Davis, Mr. LaCour, or Mr. Walker.

18            JUDGE MOORER:  The question that I have pertains to

19  the special master, as well.  And equally if we wait until the

20  21st of July to see what the Legislature did, and then we set a

21  date for the plaintiffs to file their objections if they have

22  any to the new map, would then the plaintiffs -- I'm sorry --

23  would then the defendants agree that we should allow General

24  Allen and Dr. Persily to go forward so that we can then have

25  the benefit of their input as we evaluate whatever the

```
 1  objections may be and the response by the State.

 2          JUDGE MARCUS:  Mr. Davis?  Mr. LaCour?

 3          MR. DAVIS:  Judge, we think that would probably be

 4  okay.  But we think that's a question that we might should

 5  address at the time.

 6      That would allow us time to discuss the issue with our

 7  clients and discuss it more among ourselves.  It may be

 8  appropriate, if the Legislature pass a plan and plaintiffs

 9  object to it -- if I understood Judge Moorer's question

10  correctly -- then perhaps it would make sense for the special

11  master to get, you know, geared up.

12      But if not -- I think it's something I would like to

13  address at the time.  But right now it seems like I could see

14  some merit if plaintiffs file an objection to perhaps allowing

15  the special master to begin some work at that point in time.

16      Before I say so definitively, I would like more of an

17  opportunity to discuss with my colleagues and with our clients.

18          JUDGE MOORER:  Okay.  And you could let us know

19  something by next week on Tuesday or Wednesday when you have

20  asked to.

21          MR. DAVIS:  That could be something we could address.

22  If the Court gives us an opportunity to address some of these

23  questions, that could be something we can add to the list along

24  with any other issues that the Court would ask us to address.

25          JUDGE MARCUS:  Any other questions, Judge Manasco?
```

1              JUDGE MANASCO:  None from me.

2              JUDGE MARCUS:  All right.  Let me sort of summarize

3    what I think is agreed upon by the parties, and you can correct

4    me if I have it wrong.

5         The Court will have to confer.  We will have to talk

6    amongst ourselves.  But there's no reason why we can't as soon

7    as we break here.  And we ask you to stay assembled so we can

8    come back and bring some of these issues to a conclusion.

9         But if I heard the parties right, first, the plaintiffs

10   and the defendants all agree that the Legislature should be

11   given until 21 July to come up with a new plan.

12        Second, if I hear the parties accurately, they agree that

13   we ought not to set the special master and Dr. Persily to work

14   before July 21.

15        Third, we ought to change the date we had set, which was a

16   tentative trial on the 31st of July to the 14th of August, at

17   which time if there was an objection to a new plan, and, of

18   course, if a new plan was drawn, we would have the opportunity,

19   and the parties would be able to present to us whatever

20   evidence went to the question of the new map.  We would hear it

21   on the 14th of August.

22        And the parties also seem to be in agreement, if I heard

23   you correctly, that we ought not to require the parties to

24   engage in any discovery between now and at least 21 July,

25   assuming that there is a plan of the Legislature that has been

1   adopted.

2        Did I hear that accurately?  Did I get that right,

3   Mr. Ross?

4             MR. ROSS:  I believe, Your Honor.

5        And just to be clear, plaintiffs, the Milligan plaintiffs

6   are also okay with what appears to be Mr. LaCour's proposal,

7   which is that plaintiffs object first rather than the State

8   justifying its map first.

9             JUDGE MARCUS:  Right.  Right.

10             MR. ROSS:  As long as --

11             JUDGE MARCUS:  You agree with what Ms. Khanna said in

12   that regard.

13             MR. ROSS:  Yes.  As long as the State goes first --

14   sorry -- if plaintiffs go first and offer an objection, the

15   State responds to any objection.  And then plaintiffs would

16   just like another opportunity to respond to whatever the State

17   puts forward.

18        One other thing just to flag for the Court.  That sort of

19   order, I guess would also be slightly different if the State

20   passes no plan.  Plaintiffs, rather than objecting, would just

21   want the opportunity to present their own proposed remedy if

22   there's no plan.

23             JUDGE MARCUS:  Right.  This is all assuming arguendo

24   that there is a plan.

25             MR. ROSS:  Yes, Your Honor.

```
1            JUDGE MARCUS:  If there is no plan, the State is
2   unable to agree on a plan, the Legislature, then we would go
3   forward on a remedial basis.
4        Other than that, Ms. Khanna, were you in agreement with
5   everything I had laid out?
6            MS. KHANNA:  Yes, Your Honor.
7            JUDGE MARCUS:  Mr. Davis?
8            MR. DAVIS:  Yes, Your Honor.  And Mr. Walker agrees,
9   yes.
10           JUDGE MARCUS:  And, Mr. LaCour?
11           MR. LACOUR:  Yes, Your Honor.
12           JUDGE MARCUS:  Mr. Quillen?
13           MR. QUILLEN:  Yes, Your Honor.
14           JUDGE MARCUS:  All right.  So the essential question
15  that the panel has to just discuss -- and we will take a couple
16  of minutes to do that and ask you to stand by -- is the
17  July 21st date for the Legislature.
18       So why don't we do this.  Why don't we take a break.  It's
19  10:13 my time, eastern standard, 9:13 central standard.  And
20  we'll come back in about a half hour and reconvene.
21       I take it you folks have the time to stick around,
22  Mr. Ross?  Ms. Khanna?  Mr. Walker?  Mr. LaCour?  And,
23  Mr. Davis?  That works for you folks?
24           MR. QUILLEN:  Yes, Your Honor.
25           MR. ROSS:  Yes, Your Honor.
```

1          MR. DAVIS:  It works for us.  Thank you.

2          JUDGE MARCUS:  All right.  We will be in recess for

3   about a half hour.

4      Thank you all very much.

5          (Recess.)

6          JUDGE MARCUS:  Let me call the roll.

7      Do we have counsel for the plaintiffs?  Mr. Ross, I see

8   that you are with us.

9          MR. ROSS:  Yes, Your Honor.

10          JUDGE MARCUS:  And you can hear us okay.

11      Ms. Khanna?

12          MS. KHANNA:  Yes, Your Honor.

13          JUDGE MARCUS:  Thank you.

14      Mr. Quillen?

15          MR. QUILLEN:  Yes, Your Honor.

16          JUDGE MARCUS:  Mr. Davis?  Mr. Walker?  Mr. LaCour?

17          MR. WALKER:  Yes, Your Honor.  We can hear you.

18          JUDGE MARCUS:  Judge Manasco, you are able to hear us?

19          JUDGE MANASCO:  I can.  Thank you.

20          JUDGE MARCUS:  All right.  We have had a chance to

21   discuss what the parties had agreed to.

22      And the Court has no problem with the July 21st date,

23   Mr. Davis, that you offered.

24      And we will not require the parties to conduct any

25   discovery between now and the 21st of July in order to give the

1  Legislature the first opportunity to draw a new map.

2      We will direct in that regard, Mr. Davis and Mr. Walker,

3  that the intervening defendants provide us with a status report

4  on 7 July and 14 July, just to let us know and all of the

5  parties know how we're proceeding in this case.

6      Is that a problem for you in any way?

7          MR. WALKER:  No, sir, Your Honor.  We can do that.

8          JUDGE MARCUS:  Okay.  So we would like that report

9  just to have a clear assessment to the extent that they can

10  provide it with where we are in the legislative process.

11      We will, of course, as we indicated, continue our

12  retention of the special master, Mr. Allen and Dr. Persily, but

13  we will not have them do any work before July 21st so we have a

14  better sense of where we are going.

15      We will basically continue the trial date that we have set

16  for the 31st of July, and set it down instead for August

17  the 14th, that Monday, should there be a new map, and should

18  there be a challenge to the new map, at which time we will

19  afford the parties, of course, every opportunity to present

20  whatever data, evidence, witnesses, you may deem appropriate

21  going to any challenge that may be launched as to a new map

22  that the Legislature will draw.

23      We would direct the parties, if we're proceeding on that

24  track, that is to say, if there is a new map drawn by the

25  Legislature, to require the parties no later than the end of

1   business on the 26th of July to give us a detailed scheduling

2   order of discovery and any other operative dates between 26

3   July and 14 August that may be germane and relevant to the

4   parties' dates that concern the exchange of expert witness

5   reports, and so on and so forth.

6       But we would like, and we will direct the parties to give

7   us a joint statement, stipulation of those dates if you

8   possibly can of the schedule, the discovery schedule between

9   that date and the commencement of a hearing on the 14th, if we

10  need to do that.

11      We also understand and agree that the plaintiffs will go

12  first if, indeed, there is an objection to a new map, assuming

13  that there is a new map drawn in the case.

14      And we also understand that all of the parties have agreed

15  that should there be no new map, the Legislature is otherwise

16  unable to agree to a new map by the 21st of July, that we would

17  be going forward with a remedial portion of what otherwise

18  remains, which would be and is as we speak today, the

19  injunction, the preliminary injunction that we adopted in

20  January.

21      That will in no way bar the State from seeking and

22  obtaining a permanent injunction hearing, at which point you

23  could put on any evidence you deem appropriate.  But none of

24  that would occur until after the election scheduled for

25  November of 2024.

1        Additionally, Mr. Davis, you and Mr. LaCour sought the

2   opportunity to file a supplemental brief with us on some of the

3   issues we were talking about concerning North Carolina vs.

4   Covington, et al.  And we will give you the opportunity to do

5   that by the end of business on the 20th of June.  That would be

6   next Tuesday.

7        I think that covers everything.  But if I missed

8   something -- let me first turn to my colleagues, whether there

9   was anything, Judge Manasco, you wanted to add, or Judge

10  Moorer.

11          JUDGE MANASCO:  Nothing from me.

12          JUDGE MOORER:  Nothing.

13          JUDGE MARCUS:  All right.  Anything from you,

14  Mr. Ross?

15          MR. ROSS:  Just a question, Your Honor.

16      You mentioned that plaintiffs would file an objection to

17  the new map.  Would that -- did the Court set a date for when

18  those objections would need to be in?

19          JUDGE MARCUS:  I had not mentioned it, but I'm happy

20  to seek your counsel on that now.

21      Again, mindful that we want a discovery schedule for that

22  period of time from the 26th to the 14th, so everybody knows

23  what you are going to be doing in that intervening three-week

24  period of time, essentially.

25      So you tell me.  What works for you?

1          MR. ROSS:  Your Honor, I believe in our schedule we
2    gave ourselves about a week from -- to file something.  I think
3    that that would be fine.  So a week from the 21st.
4          JUDGE MARCUS:  So no later than the 28th you would
5    interpose whatever objections you and the other plaintiffs in
6    the three cases may have to the new map, if there be a new map,
7    and if there be an objection.
8       Do I have that right?
9          MR. ROSS:  Yes, Your Honor.  And then I would also ask
10   that -- two things:  One is that it seems appropriate even if
11   the State doesn't go first, in terms of justifying its map,
12   that they file some sort of status report with the Court on the
13   21st about whether or not a new map is or hasn't passed, which
14   we will know.  But it would be helpful for the State to say
15   affirmatively what's going on.
16         JUDGE MARCUS:  Yes.  I have assumed and will make this
17   crystal clear in an order, Mr. Davis, that you will file a
18   notice with this Court no later than the 21st of July, letting
19   us know whether there is a new map, and disclosing what the new
20   map will be so that all of the parties, the Court would have
21   that new map that would be certainly a part of the public
22   record by 21 July.
23      That's not a problem for you is it, Mr. Davis?
24         MR. DAVIS:  Of course not, Judge.
25         JUDGE MARCUS:  Okay.  So does that answer your -- so

 1  what we would be talking about is a discovery order that you

 2  agree on, if necessary, by 26 July, and your objections by 28

 3  July.

 4          MR. ROSS:  Yes, Your Honor.  I'm sorry.  One more --

 5          JUDGE MARCUS:  In a sense, we put the cart before the

 6  horse, and I appreciate that.  But I'm anxious to make sure

 7  that we move with expedition should that become necessary.

 8      Perhaps we should push up the date for any objection that

 9  you -- if you have the map as of 21 July, should we require you

10  to interpose the objection by 26 July, and a discovery order or

11  at least a stipulation by 28 July?  Flip the dates around is

12  what I'm suggesting.

13          MR. ROSS:  Your Honor, I think we would -- it would --

14  given that we would need to get case files or other data from

15  the State ideally on that July 21st date.  So we would need --

16  I'm just imagining, Your Honor, corralling experts and getting

17  them to do an analysis.  It may take a little more time.  So at

18  least --

19          JUDGE MARCUS:  So you want the week.  Basically, you

20  want until 28 July to interpose objections, even if we require

21  you on the 26th to come up with a tentative schedule.

22  That's --

23          MR. ROSS:  Yes, Your Honor.

24          JUDGE MARCUS:  Yes.

25      Anything further on that, Ms. Khanna or Mr. Quillen?

| | |
|---|---|
| 1 | MS. KHANNA:  I understood the original -- |
| 2 | JUDGE MARCUS:  I think you're breaking up, and we are |
| 3 | having some trouble hearing you. |
| 4 | MS. KHANNA:  I'm sorry.  Can you hear me now? |
| 5 | JUDGE MARCUS:  I do.  Can everyone hear Ms. Khanna? |
| 6 | If not, just please let me know. |
| 7 | Why don't you take another shot at it, Ms. Khanna. |
| 8 | MS. KHANNA:  Can everybody hear me now? |
| 9 | JUDGE MARCUS:  It's just sort of coming in. |
| 10 | MS. KHANNA:  Okay. |
| 11 | JUDGE MARCUS:  I'm not sure what the problem with the |
| 12 | feed is.  But let's take another shot at it. |
| 13 | MS. KHANNA:  (Inaudible.) |
| 14 | JUDGE MARCUS:  Can you hear her, Mr. Ross? |
| 15 | MR. ROSS:  No, Your Honor.  It's coming in very |
| 16 | garbled. |
| 17 | JUDGE MARCUS:  Mr. Davis, you are having the same |
| 18 | trouble? |
| 19 | MR. DAVIS:  Same troubles.  I'm sorry. |
| 20 | JUDGE MARCUS:  That's all right.  I am having the |
| 21 | same -- I'm having the same problem.  Let's wait a moment as |
| 22 | you fiddle with that and see whether this works for the other |
| 23 | parties. |
| 24 | Mr. Quillen? |
| 25 | MR. QUILLEN:  Yes.  All of this is fine. |

```
 1              JUDGE MARCUS:  And, Mr. Davis, Mr. Walker, Mr. LaCour,
 2   all of this works for you?
 3              MR. WALKER:  Yes, Your Honor.
 4              MR. DAVIS:  Yes, it does.
 5              MR. WALKER:  Yes, Your Honor.
 6              JUDGE MARCUS:  Okay.  Before we go right back to
 7   Ms. Khanna, is there anything else that you wanted to raise
 8   with the Court, Mr. Ross?
 9              MR. ROSS:  Just one more thing, Your Honor.  And just
10   for clarity's sake.  If -- two things, actually.  Sorry.
11         One is if the Legislature passes a map earlier, I don't
12   know if we, you know, imagine moving sort of any of these dates
13   at all.
14         And then, two, if the Legislature fails to pass a map, I
15   assume that plaintiffs also can file, you know, their own
16   remedial plan and any evidence on the 28th, as well?
17              JUDGE MARCUS:  Yes.  The answer is -- one reason that
18   we thought it made sense to have -- to ask the intervening
19   defendants on 7 and 14 July to give us a status report is so
20   that we have -- may have a better and more informed sense of
21   where we are going in the case.
22         I should say that if anything changes for any of the
23   parties, you can file an application with us to alter or amend
24   any of this.
25         Thus, for example, we're not going forward with -- not
```

 1 | requiring any discovery until 21 July.

 2 |     Should there be another event or circumstances that put

 3 | that date into question and you want to make an application to

 4 | the Court to alter any of those dates, you, of course, have

 5 | leave to do that for the plaintiffs.  And, of course, you have

 6 | leave to do that for the defendants.

 7 |     Ms. Khanna, let's take another shot if we can hear you.

 8 |         MS. KHANNA:  Thank you.  Your Honor.  Can you hear me

 9 | now?

10 |         JUDGE MARCUS:  Perfectly.

11 |         MS. KHANNA:  Okay.  I apologize for the technical

12 | glitch.

13 |     I have no objection in principle to the schedule just

14 | discussed.  I guess just -- Your Honor just I think addressed

15 | my concern, which is we might need to revisit the dates a

16 | little bit.  I think we had originally proposed August 2nd by

17 | the time that plaintiffs would have their expert admissions at

18 | that point.

19 |     I just need to check with our team and with our expert to

20 | make sure that there's availability on the 28th time frame.

21 | But certainly no objection to the August 14th hearing and

22 | ensuring that the parties are able to fully brief any

23 | objections in advance of that.

24 |         JUDGE MARCUS:  Okay.  Judge Manasco, anything further

25 | you wanted to raise with the parties?

1          JUDGE MANASCO:  Nothing from me.

2          JUDGE MARCUS:  Judge Moorer?

3          JUDGE MOORER:  Nothing from me.

4          JUDGE MARCUS:  All right.  Let me take a moment to

5    thank you all of you for your considerable time and efforts in

6    the case.

7       I do wish to make it clear, though, that this Court will

8    proceed promptly as the developments arise in the case.

9       Thank you again, all.  We will be adjourned.

10

11          (Whereupon, the above proceedings were concluded at

12       9:59 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE</u>

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

<u>06-23-2023</u>

Christina K. Decker, RMR, CRR        Date

Federal Official Court Reporter

ACCR#:   255