

FILED
2023 Aug-04  AM 11:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| MARCUS CASTER, LAKEISHA CHESTNUT, BOBBY LEE DUBOSE, BENJAMIN JONES, RODNEY ALLEN LOVE, MANASSEH POWELL, RONALD SMITH, and WENDELL THOMAS, | |
| Plaintiffs, | Case No. 2:21-CV-1536-AMM |
| v. | |
| WES ALLEN, in his official capacity as Alabama Secretary of State, | |
| Defendant, | |
| and | |
| CHRIS PRINGLE and JIM McCLENDON, | |
| Intervenor-Defendants. | |

## CASTER PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR CLARIFICATION

## Introduction

After a lengthy status conference, this Court issued an omnibus procedural order making clear that this case's remedial process would be guided by one "essential question[:] whether the 2023 Plan complies with the order of this Court, affirmed by the Supreme Court, and with Section Two of the Voting Rights Act." ECF No. 182. "While the parties had the right," the Court explained, to "rely on evidence adduced in the original preliminary injunction proceedings conducted in January 2022 to establish their assertions that the 2023 Plan is or is not a sufficient remedy for the Section Two violation found by this Court and affirmed by the Supreme Court, this remedial hearing will not relitigate the issue of that likely Section Two violation." *Id.* at 4.

Alabama once again resists this Court's clear instruction. In a motion filed yesterday, Alabama asked this Court to clarify whether its omnibus order forecloses Alabama from arguing and providing evidence purporting to show that the passage of the 2023 Plan absolves the State of its Section 2 liability. ECF No. 186 at 2-7. But the question of Alabama's liability is not an open one for purposes of these preliminary injunction proceedings. That is precisely what the Supreme Court decided when it affirmed this Court's preliminary injunction just a few months ago. Rather, the question before the Court is whether the 2023 Plan actually remedies the State's likely violation.

Plaintiffs respectfully request that the Court clarify that the only arguments and evidence relevant to the Court's August 14th hearing are those related to whether the 2023 Plan "appropriately remed[ies]" the vote dilution established during the liability phase of these preliminary injunction proceedings by including "either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Caster v. Merrill*, No. 2:21-cv-1536-AMM, 2022 WL 264819, at *3 (N.D. Ala. Jan. 24, 2022). Defendants are not foreclosed from providing any argument and evidence relevant to that question. If, however, Defendants do not intend to challenge Plaintiffs' argument or evidence on that question, *see* ECF No. 186 at 6, then Plaintiffs agree that an evidentiary hearing is not necessary for the Court to resolve the issue of whether the remedial map remedies the Section 2 violation.

## I. This Court and the Supreme Court already determined Alabama's liability under Section 2 of the Voting Rights Act for purposes of these preliminary injunction proceedings.

The liability phase of these preliminary injunction proceedings is over. After evaluating "an extremely extensive record," this Court concluded that "Plaintiffs are substantially likely to prevail on their claim under [Section 2 of] the Voting Rights Act." *Caster*, 2022 WL 264819, at *3. The basis for this Court's liability

determination was Plaintiffs' "substantial[] likel[ihood]" of "establish[ing] each part of the controlling Supreme Court test," *id.* at *2, including:

- **Numerosity**: The Court found that "Black voters as a group are 'sufficiently large . . . to constitute a majority' in a second majority-minority district" based on Plaintiffs' submission of illustrative plans "in which two congressional districts would have a BVAP of greater than 50%," *id.* at *58;

- **Compactness**: The Court found that "Black voters as a group are . . . 'geographically compact' to constitute a majority in a second congressional district," *id.*, based on Plaintiffs' submission of 11 illustrative plans that contain two majority-minority districts consistent with the State's traditional redistricting criteria, including communities of interest, *id.* at 68;

- **Racially polarized voting**: The Court found that that "there is no serious dispute" that "voting in Alabama is clearly and intensely racially polarized," *id.* at *69; and

- **Senate Factors**: The Court found that, under the totality of the circumstances, "every Senate Factor" the Court was "able to make a finding about . . . weigh[ed] in favor of the [Plaintiffs] . . . and that no Senate Factors or other circumstances [the Court] consider[ed] at this stage weigh[ed] in favor of Defendants," *id.* at *76.

Based on this record, "extensive by any measure," the Court determined that "the question whether [Plaintiffs] are substantially likely to prevail on the merits of their Section Two claim" was not "a close one." *Id.* The Court further concluded that "under the statutory framework, Supreme Court precedent, and Eleventh Circuit precedent, the appropriate remedy is a congressional redistricting plan that includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Id.* at *3.

Alabama appealed to the U.S. Supreme Court and sought an emergency stay of this Court's preliminary injunction order. According to Alabama, "[t]he injunction leaves Alabama with no real choice": either it would have to "replace its congressional plan" with a plan containing two minority-opportunity districts or "cede its sovereign redistricting power to the district court, which will hire a third party to redraw districts (at the State's expense)" to do the same. Emergency Stay Appl. at 37-38, *Allen v. Milligan*, No. 21-1086 (U.S. Jan. 28, 2022); *see also* Reply in Support of Stay Appl. at 26, *Allen v. Milligan*, No. 21-1086 (U.S. Feb. 2, 2022) (arguing that "the district court's order would require the State to hold elections" under a plan with two minority-opportunity districts). On February 7, 2022, the Supreme Court granted Alabama's requested stay pending further review. *Merrill v. Milligan*, 142 S. Ct. 879 (2022).

Sixteen months later, "[a]fter conducting that review," the Supreme Court "affirmed" this Court's judgment. *Allen v. Milligan*, 143 S. Ct. 1487, 1498, 1517 (2023). Specifically, the Supreme Court held that: (1) "[w]ith respect to the first *Gingles* precondition, the District Court correctly found that black voters could constitute a majority in a second district that was reasonably configured," and the "evidence [was] insufficient to sustain Alabama's" arguments with respect to communities of interest, *id.* at 1504-05; (2) "there was no serious dispute that Black voters are politically cohesive, nor that the challenged districts' white majority votes sufficiently as a bloc to usually defeat Black voters' preferred candidate," *id.*; and (3) the totality of the circumstances analysis weighed uniformly in Plaintiffs' favor, *id.* The Supreme Court, therefore, found "no reason to disturb the District Court's careful factual findings" and no "basis to upset the District Court's legal conclusions." *Id.* at 1506. The Court subsequently "vacated" its stay of this Court's preliminary injunction order. *Allen v. Milligan*, No. 21-1086, 2023 WL 3937599, at *1 (U.S. June 12, 2023).

"Accordingly, the preliminary injunction and [special master] appointment orders remain in effect," ECF No. 156 at 2, and this Court now proceeds to the remedial phase to ensure an "appropriate remedy" to the likely Section 2 violation is in place in time for the 2024 elections, *id.* at 2.

II.   **The only relevant question for the August 14 hearing is whether Alabama's 2023 Plan remedies the likely violation found by this Court and affirmed by the Supreme Court.**

Drawing on precedent, this Court has provided the parties with a clear roadmap for addressing the remedial question at hand. "Because the *Caster* plaintiffs are substantially likely to prevail on their claim under the Voting Rights Act," the Court explained, "the appropriate remedy is a congressional redistricting plan that includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Caster*, 2022 WL 264819, at 3. As to the latter option, the Court observed that, "as a practical reality, the evidence of racially polarized voting adduced during the preliminary injunction proceedings suggests that any remedial plan will need to include two districts in which Black voters either comprise a voting-age majority or something quite close to it." *Id.* at 83.

The Court's approach is focused on remedying "the prior dilution of minority voting strength and fully provid[ing] equal opportunity for minority citizens to participate and to elect candidate of their choice." *United States v. Dall. Cnty. Comm'n,* 850 F.2d 1433, 1442 (11th Cir. 1988) (citing S. Rep. No. 417, 97th Cong. 2d Sess. 26, *reprinted in* 1982 U.S. Code Cong. & Adm. News 177, 208); *White v. Alabama*, 74 F.3d 1058, 1069 n.36 (11th Cir. 1996) (same). And the measure of that remedy, consistent with the approach adopted by other courts

addressing Section 2, is whether the proposed remedial district provides an opportunity for Black voters to elect their preferred candidates. *See, e.g.*, *Martinez v. Bush*, 234 F. Supp. 2d 1275, 1302-10 (S.D. Fla. 2002) (evaluating whether a district is an opportunity district by considering past election performance and minority voting age population).

The only arguments and evidence relevant to the Court's remedial process are therefore those related to whether the 2023 Plan remedies the vote dilution identified during the liability phase by providing Black Alabamians with an additional opportunity district. *Dall. Cnty.*, 850 F.2d at 1442. As Plaintiffs explained in their objections, the 2023 Plan fails to provide such a remedy. *See* ECF No. 179 at 8-11 (explaining that the 2023 Plan contains just one district in which Black voters have an opportunity to elect a candidate of their choice). Significantly, Defendants do not appear to dispute this conclusion. ECF No. 186 at 6.

## III.   Alabama may not relitigate the Court's liability finding.

Instead of proceeding to the remedial phase of these proceedings, Alabama now seeks a do-over. According to Alabama, the enactment of the 2023 Plan obviates the Court's "remedial process" and instead requires "a preliminary injunction hearing related to a new law." ECF No. 186 at 3. Alabama is wrong.

As an initial matter, to the extent Alabama contends that the enactment of a new map resets Alabama's liability or the procedural posture of this case, its argument is foreclosed by binding Supreme Court precedent. *See North Carolina v. Covington*, 138 S. Ct. 2548, 2553 (2018) ("[I]n the remedial posture in which this case is presented, the plaintiffs' claims . . . d[o] not become moot simply because the General Assembly drew new district lines around them."). As this Court has made clear, "[w]e are not at square one in these cases," and it would be "unprecedented" to relitigate the preliminary injunction itself based on the State's enactment of the 2023 Plan. ECF No. 182 at 4. If mere passage of a new map were enough to void the Court's injunction, Alabama could have simply re-enacted the same district lines under a different title, and Plaintiffs would be forced into an endless loop of relitigating Section 2 liability until the clock runs out on the next election. That is not—and cannot be—the law.

Alabama insists that "the 2023 Plan remedies the likely § 2 violation unless Plaintiffs show that the 2023 Plan likely violates § 2." ECF No. 186 at 3. But as this Court already held and the Supreme Court affirmed, the question of Alabama's liability under Section 2 is governed by "the controlling Supreme Court test" for Section 2 claims, *Caster*, 2022 WL 264819, at *2. And this Court has already found that Plaintiffs "are substantially likely to establish each part" of that test. *Id.*; *see supra* at Section I. In particular, the enactment of the 2023 Plan does nothing to

upend this Court's findings that the Black population is large enough to comprise a majority (**numerosity**) in a reasonably-configured congressional district (**compactness**), as demonstrated by Plaintiffs' illustrative plans; that Black voters are politically cohesive and that white voters vote as a block usually to defeat Black-preferred candidates (**racially polarized voting**); and that the extent to which racially polarized voting, election of Black candidates to public office, Alabama's history of voting discrimination, Alabama's use of voting practices that enhance the opportunity for racial discrimination, the effects of discrimination on Black Alabamians, and the use of racial appeals in Alabama campaigns (**Senate Factors**) weigh in favor of Plaintiffs' claim. *Caster*, 2022 WL 264819, at *58-76. Accordingly, this Court's extensive findings on Alabama's Section 2 liability, affirmed by the Supreme Court, apply with equal force to the 2023 Plan and are not subject to re-litigation in these remedial proceedings.

**IV.    Alabama's latest arguments either seek to relitigate this Court's liability determination or are foreclosed as a matter of law.**

Defendants' anticipated arguments and evidence in these proceedings only underscore the extent to which they seek to evade any meaningful remedy to the likely Section 2 violation. Defendants contend that, "based on [their] understanding" of these proceedings, they "expected to show that the 2023 Plan complies with § 2 and thus completely remedies the likely § 2 violation." ECF No.

186 at 4. Defendants point to four categories of argument and evidence they intended to present at the August 14 hearing.

First, Defendants intend to provide evidence "showing that the 2023 Plan has remedied the 'cracking' that Plaintiffs said was 'the heart of' their challenge to the 2021 Plan." *Id.* at 4-5; *see also* Tr. of July 31, 2023 Status Conference at 32:8-9, ECF No. 188 (Mr. LaCour: "That cracking has been remediated. There is no more cracking of the black belt in [Alabama's] plan."). Defendants apparently believe the term "cracking" to be synonymous with "dividing." *See id.* at 32:17-18 (Mr. LaCour: "Well, now there are three communities of interest that are at issue. We cracked none of them. They cracked two of them."). But in the Section 2 context, "cracking" is a legal term of art, defined as "the dispersal of [a protected class of voters] into districts in which they constitute an ineffective minority of voters." *Abbott v. Perez*, 138 S. Ct. 2305, 2338 n.2 (2018) (Sotomayor, J., dissenting) (quoting *Thornburg v. Gingles*, 478 U.S. 30, 46 n.11 (1986)); *see also Ga. State Conf. of NAACP v. State*, 269 F. Supp. 3d 1266, 1276 n.5 (N.D. Ga. 2017) (quoting *Voinovich v. Quilter*, 507 U.S. 146, 153-54 (1993)); *Bartlett v. Strickland*, 556 U.S. 1, 19 (2009) ("[I]t is a special wrong when a minority group has 50 percent or more of the voting age population and could constitute a compact voting majority but, despite racially polarized bloc voting, that group is not put into a district.").

Contrary to Defendants' suggestion, the "cracking" of Black voters in the Black Belt is not resolved by uniting them in a district where they remain an "ineffective minority of voters." And Defendants do not dispute Plaintiffs' evidence that CD 2 under the 2023 Plan contains a BVAP of just 39.9% and does not afford Black voters in the Black Belt an effective opportunity to elect their preferred candidates. ECF No. 179 at 6; ECF No. 186 at 6 ("Defendants do not intend to put on evidence challenging the demographic or election numbers in the 'performance' reports offered by the *Caster* Plaintiffs[.]"). Thus, by Defendants' own admission, their first category of intended evidence has no bearing on whether the 2023 Plan provides an "appropriate remedy" by including "either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice," *Caster*, 2022 WL 264819, at *3.

Second, Defendants intend to "show that the Plan respects majority-Black communities of interest like the Black Belt and Montgomery County while also maintaining longstanding communities of interest in the Gulf and Wiregrass." ECF No. 186 at 5. This fails for the same reason as above: "respect[ing]" a minority group by grouping them into fewer districts has no bearing on whether they are provided an equal opportunity to elect their preferred candidates. Nor is Section 2 a counting exercise of how many communities of interest can be kept whole.

- 11 -

Indeed, Defendants show their hand when they explain that they intend to introduce such evidence to "show[]that the Gulf and Wiregrass are communities of interest." *Id.* As Defendants are well aware, this Court already "consider[ed] Defendants' argument that Alabama's Gulf Coast counties also comprise a community of interest" and found that "Defendants overstate the point," that Defendants' preliminary injunction evidence did not "support[] Defendants' overdrawn argument that there can be no legitimate reason to split Mobile and Baldwin Counties consistent with traditional redistricting criteria," and that in fact "the Legislature had repeatedly split Mobile and Baldwin Counties in creating maps for the State Board of Education districts in Alabama." *Caster*, 2022 WL 264819, at *67; *see also Allen*, 143 S. Ct. at 1504-05 (finding unpersuasive Alabama's argument "that the Gulf Coast region in the southwest of the State is such a community of interest" and holding that "[e]ven if the Gulf Coast did constitute a community of interest," this Court correctly concluded that that Plaintiffs' maps "would still be reasonably configured").

Defendants now contend that this Court and the Supreme Court got it wrong, and they intend to prove it with better evidence in support of their purported communities of interest. *See* Tr. of July 31, 2023 Status Conference at 27:20-25, ECF No. 188 (Mr. LaCour stating that the Supreme Court's holdings when it came to communities of interest were "based on the very hastily assembled preliminary

injunction record that we were able to put together around Thanksgiving, Christmas of 2021, that the evidence for the gulf was just not very compelling at that time"). But to the extent Defendants wish to relitigate this Court's findings based on the preliminary injunction record and affirmed on appeal, their opportunity to do so is in a trial on the merits, not in remedial proceedings established to effectuate the Court's preliminary injunction. *See* ECF No. 156 at 6 ("Nothing in the foregoing order limits the Defendants' right to a permanent injunction proceeding at a future date if necessary. The court has adopted the foregoing schedule based on Defendants' agreement that any such proceeding shall not occur before the 2024 congressional elections.").

Third, Defendants intend to "introduce evidence that Plaintiffs' alternative maps are not on par with the 2023 Plan when it comes to traditional redistricting principles." ECF No. 186 at 5. But this Court has already held that the requirement under the first *Gingles* precondition that Plaintiffs provide "[a] § 2 district that is reasonably compact and regular, taking into account traditional districting principles" does not require Plaintiffs to "also 'defeat [a] rival compact district[]' in a 'beauty contest[].'" *Caster*, 2022 WL 264819, at *65 (quoting *Bush v. Vera*, 517 U.S. 952, 977-78 (1996)); *see also Allen*, 143 S. Ct. at 1505 ("The District Court concluded—correctly, under our precedent—that it did not have to conduct a 'beauty contest[]' between plaintiffs' maps and the State's."). By Defendants'

logic, a state can defeat a successful Section 2 claim simply by one-upping the plaintiffs' illustrative maps on compactness scores or county splits without actually addressing the underlying vote dilution. That is not the standard. The extent to which an illustrative map compares favorably to a state's enacted map simply provides evidence that the illustrative district is consistent with the state's traditional districting principles. The fact that the state may be able to beat the illustrative map in a beauty contest of traditional districting principles has no bearing on the Section 2 inquiry, either at the liability or the remedy stage.

Finally, Defendants intend to "provide additional evidence bearing on whether race would now predominate in Plaintiffs' alternative approaches." ECF No. 186 at 5. Once again, Defendants seek to dispute this Court's findings, this time regarding racial predominance. *See Caster*, 2022 WL 264819, at \*79 ("reject[ing]" Defendants' argument that Plaintiffs' illustrative plans "prioritize race above all race-neutral traditional redistricting principles"); ECF No. 110 at 11 ("Race did not predominate in the plaintiffs' illustrative remedial plans[.]"); *id.* at 12 ("[T]he plaintiffs' illustrative remedial plans disprove the necessity of racial predominance: as we explained in the preliminary injunction, all eleven illustrative plans include two majority-Black districts without having allowed race to predominate."); *see also Allen*, 143 S. Ct. at 1511 ("The District Court did not err in finding that race did not predominate in Cooper's maps in light of the evidence

- 14 -

before it."). These remedial proceedings are not the proper forum to re-litigate these findings.

Ultimately, Defendants' professed "understanding" of these remedial proceedings is belied by their own assertions to the Supreme Court in seeking to stay these proceedings, in which they argued that the Court's preliminary injunction "leaves Alabama with no real choice" but to draw—either by the Legislature or the Court—an additional congressional district in which Black voters have an opportunity to elect their candidates of choice. Emergency Stay Appl. at 37-38, *Allen*, No. 21-1086 (U.S. Jan. 28, 2022). Had Defendants sincerely believed they could simply enact a new map with the same dilutive effect to get out from under this Court's preliminary injunction order, they would not have implored the Supreme Court to intervene to stave off the effect of the injunction. And now that the Supreme Court's stay of the preliminary injunction has lifted, the question before this Court is whether the 2023 Plan gives effect to the preliminary injunction with an "appropriate remedy" to the State's likely Section 2 violation. It is therefore not just this Court's August 1 order that "forecloses consideration of" Defendants' intended "arguments and evidence," ECF No. 186 at 6; they are foreclosed by this Court's preliminary injunction findings, the Supreme Court's affirmance of those findings, Section 2 precedent, and Defendants' own admissions.

- 15 -

**Conclusion**

The 2023 Plan was designed not to comply with this Court's preliminary injunction order, *but see* Tr. of June 16, 2023 Status Conference at 31:4-6, ECF No. 160 (Mr. Davis: "There is serious genuine desire on [the legislators] to address this and attempt to draw a new map."), but to question its premise. Defendants take the same approach before this Court: Rather than address the question of whether the 2023 Plan "completely remedies the likely § 2 violation," ECF No. 186 at 4, they seek to dispute the legal conclusions and factual findings on which that likely violation was based. But this Court has already made clear that "this remedial hearing will not relitigate the issue of that likely Section 2 violation." ECF No. 182 at 4.

Plaintiffs therefore respectfully request that the Court clarify that the only arguments and evidence relevant to the Court's August 14 hearing are those related to whether the 2023 Plan remedies the likely vote dilution found during the liability phase by providing Black Alabamians with a second district in which they have an opportunity to elect a candidate of their choice.

Dated: August 4, 2023

Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies
& Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
Email: rrouco@qcwdr.com

Respectfully submitted,

By */s/ Abha Khanna*
Abha Khanna*
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Phone: (206) 656-0177
Email: AKhanna@elias.law

Lalitha D. Madduri*
Joseph N. Posimato*
Jyoti Jasrasaria*
**Elias Law Group LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
Phone: (202) 968-4518
Email: LMadduri@elias.law
Email: JPosimato@elias.law
Email: JJasrasaria@elias.law

*Attorneys for Plaintiffs*
*\*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Richard P. Rouco*
Richard P. Rouco
Counsel for Plaintiffs

- 18 -