FILED

2023 Aug-07  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA


# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| MARCUS CASTER, LAKEISHA CHESTNUT, BOBBY LEE DUBOSE, BENJAMIN JONES, RODNEY ALLEN LOVE, MANASSEH POWELL, RONALD SMITH, and WENDELL THOMAS, | |
| Plaintiffs, | Case No. 2:21-CV-1536-AMM |
| v. | |
| WES ALLEN, in his official capacity as Alabama Secretary of State, | |
| Defendant, | |
| and | |
| CHRIS PRINGLE and JIM McCLENDON, | |
| Intervenor-Defendants. | |

## REPLY IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO ALABAMA LEGISLATURE'S REMEDIAL CONGRESSIONAL PLAN

## I.   Introduction

Alabama is fighting a battle it has already lost. The question at this stage is not whether Alabama is liable under Section 2—this Court's preliminary injunction order, affirmed by the U.S. Supreme Court, already found that it is. Nor is it how to remedy the Section 2 violation—this Court, guided by precedent, already explained that "the appropriate remedy is a congressional redistricting plan that includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Caster v. Merrill*, No. 2:21-CV-1536-AMM, 2022 WL 264819, at *3 (N.D. Ala. Jan. 24, 2022), *aff'd sub nom. Allen v. Milligan*, 143 S. Ct. 1487 (2023). The question that the Court must resolve now is simply whether Alabama's 2023 Plan remedies the Section 2 injury for Black Alabamians. The answer to that question is plain: it unequivocally and undisputedly does not. That resolves the issue for the Court's August 14 proceeding.

Alabama, however, remains defiant. So committed is the State to maintaining a racially dilutive map that it turns a deaf ear to the express rulings of this Court and the Supreme Court. This Court should not countenance Alabama's repeated contravention of the Court's clear instructions on the appropriate remedial map and remedial process in this case. Plaintiffs respectfully request that the Court enjoin Alabama's 2023 Plan as a plainly insufficient remedy and proceed to a Court-driven

remedial process to ensure Plaintiffs may—finally—vote under a lawful plan in the next election.

## II.   Argument

### A. Section 2 liability can be remedied only by a plan that cures the established vote dilution.

Precedent is clear: to remedy a Section 2 violation, a state must fashion a remedial plan that "*completely* remedies the prior dilution of minority voting strength and *fully* provides equal opportunity for minority citizens to participate and to elect candidates of their choice." *United States v. Dall. Cnty. Comm'n*, 850 F.2d 1433, 1442 (11th Cir. 1988) (citing S. Rep. No. 417, 97th Cong. 2d Sess. 26, *reprinted in* 1982 U.S. Code Cong. & Adm. News 177, 208); *White v. Alabama*, 74 F.3d 1058, 1069 n.36 (11th Cir. 1996) (same). Whether a proposed plan is a Section 2 *remedy* is therefore a measure of whether it addresses the state's Section 2 *liability*. *Id.* If a proposed remedial plan fails to "*completely*" remedy a court's prior finding of vote dilution, it is no remedy at all and therefore fails to comply with Section 2. *Id.*; *see also United States v. Euclid City Sch. Bd.*, 632 F. Supp. 2d 740, 752 (N.D. Ohio 2009) ("[A] legally acceptable plan is one that corrects the existing Section 2 violation without creating one anew."); *Ketchum v. Byrne*, 740 F.2d 1398, 1412 (7th Cir. 1984) (remedial plan did not remedy the Voting Rights Act violation because it did not eliminate "the illegal dilution of minority voting strength" and did not "grant to minority citizens a reasonable and fair opportunity to elect candidates of their

choice as that concept has been understood in redistricting jurisprudence"). Alabama offers no contrary precedent—and no meaningful response—to the exceedingly simple proposition that where there's an injury there must be a remedy. *See Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.").

Alabama instead offers its "view," Defs.' Resp. at 22, that passage of a proposed remedial plan completely resets the State's liability such that Plaintiffs must run the *Gingles* gauntlet anew and challenge the 2023 Plan from scratch, *id.* at 22-30. Yet it cites no precedent, and Plaintiffs are aware of none, that supports the proposition that the passage of a remedial plan erases the very liability the remedial plan is meant to cure. Quite the opposite, the Supreme Court expressly foreclosed Alabama's argument in *North Carolina v. Covington*, where it explained that the passage of new district lines neither resets the court's liability findings nor the procedural posture of the case. 138 S. Ct. 2548, 2553 (2018) ("[I]n the remedial posture in which this case is presented, the plaintiffs' claims . . . d[o] not become moot simply because the General Assembly drew new district lines around them."). The holding in *Covington* makes good sense, for otherwise a state could avoid complying with the Voting Rights Act indefinitely by repeatedly passing dilutive congressional plans. Neither statute nor precedent nor reason demands such an

absurd result. As this Court has now twice emphasized: "We are not at square one in these cases." Order on Mot. for Clarification at 11, ECF No. 193; Omnibus Order at 4, ECF No. 182.

The cases Alabama cites are not only distinguishable but also undermine its position. For example, Alabama makes much of *Dillard v. Crenshaw County*, 831 F.2d 246 (11th Cir. 1987), arguing that it requires a brand-new appraisal of Alabama's Section 2 liability. Defs.' Resp. at 24, 27-29. But *Dillard* stands for no such thing. To the contrary, the *Dillard* court defined the issue on remedy to be "whether the at-large position, as proposed by Calhoun County and regulated by state law, in combination with the racial facts and history of Calhoun County, *fails to correct the original violation* of amended Section 2 of the Voting Rights Act of 1965." 831 F.2d at 248 (emphasis added).

*Dillard* involved a challenge to an at-large electoral scheme, which the defendant county proposed to remedy with a single-member scheme that would nevertheless include a chairperson elected at-large. *Id*. The *Dillard* court's guidance that "evidence showing a violation in an *existing* election scheme may not be completely coextensive with a *proposed* alternative," *id.* at 250, applies where the very method of electing representatives has changed, as was the case in *Dillard*. In fact, every case citing *Dillard* for its remedial guidance pertains to remedying an at-large election system with a new election system altogether. *See, e.g., McGhee v.*

*Granville Cnty., N.C.*, 860 F.2d 110, 114 (4th Cir. 1988). Here, by contrast, Plaintiffs do not challenge Alabama's single-member-district election system as a violation of Section 2. Instead, the State's Section 2 liability, as determined by this Court on preliminary injunction and affirmed by the Supreme Court, turns on its failure to provide more than one district in which Black voters have an opportunity to elect their preferred candidates. *See* Compl. ¶¶ 89-95, ECF No. 3; *Caster*, 2022 WL 264819, at *17. No reapplication of *Gingles* is required to determine whether the 2023 Plan does the same. *See infra* Section II.C.

Indeed, *Dillard* ultimately affirmed the district court's rejection of the defendant county's remedial scheme, holding that courts "cannot authorize an element of an election proposal that will not with certitude *completely* remedy the Section 2 violation." 831 F.2d at 252; *see also McGhee*, 860 F.2d at 118 (explaining that remedial plan must remedy the particular dilution violation). But that is precisely what Alabama is asking this Court to do—authorize the 2023 Plan even though it blatantly fails to remedy the previously identified Section 2 violation, let alone completely remedy it with certitude.

For similar reasons, *Jeffers v. Clinton*, 756 F. Supp. 1195 (E.D. Ark. 1990), *aff'd*, 498 U.S. 1019 (1991), also does not help Alabama here. The *Jeffers* court agreed that defendants' proposed districts "should be treated with some deference," and that "[i]f the districts they propose would have been upheld at the liability stage

of the case, they must be upheld now." *Id.* at 1199. But the court explained that defendants' remedial districts "would have been held unlawful at the liability stage" precisely because they fell below the BVAP required to afford Black voters an opportunity to elect their candidates of choice. *Id.* So, too, here. *Caster*, 2022 WL 264819, at *5 ("As the Legislature considers [remedial] plans, it should be mindful of the practical reality . . . that any remedial plan will need to include two districts in which Black voters either comprise a voting-age majority or something quite close to it.").

Nor does the fact that the 2023 Plan was legislatively enacted immunize it from the remedial standard. As an initial matter, Alabama is mistaken in contending that the 2023 Legislature's policy preferences with respect to the application of traditional redistricting principles govern the remedial process. Defs.' Resp. at 25-26. Although courts adhere to a state's policies where practicable, they may not do so where, as here, it would require them to implement a remedy that conflicts with the Voting Rights Act. *See Upham v. Seamon*, 456 U.S. 37, 43 (1982); *see also Wilson v. Jones*, 130 F. Supp. 2d 1315, 1321-22 (S.D. Ala. 2000) ("[A] legislative body is entitled to considerable deference in the manner it chooses to remedy problems with its districting scheme. That deference, however, does not extend to

proposed remedies which violate the constitution or other federal laws."), *aff'd sub*

*nom. Wilson v. Minor*, 220 F.3d 1297 (11th Cir. 2000).[1]

In any event, Plaintiffs agree that the 2023 Plan should be afforded deference,

and that Plaintiffs bear the burden of proving that the 2023 Plan is not legally

acceptable. *See* Defs.' Resp. at 23-24; *see also* Status Conf. Tr. at 36:3-4 (June 16,

2023), ECF No. 180-1 (Mr. LaCour: "[I]t's not simply another proposal among

many. It's not the 12th illustrative plan."); Omnibus Order at 4 ("Plaintiffs bear the

burden to establish that the 2023 Plan does not remedy the likely Section Two

violation that this Court found and the Supreme Court affirmed."). But deference

does not mean that the Court abdicates its responsibility to determine whether the

remedial plan in fact remedies the violation. Indeed, some of the cases Alabama cites

to support the need for legislative deference nonetheless rejected legislatively

enacted plans in the end. *See GRACE, Inc. v. City of Miami*, No. 1:22-CV-24066-

KMM, 2023 WL 4853635, at *7 (S.D. Fla. July 30, 2023) (determining that

---

[1] In addition to citing *Wilson v. Jones*, Alabama cites *Askew v. City of Rome*, 127 F.3d 1355 (11th Cir. 1997), to support the supremacy of legislative redistricting principles. However, the *Askew* court merely observed that court-ordered remedies to Section 2 violations generally seek "to eliminate vote dilution in the manner that least disrupt[s]" the jurisdiction's "chosen electoral system and its districting principles." 127 F.3d at 1376 (emphasis added); *see also Abrams v. Johnson*, 521 U.S. 74, 101 (1997) (affirming district court's remedy in racial gerrymandering challenge, which "t[ook] into account traditional state districting factors"); *id.* at 79 ("When faced with the necessity of drawing district lines by judicial order, a court, as a general rule, should be guided by the legislative policies underlying the existing plan, to the extent those policies do not lead to violations of the Constitution or the Voting Rights Act."). Alabama has not cited a single case that authorizes jurisdictions to allow their purported policy preferences to *override* compliance with the Voting Rights Act, either in the first instance or on remedy.

defendant city's remedial plan "is not a constitutional remedy" despite "affording great deference to the City Commission and presuming good faith on their behalf when passing the Remedial Plan"); *Jacksonville Branch of NAACP v. City of Jacksonville*, No. 3:22-CV-493, 2022 WL 17751416, at *11 (M.D. Fla. Dec. 19, 2022) (rejecting a remedial plan enacted by a legislative body because it perpetuated an earlier violation).

Here, Plaintiffs have met their burden. Plaintiffs do not ask the Court to reject the 2023 Plan in favor of a plan it finds preferable. They ask the Court to strike down the 2023 Plan because they have provided unrefuted evidence that it fails to provide the "appropriate remedy" this Court found was necessary to cure the Section 2 violation. *Caster*, 2022 WL 264819, at *3; *see also* Expert Rep. of Dr. Maxwell Palmer, ECF No. 179-2. And in response, Alabama has failed to produce any evidence that is relevant to the only question at issue: whether the 2023 Plan includes a second district in which Black voters have an opportunity to elect a representative of their choice. *See infra* Section II.C. Ultimately, the provenance of a proposed Section 2 remedial plan does not alter the fundamental requirement that the proposed plan actually remedy the violation.

This Court already determined that the "the question whether [Plaintiffs] are substantially likely to prevail on the merits of their Section Two claim" was not "a close one." *Caster*, 2022 WL 264819, at *76. And the Supreme Court affirmed,

finding "no reason to disturb the District Court's careful factual findings" and no "basis to upset the District Court's legal conclusions." *Allen*, 143 S. Ct. at 1506. The State's latest brief does nothing more than assert that this Court and the U.S. Supreme Court got it wrong. But the remedial posture of this case offers no quarter to such arguments, which have already been decided at the liability stage of the preliminary injunction proceeding.[2]

### B. This Court should reject Alabama's reinterpretation of the Supreme Court's decision in *Allen*.

In addition to trying to relitigate this Court's finding of liability, Alabama misrepresents the Supreme Court's decision affirming it. First, Alabama seeks to create a "meet or beat" standard for illustrative maps, citing *Allen* as support. *See* Defs.' Resp. at 31-33. But the Supreme Court never suggested that such a standard exists, nor did this Court. Rather, the Supreme Court cited Plaintiffs' illustrative maps' performance with respect to traditional redistricting criteria to support a finding that Black voters "could constitute a majority in a second, reasonably configured, district." *Allen*, 143 S. Ct. at 1504 (citing *Milligan*, 582 F. Supp. 3d at 1010); *see also id.* at 1505 (holding that district court correctly concluded that it "did not have to conduct a 'beauty contest[]' between plaintiffs' maps and the State's").

---

[2] Alabama takes issue with the fact that the findings in this case thus far assessed only the "likelihood of success" and "are not binding at trial on the merits." Defs.' Resp. at 29-30 (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981)). But this Court has made clear that this is *not* a trial on the merits, and any arguments to the contrary are foreclosed. Order on Mot. for Clarification at 9-11, ECF No. 193.

That finding still stands. Indeed, Alabama's preferred standard would allow the remedial process to continue ad infinitum—so long as one party could produce a new map that improved compactness scores or county splits, by even the smallest margin, there would be no resolution. And although that may be Alabama's object, it is contrary to any holding that binds this Court.[3]

Second, Alabama continues to pursue its already-rejected racial predominance argument. Alabama's claim that Plaintiffs' illustrative maps are unconstitutional gerrymanders featured prominently in the Supreme Court briefing. Br. for Appellants at 75-80, *Allen v. Milligan*, No. 21-1086 (U.S. Apr. 25, 2022); Reply Br. for Appellants at 29-42, *Allen v. Milligan*, No. 21-1086 (U.S. Aug. 24, 2022); *see also* Br. for Caster Respondents at 52-57, *Allen v. Milligan*, No. 21-1086 (U.S. July 11, 2022). But the Supreme Court disagreed. *Allen*, 143 S. Ct. at 1510-11 (plurality

---

[3] Of course, courts often consider how an illustrative plan performs on traditional districting criteria relative to a state's enacted plan not because the state's plan is a threshold that plaintiffs must beat, *see League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 433 (2006) (noting that "no precise rule has emerged governing § 2 compactness"), but because the state's plan provides guideposts as to what state policy traditionally allows. The fact that Alabama has drawn a new plan that it asserts improves on one or more metrics does nothing to undermine the fact that the 2021 Plan reflects the State's "traditional" approach to redistricting. *See Allen*, 143 S. Ct. at 1501 (noting that Alabama's congressional map has "remained remarkably similar" since a 1992 lawsuit produced one majority-Black district). Accordingly, courts sometimes look to plans other than the exact plan at issue to determine whether an illustrative plan is consistent with the State's traditional districting principles. *See Caster*, 2022 WL 264819, at *67 (considering legislature's splitting of certain counties in State Board of Education plan to evaluate traditional redistricting criteria in congressional plan); *cf. Norelli v. Sec'y of State*, 292 A.3d 458, 471 (N.H. 2022) (considering congressional redistricting plans from prior three decades to "discern" the state's redistricting policies and incorporate them into any court-adopted plan); *Larios v. Cox*, 300 F. Supp. 2d 1320, 1331-33 (comparing plan from previous decade to assess traditional redistricting criteria).

opinion). The Court's decision in *Students for Fair Admissions, Inc. v. Pres. & Fellows of Harvard College* ("*SFFA*"), 143 S. Ct. 2141 (2023), an affirmative action case decided a few weeks later, does nothing to undermine its clear decision in *this very case*. Notwithstanding that the Court held that race did *not* predominate in Plaintiffs' illustrative maps, *Allen*, 143 S. Ct. at 1510-11 (plurality opinion) ("While the line between racial predominance and racial consciousness can be difficult to discern, it was not breached here."), in *SFFA* the Supreme Court expressly stated that "remediating specific, identified instances of past discrimination that violated the Constitution or a statute" is a "compelling interest[] that permit[s] resort to race-based government action," 143 S. Ct. at 2162 (citing *Shaw v. Hunt*, 517 U.S. 899, 909-10 (1996)); *see also Allen*, 143 S. Ct. at 1516-17 (majority opinion) ("[F]or the last four decades, this Court and the lower federal courts have repeatedly applied the effects test of § 2 as interpreted in *Gingles* and, under certain circumstances, have authorized race-based redistricting as a remedy for state districting maps that violate § 2."). Rather than accept the Supreme Court's ruling in this case on this precise issue, Alabama seeks recourse in the Court's opinion in a different case on an entirely different issue. But Alabama's incredulity at the Court's conclusion does nothing to call it into question.

### C. Alabama does not contest that the 2023 Plan fails to provide Black voters an additional opportunity district.

Properly understood, the only open question for this Court's remedial hearing is whether Alabama's proposed remedial plan "includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Caster*, 2022 WL 264819, at *3. As Plaintiffs have explained here and elsewhere, the answer is it does not. Dr. Palmer's expert analysis demonstrated that the Black-preferred candidates in proposed remedial CD 2 would have been defeated by white-preferred candidates 94% of the time. That proposed remedial CD 2 does not give Black voters an opportunity to elect a candidate of their choice is plain under any measure.

Apparently, Alabama agrees. Alabama advised this Court that it does "not intend to put on evidence challenging the demographic or election numbers in the 'performance' reports offered by the *Caster* Plaintiffs." ECF No. 186 at 6. And not once in Alabama's *more than 60 pages* of substantive briefing does the State even attempt to address—let alone refute—Plaintiffs' objection that the 2023 Plan fails to provide Black Alabamians with an additional opportunity district. Instead, Alabama spends dozens of pages making arguments trying to relitigate its liability, directly contrary to the Court's orders. *See* Omnibus Order at 4, ECF No. 182 ("[T]his remedial hearing will not relitigate the issue of that likely Section Two violation."); Order on Mot. for Clarification at 11, ECF No. 193 (explaining that the remedial

hearing, "will not relitigate the findings" of liability). Alabama's gamesmanship must be rejected.[4]

The 2023 Plan thus fails to remedy the substantially likely Section 2 violation already found by this Court and affirmed by the Supreme Court because it fails to give Black voters a second opportunity "to elect representatives of their choice." 52 U.S.C. § 10301(a)-(b).

## III.    Conclusion

The State's task was more than clear, and its passage of the 2023 Plan provides nothing but further evidence that official voting-related discrimination is alive and well in Alabama. Notably, this is not the first time Alabama has staged an open rebellion against judicial enforcement of the Voting Rights Act. *See Dillard v. Crenshaw Cnty.*, 640 F. Supp. 1347, 1359 (M.D. Ala. 1986) (recounting "open and unashamed" state action taken to diminish Black political power "in response to both the Supreme Court's ban of all-white primaries and the Civil Rights Acts of 1957, 1964, and 1965"), *order dissolved*, No. CIV.A. 2:85-CV-1332-MHT, 2006 WL

---

[4] Given the Court's clear guidance, Plaintiffs do not engage with Alabama's purported new evidence relitigating the Section 2 violation found during the liability phase, including the Legislature's reasoning for maintaining certain communities of interest while still diluting the Black vote, and the compactness and county splits of a plan that still fails to include an additional Black opportunity district, even though it has already been established that such a plan is viable. Defs.' Resp. at 41-60. Alabama's brief suggests that, rather than prepare for a remedial hearing on the 2023 Plan, Alabama has been preparing for a full-scale trial on the merits before this Court's preliminary injunction is effectuated. Alabama's approach is at best irrelevant—and at worse downright obstructionist—to these proceedings.

3392071 (M.D. Ala. July 31, 2006), *and order dissolved*, No. CIV.A. 2:85-CV-1332MHT, 2006 WL 3923887 (M.D. Ala. Oct. 3, 2006; *see also Caster*, 2022 WL 264819, at *33 (noting Plaintiffs' expert "tracked the extensive history of federal judicial involvement in and supervision of Alabama redistricting efforts" since 1965 and concluded that state actors have repeatedly "manipulated the redistricting process to prevent Black citizens from electing members of Congress or, in the last 30 years, to limit Black voters' ability to elect members of Congress from more than one district"). If there were any doubt that Section 2 remains essential to the protection of voting rights in America, Alabama's brazen refusal to provide an equal opportunity for Black voters in opposition to multiple federal court opinions—six decades after the passage of the Voting Rights Act—silences it, resoundingly.

Plaintiffs respectfully request that this Court enjoin the 2023 Plan for failing to remedy the Section 2 violation and proceed to a judicial remedial process to ensure that Plaintiffs, at long last, obtain relief in time for the 2024 election.

Dated: August 7, 2023

Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies
& Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
Email: rrouco@qcwdr.com

Respectfully submitted,

By */s/ Abha Khanna*
Abha Khanna*
Makeba Rutahindurwa*
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Phone: (206) 656-0177
Email: AKhanna@elias.law
Email: MRutahindurwa@elias.law

Lalitha D. Madduri*
Joseph N. Posimato*
Jyoti Jasrasaria*
**Elias Law Group LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
Phone: (202) 968-4518
Email: LMadduri@elias.law
Email: JPosimato@elias.law
Email: JJasrasaria@elias.law

*Attorneys for Plaintiffs*
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Richard P. Rouco*
Richard P. Rouco
Counsel for Plaintiffs