# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, et al., *Plaintiffs*, v. WES ALLEN, et al., *Defendants*. | No. 2:21-cv-01530-AMM |
| MARCUS CASTER, et al., *Plaintiffs*, v. WES ALLEN, et al., *Defendants*. | No. 2:21-cv-01536-AMM |

### *MILLIGAN* AND *CASTER* PLAINTIFFS' MOTION IN LIMINE

Plaintiffs hereby move this Court for an order excluding the expert testimony of Mr. Thomas Bryan and Mr. Sean Trende, as well as any and all evidence, references to evidence, testimony, or argument relating to the 2023 Plan's maintenance of communities of interest. In lieu of live testimony at the August 14th hearing, all Parties in *Milligan* and *Caster* have tentatively agreed to submit joint stipulations, declarations, and deposition transcripts to the Court. Nonetheless, the expert reports of Mr. Bryan and Mr. Trende, and all community of interest evidence

should be excluded because this evidence is irrelevant and immaterial to the issues that are presently before the Court.

## BACKGROUND

This Court has been clear that the August 14 hearing is purely remedial and not an opportunity to relitigate issues that have already been decided, including those pertaining to Alabama's liability under Section 2 of the Voting Rights Act of 1965 ("VRA"). On August 1, this Court stated that the upcoming hearing "will be limited to the essential question whether the 2023 Plan complies with the order of this Court, affirmed by the Supreme Court, and with Section Two of the Voting Rights Act." Omnibus Order at 3-4, *Milligan v. Allen*, No. No. 2:21-cv-01530-AMM (N.D. Ala. Aug. 1, 2023), ECF No. 203; *Caster v. Allen,* No. 2:21-cv-01536-AMM (N.D. Ala. Aug. 1, 2023), ECF No. 182. And on August 6, Alabama forced the Court to "repeat" that "the Court's August 14 hearing on the *Milligan* and *Caster* Plaintiffs' objections will be a remedial proceeding to determine whether the 2023 Plan remediates the likely violation of Section Two that we found and the Supreme Court affirmed." Order on Mot. for Clarification at 9, *Milligan* (Aug. 6, 2023), ECF No. 222; *Caster* (Aug. 6, 2023), ECF No. 193.

Alabama has made clear that it has no intention "to put on evidence challenging the demographic or election numbers in the 'performance' reports offered by the *Caster* Plaintiffs," Defs.' Mot. to Clarify Order at 6, *Caster* (Aug. 3,

2

2023), ECF No. 186—the sole "essential question" to which this hearing is "limited," Omnibus Order at 3-4, *Caster*, ECF No. 182. Instead, Alabama seeks to introduce irrelevant testimony from Thomas Bryan and Sean Trende, along with evidence concerning communities of interest, that has no bearing on whether the 2023 Plan remedies Alabama's Section 2 violation.

Because this evidence is irrelevant, it is inadmissible for the purposes of this remedial proceeding. Plaintiffs therefore object to the introduction of this evidence and respectfully request that the Court exclude it from the remedial hearing.

## ARGUMENT

I. **Neither of Alabama's experts presents analysis that will help the Court determine a relevant fact at issue during this remedial proceeding.**

Alabama's expert testimony from Thomas Bryan and Sean Trende should be excluded as irrelevant. Federal Rule of Evidence 702 "militates against [the] general policy" of "liberal admission of evidence" in "giving courts discretion to preclude expert testimony unless it passes more stringent standards of reliability and relevance." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999). In terms of relevance, the "evidence must have a valid scientific connection to the disputed facts in the case." *Id.* at 1312.

None of the analysis presented by either Mr. Bryan or Mr. Trende bears on whether the 2023 Plan remedies "the prior dilution of minority voting strength and fully provides equal opportunity for minority citizens to participate and to elect

3

candidates of their choice." *United States v. Dall. Cnty. Comm'n*, 850 F.2d 1433, 1437-38 (11th Cir. 1988). Mr. Trende's analysis—which compares Plaintiffs' illustrative plans, a plan Plaintiffs proposed to the Legislature, and the State's 2021 and 2023 Plans under compactness metrics, county splits, and the degree to which they split three identified "communities of interest"—sheds no light on whether the 2023 Plan remedies this Court's finding of vote dilution. Trende Rep. at 3, *Milligan v. Allen*, No. 2:21-cv-01530-AMM (N.D. Ala. Aug. 4, 2023), ECF No. 220-12. Mr. Bryan's analysis of a smaller subset of the same plans concerning "the number of county splits and . . . the size and type of population that were impacted by them" to offer opinions about "whether there is evidence that race predominated in the design of the plans," similarly tilts at windmills. Bryan Rep. at 8-9, *Milligan* (Aug. 4, 2023), ECF No. 220-10. Nor are the experts' statistics regarding the 2023 Plan relevant—Alabama concedes that the Black-preferred candidates would have lost in the 2023 Plan's purported "opportunity district" in every single election studied by their own expert. *See* Defs.' Mot. to Clarify Order ¶ 11, *Milligan* (Aug. 3, 2023), ECF No. 205.

The topics on which Mr. Trende and Mr. Bryan seek to testify have already been decided by this Court and affirmed by the Supreme Court. This Court held during the liability phase that all 11 illustrative plans submitted by Plaintiffs contained two majority-minority districts consistent with the State's traditional redistricting criteria, *Milligan v. Merrill*, 582 F. Supp. 3d 924, 1016 (N.D. Ala.

2022), and the Supreme Court affirmed, finding that Plaintiffs' maps are "reasonably configured," *Allen v. Milligan*, 143 S. Ct. 1487, 1503 (2023); *see also Terrebonne Par. Branch NAACP v. Edwards*, 399 F. Supp. 3d 608, 612-13 (M.D. La. 2019) (explaining that "repackag[ing] the same argument presented" and rejected "in the liability phase" and urging the court to revisit it in the remedy phase is barred by the doctrine of law of the case); *Coal. for Equity & Excellence in Md. Higher Educ. v. Md. Higher Educ. Comm'n,* 295 F. Supp. 3d 540, 549 (D. Md. 2017) (noting that the court granted the plaintiffs' motion in limine to prevent a defendant from "re-litigating the liability findings" in the case's remedial phrase); *Carr v. Montgomery Cnty.*, No. H-13-2795, 2015 WL 5838862, at *9 (S.D. Tex. Oct. 7, 2015) (excluding expert testimony about liability because it was "not helpful" to a trier of fact where the court had already ruled on liability)..

Because Defendants' experts offer no testimony that will assist the Court in determining the sole contested issue at this stage, the Court should exclude testimony from Mr. Trende and Mr. Bryan and strike their reports from the evidentiary record.

## II. Mr. Bryan's purported analysis of the racial predominance of Plaintiffs' illustrative maps lacks sufficient reliability.

Mr. Bryan's testimony regarding racial predominance should be excluded for yet another reason—it lacks sufficient reliability. Expert "testimony does not assist the trier of fact unless the testimony has a justified scientific relationship to the pertinent facts." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004). Where

5

"opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert," a "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered" to render the opinions reliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) ("[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained.").

Mr. Bryan's testimony concerning "whether there is evidence that race predominated in the design of the plans," Bryan Rep. at 9, *Milligan*, ECF No. 220-10, lacks any supportable link between the data he provides and his conclusion. Mr. Bryan purports to find evidence of racial predominance by using "a demographic analysis of . . . voting age population (VAP) by race and ethnicity" and performing "a geographic 'splits analysis' by county." *Id.* But nowhere does Mr. Bryan explain *why* these analytical tools bear on the issue of racial predominance, nor has he linked a purely descriptive analysis of Plaintiffs' plans to his ultimate conclusion that "there is evidence that race predominated in the drawing of both the 2nd and 7th districts in Plaintiffs' VRA Remedial Plan and Cooper Plans 1 – 7." *Id.* at 26; *see also Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1296 (11th Cir. 2022) (rejecting expert testimony that amounted to no more than "the contentions that [the expert] . . . looked at the available evidence, and deduced what happened").

Because Mr. Bryan totally fails to explain how the factual findings he posits tend to lead to or even support his conclusion about racial predominance, there is too "great an analytical gap between the data and the opinion proffered" to render his opinions reliable. *Gen. Elec. Co.*, 522 U.S. at 146; *see also S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1245 (11th Cir. 2009) (affirming exclusion of expert testimony where "his opinion was connected to the data only by his *ipse dixit* assertion."). For this reason, too, Mr. Bryan's racial predominance testimony should be excluded.

### III. Alabama's communities of interest evidence has no relevance to these remedial proceedings.

Alabama's evidence regarding communities of interest should be excluded under Federal Rule of Evidence 402, which provides that "[i]rrelevant evidence is not admissible." Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[1] Fed. R. Evid. 401. Alabama—as the party seeking to introduce this evidence—bears the burden of demonstrating its relevance. *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990).

---

[1] *Milligan* Plaintiffs only introduced the testimony of Dr. Bagley and Representative Jones to rebut the anticipated evidence from Defendants on communities of interest. If the Court grants this motion, *Milligan* Plaintiffs do not intend to offer the testimony of Dr. Bagley, Representative Jones, or anyone else on communities of interest.

Alabama's communities of interest evidence has *no* tendency to make any fact of any consequence to this remedial proceeding more or less probable. Fed. R. Evid. 401. Under this Court's orders, the only evidence relevant to the proceeding is evidence concerning whether Alabama remedied its Section 2 violation by providing Black voters an opportunity to elect a candidate of their choice in an additional district. *See generally* Pls.' Obj. to Remedial Cong. Plan, *Caster* (July 28, 2023), ECF No. 179; Pls.' Resp. Br., *Caster* (Aug. 4, 2023), ECF No. 190; Pls.' Reply in Supp., *Caster* (Aug. 7, 2023), ECF No. 195. That's because to remedy a Section 2 violation, a state must fashion a remedial plan that "*completely* remedies the prior dilution of minority voting strength and *fully* provides equal opportunity for minority citizens to participate and to elect candidates of their choice." *Dall. Cnty. Comm'n*, 850 F.2d at 1442 (citing S. Rep. No. 417, 97th Cong. 2d Sess. 26, *reprinted in* 1982 U.S. Code Cong. & Adm. News 177, 208). State policies that perpetuate violations of the VRA are not entitled to deference. *See Milligan*, 143 S. Ct. at 1505; *Perry v. Perez*, 565 U.S. 388, 393 (2012). And, as this Court explained, the "appropriate remedy" to cure the state's prior dilution of minority voting strength "is a congressional redistricting plan that includes either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice." *Milligan*, 582 F. Supp. 3d at 936.

Alabama's communities of interest evidence is wholly irrelevant to whether the 2023 Plan includes an additional district in which Black voters have an opportunity to elect their preferred candidates. Whether the Wiregrass and Gulf Coast regions are communities of interest provides this Court no insight into the electoral performance of the 2023 Plan for Black voters or any factor that might bear on whether Black voters have an opportunity to elect. It says nothing about how the 2023 Plan would perform in historical statewide elections, nothing about the intense and entrenched racially polarized voting in Alabama that hamstrings Black voters, nothing about the strong cohesion of Black voters in the relevant districts of the plan, and nothing about white voters consistently voting as a bloc against the Black-preferred candidate in those same districts. *See, e.g.*, *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 428-29 (2006) (evaluating whether a district is an opportunity district by considering past election performance and minority voting-age population) on remand, 457 F. Supp. 2d 716, 719 (E.D. Tex. 2006) (three-judge court) (considering similar evidence in devising a remedial plan with an "effective Latino opportunity district"); *see also* Palmer Rep. at 1-9, *Caster* (July 28, 2023), ECF No. 179-2; Liu Rep. at 1-6, *Milligan* (July 28, 2023), ECF No. 200-2.

Instead, Alabama seeks to introduce communities of interest evidence for two unrelated purposes, both irrelevant: (1) relitigating this Court's finding of Section 2 liability by attempting to undermine Plaintiffs' illustrative maps, and (2) showing

9

that it has "remedied" the 2021 Plan's "cracking" of the Black Belt. Defs.' Resp. at 34-49, *Milligan* (Aug. 4, 2023), ECF No. 220. With respect to the first, by Alabama's own admission, it is attempting to replace the "preliminary injunction record" about "the approach Plaintiffs' [illustrative] maps took to communities of interest," with the goal of changing this Court's and the Supreme Court's minds. *Id.* at 34-35. But this Court and the Supreme Court have already weighed and rejected Alabama's community of interest evidence when it found that Plaintiffs' illustrative maps are reasonably configured under the first *Gingles* precondition. *Milligan*, 582 F. Supp. 3d at 1014-15. This Court "consider[ed] Defendants' argument that Alabama's Gulf Coast counties also comprise a community of interest" and found that "Defendants overstate the point," that Defendants' preliminary injunction evidence did not "support[] Defendants' overdrawn argument that there can be no legitimate reason to split Mobile and Baldwin Counties consistent with traditional redistricting criteria," and that in fact "the Legislature ha[d] repeatedly split Mobile and Baldwin Counties in creating maps for the State Board of Education districts in Alabama." *Id*. And the Supreme Court described Alabama's communities of interest arguments as "unpersuasive" and held that "[e]ven if the Gulf Coast did constitute a community of interest," this Court correctly concluded that that Plaintiffs' maps "would still be reasonably configured." *See Milligan*, 143 S. Ct. at 1504-05. As a result, Defendants' submission of communities of interest evidence and testimony is foreclosed by this

10

Court's rulings declining to relitigate issues of liability for purposes of the preliminary injunction. *See* Omnibus Order at 3-4, *Caster*, ECF No. 182; Order on Mot. for Clarification at 11, *Caster*, ECF No. 193.

And as to the second basis that Alabama cites for introducing the evidence, Alabama entirely misunderstands what "cracking" means in the Section 2 context. As Plaintiffs have already explained, *see* Pls.' Resp. at 10-11, *Caster*, ECF No. 190, it is a legal term of art, defined as "the dispersal of [a protected class of voters] into districts in which they constitute an ineffective minority of voters." *Thornburg v. Gingles*, 478 U.S. 30, 46 n.11 (1986); *see also Voinovich v. Quilter*, 507 U.S. 146, 153-54 (1993); *Bartlett v. Strickland*, 556 U.S. 1, 19 (2009) ("[I]t is a special wrong when a minority group has 50 percent or more of the voting age population and could constitute a compact voting majority but, despite racially polarized bloc voting, that group is not put into a district.").

Contrary to Defendants' suggestion, the "cracking" of Black voters in the Black Belt is not resolved by uniting them in a district where they remain an "ineffective minority of voters." And Defendants do not dispute Plaintiffs' evidence that CD 2 under the 2023 Plan contains a BVAP of just 39.9% and does not afford Black voters in the Black Belt an effective opportunity to elect their preferred candidates. Pls.' Obj. to Remedial Cong. Plan at 6, *Caster*, ECF No. 179; Defs.' Mot. to Clarify Order at 6, *Caster*, ECF No. 186 ("Defendants do not intend to put

11

on evidence challenging the demographic or election numbers in the 'performance' reports offered by the *Caster* Plaintiffs or *Milligan* Plaintiffs.") (citations omitted). Thus, by Defendants' own admission, their communities of interest evidence has no bearing on whether the 2023 Plan provides an "appropriate remedy" by including "either an additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice," *Milligan*, 582 F. Supp. 3d at 1033.

Alabama's communities of interest evidence therefore widely misses the mark. Accordingly, Alabama should be barred from introducing it during this limited remedial proceeding.

## CONCLUSION

Plaintiffs respectfully request this Court enter an order prohibiting Alabama's introduction of irrelevant evidence.

Respectfully submitted this 9th day of August 2023.

| | |
|---|---|
| */s/ Deuel Ross* | */s/ Sidney M. Jackson* |
| Deuel Ross* | Sidney M. Jackson (ASB-1462-K40W) |
| Tanner Lockhead* | Nicki Lawsen (ASB-2602-C00K) |
| NAACP LEGAL DEFENSE & | WIGGINS CHILDS PANTAZIS |
|   EDUCATIONAL FUND, INC. |   FISHER & GOLDFARB, LLC |
| 700 14th Street N.W. Ste. 600 | 301 19th Street North |
| Washington, DC 20005 | Birmingham, AL 35203 |
| (202) 682-1300 | Phone: (205) 341-0498 |
| dross@naacpldf.org | sjackson@wigginschilds.com |
| tlockhead@naacpldf.org | nlawsen@wigginschilds.com |

Leah Aden*
Stuart Naifeh*
Ashley Burrell*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
NAACP LEGAL DEFENSE &
 EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
Shelita M. Stewart*
Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

Janette Louard*
Anthony Ashton*
Anna Kathryn Barnes*
NATIONAL ASSOCIATION FOR THE

*/s/ Davin M. Rosborough*
Davin M. Rosborough*
Julie Ebenstein*
Dayton Campbell-Harris*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org
dcampbell-harris@aclu.org

*/s/ LaTisha Gotell Faulks*
LaTisha Gotell Faulks (ASB-1279-I63J)
AMERICAN CIVIL LIBERTIES UNION
OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulks@aclualabama.org

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

**Counsel for Milligan Plaintiffs**

13

ADVANCEMENT OF COLORED PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Counsel for Plaintiff Alabama State Conference of the NAACP*

*\* Admitted Pro Hac Vice*

|  |  |
|---|---|
|  | By: /s/ *Abha Khanna* |
| Richard P. Rouco | Abha Khanna* |
| (AL Bar. No. 6182-R76R) | Makeba Rutahindurwa* |
| **Quinn, Connor, Weaver, Davies & Rouco LLP** | **Elias Law Group LLP** |
| Two North Twentieth | 1700 Seventh Ave, Suite 2100 |
| 2-20th Street North, Suite 930 | Seattle, WA 98101 |
| Birmingham, AL 35203 | Phone: (206) 656-0177 |
| Phone: (205) 870-9989 | Email: AKhanna@elias.law |
| Fax: (205) 803-4143 | Email: MRutahindurwa@elias.law |
| Email: rrouco@qcwdr.com |  |
|  | Lalitha D. Madduri* |
|  | Joseph N. Posimato* |
|  | Jyoti Jasrasaria* |
|  | **Elias Law Group LLP** |
|  | 250 Massachusetts Ave NW, Suite 400 |
|  | Washington, D.C. 20001 |
|  | Phone: (202) 968-4490 |
|  | Email: LMadduri@elias.law |
|  | Email: JPosimato@elias.law |
| *Counsel for Caster Plaintiffs* | Email: JJasrasaria@elias.law |
|  |  |
|  | *\*Admitted Pro Hac Vice* |