IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, et al.,<br>    *Plaintiffs*,<br><br>v.<br><br>WES ALLEN, et al.,<br>    *Defendants*. | No. 2:21-cv-01530-AMM |
| MARCUS CASTER, et al.,<br>    *Plaintiffs*,<br><br>v.<br><br>WES ALLEN, et al.,<br>    *Defendants*. | No. 2:21-cv-01536-AMM |

*MILLIGAN* AND *CASTER* PLAINTIFFS'
REPLY BRIEF IN SUPPORT OF ITS MOTION IN LIMINE

Alabama's response to Plaintiffs' motion in limine only bolsters Plaintiffs' argument that the State's communities of interest evidence and expert analysis is irrelevant to this remedial proceeding and should therefore be excluded under the Federal Rules of Evidence. Defendants cannot escape the remedial context of this hearing or evade the preliminary injunction order by skipping ahead to trial. As the Court already established, while the State will eventually have the "right" to a trial on the merits at a "future date if necessary"—"based on Defendants' agreement"—

that trial "shall not occur before the 2024 congressional elections." *Id.* at 6. Defendants' evidence must be excluded or deferred to a later stage because the law of the case bars Defendants from challenging findings that have already established liability at the preliminary-injunction phase.

Notwithstanding Defendants' selectively plucked quotations and semantic gymnastics, they identify no Section 2 case in which the plaintiffs were required to relitigate a state's liability during a remedial phase. To the contrary, the cases they cite undermine their position. In *McGhee v. Granville County*, the Fourth Circuit explained that while the legislature must have "the first opportunity to devise an acceptable remedial plan, "the court's ensuing review and remedial powers are largely dictated by the legislative body's response. If the legislative body fails to respond *or responds with a legally unacceptable remedy*," the Court must step in. 860 F.2d 110, 115 (4th Cir. 1988) (emphasis added). In other words, the Court must evaluate the legal acceptability of the new plan "in part measured by the historical record, in part measured by difference from the old system, and in part measured by prediction," not on a tabula rasa. *See Dillard v. Crenshaw Cnty.*, 831 F.2d 246, 250 (11th Cir. 1987).

Similarly, in *Harvell v. Blytheville School District No. 5*, 126 F.3d 1038, 1040–41 (8th Cir. 1997), the Eighth Circuit found a new plan insufficient to remedy a Section 2 violation because the "inability of black voters to affect the at-large

2

elections under the [new plan] [was] no different from what it was under the previous electoral scheme." *Id.* So too in *United States v. Dallas County Commission*, 850 F.2d 1433, 1440 (11th Cir. 1988). There, the Eleventh Circuit rejected a proposed remedial plan because it "perpetuate[d] rather than ameliorate[d] the inequities" in "black citizens' access to the political process." *Id.* In doing so, the court evaluated the remedial proposal through the lens of its previous findings of "racially polarized voting," the "complete absence of black officials elected," and the "history of pervasive racial discrimination" and its present effects. *Id.*

Defendants also miss the point when they cite *Jeffers* for the principle that if "the 2023 Plan 'would have been upheld at the liability stage of the case, [it] must be upheld now." Defs.' Opp. 2 (quoting *Jeffers v. Clinton*, 756 F. Supp. 1195, 1199 (E.D. Ark. 1990), *aff'd mem.*, 498 U.S. 1019 (1991)). Yes, the Court must evaluate whether the new plan continues to unfairly dilute the voting power of Black Alabamians under Section 2, but it does not start from square one. Rather, as the *Jeffers* Court recognized, "the point is precisely that the [remedial districts] would have been held unlawful at the liability stage of this case, simply because they" failed to provide Black voters additional effective opportunity districts. *Id.*

Because the only question in Section 2 remedial proceedings is whether the state has cured the violation, Alabama cites to no court, and Plaintiffs are aware of none, that has ever allowed a defendant to relitigate a plaintiff's satisfaction of the

3

first *Gingles* precondition at this remedial stage. *Cf., e.g.*, *League of United Latin Am. Citizens v. Perry*, 457 F. Supp. 2d 716, 719 (E.D. Tex. 2006) (three-judge court) (examining past election returns and minority voter population to devise a remedial plan with an "effective Latino opportunity district").

Accordingly, Defendants' communities of interest evidence and expert analysis are irrelevant under the Federal Rules of Evidence. None of that evidence—which is directed only at rehashing this Court's previous findings—bears on the question Alabama expressly does not dispute: The 2023 Plan fails to remedy the Section 2 violation because it does not provide Black Alabamians an additional district in which they have the opportunity to elect a candidate of their choice.

As to Mr. Bryan's racial predominance opinions, they lack sufficient indicia of reliability to make them relevant at *any* stage of the case. Defendants defend his analysis by comparing it to *Milligan* Plaintiffs' expert Dr. Ryan Williamson's testimony during the preliminary injunction hearing. Defs.' Br. 9. But Dr. Williamson used multiple modes of analysis and offered explanations for *why* he performed his analysis and *how* that led to his conclusions. *See generally* Williamson Report at 3–5, 8–9, *Milligan* ECF No. 68-3 (examining county splits, the race of voters moved in and out of a district, and other evidence, together, to argue racial predominance). In contrast, Mr. Bryan's opinions leap from running numbers to ultimate opinions without any indicated connection between the two. Nowhere does

Mr. Bryan explain why he chose to perform the analysis he did, why those analyses are probative of racial predominance, or why—based on the data he computed—they led to his conclusion of a probability of racial predominance. This is precisely the type of *ipse dixit* opinion that previously led this Court to find Mr. Bryan's testimony unreliable. *See Allen v. Milligan*, 143 S. Ct. 1487, 1511 (2023) (explaining that this Court did not err in finding Mr. Bryan's testimony regarding racial predominance "exceedingly thin").

Plaintiffs respectfully request this Court enter an order prohibiting Defendants' introduction of irrelevant and unreliable evidence.

Respectfully submitted this 11th day of August 2023.

/s/ Deuel Ross
Deuel Ross*
Tanner Lockhead*
NAACP LEGAL DEFENSE &
   EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org
tlockhead@naacpldf.org

Leah Aden*
Stuart Naifeh*
Ashley Burrell*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
NAACP LEGAL DEFENSE &
   EDUCATIONAL FUND, INC.

/s/ Sidney M. Jackson
Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
    FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
Phone: (205) 341-0498
sjackson@wigginschilds.com
nlawsen@wigginschilds.com

/s/ Davin M. Rosborough
Davin M. Rosborough*
Julie Ebenstein*
Dayton Campbell-Harris*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.

40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
Shelita M. Stewart*
Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

Janette Louard*
Anthony Ashton*
Anna Kathryn Barnes*
NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE (NAACP)
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

New York, NY 10004
(212) 549-2500
drosborough@aclu.org
jebenstein@aclu.org
dcampbell-harris@aclu.org

*/s/ LaTisha Gotell Faulks*
LaTisha Gotell Faulks (ASB-1279-I63J)
AMERICAN CIVIL LIBERTIES UNION
OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754
tgfaulks@aclualabama.org

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

*Counsel for Milligan Plaintiffs*

6

*Counsel for Plaintiff Alabama State Conference of the NAACP*

*\* Admitted Pro Hac Vice*

Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies & Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
Email: rrouco@qcwdr.com

By: /s/ *Abha Khanna*
Abha Khanna*
Makeba Rutahindurwa*
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Phone: (206) 656-0177
Email: AKhanna@elias.law
Email: MRutahindurwa@elias.law

Lalitha D. Madduri*
Joseph N. Posimato*
Jyoti Jasrasaria*
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, D.C. 20001
Phone: (202) 968-4490
Email: LMadduri@elias.law
Email: JPosimato@elias.law
Email: JJasrasaria@elias.law

*\*Admitted Pro Hac Vice*

*Counsel for Caster Plaintiffs*