FILED
2024 Mar-07 PM 06:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

MARCUS CASTER, LAKEISHA CHESTNUT, BOBBY LEE DUBOSE, BENJAMIN JONES, RODNEY ALLEN LOVE, MANASSEH POWELL, RONALD SMITH, and WENDELL THOMAS,

Plaintiffs,

v.

WES ALLEN, in his official capacity as Alabama Secretary of State,

Defendant,

and

CHRIS PRINGLE and JIM McCLENDON,

Intervenor-Defendants.

Case No. 2:21-CV-1536-AMM

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ............................................................................................2

I. Section 2 of the Voting Rights Act provides a private right of action. ...........2

A. It is well established that Section 2 provides a private right of action. ........2

B. The text of the VRA plainly provides private litigants a private cause of action. ....................................................................................8

C. Section 1983 provides Plaintiffs an independent basis to assert their Section 2 claim. ......................................................................15

II. Plaintiffs have adequately stated a claim under Section 2. ...........................18

CONCLUSION .......................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. Felton*,
521 U.S. 203 (1997)....................4

*Ala. State Conf. of NAACP v. Alabama*,
949 F.3d 647 (11th Cir. 2020)....................4

*Alexander v. Sandoval*,
532 U.S. 275 (2001)....................8, 9, 14

*Allen v. Milligan*,
599 U.S. 1 (2023)....................*passim*

*Allen v. State Bd. of Elections*,
393 U.S. 544 (1969)....................17

*Alpha Phi Alpha Fraternity, Inc v. Raffensperger*,
587 F. Supp 3d. 1222 (N.D. Ga. 2022)....................6

*Alpha Phi Alpha Fraternity Inc. v. Raffensperger*,
No. 1:21-CV-05337, 2023 WL 7037537 (N.D. Ga. Oct. 26, 2023)....................5

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*,
86 F.4th 1204 (8th Cir. 2023)....................16

*Ark. United v. Thurston*,
626 F. Supp. 3d 1064 (W.D. Ark. 2022)....................5

*Brnovich v. Democratic Nat'l Comm.*,
141 S. Ct. 2321 (2021)....................7

*Cannon v. University of Chicago*,
441 U.S. 677 (1979)....................10

*Chisom v. Roemer*,
501 U.S. 380 (1991)....................7

*City of Mobile v. Bolden*,
446 U.S. 55 (1980)....................7

*City of Rancho Palos Verdes v. Abrams*,
544 U.S. 113 (2005)....................17

*Coca v. City of Dodge City*,
669 F. Supp. 3d 1131 (D. Kan. 2023)....................5, 16

*Fitzgerald v. Barnstable Sch. Comm.*,
555 U.S. 246 (2009)....................14, 17

*Ford v. Strange*,
580 Fed. App'x 701 (11th Cir. 2014)....................4

*Ga. State Conf. of NAACP v. Georgia*,
No. 1:21-cv-05338, 2022 WL 18780945 (N.D. Ga. Sept. 26, 2022)....................10

*Ga. State Conf. of the NAACP v. Georgia*,
No. 1:21-CV-05338, 2023 WL 7093025 (N.D. Ga. Oct. 26, 2023)....................5

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002)....................8, 15, 16, 17

*Halliburton Co v. Erica P. John Fund*,
573 U.S. 258 (2014)....................6

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023)....................16

*Houston Lawyers Assoc. v. Att'y Gen. of Tex.*,
501 U.S. 419 (1991)....................7

*Howard v. Augusta-Richmond County*,
615 Fed. App'x 651 (11th Cir. 2015)....................11

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005)....................14

*John R. Sand & Gravel Co. v. United States*,
552 U.S. 130 (2008)....................6

*Kimble v. Marvel Ent., LLC*,
576 U.S. 446 (2015)....................6, 8

*Kinetic Concepts, Inc. v. Kinetic Concepts, Inc.*,
601 F. Supp. 496 (N.D. Ga. 1985)....................................................................6

*LULAC v. Perry*,
548 U.S. 399 (2006)....................................................................................7, 9

*Mich. Welfare Rights Org. v. Trump*,
600 F. Supp. 3d 85 (D.D.C. 2022)....................................................................5

*Mixon v. Ohio*,
193 F.3d 389 (6th Cir. 1999) ............................................................................5

*Morse v. Republican Party of Virginia*,
517 U.S. 186 (1996)....................................................................................3, 4

*Perry v. Perez*,
565 U.S. 388 (2012)..........................................................................................7

*Perry-Bey v. City of Norfolk*,
678 F. Supp. 2d 348 (E.D. Va. 2009) ...............................................................5

*Robinson v. Ardoin*,
605 F. Supp. 3d 759 (M.D. La. 2022)...............................................................6

*Robinson v. Ardoin*,
86 F.4th 574 (5th Cir. 2023) ........................................................................5, 6

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
490 U.S. 477 (1989)..........................................................................................4

*Schwab v. Crosby*,
451 F.3d 1308 (11th Cir. 2006) ...................................................................3, 4

*Schwier v. Cox*,
340 F.3d 1284 (11th Cir. 2003) ...........................................12, 14, 16, 17

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996)...............................................................................3, 10, 11

*Shelby County v. Holder*,
43 F. Supp. 3d 47 (D.D.C. 2014)...................................................................11

*Shelby County v. Lynch*,
799 F.3d 1173 (D.C. Cir. 2015)....................11

*Shepard v. United States*,
544 U.S. 13 (2005)....................6

*Singleton v. Merrill*,
582 F. Supp. 3d 924 (N.D. Ala. 2022)....................3, 6, 19

*Stone v. Allen*,
No. 2:21-cv-1531-AMM, 2024 WL 578578 (N.D. Ala. Feb. 13, 2024)....................19, 22

*Thornburg v. Gingles*,
478 U.S. 30 (1986)....................7, 19

*Turtle Mountain Band of Chippewa Indians v. Jaeger*,
No. 3:22-CV-22, 2022 WL 2528256 (D.N.D. July 7, 2022)....................16, 17

*United States v. Arias*,
400 Fed. App'x 546 (11th Cir. 2010)....................18

*Veasey v. Perry*,
29 F. Supp. 3d 896 (S.D. Tex. 2014)....................5

*Vote.Org v. Callanen*,
89 F.4th 459 (5th Cir. 2023)....................12, 16

*Watson v. United States*,
552 U.S. 74 (2007)....................7

*Wilder v. Virginia Hosp. Ass'n*,
496 U.S. 498 (1990)....................14

*Wright v. Roanoke Redevelopment & Hous. Auth.*,
479 U.S. 418 (1987)....................14

**Statutes**

34 U.S.C. § 12601(a)–(b)....................9

42 U.S.C. § 1983....................15

52 U.S.C. § 10301(a)....................8

52 U.S.C. § 10301(b) ....................13
52 U.S.C. §10302(a) ....................10, 11
52 U.S.C. § 10308(f) ....................12
52 U.S.C. § 10310(e) ....................11

**Other Authorities**

S. Rep. No. 94-295 ....................7, 11

## INTRODUCTION

Alabama's motion to dismiss raises arguments already rejected by this Court and the Supreme Court *in this very case*, as well as by countless other courts over the last 40 years.

Alabama argues that Section 2 does not provide a private right of action—never mind that this Court held otherwise during the preliminary injunction phase of this proceeding, never mind that this Court held otherwise just a few weeks ago in a separate case litigated by the same defendants, and never mind that the Supreme Court and dozens of other courts have held otherwise over the many decades since Section 2 was first enacted. Alabama further argues that Plaintiffs failed to state a claim under Section 2—not under the *Gingles* standard established forty years ago and reaffirmed by the Supreme Court in *this* case last year, but under a brand-new legal standard, disavowed by *Gingles*, that Alabama pretends governs this case. But this Court and the Supreme Court have expressly rejected Alabama's self-serving attempts to remake the Section 2 standard.

In Alabama's view, binding precedent is little more than an opening bid, subject to negotiation until Alabama can wrangle an opinion out of the judiciary that clears the way for the State's preferred policy of vote dilution. In inviting a wholesale reformulation of Section 2 in lieu of the governing legal standard, Alabama's brief

reflects not a good-faith misunderstanding of the law, but an intentional design to defy it. Section 2 permits private litigants to bring suit precisely to guard against this sort of dogged determination by States to undermine minority voting rights safeguarded by federal law. Plaintiffs ask that the Court continue to do as it has already done throughout these proceedings—faithfully apply the law to Plaintiffs' straightforward Section 2 claim. When that is done, Alabama's motion must be denied.

## ARGUMENT

### I. Section 2 of the Voting Rights Act provides a private right of action.

For decades, courts, including the Supreme Court, have held that Section 2 provides a private right of action, and for good reason: Section 2 contains clear rights creating language and, in any event, is enforceable under Section 1983. Accordingly, Alabama's motion to dismiss should be denied.

#### A. It is well established that Section 2 provides a private right of action.

This Court already considered and rejected Alabama's argument that Section 2 does not provide a private cause of action, explaining during the preliminary injunction phase of these proceedings that, "[s]ince the passage of the Voting Rights Act, federal courts across the country, including both the Supreme Court and the Eleventh Circuit, have considered numerous Section Two cases brought by private

plaintiffs." *Singleton v. Merrill*, 582 F. Supp. 3d 924, 1031 (N.D. Ala. 2022) (collecting cases). This Court got it right the first time.

Although the Supreme Court has not directly decided the question Alabama attempts to reraise here, "it has decided a close cousin of [the] question, and that precedent strongly suggests that Section Two provides a private right of action." *Id.* In *Morse v. Republican Party of Virginia*, the Supreme Court explained on the way to holding that Section 10 of the VRA provides a private cause of action that:

> Although § 2, like § 5, provides no right to sue on its face, "the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965." S. Rep. No. 97-417, at 30. We, in turn, have entertained cases brought by private litigants to enforce § 2. It would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action but § 10 is not, when all lack the same express authorizing language.

517 U.S. 186, 232 (1996). That Section 2 provides a private cause of action was essential to the Court's holding regarding Section 10, and the decision in *Morse* was supported by five justices who concurred in its reasoning and judgment. *Id.*

*Morse*'s holding with respect to Section 2 cannot simply be waved away as dicta. *Morse*'s discussion of Section 2 presents a "well thought out, thoroughly reasoned, and carefully articulated analysis by the Supreme Court describing the scope of one of its own decisions." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996)

("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). *Morse*'s reasoning spans dozens of pages and is comprised of careful examination of the VRA's text, relevant legislative history, and the Court's prior precedent. *See Morse*, 517 U.S. at 230–31. It is a model opinion precisely of the sort the Eleventh Circuit imagined in *Schwab*. 451 F.3d at 1325.[1]

*Morse*'s reasoning, alongside the Supreme Court's prior cases considering Section 2 claims brought by private litigants, has been relied on by the Eleventh Circuit in a decision binding on this Court, *see, e.g.*, *Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 653 (11th Cir. 2020) (holding Section 2 contains a private right of action, and rejecting Alabama's arguments about Section 3 as "contrary to both the text of the statute and Supreme Court precedent"), *vacated as moot* 141 S. Ct. 2618 (2021) (mem.); *see also Ford v. Strange*, 580 Fed. App'x 701, 705 n.6 (11th Cir. 2014) ("A majority of the Supreme Court has indicated that Section 2 of the [VRA] contains an implied private right of action."), as well as dozens of other

[1] Alabama suggests that *Morse* is not binding because, on its reading, subsequent cases have undermined the legal standard employed in *Morse*. But lower courts are not permitted to decide that the Supreme Court's "more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). Where precedent "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions," courts "should follow the case which directly controls, leaving to th[e] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989).

courts (within and without the Eleventh Circuit) over dozens of years to find that Section 2 provides a private right of action. *See, e.g.*, *Robinson v. Ardoin*, 86 F.4th 574, 587 (5th Cir. 2023); *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999); *Ga. State Conf. of the NAACP v. Georgia*, No. 1:21-CV-05338, 2023 WL 7093025, at *6–8 (N.D. Ga. Oct. 26, 2023) (three-judge court); *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, No. 1:21-CV- 05337, 2023 WL 7037537, at *47 (N.D. Ga. Oct. 26, 2023); *see also, e.g.*, *Coca v. City of Dodge City*, 669 F. Supp. 3d 1131, 1140 (D. Kan. 2023); *Ark. United v. Thurston*, 626 F. Supp. 3d 1064, 1079 n.12 (W.D. Ark. 2022) (holding that the "Supreme Court has long found—consistent with § 3 and the VRA's remedial purpose—that a right of action exists for private parties to enforce the VRA's various sections"); *Mich. Welfare Rights Org. v. Trump*, 600 F. Supp. 3d 85, 105 (D.D.C. 2022) (noting the Supreme Court "recognized a private right of action under § 2" in *Morse*); *Veasey v. Perry*, 29 F. Supp. 3d 896, 906 (S.D. Tex. 2014) (same); *Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009) (same).

A mountain of precedent thus stands in the way of Alabama's tired effort to defang Section 2. As this Court has already explained, "[h]olding that Section Two does not provide a private right of action would work a major upheaval in the law," and Alabama has given the Court no reason "to step down that road today."

*Singleton*, 582 F. Supp. 3d at 1032. Nor is that reason supplied by a single maverick case from the Eighth Circuit—the only case Alabama can cite for support on this score. *See* Mot. at 15 (citing *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023)). Alabama fails to mention that the reasoning of that decision has already been rejected by at least three other courts. *See Robinson v. Ardoin*, 86 F.4th 574, 587–88 (5th Cir. 2023); *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 819 (M.D. La. 2022); *Alpha Phi Alpha Fraternity, Inc v. Raffensperger*, 587 F. Supp 3d. 1222, 1243, n.10 (N.D. Ga. 2022). And the State's effort to reraise this argument now after abandoning it on appeal during the preliminary injunction phase of this proceeding, is precisely the sort of "sandbagging of . . . defenses" the waiver doctrine is meant to prevent. *See Kinetic Concepts, Inc. v. Kinetic Concepts, Inc.*, 601 F. Supp. 496, 500 n.2 (N.D. Ga. 1985).

Alabama's invitation must also confront the "special force" of statutory stare decisis. *Halliburton Co v. Erica P. John Fund*, 573 U.S. 258, 274 (2014). Where, as here, Congress "acquiesce[s]" to the Supreme Court's interpretation of a statute, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008), its inaction "enhance[s] even the usual precedential force" of the Court's decisions, *Shepard v. United States*, 544 U.S. 13, 23 (2005); *see also Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015) (explaining judicial interpretation of a statute is a "ball[] tossed

into Congress's court, for acceptance or not as that branch elects"). For decades, the federal courts have accepted hundreds of Section 2 cases brought by private litigants. *See, e.g.*, *Allen v. Milligan*, 599 U.S. 1, 17–18 (2023), *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2333 (2021) ("In the years since *Gingles*, we have heard a steady stream of [Section 2] vote dilution cases."); *Perry v. Perez*, 565 U.S. 388, 391 (2012); *LULAC v. Perry*, 548 U.S. 399, 409 (2006); *Chisom v. Roemer*, 501 U.S. 380, 383 (1991); *Houston Lawyers Assoc. v. Attorney General of Tex.*, 501 U.S. 419 (1991); *Thornburg v. Gingles*, 478 U.S. 30, 35 (1986); *City of Mobile v. Bolden*, 446 U.S. 55, 59 (1980). "Congress is undoubtedly aware" of the Supreme Court construing Section 2 to contain a private right of action and "can change that if it likes." *Milligan*, 599 U.S. at 39 (Kavanaugh, J., concurring). Indeed, the Senate Report accompanying the 1975 amendment to the statute expressly stated that "Congress depends heavily upon private citizens to enforce the fundamental rights involved." *See* S. Rep. 94-295, 40, 1975 U.S.C.C.A.N. 774, 807 (1975). And yet Congress has found no reason to correct the judiciary's interpretation of Section 2, despite passing amendments to the VRA in 1975, 1982, 1992, and 2006. Congress's "long . . . acquiescence . . . enhance[s] even the usual precedential force [the Court] accord[s] to [] interpretations of statutes." *Watson v. United States*, 552 U.S. 74, 82–83 (2007) (internal quotation marks omitted). Because "Congress has spurned

multiple opportunities to reverse" the federal judiciary's long-standing interpretation of Section 2, Alabama must supply a "super special justification" to change course. *Kimble*, 576 U.S. at 456, 458. It has not done so here.

### B. The text of the VRA plainly provides private litigants a private cause of action.

Even if Section 2's provision of a private right of action remained an open question, the text of the statute reflects Congress's plain intent to create one. Under the Supreme Court's prevailing test for the determining whether a statute creates an implied cause of action, Plaintiffs must show that the statute (1) contains "rights-creating" language and (2) provides for "a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286–88 (2001). Both elements are satisfied here.

Under the *Sandoval* test, a statute contains "rights-creating" language where its terms are "phrased in terms of the persons benefited." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). With its focus on a citizen's right to equal participation in the country's electoral processes, Section 2 plainly contains "rights-creating" language. The provision protects the "right of any citizen . . . to vote" free from discrimination. 52 U.S.C. § 10301(a). Section 2's terms therefore are expressed through a focus on "the persons benefited," not the individuals or entities to be restrained. *Gonzaga*, 536 U.S. at 284. As the Supreme Court has explained, Section 2 creates a "right to

an undiluted vote" that belongs to a minority group's "individual members." *LULAC*, 548 U.S. at 437 (quoting *Shaw v. Hunt*, 517 U.S. 899, 917 (1996)).

Section 2's language closely mirrors language the Supreme Court has previously found to be "rights-creating." In *Sandoval*, the Court declined to find a private cause of action in Section 602 of Title VI because its text was *solely* focused on the regulating entity rather than "the individuals protected" by the statute. *Sandoval*, 532 U.S. at 289. Section 602 stood in contrast to Section 601, the Court explained, which the Court found *does* create a private action based on its language that "[n]o person . . . shall . . . be subjected to discrimination." *Id.* at 288–89. Section 2, with its text protecting the "right of any citizen . . . to vote," is of a piece.

Contrary to Alabama's contention, Section 2's explicit reference to an individual right sharply diverges from the Violent Crime Control and Law Enforcement Act's sole focus on the regulation of government conduct and endowment of exclusive enforcement authority to the Attorney General. *See* 34 U.S.C. § 12601(a)–(b). Nor does Alabama's focus on Title VI and IX move the needle. Like here, the text of those statutes and the legislative history of their passage evince no evidence of "any hostility toward an implied private remedy" and are consistent "with the assumption expressed" by the courts and Congress that the

rights created by Section 2 "would be available to private litigants." *See Cannon v. University of Chicago*, 441 U.S. 677, 711–16 (1979).

Moreover, Section 2 is accompanied by a private remedy. Section 3 of the VRA expressly provides relief to "the Attorney General *or an aggrieved person*" upon a successful suit brought "under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. §10302(a). There is no doubt that Section 2 is a statute meant to enforce the voting guarantees of the Fourteenth or Fifteenth Amendments. *See Milligan*, 599 U.S. at 10–14. And there is no doubt that by "Attorney General or an aggrieved person" Congress intended "to provide the same remedies to private parties as had formerly been available to the Attorney General alone." *Morse*, 517 U.S. at 233. Together, these two clauses lead to but one conclusion: that Congress provided private litigants a remedy under Section 2. *See Ga. State Conf. of NAACP v. Georgia*, No. 1:21-cv-5338, 2022 WL 18780945, at *6 (N.D. Ga. Sept. 26, 2022) ("The plain textual answer is that Section[] 3 . . . impl[ies] a private right to sue under whatever statute or statutes 'enforce the voting guarantees of the Fourteenth or Fifteenth Amendments.'").[2]

[2] Alabama claims that Section 3's "aggrieved person" language does no more than recognize the existence of private constitutional claims brought under statutes other than the VRA, or perhaps, Alabama explains, Section 3 does refer to the VRA but only then to provisions other than Section 2. Mot. at 21–22. But Section 3 makes

Section 12 and 14(e) of the VRA also provide private Section 2 litigants with a remedy. First, Section 14(e) permits "the prevailing party, *other than the United States*" to seek attorney's fees "[i]n any action or proceeding to enforce the voting guarantees of the Fourteenth or Fifteenth Amendment." 52 U.S.C. § 10310(e) (emphasis added). "Obviously, a private litigant is not the United States, and the Attorney General does not collect attorney's fees." *Morse*, 517 U.S. at 234. This textual reading of Section 14 is supported by the provision's legislative history, as the Senate reported when amending the VRA in 1975. *See supra* Section I.A.; S. Rep. 94-295, 40, 1975 U.S.C.C.A.N. 774, 807 (1975); *see also Shelby County v. Holder*, 43 F. Supp. 3d 47, 67 (D.D.C. 2014) (explaining Section 14 aims to "encourage private attorneys general to bring lawsuits vindicating individual voting rights") (collecting cases); *Shelby County v. Lynch*, 799 F.3d 1173, 1185 (D.C. Cir. 2015) ("Congress intended for courts to award fees under the VRA . . . when prevailing parties helped secure compliance with the statute"); *Howard v. Augusta-Richmond County*, 615 Fed. App'x 651 (11th Cir. 2015) (denying attorney's fees to a prevailing VRA defendant).

none of those distinctions, and Alabama's strained reading of the provision only underscores that the provision's most natural reading encompasses "*any* statute to enforce the voting guarantees of the fourteenth or fifteenth amendments," without limitation. 52 U.S.C. § 10302(a) (emphasis added).

Section 12(f), moreover, provides that "district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this section and shall exercise the same without regard to whether *a person asserting rights* under the provisions of chapters 103 to 107 of [the VRA] shall have exhausted any administrative or other remedies that may be provided by law." 52 U.S.C. § 10308(f). The provision's reference to "a person" plainly contemplates suits brought by individuals other than the Attorney General. And the administrative exhaustion defenses eliminated by Section 12(f) were formerly barriers to private litigants, not the Attorney General. *Cf. Vote.org v. Callanen*, 89 F.4th 459, 476–77 (5th Cir. 2023) (discussing similar VRA provision); *Schwier v. Cox*, 340 F.3d 1284, 1296 (11th Cir. 2003).

Against the force of the VRA's text and history, Alabama musters little. Alabama concedes that Section 2's reference to "any citizen" is evidence of the statute's "focus [on] the person benefited." Mot. at 16. But it attempts to sidestep the statute's clear language by emphasizing the statute's reference to states (the regulated entity), which it claims renders the provision ambiguous. *Id.* But Alabama is the only one that remains confused. The statute refers expressly to "the *right* of any citizen" and its very next subdivision lays out in detail precisely what that individual right entails: No citizen shall be required to participate in "political

processes leading to nomination or election" that "are not equally open to participation by members of a class of citizens protected by subsection (a)." 52 U.S.C. § 10301(b). Together, the statute leaves no doubt that its focus is on the "person benefited" by the VRA, even if it also makes plain who it's protecting citizens from.

Alabama also claims that because "[t]he VRA is an exercise of Congress's power to enforce the 'constitutional prohibition against racial discrimination in voting' guaranteed by the Fifteenth Amendment, . . . it create[s] only 'new remedies,' not new rights." Mot. at 8. But like Alabama's theories to date, this one is foreign to Section 2 jurisprudence. The State cites not a single case for the proposition that the VRA does not create new legal rights. That makes good sense for, after all, Alabama's contention that the VRA is no more than remedial is belied by the text of the statute, as explained above, and by the historical context of the VRA's passage and later amendments. The Supreme Court described that history in this case, observing that as originally conceived "§ 2 closely tracked the language of the [Fifteenth] Amendment and, as a result, had little independent force." *Milligan*, 599 U.S. at 10–11. Congress sought to remedy the matter by giving Section 2 new life through the effects test, adopted in 1982, which "guards against" "electoral law[s], practice[s], or structure[s]" that "interact[] with social and historical

conditions to cause an inequality in the opportunities enjoyed by black and white voters." *Id.* at 17. In this way, Section 2 remedies the harms protected by the Fifteenth Amendment by creating a new legal right meant to protect minority groups from the ingenious strategies employed by the State that had previously dodged the Fifteenth Amendment's "parchment promise." *Id.* at 10–11.

Next, Alabama argues that because the VRA provides alternative means of enforcing the rights it creates, the court should be "less willing" to identify a privately enforceable right. Mot. at 17. But the existence of one enforcement mechanism does not alone defeat the existence of others. Indeed, Title IX contains an "express enforcement mechanism," *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009), which constitutes an "express provision of one method of enforcing a substantive rule," *Sandoval*, 532 U.S. at 290, and yet the Supreme Court has held that Title IX contains an implied private right of action. *See id.* at 280; *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005). Indeed, the Eleventh Circuit has already held that a "district court erred by finding that Congress's provision for enforcement by the Attorney General in" the VRA "precluded continued enforcement of [the VRA] by a private right of action under § 1983." *Schwier*, 340 F.3d at 1295–96. Thus, Alabama's citations to *Wilder v. Virginia Hospital Association*, 496 U.S. 498 (1990), and *Wright v. Roanoke*

*Redevelopment & Housing Authority*, 479 U.S. 418 (1987), which found the existence of a private right where no other enforcement mechanism was available are inapposite. While Section 2 may be enforced by the Attorney General, that alone does not and cannot defeat the many ways, explained above, in which the VRA authorizes private enforcement.

### C. Section 1983 provides Plaintiffs an independent basis to assert their Section 2 claim.

Even if Alabama were correct that dozens of courts over dozens of years have misinterpreted Section 2, Plaintiffs' amended complaint should still not be dismissed because they have adequately pleaded a Section 2 claim under 42 U.S.C. § 1983. Courts asked to enforce a federal statute under Section 1983 must "determine whether Congress intended to create a federal right" in the statute that a plaintiff seeks to enforce. *Gonzaga Univ.*, 536 U.S. at 283 (emphasis omitted). If it does, that "right is presumptively enforceable by § 1983," and a plaintiff "do[es] not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Id.* at 284. Although defendants can rebut the presumption that a federal right is enforceable under Section 1983, they can do so only by "demonstrat[ing] that Congress shut the door to private enforcement either expressly, through specific evidence from the statute itself" or "impliedly, by creating a comprehensive

enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 284 n.4 (citations and internal quotation marks omitted); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 188–89 (2023) (explaining Section 1983 "can play its textually prescribed role as a vehicle for enforcing [] rights, even alongside a detailed enforcement regime that also protects those interests, so long as § 1983 enforcement is not incompatible with Congress's handiwork").

For the reasons explained above, *see supra* at Section I.A.-B., the text of Section 2 and accompanying provisions evince Congress's clear intent to provide a private right of action. And every court to consider whether Section 2 is enforceable under Section 1983 has determined that it is. *See, e.g.*, *Coca*, 669 F. Supp. 3d at 1142; *Turtle Mountain Band of Chippewa Indians v. Jaeger* ("*Turtle Mountain Band*"), No. 3:22-CV-22, 2022 WL 2528256, at *6 (D.N.D. July 7, 2022).[3] Indeed, even the singular Eighth Circuit case on which Alabama's argument is premised could not hold that Section 2 cannot be enforced under Section 1983. *See Ark. State Conf. NAACP*, 86 F.4th at 1218 (declining to reach question of whether Section 2 may be enforced under 1983, finding plaintiffs failed to properly raise the issue).

[3] The Eleventh and the Fifth Circuits have held that a different VRA section is enforceable under Section 1983. *See Vote.Org*, 89 F.4th at 472–78; *Schwier*, 340 F.3d at 1294–97.

Alabama cannot rebut the presumption that Section 2 is enforceable under Section 1983. As already explained, Congress did not "shut the door to private enforcement" of Section 2, *Gonzaga Univ.*, 536 U.S. at 284 n.4, because "there is certainly no specific exclusion of private actions" in the VRA, *Allen v. State Bd. of Elections*, 393 U.S. 544, 555 n.18 (1969); *see also Schwier*, 340 F.3d at 1297 (holding that a different provision of the VRA is enforceable under Section 1983). Nor does the VRA provide "a more restrictive private remedy" than Section 1983 by, for example, limiting relief a private litigant may obtain "in ways that § 1983 does not." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121–22 (2005). Finally, the VRA's provision of a right of action to the Attorney General does not constitute "a comprehensive enforcement scheme" or one "incompatible with individual enforcement under § 1983," *Gonzaga Univ.*, 536 U.S. at 284 n.4; *see also Turtle Mountain Band*, 2022 WL 2528256, at *6 ("[P]rivate enforcement actions have co-existed with collective enforcement brought by the United States for decades."). Indeed, the Supreme Court "has never held that an implied right of action had the effect of precluding suit under § 1983, likely because of the difficulty of discerning congressional intent in such a situation." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009). Section 1983 therefore provides an independent basis for Plaintiffs to assert their claims under Section 2.

## II. Plaintiffs have adequately stated a claim under Section 2.

Under the Section 2 standard, reaffirmed twice by this Court and once by the Supreme Court *in this very case*, Plaintiffs have adequately stated a claim for relief. *See United States v. Arias*, 400 Fed. App'x 546, 547 (11th Cir. 2010) ("[A]n appellate decision binds all subsequent proceedings in the same case not only as to explicit rulings, but also as to issues decided necessarily by implication on the prior appeal."). "For the past forty years," plaintiffs asserting a claim under Section 2 must satisfy three preconditions first established in *Thornburg v. Gingles*. *Milligan*, 599 U.S. at 17–18.

"First, the 'minority group must be sufficiently large and [geographically] compact to constitute a majority in a reasonably configured district.'" *Id.* at 18. A district is "reasonably configured" under this precondition "if it comports with traditional districting criteria, such as being contiguous and reasonably compact." *Id.* "Second, the minority group must be able to show that it is politically cohesive." *Id.* And, third, "the minority must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate." *Id.* If these three preconditions are satisfied, a plaintiff must then show, "under the totality of circumstances, that the political process is not 'equally open' to minority voters." *Id.* The *Gingles* totality of the circumstances inquiry is anchored

in the Senate Factors, a list of criteria which accompanied Congress's passage of the prevailing Section 2 text. *See Gingles*, 478 U.S. at 43–46.

This test has been applied by the Supreme Court in no fewer than 11 cases. *See Milligan*, 599 U.S. at 17–19 (collecting cases). And it has been applied by the lower courts in hundreds of others. *See, e.g.*, *Stone v. Allen*, No. 2:21-cv-1531-AMM, 2024 WL 578578, at *7–8 (N.D. Ala. Feb. 13, 2024); *Singleton*, 582 F. Supp. 3d at 955–56; *see also* Ellen D. Katz et al., *The Evolution of Section 2: Numbers and Trends*, Univ. Mich. L. Sch. Voting Rights Initiative (2022), https://voting.law.umich.edu/findings/ (estimating that private plaintiffs have brought over 300 Section 2 cases since 1982). "Congress has *never* disturbed" the Court's "understanding of § 2 as *Gingles* construed it." *Milligan*, 599 U.S. at 19 (emphasis added).

There can be no dispute that Plaintiffs have adequately stated a claim for relief under this standard. Their amended complaint alleges that "Black Alabamians are sufficiently numerous and geographically compact to constitute a majority of eligible voters in two congressional districts," Am. Compl., at ¶ 126, ECF No. 271, and supports that contention with allegations explaining that Plaintiffs proffered seven illustrative plans during the earlier preliminary injunction phase of this proceeding that this Court and the Supreme Court found sufficiently demonstrated

that Plaintiffs were likely to establish the first *Gingles* precondition at trial. *See, e.g.*, *Milligan*, 599 U.S. at 19–20. Plaintiffs further allege that "Black voters in CDs 1, 2, 6, and 7 are politically cohesive, and elections in the state reveal a clear pattern of racially polarized voting that allows blocs of white voters usually to defeat Black-preferred candidates." Am. Compl. at ¶ 127. Indeed, they allege that analysis from Plaintiffs' expert Dr. Maxwell Palmer shows that in the 2023 Plan's CD 2, on average "90.3 percent of white voters voted against the Black-Preferred candidate across twelve election contests," *id.* at ¶ 78, and that "[f]ederal courts," including this one, "have consistently found that voting in Alabama is and remains severely racially polarized," *id.* at ¶ 79; *see also id.* at ¶¶ 76–83. Plaintiffs also offer dozens of paragraphs of allegations demonstrating that under the totality of circumstances, Alabama's elections are not equally open to its Black citizens. *See id.* at ¶¶ 84–122, 128. For example, Alabama's elections still feature racial appeals, *id.* at ¶¶ 112–16, not one statewide elected office in Alabama is held by a Black citizen, *id.* at ¶ 118, and Alabama has a long and sordid history of racial discrimination that has left deep socioeconomic scars on Black Alabamians, *id.* at ¶¶ 84–111. These allegations, proven during the preliminary injunction phase of this proceeding, were sufficient to satisfy this Court and the Supreme Court that Plaintiffs had carried their burden

under Section 2. *See, e.g.*, *Milligan*, 599 U.S. at 19–23. Nothing has changed in the few intervening months to alter that conclusion.

But as this Court is by now well aware, Alabama's game in this case has never been "about the law as it exists," but rather "Alabama's attempt to remake" the Supreme Court's "§ 2 jurisprudence anew." *Id.* at 23. Remarkably, Alabama's motion fails to even mention any of the three *Gingles* preconditions; its discussion of the Supreme Court decision in this case reaffirming the *Gingles* standard is primarily relegated to procedural background. And while Alabama pays lip service to the Senate Factors, it does so only in service to its latest, though no less dim, theory of Section 2: that to obtain relief under the provision a plaintiff "must show that members of the minority group are excluded from 'effective participation in political life'" because of an inability to register to vote, vote, or participate in the political party of one's choosing. Mot. at 31.

The trouble with Alabama's view is, of course, that the highest court in the land has supplied a different Section 2 standard, reaffirmed *in this very case*, after Alabama's last ill-fated go at overturning decades of Section 2 precedent. *Milligan*, 599 U.S. at 23–24. Just a few short months ago, the Supreme Court rejected Alabama's effort to replace the *Gingles* test with a "racial neutral benchmark" standard, which the Court described as "compelling neither in theory nor in

practice." *Id.* at 24. Alabama has neither then nor now provided a reason to upset this precedent or the statutory stare decisis that accompanies it. *Id.*; *see also id.* at 42–45 (Kavanaugh, J., concurring).

Alabama has repeatedly attempted to goad this Court into overturning precedent, but it held firm. Alabama has invited the Supreme Court to do much the same, but it too refused to budge from the *Gingles* standard. And Alabama has done all this in service not to Alabama voters, whose interests are finally being served under the court-ordered map, but to a political agenda that finds no quarter in either precedent or the statutory text. This Court should reject Alabama's argument out of hand, just as it did a few weeks ago in *Stone v. Allen*, 2024 WL 578578 (Manasco, J.). Confronted with the same arguments Alabama makes here, the Court in *Stone* recognized that the answer was simple: It recounted the Section 2 test as articulated by *Gingles* and reaffirmed by *Allen* and, after reviewing the complaint for allegations that establish the *Gingles* preconditions and relate to the Senate Factors, found in just a few short paragraphs that Plaintiffs had adequately stated a claim for relief. *Id.* at *7–8. Under that test, Alabama's motion must be denied here as well.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Alabama's motion to dismiss their first amended complaint.

Dated: March 7, 2024

Respectfully submitted,

By */s/ Abha Khanna*

Abha Khanna*
Makeba Rutahindurwa*
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
Phone: (206) 656-0177
Email: AKhanna@elias.law
Email: MRutahindurwa@elias.law

Lalitha D. Madduri*
Joseph N. Posimato*
Jyoti Jasrasaria*
**Elias Law Group LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
Phone: (202) 968-4518
Email: LMadduri@elias.law
Email: JPosimato@elias.law
Email: JJasrasaria@elias.law

Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies & Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
Email: rrouco@qcwdr.com

*Attorneys for Plaintiffs*
**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Richard P. Rouco*
Richard P. Rouco
Counsel for Plaintiffs