FILED
2024 Mar-14  PM 04:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BOBBY SINGLETON, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 2:21-cv-1291-AMM |
| | ) | |
| WES ALLEN, *in his official capacity* | ) | THREE-JUDGE COURT |
| *as Secretary of State of Alabama*, *et* | ) | |
| *al.*, | ) | |
|     Defendants. | ) | |

| | | |
|---|---|---|
| EVAN MILLIGAN, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 2:21-cv-1530-AMM |
| | ) | |
| WES ALLEN, *in his official capacity* | ) | THREE-JUDGE COURT |
| *as Secretary of State of Alabama*, *et* | ) | |
| *al.*, | ) | |
|     Defendants. | ) | |

| | | |
|---|---|---|
| MARCUS CASTER, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 2:21-cv-1536-AMM |
| WES ALLEN, *in his official capacity* | ) | |
| *as Secretary of State of Alabama*, *et* | ) | |
| *al.*, | ) | |
|     Defendants. | ) | |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

# TABLE OF CONTENTS

INTEREST OF THE UNITED STATES ..................................................................1

INTRODUCTION ...............................................................................................1

BACKGROUND .................................................................................................2

ARGUMENT .....................................................................................................3

    I.    *The text of the Voting Rights Act, reinforced by Supreme Court precedent, establishes a private right of action to enforce Section 2.* ...........................6

    II.   *Alternatively, Private Litigants Can Enforce Section 2 through 42 U.S.C. § 1983.* ......................................................................................................10

    A.    Section 2 is a rights-creating statute .........................................................10

    B.    Congress did not "shut the door to private enforcement" of Section 2 ...13

CONCLUSION .................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Allen v. Milligan*, 599 U.S. 1 (2023)................................................................... 2, 3, 4

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969)...................................... passim

*Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*, 587 F. Supp. 3d 1222 (N.D. Ga. 2022) ................................................................................................................5

*Ark. State Conf. NAACP v. Ark. Bd. Of Apportionment*, 86 F. 4th 1204 (8th Cir. 2023 ...............................................................................................................4, 8

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021)................................8

*Caster v. Merrill*, 2022 WL 264819 (N.D. Ala. Jan. 24, 2022) ..............................1

*Chisom v. Roemer*, 501 U.S. 380, 392 (1991) .........................................................13

*City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005) .....................14

*Coca v. City of Dodge City*, 669 F. Supp. 3d 1131 (D. Kan. 2023) ........................5

*Georgia State Conf. of NAACP v. Georgia*, 2022 WL 18780945 (N.D. Ga. Sept. 26, 2022)..........................................................................................................5, 11

*Georgia State Conf. of NAACP v. Georgia*, 269 F. Supp. 3d 1266  (N.D. Ga. 2017) ...............................................................................................................7

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) .......................................... 5, 10, 11, 14

*Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966) ......................................3

*Health & Hosp. Corp v. Talevski*, 599 U.S. 166 (2023).................................. passim

*Jefferson Cnty. v. Acker*, 210 F.3d 1317 (11th Cir. 2000)........................................8

*League of United Latin Am. Citizens v. Abbott*, 2021 WL 5762035 (W.D. Tex. Dec. 3, 2021)  ...............................................................................................7

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) ...........................................................10

*Lorillard v. Pons*, 434 U.S. 575 (1978) ...................................................................9

*Maine v. Thiboutot*, 448 U.S. 1 (1980) ...................................................................10

*Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022)................................................ 12, 16

*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) .............................................................7

*Morse v. Republican Party*, 517 U.S. 186 (1996)............................................ 3, 6, 7

*Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348 (E.D. Va. 2009)........................8

*Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471 (1997) ................................................12

*Robinson v. Ardoin,* 86 F.4th 574 (5th Cir. 2023) .................................................5, 8

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ........................................ 12, 14, 16

*Shelby Cnty. v. Holder*, 570 U.S. 529 (2013) ................................................ 2, 10, 14

*Singleton v. Merrill*, 582 F. Supp. 3d 924 (N.D. Ala. 2022) ..................................1, 4

*Stone v. Allen*, 2024 WL 578578 (N.D. Ala. Feb. 13, 2024)................................7, 8

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015).........................................................................................................................9

*Thornburg* v. *Gingles*, 478 U.S. 30 (1986).................................................................9

*Turtle Mountain Band of Chippewa Indians v. Jaeger*, 2022 WL 2528256 (D.N.D. July 7, 2022) ........................................................................................................ 11, 14

*Veasey v. Perry*, 29 F. Supp. 3d 896 (S.D. Tex. 2014).............................................8

*Vote.org v. Paxton*, 89 F.4th 459 (5th Cir. 2023) ............................................. 12, 16

**Statutes**

42 U.S.C. § 1983 .........................................................................................................1

28 U.S.C. § 517.............................................................................................................1

52 U.S.C. § 10101 ......................................................................................................12

52 U.S.C. § 10301 ...................................................................... 1, 2, 3, 11

52 U.S.C. § 10302 ...........................................................................15

52 U.S.C. § 10308 ................................................................... 1, 11, 16

Ala. Act No. 2023-563 .......................................................................2

## Other Authorities

*Cases Raising Claims Under Section 2 Of The Voting Rights Act*, *Voting Section Litigation*, U.S. Dep't of Justice (Feb. 29, 2024), https://www.justice.gov/crt/voting-section-litigation#sec2cases [https://perma.cc/V5XK-Z7L8] ..................................................4

Ellen D. Katz et al., *To Participate and Elect: Section 2 of the Voting Rights Act at 40*, Univ. Mich. L. Sch. Voting Rights Initiative (2022), https://voting.law.umich.edu ...................................................4

H.R. Rep. No. 196, 94th Cong., 1st Sess. 9 (1975) ...................................9

H.R. Rep. No. 397, 91st Cong., 1st Sess. 4, 8 (1969)...............................9

S. Rep. No. 295, 94th Cong., 1st Sess. 16 (1975)................................9, 15

S. Rep. No. 417, 97th Cong., 2d Sess. 27-28 (1982)............................6, 9

**INTEREST OF THE UNITED STATES**

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."  This case presents important questions about the application of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("the Act"), which Congress has explicitly vested the Attorney General with authority to enforce.  *See id.* § 10308(d).  Accordingly, this Statement of Interest addresses the availability of a private right of action to enforce Section 2.  It expresses no views on any other issue in this case.

**INTRODUCTION**

State Defendants again challenge the plaintiffs' right to sue under Section 2. This Court has previously (and correctly) rejected a similar challenge, noting any finding to the contrary "would work a major upheaval in the law" and should adhere to that ruling.  *Caster v. Merrill*, No. 2:21-cv-01536, 2022 WL 264819, at *81 (N.D. Ala. Jan. 24, 2022), *aff'd sub nom. Allen v. Milligan*, 599 U.S. 1 (2023); *Singleton v. Merrill*, 582 F. Supp. 3d 924, 1032 (N.D. Ala. 2022), *aff'd sub nom. Allen*, 599 U.S. 1.  Alternatively, the plaintiffs may bring their Section 2 challenges under 42 U.S.C. § 1983, the omnibus private right of action that Congress created to redress violations of federal rights.

**BACKGROUND**

Plaintiffs originally challenged the 2021 congressional redistricting map passed by the Alabama Legislature.  *Allen v. Milligan*, 599 U.S. 1, 16 (2023).  After this Court enjoined that map and the Supreme Court affirmed that decision, *id.* at 42, the legislature passed a new map in 2023.  *See* Ala. Act No. 2023-563 (SB 5); Motion to Dismiss at 3, *Caster v. Allen*, No. 2:21-cv-01536, ECF 273 ("Caster MTD").  Plaintiffs subsequently filed amended complaints challenging that map under Section 2, among other challenges.  *See* First Amended Complaint ¶¶ 123–29, *Caster v. Allen*, No. 2:21-cv-01536, ECF 271; First Amended Complaint, ¶¶ 190–205, *Milligan v. Allen*, No. 2:21-cv-01530, ECF 329; Second Amended Complaint, ¶¶ 80–83, *Singleton v. Allen,* No. 2:21-cv-01291, ECF 229.

Section 2 imposes a "permanent, nationwide ban on racial discrimination in voting." *Shelby Cnty. v. Holder*, 570 U.S. 529, 557 (2013).  Section 2(a) provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ."  52 U.S.C. § 10301(a).  A violation of Section 2 may be "established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by

members of a [protected class] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* § 10301(b).

## ARGUMENT

State Defendants revisit their argument that plaintiffs are barred from challenging the state's congressional districts under Section 2. Holding that Section 2 is not privately enforceable would significantly undercut enforcement of this landmark statute, which was designed to protect a right that is "preservative of all rights." *Cf. Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 667 (1966) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)).

The Supreme Court has twice acknowledged the Attorney General's limited resources and the need for private enforcement of the Voting Rights Act when finding an implied private right of action to enforce Sections 5 and 10. *Allen v. State Bd. of Elections*, 393 U.S. 544, 556–57 (1969); *Morse v. Republican Party*, 517 U.S. 186, 231 (1996) (plurality opinion). The Court also found it "significant" that the United States submitted briefs in support of a private right of action as to those Sections. *Allen*, 393 U.S. at 557 n.23; *Morse*, 517 U.S. at 231 (noting that *Allen* "attached significance" to the United States' brief and that the United States had submitted a brief urging the same result in the instant case).

Time and experience have confirmed that the Court's observations extend to the enforcement of Section 2.  Since 1982, private plaintiffs have brought over an estimated 350 Section 2 cases.  *See, e.g.*, Ellen D. Katz et al., *To Participate and Elect: Section 2 of the Voting Rights Act at 40*, Univ. Mich. L. Sch. Voting Rights Initiative (2022), https://voting.law.umich.edu.  Over that same period, the United States has brought 44 cases.  *Cases Raising Claims Under Section 2 Of The Voting Rights Act*, *Voting Section Litigation*, U.S. Dep't of Justice (Feb. 29, 2024), https://www.justice.gov/crt/voting-section-litigation#sec2cases [https://perma.cc/V5XK-Z7L8].

The United States urges this Court to reaffirm its prior finding that Section 2 is privately enforceable.  Nothing has changed since this Court found just two years ago "that precedent strongly suggests that Section Two provides a private right of action."  *Singleton*, 582 F. Supp. 3d at 1031–32, *aff'd sub nom. Allen*, 599 U.S.1 (not discussing the private right of action question).

With near unanimity, courts have held that Section 2 can be enforced by private plaintiffs.  The State Defendants, however, now draw on the arguments of one, outlying, non-binding precedent in the Eighth Circuit to revive their arguments.  *See* Caster MTD at 15–19, 21–25 (*citing Ark. State Conf. NAACP v. Ark. Bd. Of Apportionment*, 86 F. 4th 1204 (8th Cir. 2023)); Defendants' Motion to Dismiss at 6, 10-13, *Milligan v. Allen*, 2:21-cv-01530, ECF 331 ("Milligan

MTD"); Defendant's Corrected Motion to Dismiss at 17, *Singleton v. Allen,* 2:21-cv-01291, ECF 233 ("Singleton MTD").  The Eighth Circuit's decision is an outlier whose reasoning has not been adopted by other courts.  *See, e.g.*, *Robinson v. Ardoin,* 86 F.4th 574, 587–88 (5th Cir. 2023) (holding that private plaintiffs have a private right of action under Section 2 of the Voting Rights Act); *Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*, 587 F. Supp. 3d 1222, 1243 n.10 (N.D. Ga. 2022) (finding that the district court decision in *Arkansas State Conf. NAACP* did not change its previous holding that Section 2 has a private right of action); *Coca v. City of Dodge City*, 669 F. Supp. 3d 1131, 1138 (D. Kan. 2023) (*motion to certify appeal denied*, 2023 WL 3948472, at *2–3 (D. Kan. Jun. 12, 2023)); *Georgia State Conf. of NAACP v. Georgia*, 2022 WL 18780945, at *3–7 (N.D. Ga. Sept. 26, 2022) (three-judge court).

The structure of the Act, Supreme Court precedent, and congressional ratification make clear that Section 2 can be enforced by private plaintiffs.  The rights-creating language in Section 2 reflects congressional intent to create a private right of action.  Even if one were to conclude—against the weight of authority—that Section 2 contains no private right of action, the statute still would be enforceable through 42 U.S.C. § 1983.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002); *Health & Hosp. Corp v. Talevski*, 599 U.S. 166, 183 (2023).

I.      *The text of the Voting Rights Act, reinforced by Supreme Court precedent, establishes a private right of action to enforce Section 2.*

The United States Supreme Court has twice confronted the question of whether certain sections of the Act contain implied rights of action. Each time, the Court has responded in the affirmative. In *Allen v. State Board. of Elections*, the Court found a private right of action to enforce Section 5 of the Act, 52 U.S.C. § 10304(a), which required covered jurisdictions to obtain preclearance before subjecting any "person" to a new voting qualification or procedure. 393 U.S. at 556–57.

Decades later, in *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996), the Court found an implied private right of action to enforce Section 10, 52 U.S.C. § 10306(a), which prohibits jurisdictions from conditioning the right to vote on payment of a poll tax. 517 U.S. at 232–34. The Supreme Court stated that, although Section 2 "provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.'" *Id.* at 232 (plurality opinion) (alteration in original) (quoting S. Rep. No. 417, 97th Cong., 2d Sess. 27-28 (1982) ("1982 Senate Report")); *accord id.* at 240 (opinion of Breyer, J., concurring in the judgment). The Court recognized the presence of a private right of action in these cases because "[t]he achievement of the [Act's] laudable goal could be severely hampered, however, if each citizen

6

were required to depend solely on litigation instituted at the discretion of the Attorney General." *Allen*, 393 U.S. at 556; *see also Morse*, 517 U.S. at 231.

In addition, *Morse*'s conclusion that private plaintiffs can enforce Section 10 flows directly from the Supreme Court's recognition that Congress intended the same for Section 2.  The *Morse* Court held that private plaintiffs must be able to enforce Section 10 because "[i]t would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action but § 10 is not, when all lack the same express authorizing language."  517 U.S. at 232; *accord id.* at 240 (Breyer, J., concurring) (stating that *Allen's* rationale "applies with similar force not only to § 2 but also to § 10").  Because private plaintiffs' ability to enforce Section 2 was foundational to *Morse*'s holding, it would be illogical to conclude that Section 2— unlike Sections 5 and 10—lacks a private right of action.  *See Stone v. Allen*, No. 2:21-cv-1531, 2024 WL 578578, at *6–7 (N.D. Ala. Feb. 13, 2024) ("Further, '[a] ruling that Section Two does not provide a private right of action would badly undermine the rationale offered by the Court in *Morse*.'").  Over the last 25 years, a vast body of lower court decisions have held that Section 2 can be enforced by private plaintiffs.[1]

---

[1] *See, e.g.*, *Mixon v. Ohio*, 193 F.3d 389, 406 & n.12 (6th Cir. 1999) ("An individual may bring a private cause of action under Section 2 of the [Act]."); *League of United Latin Am. Citizens v. Abbott*, 2021 WL 5762035, at *1 (W.D. Tex. Dec. 3, 2021) (three-judge court) (denying a motion to dismiss arguing that

State Defendants argue that *Morse* is "gravely wounded," but as their own citation to *Jefferson County. v. Acker* suggests, it is for the Supreme Court to overrule its own precedents. Milligan MTD at 13 (quoting *Jefferson Cnty. v. Acker*, 210 F.3d 1317 (11th Cir. 2000)). Until it does so, those precedents are binding on lower courts. *See Jefferson*, 210 F.3d at 1320. This Court should refuse the invitation to adopt the Eighth Circuit's anomalous decision in *Arkansas State Conference NAACP v. Arkansas Board of Apportionment*. *Compare e.g.*, *Robinson v. Ardoin*, 86 F.4th at 587 (*quoting Morse* for the proposition that a plurality of the Supreme Court said that a private right of action under Section 2 has been clearly intended by Congress); *Stone*, 2024 WL 578578, at *7; *with Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th at 1215–16.

---

Section 2 lacks a private right of action); *Georgia State Conf. of NAACP v. Georgia*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) (three-judge court) ("Section 2 contains an implied private right of action." (citing *Morse*, 517 U.S. at 232)); *Veasey v. Perry*, 29 F. Supp. 3d 896, 906 (S.D. Tex. 2014) ("individual voter[s]" and organizations have the "power to enforce" Section 2); *Perry-Bey v. City of Norfolk*, 678 F. Supp. 2d 348, 362 (E.D. Va. 2009) ("The [Act] creates a private cause of action."). Although Justice Gorsuch suggested that "[l]ower courts have treated this as an open question," his concurring opinion relied solely on a case that predated both the 1982 amendments to Section 2 and *Morse* and "[a]ssum[ed] without deciding" that Section 2 is privately enforceable. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) (Gorsuch, J., concurring) (citing *Washington v. Finlay*, 664 F.2d 913, 926 (4th Cir. 1981)); *see* p. 9, *infra* (describing Congress's confirmation of a private right of action in 1982).

Congress has ratified the consensus view that Section 2 is privately enforceable.  "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *cf. Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 536 (2015) (concluding that Congress had "ratified the unanimous holdings of the Courts of Appeals" that plaintiffs can bring disparate impact claims under the Fair Housing Act because it was "aware of [the] unanimous precedent" and "made a considered judgment to retain the relevant statutory text").  Each time Congress has reevaluated and, where appropriate, amended the Act, it never questioned that Section 2 is privately enforceable.  *See* Pub. L. No. 91-285, 84 Stat. 14 (1970); Pub. L. No. 94-73, 89 Stat. 400 (1975); Pub. L. No. 97-205, 96 Stat. 131 (1982); Pub. L. No. 109-246, 120 Stat. 577 (2006).  In fact, Congress has cited *Allen* approvingly.  *See, e.g.*, S. Rep. No. 295, 94th Cong., 1st Sess. 16 (1975); H.R. Rep. No. 196, 94th Cong., 1st Sess. 9 (1975); H.R. Rep. No. 397, 91st Cong., 1st Sess. 4, 8 (1969).  Moreover, in the 1982 Senate Report that the Supreme Court called the "authoritative source for legislative intent" behind amended Section 2, *Thornburg* v. *Gingles*, 478 U.S. 30, 43 n.7 (1986), Congress "reiterate[d] the existence of the private right of action under section 2."  1982 Senate Report 30.

II.    *Alternatively, Private Litigants Can Enforce Section 2 through 42 U.S.C. § 1983.*

Alternatively, private plaintiffs can enforce Section 2's voting protections through Section 1983.  Section 1983 provides a general remedy for private plaintiffs to redress violations of federal rights committed by state actors.  *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("the plain language" of Section 1983 "undoubtedly embraces" suits by private plaintiffs to enforce federal statutory rights); *see also Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994) (recognizing that "[Section] 1983 remains a generally and presumptively available remedy for claimed violations of federal law") (*citing Dennis v. Higgins*, 498 U.S. 439, 443 (1991)).  A federal statute is "presumptively enforceable" under Section 1983 if it "unambiguously confer[s]" individual federal rights.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84 (2002).  That standard is met if the statute in question "is 'phrased in terms of the persons benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'"  *Talevski*, 599 U.S. at 183 (2023) (quoting *Gonzaga*, 536 U.S. at 284, 287).  Section 2 meets these standards and so is enforceable via Section 1983.

**A. Section 2 is a rights-creating statute.**

Section 2 unquestionably is a rights-creating statute.  It is the cornerstone provision of the Act.  *See Shelby Cnty.*, 570 U.S. at 536–37 (discussing history and scope of Section 2 and acknowledging how "[b]oth the Federal Government and

individuals have sued to enforce § 2").  Section 2 protects "*the right of any citizen .*

*. . to vote on account of race or color.*"  52 U.S.C. § 10301(a) (emphasis added);

*see also* 52 U.S.C. § 10303(f)(2) (extending rights to language minority groups).

"It is difficult to imagine more explicit or clear rights creating language.  It cannot

be seriously questioned that Section 2 confers a right on a particular class of

people."  *Turtle Mountain Band of Chippewa Indians v. Jaeger*, 2022 WL

2528256, at \*5–6 (D.N.D. July 7, 2022) *appeal filed*, *Turtle Mountain Band of*

*Chippewa Indians v. Howe*, No. 23-3655 (8th Cir. 2023); *see also Georgia State*

*Conf. NAACP v. Georgia*, 2022 WL 18780945, at \*4 (N.D. Ga. Sept. 26, 2022)

(three-judge court) ("If that is not rights-creating language, we are not sure what

is."); *Talevski*, 599 U.S. at 183 (finding that statute "framing" relevant section in

terms of rights to be "indicative of an individual 'rights-creating' focus" (quoting

*Gonzaga*, 536 U.S., at 284)).

 What Section 2's text makes clear, other provisions confirm.  Section 12

authorizes the Attorney General to initiate criminal proceedings against those who

"deprive . . . *any person of any right secured by*" Section 2.  52 U.S.C. § 10308(a)

(emphasis added); *see also id.* §10308(c) (same with regard to those who

"interfere[] with *any right secured by*" Section 2 (emphasis added)).  That

language would make little sense if Section 2 did not create individual rights.

Lending further credence to this straightforward analysis, the Eleventh Circuit and other courts have found the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), presumptively enforceable under Section 1983 based on language strikingly similar to Section 2. *Vote.org v. Paxton*, 89 F.4th 459, 473–75 (5th Cir. 2023); *Migliori v. Cohen*, 36 F.4th 153, 159 (3d Cir. 2022), *cert. granted, judgment vacated on mootness grounds*, 143 S. Ct. 297 (2022); *Schwier v. Cox*, 340 F.3d 1284, 1296–97 (11th Cir. 2003); *see also* 52 U.S.C. § 10101(a)(2)(B) ("No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper record or paper relating to . . . voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election."[2])  There is no reason to treat Section 2 differently; it also is presumptively enforceable under Section 1983.

The State Defendants acknowledge that Congress added the results test in the 1982 amendments to the Act, such that a violation of Section 2 is no longer "*a fortiori* a violation of the Constitution." Milligan MTD at 9 (*quoting Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 482 (1997)).  Yet they still argue that Section

---

[2]  The only circuit-level authority going the other way on the Materiality Provision provides little, if any, analysis and did not specifically consider whether the Provision is enforceable under Section 1983. *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000).

2 does not create any *new* rights, but merely repeats the very same protection secured by the Fifteenth Amendment.  The State Defendants conflate rights and remedies, by placing all the rights found under Section 2 into the box of "prophylactic remedies."  *See* Milligan MTD at 9–10.  But Section 2 "grants" individual citizens "a right to be free from" discriminatory voting practices.  *Chisom v. Roemer*, 501 U.S. 380, 392 (1991) (quoting H.R. Rep. No. 439, 89th Cong., 1st Sess. 23 (1965)).  In addition, the State Defendants' argument that somehow the combination of Section 2 and Section 12 creates a new right, but Section 2 on its own does not, *see* Milligan MTD at 9, defies logic and the statutory text.

 But even if Congress, contrary to fact, did no more in Section 2 than codify the Fifteenth Amendment, it still would have created a new individual *statutory* right.  Section 2 is presumptively privately enforceable through Section 1983.

**B. Congress did not "shut the door to private enforcement" of Section 2.**

Defendants can rebut the presumption that a federal right is enforceable through Section 1983 only by "demonstrat[ing] that Congress shut the door to private enforcement either [1] expressly, through specific evidence from the statute itself" or "[2] impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Gonzaga*, 536 U.S. at

284 n.4 (citations omitted) (internal quotation marks omitted).  The State

Defendants cannot make that demonstration here.

First, Congress did not "shut the door to private enforcement" of Section 2,

*id.*, because "there is certainly no specific exclusion of private actions" in the Act.

*Allen*, 393 U.S. at 555 n.18; *cf. Schwier*, 340 F.3d at 1297 (holding that the

Materiality Provision of the Civil Rights Act of 1964, 52 U.S.C. § 10101, is

enforceable by private plaintiffs through Section 1983).

Nor does the Act provide for "a more restrictive private remedy," *City of

Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 121 (2005), than Section

1983.  While the Act grants the United States the authority to enforce Section 2,

these public remedies do not constitute "a comprehensive enforcement scheme"

and are perfectly "[]compatible with individual enforcement under § 1983."

*Gonzaga*, 536 U.S. at 284 n.4 (citation omitted) (internal quotation marks omitted);

*Turtle Mountain*, 2022 WL 2528256, at *6 ("[P]rivate enforcement actions have

co-existed with collective enforcement brought by the United States for decades.").

That is particularly true post-*Shelby County*, now that challenges to voting-related

enactments and changes always must be brought through affirmative litigation

(rather than placing the obligation on jurisdictions subject to preclearance to show

that such changes are not intentionally discriminatory and do not have a

retrogressive effect).  *See Shelby Cnty.*, 570 U.S. at 544, 557.  Indeed, even before

*Shelby County*, Section 2 lawsuits were brought overwhelmingly by private plaintiffs.  *See supra* 3-4.  Absent "a *private* judicial right of action, a private federal administrative remedy, or any carefu[l] congressional tailor[ing] that § 1983 actions would distort," the existence of an additional, public remedy does not displace Section 1983.  *Talevski*, 599 U.S. at 190 (alterations in original) (emphasis added) (citation omitted) (internal quotation marks omitted).

Any reliance on arguments about Section 3 and Section 12 is also unpersuasive.  Relying on the Eighth Circuit's decision in *Arkansas NAACP*, the State Defendants argue that the "aggrieved person" text in Section 3 refers to statutes that pre-date the Act.  *See* Caster MTD at 21.  But this argument does not consider the text and statutory history of the Act.  Section 3 reflects Congress's understanding that private plaintiffs can enforce the Act's substantive provisions, including Section 2: it provides specific remedies to "the Attorney General *or an aggrieved person*" in lawsuits brought "under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment."  52 U.S.C. § 10302 (emphasis added).  Congress added the term "aggrieved person" to each of Section 3's remedies in 1975, Pub. L. No. 94-73, § 401, 89 Stat. 404, knowing that *Allen* had recently construed the Act to permit private suits to enforce Section 5.  393 U.S. at 556–57; *see also* S. Rep. No. 295, 94th Cong., 1st Sess. 40 (1975) (1975 Senate Report) (stating that an "aggrieved person" includes "an individual or

15

an organization representing the interests of injured persons"). Even in the State Defendants' reading of Section 3, Section 1983, which predates the Act, must be among the existing private rights of action to which Section 3's "aggrieved person" language refers.

Nor does Section 12's detailed framework for public enforcement of the Act defeat the presumption of private enforcement under Section 1983. 52 U.S.C. § 10308. As *Talevski* put it, a "single-minded focus on comprehensiveness" of a statutory enforcement scheme "mistakes the shadow for the substance." 599 U.S. at 188. Courts have found that the Materiality Provision's similar public-enforcement framework does not preclude private enforcement of that provision under Section 1983. *Vote.org*, 89 F.4th at 476; *Migliori*, 36 F.4th at 160–62; *Schwier*, 340 F.3d at 1296. So too regarding the public remedies in Section 12. There is good reason for the Act to set forth an express public right of action: although private plaintiffs can invoke Section 1983 to vindicate their statutory rights, the United States cannot sue under that statute. Congress therefore needed to add "the specific references to the Attorney General . . . to give the Attorney General power to bring suit to enforce what might otherwise be viewed as 'private' rights." *Allen*, 393 U.S. at 555 n.18.[3]

---

[3] Likewise, Sections 12(f) and 3 of the Act confirm that Section 2 is privately enforceable under Section 1983 by granting Voting Rights Act-specific remedies

## CONCLUSION

This Court should reaffirm its previous ruling that private litigants may sue under Section 2 of the Voting Rights Act and should deny the State Defendants' motions to dismiss on those grounds.  Alternatively, private plaintiffs have the authority to bring these actions under 42 U.S.C. § 1983.


Dated: March 14, 2024


PRIM F. ESCALONA                          KRISTEN CLARKE
United States Attorney                    Assistant Attorney General
                                          Civil Rights Division

/s/ Jason R. Cheek                        /s/ Sejal Jhaveri
JASON R. CHEEK                            R. TAMAR HAGLER
Assistant United States Attorney          ROBERT S. BERMAN
Northern District of Alabama              MICHELLE RUPP
United States Department of Justice       SEJAL JHAVERI
1801 Fourth Avenue North                  Attorneys, Voting Section
Birmingham, AL 35203                      Civil Rights Division
(205) 244-2104                            United States Department of Justice
jason.cheek@usdoj.gov                     950 Pennsylvania Avenue NW
                                          Washington, DC 20530
                                          (800) 253-3931
                                          tamar.hagler@usdoj.gov
                                          robert.berman@usdoj.gov
                                          michelle.rupp@usdoj.gov
                                          sejal.jhaveri@usdoj.gov

---

and attorney's fees where private plaintiffs establish Section 2 liability.  At a minimum, they weigh heavily against any determination that private enforcement of Section 2 through Section 1983 is incompatible with public enforcement of the statute.  Indeed, the two have complemented each other for nearly sixty years.

## CERTIFICATE OF SERVICE

I hereby certify that, on March 14, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and caused to be served by email a copy of this filing to counsel of record.

*/s/ Sejal Jhaveri*
SEJAL JHAVERI
Trial Attorney
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 532-5610
sejal.jhaveri@usdoj.gov