# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MARCUS CASTER, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v.   ) | Case No. 2:21-cv-1536-AMM |
| ) | |
| WES ALLEN, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

### SECRETARY ALLEN'S AMENDED ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

Defendant Wes Allen, Alabama Secretary of State ("State Defendant"), for his Answer to Plaintiffs' Amended Complaint (doc. 271), states as follows:

### Answer to Numbered Paragraphs

1. Admitted that Plaintiffs allege Alabama's 2023 congressional redistricting plan ("2023 Plan") violates Section 2 of the VRA. Otherwise denied.

2. Admitted that Plaintiffs have accurately recounted population growth and decline numbers from 2020 Census listed in this paragraph. Otherwise denied.

3. Denied.

4. Denied.

5. Admitted that Plaintiffs seek this relief. Denied that they are entitled to it.

1

6. State Defendant does not contest that this Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1357. Denied that Section 2 of the VRA creates a substantive right privately enforceable under § 1983. Denied that Section 2 contains a private cause of action.

7. Admitted.

8. State Defendant does not contest venue in this District for purposes of challenges to the 2023 Plan.

9. Admitted that this Court has such authority generally. Denied that Plaintiffs are entitled to such relief.

10. Admitted.

11. Admitted that Plaintiff Marcus Caster is a black registered voter residing in CD7. Otherwise denied.

12. Admitted that Plaintiff LaKeisha Chestnut is a black registered voter residing in CD1. Otherwise denied.

13. Admitted that Plaintiff Bobby DuBose is a black registered voter residing in CD7. Otherwise denied.

14. Admitted that Plaintiff Benjamin Jones is a black registered voter residing in CD2. Otherwise denied.

15. Admitted that Plaintiff Rodney Love is a black registered voter residing in CD7. Otherwise denied.

16. Admitted that Plaintiff Manasseh Powell is a black registered voter residing in CD2. Otherwise denied.

17. Admitted that Plaintiff Ronald Smith is a black registered voter residing in CD2. Otherwise denied.

18. Admitted that Plaintiff Wendell Thomas is a black registered voter residing in CD2. Otherwise denied.

19. Admitted.

20. The statute quoted speaks for itself, and no response is required to allegations of law. To the extent a response is required, State Defendant admits that Plaintiffs have accurately quoted portions of the statute.

21. The decision quoted speaks for itself, and no response is required to allegations of law. To the extent a response is required, Defendant admits that Plaintiffs have accurately quoted portions of the decision.

22. The Supreme Court decision quoted speaks for itself, and no response is required to allegations of law. To the extent a response is required, Defendant admits that Plaintiffs have accurately quoted portions of this decision.

23. Admitted that statute requires courts to consider the totality of the circumstances. Denied that the Senate Report accompanying the 1982 amendments to the VRA has the force of law or is probative of the meaning of the text of the VRA.

24.     Admitted that Plaintiffs have accurately listed some "Senate Factors." Denied that the Senate Factors have the force of law or are probative.

25.     The decision quoted and the Senate Report speak for themselves, and no response is required to allegations of law. To the extent a response is required, Defendant admits that Plaintiffs have accurately quoted portions of the decision and Senate Report. Otherwise denied.

26.     Denied.

27.     Admitted that, because of the Census Bureau's unlawful delay in releasing census data to the States, there was less time this cycle to draw plans than in prior redistricting cycles. Otherwise denied.

28.     Admitted that committee staff was involved in drafting the plan and that no "functional or racial polarization analyses" were performed with respect to the congressional plan. Otherwise denied.

29.     Denied.

30.     Admitted that the Reapportionment Committee approved the draft plans. Otherwise denied.

31.     Admitted that the Legislature met in special session beginning October 28, 2021, to consider plans, and admitted that the congressional plan passed the House on November 1 and the Senate on November 3. Admitted that some legislators criticized the plans. Otherwise denied.

32. Admitted.

33. Admitted that Plaintiffs sued shortly after the 2021 congressional redistricting plan was enacted. Admitted that Plaintiffs sought the relief requested. Otherwise denied.

34. Admitted that this Court held a seven-day preliminary injunction hearing. Admitted that the Court reviewed evidence, testimony, and briefing. Admitted that the Court granted Plaintiffs' request for a preliminary injunction. Otherwise denied.

35. The quoted order speaks for itself, and no response is required to legal conclusions. Otherwise denied.

36. Admitted.

37. The Supreme Court's decision speaks for itself, and no response is required to legal conclusions. Admitted that this Court's preliminary injunction was affirmed. Otherwise denied.

38. Admitted that State Defendant notified Plaintiffs and the Court of the Legislature's intent to repeal the 2021 Plan and enact a new congressional redistricting plan.

39. Admitted.

40. Admitted.

41. State Defendant lacks sufficient information to admit or deny the allegations and thus denies.

42. Admitted.

43. First and last sentences admitted. Otherwise denied.

44. Admitted that the Committee held two hearings, that Representative England's proposed amendments were rejected, and that the Committee adopted redistricting guidelines. Otherwise denied.

45. Admitted.

46. First sentence admitted, and admitted that the COI Plan passed the House on July 19. Otherwise denied.

47. State Defendant lacks sufficient information to admit or deny these allegations and thus denies.

48. State Defendant lacks sufficient information to admit or deny these allegations and thus denies.

49. Admitted that under the Opportunity Plan, the BVAP in CD2 was lower than in the COI Plan. Admitted that the Senate passed the Livingston 2 Plan. State Defendant lacks sufficient information to admit or deny the remaining allegations and thus denies.

50. Admitted that Livingston Plan 3 contains one majority-minority district and another district with a BVAP of 39.9%. Otherwise denied.

51. Admitted that Dr. Hood analyzed the 2023 Plan. Otherwise denied.

52. Defendant lacks sufficient information to admit or deny this allegation.

53. Admitted that the Legislature made legislative findings with respect to the 2023 Plan. The findings speak for themselves and do not require a response. To the extent a response is required, the allegations are denied.

54. The legislative findings speak for themselves and do not require a response. To the extent a response is required, the allegations are denied.

55. The first sentence is ambiguous and is therefore denied. The second and third sentences implicate legislative privilege, attorney client privilege, the joint defense doctrine/attorney client privilege, common interest doctrine/attorney client privilege, the work product doctrine, and deliberative process privilege and thus are not answered. The quoted testimony from Representative Pringle and Senator Livingston speaks for itself and does not require a response. Admitted that Mr. LaCour was one of Defendant's lead counsel in this case. Otherwise denied.

56. Admitted.

57. Admitted that Plaintiffs accurately state the BVAP percentages according to the 2020 Census of CD2 and CD7.

58. Denied.

59. Admitted.

60. Admitted.

7

61. Admitted that Doug Jones was the black-preferred candidate, that his opponent was Roy Moore, and that Jones was elected to the U.S. Senate.

62. Admitted that Plaintiffs submitted illustrative plans during the preliminary injunction stage. Otherwise denied.

63. Denied.

64. Admitted that Plaintiffs objected to the 2023 Plan. Denied that those objections had merit. Otherwise denied.

65. Denied.

66. Admitted.

67. Admitted that at the preliminary injunction hearing regarding the 2023 Plan on August 14, 2023, Defendants conceded the second and third *Gingles* preconditions and totality of the circumstances inquiry for purposes solely of that preliminary proceeding while reserving their right to contest at a full permanent injunction hearing whether Plaintiffs had met their burden on those issues. Otherwise denied.

68. Admitted that this Court enjoined the use of the 2023 Plan for the 2024 congressional elections. Admitted that the Court ordered a Special Master to draw a remedial plan.

69. The order quoted speaks for itself. Denied that State Defendant made any concessions on the legal merits of Plaintiffs' case. Otherwise denied.

70. The order quoted speaks for itself. Otherwise denied.

71. Admitted that this Court has preliminarily held that Alabama's 2023 Plan likely violates Section 2 of the VRA. Otherwise denied.

72. Admitted that State Defendant moved this Court to stay its September 2023 Order and sought emergency relief in the Supreme Court. Admitted that this Court and the Supreme Court denied State Defendant's requests. Otherwise denied.

73. Admitted that this Court held a hearing on the Special Master's proposed plans, and admitted that this Court adopted Remedial Plan 3. Otherwise denied.

74. Admitted that Remedial Plan 3 splits the Black Belt into two districts and splits six counties. Otherwise denied.

75. Admitted that the 2024 elections will proceed under Remedial Plan 3.

76. Admitted that in Alabama as a whole, a majority of white voters tend to support Republican candidates in most elections, and that a majority of Black voters tend to support Democratic candidates in most elections. Denied that statewide polarization proves polarization in any particular location in Alabama. Otherwise denied.

77. Admitted.

78. Admitted that Dr. Palmer has submitted an expert report containing his findings with respect to racial polarization. Denied that Dr. Palmer's testimony is accurate or credible. Otherwise denied.

79. The quoted decision from 1983 speaks for itself, and no response is required to allegations of law. To the extent a response is required, State Defendant admits that Plaintiffs have accurately quoted portions of the decision. Otherwise denied.

80. The quoted decision from 1984 speaks for itself, and no response is required to allegations of law. To the extent a response is required, State Defendant admits that Plaintiffs have accurately quoted portions of the decision. Otherwise denied.

81. The decisions quoted speak for themselves, and no response is required to allegations of law. To the extent a response is required, State Defendant admits that Plaintiffs have accurately quoted portions of the decisions. Otherwise denied.

82. The decisions quoted speak for themselves, and no response is required to allegations of law. To the extent a response is required, State Defendant admits that Plaintiffs have accurately quoted portions of the decisions. Otherwise denied.

83. The quoted decision from 1982 speaks for itself, and no response is required to allegations of law. To the extent a response is required, State Defendant

admits that Plaintiffs have accurately quoted portions of the decision. Denied that racial bias is the cause of the political choices of voters. Otherwise denied.

84. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

85. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

86. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

87. The quoted decision from 1966 speaks for itself. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

88. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

89. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

90. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

91. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

92. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

93. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

94. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

95. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

96. Admitted that in 1964 and 1965, Dallas County Sheriff Jim Clark, Alabama state troopers, and vigilantes violently assaulted peaceful black protesters in Selma attempting to gain access to the franchise. Otherwise denied.

97. Admitted.

98. Denied.

99. Admitted that the referenced website includes a list of at least one hundred objections by the Department of Justice to changes adopted by the State or by county officials or by city officials and also by political parties. Averred that the list is known to contain at least one error in that the second to last objection was actually to a State change, not a Mobile change, and the objection was withdrawn following the Supreme Court's decision in Governor Riley's favor in *Riley v. Kennedy,* 553 U.S. 406 (2008). Admitted that at least sixteen of the objections were to redistricting plans adopted by the State or a county or a city; averred that the last such objection to a redistricting plan adopted by the State was in 1992. State Defendant lacks sufficient information to admit or deny the remaining allegations and thus denies.

100. Admitted that Plaintiffs have produced a list of voting-related cases in which Alabama or an Alabama official was a defendant. Otherwise denied.

101. Denied.

102. Denied.

103. The decisions quoted speak for themselves. State Defendant neither denies nor defends past discrimination in Alabama. Denied that conditions remain the same or that Alabama has a recent history of racial discrimination.

104. Denied.

105. Denied.

106. Denied.

107. Admitted that a legal challenge was filed and that a court held that the Alabama Legislature incorrectly assessed its obligations under Section 5 in drawing 12 of 140 State legislative districts. Denied that the court found any evidence of invidious discriminatory intent.

108. Admitted that this Court preliminarily held that Alabama's 2021 Plan likely violated Section 2 of the VRA, and admitted that the Supreme Court affirmed. Otherwise denied.

109. Defendant lacks sufficient information to admit or deny the allegations.

110. Defendant lacks sufficient information to admit or deny the allegations.

111. Defendant lacks sufficient information to admit or deny the allegations.

112. Denied.

113. Admitted.

114. The quoted decision speaks for itself. Otherwise admitted.

115. Defendant lacks sufficient information to admit or deny the allegations.

116. Admitted that Roy Moore, twice removed from office and rejected by voters in his last campaign, was quoted as saying such things. Otherwise denied.

117. Denied.

118. Admitted, except that State Defendant avers that Judge Bill Lewis, who is black, holds a seat on the Alabama Court of Civil Appeals. Also averred that no current statewide officeholder was elected as a Democrat .

119. Admitted that a black candidate was elected to Congress after the creation of a majority-minority district in 1992. Further admitted that CD7 has consistently elected a black representative since 1992. Otherwise denied.

120. Admitted that, in the past 30 years, no more than one African American has represented Alabama in Congress at one time. Otherwise denied.

121. Admitted, except that State Defendant avers that Judge Bill Lewis, who is black, holds a seat on the Alabama Court of Civil Appeals. Admitted that Justice Adams and Justice Cook were appointed to the Alabama Supreme Court by the governor and subsequently won election to the Court.

122. Denied. Defendant avers that Kenneth Paschal, who is black, was elected as a Republican in a district that has a voting age population that is approximately 69% white and 14% black.

## Count I

123. Defendant adopts and incorporates the foregoing paragraphs.

124. The cited statute speaks for itself.

125. Denied.

126. Denied.

127. Denied.

128. Denied.

129. Denied.

**PRAYER FOR RELIEF**: State Defendant denies that Plaintiffs are entitled to any relief.

## General Denial

State Defendant denies each and every allegation in Plaintiffs' Amended Complaint that is not expressly admitted above.

## Additional Defenses

1. Plaintiffs fail to state a claim upon which relief can be granted.

2. Plaintiffs have no lawful remedy.

3. Plaintiffs' proposed congressional districts violate traditional districting criteria and fail to properly defer to the Legislature's primary role in the redistricting process.

4. The requested relief would involve an unconstitutional racial gerrymander because they request a map in which racial considerations predominate over traditional redistricting criteria.

5. To the extent Plaintiffs seek relief before the 2024 elections, it would be inequitable to afford them relief so soon before the elections.

6. Plaintiffs seek inappropriate relief, including relief State Defendant cannot lawfully provide.

7. The Legislature is not guilty of racial gerrymandering or intentional discrimination.

8. The Census Bureau's considerable delays in delivering districting data as statutorily required caused any changes in the normal timeline for drawing a congressional map.

9. The relief Plaintiffs request is against the public interest.

10. Section 2, properly construed, does not support a claim for vote dilution based on a challenge to a districting plan.

11. To the extent Section 2 requires Alabama to draw districts with consideration of race, Section 2 is unconstitutional.

12. To the extent Section 2 requires Alabama to draw districts that violate traditional districting criteria, Section 2 is unconstitutional.

13. To the extent Section 2 permits a finding of liability without proof of intentional discrimination, Section 2 is unconstitutional.

14. Alabama neither "cracked" nor "packed" minority voters in its congressional districts.

15. If Section 2 permits the relief Plaintiffs request, or recognizes the claim Plaintiffs assert, Section 2 is not proportional or congruent.

16. Section 2 does not provide a private right of action.

17. Section 2 does not create a substantive right that can be remedied through an action under Section 1983.

18. Plaintiffs do not satisfy the *Gingles* requirements.

19. The totality of the circumstances does not support a claim for vote dilution.

20. Any alleged vote dilution is not on account of race or color.

21. To the extent Section 2 requires a court to assume that polarized voting is evidence of racial bias, Section 2 is unconstitutional.

22. To the extent Section 2 requires a court to assume that a white voter's support of Republican candidates is evidence of racial bias, Section 2 is unconstitutional.

23. To the extent Section 2 requires a court to assume that the State has not acted in good faith when drawing its congressional maps, Section 2 is unconstitutional.

24. To the extent Section 2 requires a court to presume that the State has acted in a way that is uniquely discriminatory compared to other States, Section 2 violates the equal sovereignty principle and so is unconstitutional.

Done this 1st day of August, 2024.

    Steve Marshall
      *Attorney General*

    <u>s/ Edmund G. LaCour Jr.</u>
    Edmund G. LaCour Jr. (ASB-9182-U81L)
      *Solicitor General*

    James W. Davis (ASB-4063-I58J)
      *Deputy Attorney General*

    Soren Geiger (ASB-0336-T31L)
      *Deputy Solicitor General*

    Richard D. Mink (ASB-4802-M76R)
    Misty S. Fairbanks Messick (ASB-1813-T71F)
    Brenton M. Smith (ASB-1656-X27Q)
    Benjamin M. Seiss (ASB-2110-O00W)
    Charles A. McKay (ASB-7256-K18K)
      *Assistant Attorneys General*

    OFFICE OF THE ATTORNEY GENERAL
    STATE OF ALABAMA
    501 Washington Avenue
    P.O. Box 300152
    Montgomery, Alabama  36130-0152
    Telephone: (334) 242-7300
    Fax: (334) 353-8400
    Edmund.LaCour@AlabamaAG.gov
    Soren.Geiger@AlabamaAG.gov
    Jim.Davis@AlabamaAG.gov
    Richard.Mink@AlabamaAG.gov
    Misty.Messick@AlabamaAG.gov
    Brenton.Smith@AlabamaAG.gov
    Ben.Seiss@AlabamaAG.gov
    Charles.McKay@AlabamaAG.gov

    ***Counsel for Secretary of State Allen***

## CERTIFICATE OF SERVICE

I certify that on August 1, 2024, I electronically filed the foregoing notice with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

s/ Edmund G. LaCour Jr.
Counsel for Secretary Allen
