FILED
2024 Sep-03 PM 04:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

EVAN MILLIGAN, ET AL.,
Plaintiffs,

Civil Case No. 2:21-CV-01530-AMM

v.

WES ALLEN, SECRETARY OF STATE, ET AL.,
Defendants.

AND

MARCUS CASTER, ET AL.,
Plaintiffs,

Civil Case No. 2:21-CV-00751-WKW-JTA

v.

JOHN H. MERRILL, SECRETARY OF STATE, ET AL.,
Defendants.

AND

BOBBY SINGLETON, ET AL.,
Plaintiffs,

Civil Case No. 2:21-CV-01291-AMM

v.

JOHN H. MERRILL, SECRETARY OF STATE, ET AL.,
Defendants.

**RESPONSE REPORT OF DR. CHRISTOPHER W. BONNEAU**

1. In this rebuttal report, I respond to claims made by Drs. Maxwell Palmer and Baodong Liu in their rebuttal reports of July 31, 2024.
2. Dr. Palmer points out an error in my data that affects some of my initial conclusions. I inadvertently included three uncontested state supreme court races in my initial analysis. I thank Dr. Palmer for pointing this out. Transparency and error correction are integral parts of the social science process.
3. In paragraph 15, Dr. Palmer notes that the differences between Black candidates and white candidates is not statistically significant. Tests of statistical significance are appropriate when generalizing from a sample to a population. For example, one uses statistical significance when trying to ascertain presidential approval nationwide from a sample of a few thousand voters. In this case, I am analyzing all races. Thus, the observed differences are, in fact, real, and tests of statistical significance are not appropriate.
4. Moreover, statisticians caution empirical researchers about the perils of overreliance on the concept of "statistical significance." To wit, "A label of statistical significance does not mean or imply that an association or effect is highly probable, real, true, or important. Nor does a label of statistical nonsignificance lead to the association or effect being improbable, absent, false, or unimportant. Yet the dichotomization into 'significant' and 'not significant' is taken as an imprimatur of authority on these characteristics" (Wasserstein, Schirm, and Lazar 2019, 2).

5. In paragraph, 21, Dr. Palmer writes that, "straight ticket voting allows voters to override their initial partisan choice for individual ballot items, such that the use of straight ticket voting does not ensure that the voter did not still select candidates of another party." While this is technically true (a voter who votes the straight-ticket option and then votes for a candidate from a different party in a race, the voters' selection of the candidate will override the straight-ticket option for that race) , this is a fact not widely known by voters and thus is going to be extremely rare. Indeed, a study examining this in North Carolina estimated that there may have been a few hundred (out of tens of thousands cast), though there are no precise numbers provided (Smith 1984).
6. Moreover, the burden is on Dr. Palmer to show that this rare phenomenon adversely affects the conclusions I make regarding straight-ticket voting.
7. In paragraph 23, Dr. Palmer writes, "Dr. Bonneau assumes (without any evidence) that an individual's race and an individual's political party are two separate and independent factors that influence vote choice." For the purposes of this case, I am trying to ascertain the independent effects of party, controlling for race. It is entirely possible that these two concepts cannot be separated out. My argument is that the data are more consistent with political party being the driving factor in these elections, not race.
8. On p. 3, Dr. Liu writes that the lack of political party registration "prevented him [me] from directly analyzing how political parties affect voting." This is not true. I analyze straight-ticket voting, which provides relevant information

about the role of parties. While it is not perfect, it is the best we can do under the circumstances, and it is certainly preferable to ignoring the role of political parties altogether.

9. Dr. Liu claims I make "an assertion that because, at the aggregate level, two-thirds of Alabama voters voted straight tickets it must also be true that a subset (e.g. Black voters) tend to vote straight-ticket is a classic ecological fallacy." I do not make this assertion in my original report.

10. Dr. Liu goes on to make the statement that "it could even be true that no Black voters has cast a straight-ticket vote in Alabama." This is a claim that is demonstrably false, and as Table 1 shows, a significant number of Black voters do vote straight-ticket. We can see this by looking at the 2022 Alabama gubernatorial election. These data are publicly available from the Secretary of State's website unless otherwise noted.

**Table 1: 2022 Gubernatorial Election**

| **2022 Gubernatorial Election** | | | | | |
|---|---|---|---|---|---|
| **Total Votes Cast for Flowers** | **Straight-Ticket Votes Cast for Flowers** | **Black Votes Cast in 2022 Governor's Race** | **Black Votes Cast for Flowers** | **Non-Black Votes Case for Flowers** | **Minimum Black Votes Cast for Flowers by Straight-Ticket** |
| 412,961 | 298,434 | 354,930 | 330,795 | 82,166 | 216,268 |
| 29.2% of total votes cast | 21.0% of all votes cast | 25% of all votes cast | (estimate of 93.2%, based on Liu report) | (estimate based on Liu report) | (presumes all votes cast by non-black voters were by straight-ticket) |
| | | | | | Represents 65.4% of all black |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | democratic votes |
| | 72.3% of all democratic votes cast | (based on black voter turnout in 2018 and 2020) | | | Represents 60.9% of all black votes |

Let us look at 2022 (a mid-term election), and the top of the ballot (governor's race). 1,419,718 votes were cast for governor. Of those, Yolanda Flowers, the Democratic candidate, received 412,961 (29.18% of total votes cast for governor), with 298,434 cast by straight-ticket Democratic ballot (21.0% of all votes cast for governor 72.3% of all Democratic votes cast for governor). Dr. Liu's own report then estimates that 93.2% of all votes cast by black voters were for Yolanda Flowers (Liu Report at Table 2). We can estimate the number of Black Democratic voters in 2022 from 2020 and 2018 election data from the Secretary of State. In 2018, Black voters cast 441,199 votes, or 25.6% of all votes cast in that election. In 2020, Black voters cast 562,519 votes, or 24.2% of all votes cast in that election. Using a rounded average of 25%, we can infer that Black voters cast *roughly* 354,930 votes in the 2022 gubernatorial race. Using Dr. Liu's estimates, that would mean that Black voters cast between 330,795 of the 412,961 votes received by the Democratic candidate for governor, making up between 80% of all votes cast for Flowers, and meaning that, as a high-end estimate, only 82,166 of votes cast for Flowers were cast by non-Black voters. This suggests even if 100% of non-Black voters who voted for Flowers did so by straight-ticket (which is highly unlikely), at least 216,268 Black voters voted

straight-ticket Democrat. That would mean that, as a lowest-end estimate, 65.4% of Black Democratic voters voted by straight ticket, and at least 60.9% of all Black voters voted by straight-ticket, even without analyzing Black voters who may have voted straight-ticket Republican. These estimates clearly show that most Black voters in Alabama elections are voting as straight-ticket Democrats.

11. Moreover, it is apparent that Dr. Liu does not understand the straight ticket voting analysis. He writes (p. 4), that "straight-ticket voting has been an increasingly Republican phenomena." He arrives at this conclusion simply by comparing the overall straight ticket voting percentages by party. These percentages simply show the number (and percentage) of voters who vote straight-party Republican and straight-party Democrat. But what it does not show is the percentage of Republicans who utilize the straight-ticket option compared to the percentage of Democrats who do so. Alabama's lack of political party registration is an impediment to this, but we can estimate whether Republicans are more likely than Democrats to utilize straight-ticket voting. This can be seen in Table 2. These data are publicly available from the Secretary of State's website unless otherwise noted.

**Table 2: Straight Ticket Voting**

| Year | Total Ballots Cast at Top of Ballot | Total Rep. Ballots Cast at Top of Ballot | Straight Rep. | % Total of Straight Rep. | % Rep. Straight Rep. | Total Dem. Ballots Cast at Top of Ballot | Straight Dem. | % Total of Straight Dem. | % Dem. Straight Dem. |
|---|---|---|---|---|---|---|---|---|---|
| 2018 | 1,725,877 | 1,022,457 | 663,269 | 38.4% | 64.9% | 694,495 | 462,065 | 26.8% | 66.5% |
| 2020 | 2,329,114 | 1,441,170 | 967,157 | 41.5% | 67.1% | 849,624 | 596,786 | 25.6% | 70.2% |
| 2022 | 1,423,409 | 946,932 | 648,953 | 45.6% | 68.5% | 412,961 | 298,434 | 21.0% | 72.3% |

The data show that the decrease in the percentage of straight-ticket Democratic votes is due to the decline of the Democratic Party in Alabama. Indeed, when we compare the total number votes received by the top of the ballot candidates with the number of straight ticket ballots case, the percentage of Democratic votes being cast by straight-tickets is larger than the percentage of straight-ticket Republican votes.

12. Dr. Liu writes (p. 4) that "Dr. Bonneau attempted to use straight-ticket voting to suggest that political parties replaced race as the determinant of vote choice." This is false. Nowhere in my report to I use the term of concept of "replacing." Rather, my report argues that party is a better explanation of election results in Alabama.

13. Dr. Liu (p. 5) uses ad hominem attacks to suggest that I am "unfamiliar with the literature" and "blindly use" data to make individual-level conclusions.

Again, as my report makes clear, I am not engaging in individual-level analysis.

14. On p. 6, Dr. Liu accuses me of misquoting Justice Alito's statement in the *Alexander* case. The quote is accurate. That opinion also referred to Dr. Liu's analysis in that case as "plainly flawed" (p. 27).
15. On p. 6, Dr. Liu continues to ignore data that contradicts his position, such as the elections in House District 73 and House District 74 discussed in my original report.
16. Dr. Liu continues to rely on the mayoral elections in Montgomery though he does not acknowledge the issues with those elections, pointed out in my original report. In sum, those mayoral elections were nonpartisan in name only; the party cue is taken away on the ballot, but it is clearly not removed from the campaign and voters' awareness.
17. Importantly, Bonneau and Cann (2015) found that there are high levels of partisan voting even in nonpartisan elections. That is, voters registered as Democrats vote for the Democratic candidate (and the same for Republicans) even if the partisan identification of the candidates is not on the ballot.
18. Additionally, in both these mayoral elections, the Black candidate (and, according to Dr. Liu, the Black-preferred candidate) *won* the election. More importantly, Reed had previously won three partisan elections as a Montgomery County Probate Judge. His party identification (Democrat) was likely known to voters.

19. Thus, even though the party affiliation of candidates does not appear on the ballot, this does not mean that the partisan affiliation of candidates is irrelevant; this, rather than racial polarization, could be the reason for the observed voting patterns.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

______________________________ August 15, 2024

Chris W. Bonneau DATE

**References**

Smith, Gregory Stuart. 1984. “Statutory Preference for Straight-Ticket Voting in Counting Crossover Ballots—Hendon v. North Carolina State Board of Elections.” *North Carolina Law Review* 62: 1173-1185.

Wasserstein, Ronald L., Allen L. Schirm, and Nicole A. Lazar. 2019. “Moving to a World Beyond ‘$p < 0.05$.’” *The American Statistician* 73: 1-19.