IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVAN MILLIGAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WES ALLEN, *et al.*,<br><br>Defendants. | Case No. 2:21-cv-01530-AMM<br><br>THREE-JUDGE COURT |
| MARCUS CASTER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WES ALLEN, *et al.*,<br><br>Defendants. | Case No.: 2:21-cv-1536-AMM |

**REPLY IN SUPPORT OF**
***MILLIGAN* AND *CASTER* PLAINTIFFS' MOTION IN LIMINE**

Defendants do not dispute that Dr. Reilly lacks the qualifications to offer expert opinions about early twentieth-century American and Alabama history or about specific Alabama communities. Defendants instead wrongly assert that Dr. Reilly's lack of expertise in these areas does not matter because his general "expertise in data analysis, statistics, and political science" are sufficient to support

1

his testimony about Alabama communities of interest and historical ties between different Alabama regions. Defs.' Opp'n to Mot. in Limine, Doc. 327 at 2-3 ("Opp.").

But Dr. Reilly does not solely intend to report on selected data metrics. Rather, Dr. Reilly intends to testify about the strength of the "historical ties between Mobile and the Black Belt," Doc. 323-1 at 5, ("Reilly Report,"), including whether Mobile and Baldwin Counties are "true soul-mate[s]," *id.* at 12, and whether "Mobile has a natural link to the Black Belt region of Alabama," *id.* at 14. And, even if his report were limited to data reporting, his flawed methodology in selecting data metrics and his total lack of expertise in evaluating their meaning would still require granting this motion.

Defendants offer no evidence suggesting Dr. Reilly possesses the requisite "knowledge, skill, experience, training, or education" that Rule 702 requires to testify as an expert on (1) Alabama's history, (2) Alabama's communities of interest, or (3) the relationships between Alabama's communities. Fed. R. Evid. 702. The dearth of authority supporting Defendants' opposition is telling. Nothing in the rules or precedent permits Dr. Reilly to offer opinions based on his inconsistent reporting of data, reliance on racial assumptions, and inability to explain how or why he chose which data to report. Accordingly, Plaintiffs respectfully request that the Court exclude Dr. Reilly's testimony about "shared commonalities" among Mobile, the

Black Belt, and Baldwin County, in addition to his testimony about the strength of "the historical ties between Mobile and the Black Belt." Reilly Report at 5.

I. **DR. REILLY'S EXPERIENCE DOES NOT QUALIFY HIM TO FORM EXPERT OPINIONS ON ALABAMA HISTORY OR ITS SPECIFIC COMMUNITIES AND THE RELATIONSHIPS BETWEEN THEM.**

Defendants' argument that Dr. Reilly's "expertise in political science and statistics" qualifies him as an expert to opine on Alabama's history and communities, Opp. at 2, both elides his actual testimony and misconstrues Rule 702.

Defendants contend that Dr. Reilly is merely "using his expertise in political science and statistics to examine census and other data related to Mobile County, Mobile City, Baldwin County, and Black Belt Counties." *Id.* Yet an expert's opinion is assessed based on whether it "rests on a reliable foundation" and whether his qualifications are "relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Qualifications under Rule 702 thus do not turn on an expert's data itself, but instead on how the expert has used that data.

Even if Dr. Reilly's general political science background qualified him to compile basic data compilations, "[e]xpertise in one field does not qualify a witness to testify about others." *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368 (11th Cir. 2014). And Dr. Reilly does not merely report certain metrics about the relevant communities and leave it there. Rather, he offers opinions about whether "Mobile has a natural link to the Black belt region of Alabama," Reilly

3

Report at 14, and about whether Mobile and Baldwin Counties are "true soulmate[s]," *id.* at 12—even though he has never written about or studied Alabama's history or the relationships between its communities, Pls.' Mot.in Limine, Doc. 323 at 2 ("Mot."). Defendants are correct that "analysis of census data . . . does not depend on [Dr. Reilly] knowing Alabamians," Opp. at 4 n.3; but his opinions about whether specific communities share "natural" cultural links extend far beyond his experience reviewing census data. "A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Lebron*, 772 F.3d at 1369 (citation omitted); *see also Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. v. Firestone*, 893 F.2d 1189, 1192, 1195 (11th Cir. 1990) (finding no abuse of discretion when a district court excluded an expert political scientist who sought to testify about statistics that were beyond his area of expertise).

Further, even Dr. Reilly's selection of what data he believes might shed light on Alabama communities is highly suspect. Although Dr. Reilly has never studied or analyzed communities of interest in his academic work, Defendants incorrectly assume that Dr. Reilly's broad life experience "naturally involves evaluating data" the same way as someone analyzing communities of interest or history. Opp. at 4. But Dr. Reilly never makes that connection, nor could he. Dr. Reilly was unaware that Alabama's redistricting guidelines existed until his deposition, Mot. at 6, nor did

4

he cite any other reliable or relevant source to guide his communities of interest analysis. For example, Defendants try bolstering Dr. Reilly's reliance on Wikipedia to define the Black Belt by highlighting another website he cites. Opp. at 8. But that other website lacks any definition of the Black Belt and so it does not support his claim that certain Black Belt counties are "rarely included in the region and are more often considered 'part of Alabama's Southern regional plain.'" Reilly Report at 12 & n.26. In other words, the "data" Dr. Reilly relies upon is itself indicative of his lack of relevant expertise in this area.

Similarly, Defendants protest that Dr. Reilly's testimony about the historical ties between Mobile and the Black Belt rely solely on "examining census data, which does not require the expertise of a historian." Opp. at 7. This begs the question: why does Dr. Reilly opine on "[h]ow strong [the] historical ties between Mobile and the Black Belt" are? *Id.* at 6. For example, even if Dr. Reilly solely sought to report on Black Alabamians' out-of-state movement in the Great Migration, his study would still be irrelevant to an analysis of the ties between Alabama communities. The movement of Alabamians to Chicago and Detroit tells us nothing about the strength of the familial, cultural, or economic connections between those Alabamians who moved from the Black Belt to Mobile. In taking his reporting a step further to opine on "historical ties," *id.*, Dr. Reilly steps far outside even his arguable field of expertise.

In these ways, Dr. Reilly is like the expert partially excluded in *People First of Alabama v. Merrill*—another political scientist whose testimony was excluded after attempting to stretch his basic statistical knowledge into specific expert opinions about public health, an area about which he admitted he had "no expertise" and had "not done any research on the topic." 491 F. Supp. 3d 1076, 1102 n.35 (N.D. Ala. 2020). So too for Dr. Reilly. Mot. at 2, 5-7. Dr. Reilly is likewise akin to the clinical psychiatrist in *Lebron* who was excluded as an expert from testifying on rates of drug use across demographic groups after he admitted to having never researched this subject and because he was not a social scientist or statistician and lacked any other relevant experience. 772 F.3d at 1369-70; *see also Beam v. McNeilus Truck and Mfg., Inc.*, 697 F. Supp. 2d 1267, 1275-78 (N.D. Ala. 2010) (excluding a mechanical engineer who tried to expand basic knowledge about vehicle design into opinions about defective design, which required a different analysis that he could not perform without specific knowledge).

The fundamental problem is that Dr. Reilly offers substantive opinions about the existence and extent of communities of interest in Alabama and their historical ties without any knowledge or experience in analyzing communities of interest in political science generally, let alone in Alabama specifically. The Court should accordingly exclude Dr. Reilly's testimony about communities of interest and their historical ties under Rule 702.

## II. DR. REILLY'S UNSOUND METHODOLOGY EVIDENCE HIS LACK OF QUALIFICATIONS.

Dr. Reilly's methodology in evaluating Alabama communities of interest and their historical ties also exposes his lack of minimum qualifications. Defendants offer only a perfunctory defense of his reporting which reveals his thin knowledge base.

For example, Defendants assert, without support, that Dr. Reilly somehow does not "require a citation for" his opinion about which industries are associated with a city and they fail to explain his lack of sources in his comparison of prevalent jobs in the City of Mobile, Mobile County, and Black Belt counties. Opp. at 7. Defendants further defend Dr. Reilly's reporting on murder rates by arguing "he does not believe any racial group[s] [are] inferior or more inclined to criminality[,]" *id.* at 8, without engaging with the substance of Plaintiffs' criticisms. Mot. at 12-13.

While Dr. Reilly does broadly claim that factors like the "prevalence of crime" are "used constantly in social-scientific data analysis," Opp. at 5-6, he fails to cite *any* academic or other actual social scientific source to validate this methodology of comparing communities. Reilly Report 7 & n.15. Rather, his only citation is again a website—the "CIA World Fact Book"—which has nothing to do with either social scientific methodologies or intrastate communities of interest for redistricting. Defendants also defend Dr. Reilly's assumption that "heavily minority, poor" communities "might have a higher crime rate than most tiny agrarian counties," Opp.

7

at 8, but they fail to address the fact that this is precisely the type of "powerful racial stereotype" that courts are admonished *not* to credit.[1] *See Buck v. Davis*, 580 U.S. 100, 121 (2017); *Floyd v. City of New York*, 959 F. Supp. 2d 540, 586-87 (S.D.N.Y. 2013). In *per se* rejecting this sort of expert testimony, the Supreme Court has never found it necessary to examine the ideology ("culturalist" or otherwise) of the expert offering it. *See Buck*, 580 U.S. at 119; *see also Floyd*, 959 F. Supp. 2d at 586-87 (same). Rather, such testimony simply has no place in our legal system. *Buck*, 580 U.S. at 123-24; *see also United States v. Bahena–Cardenas*, 411 F.3d 1067, 1078–79 (9th Cir. 2005) (affirming the exclusion of expert testimony about Mexican people's transborder culture and their alleged propensity to give false information because it would encourage or require jurors to rely on stereotypes); *Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1007 (9th Cir.2001) (rejecting expert testimony that "generalize that most Korean businesses are corrupt" because it invited the jury to assume the "Korean litigant fits the stereotype"). Like the rest of his communities of interest "analysis," Dr. Reilly's assumptions about Black Alabamians along with his admittedly selective and incomplete reporting on homicide data is unsound, unreliable, and warrants exclusion.

---

[1] Unlike Dr. Reilly, Plaintiffs' expert, Dr. Traci Burch, does not make any assumptions about the alleged "criminality" of Black people *Cf*. Opp. at 10. Rather, she extensively surveyed actual peer-reviewed research, which finds that "racial disparities in sentencing persist in Alabama even after controlling for legally-relevant factors such as crime type and criminal history." Burch Rebuttal Report at 5-6, *Milligan*, Doc. 385-6 at 6-7 (explaining that, even in the studies cited by Dr. Reilly, at least "40% of the racial disparity" in crime rates is *not* attributable to "differences in behavior").

## CONCLUSION

For the reasons above and in the initial brief, Plaintiffs respectfully request that this Court enter an order excluding the testimony of Dr. Wilfred Reilly on communities of interest.

Respectfully submitted this 15th day of January 2025.

/s/ *Deuel Ross*
Deuel Ross*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street N.W. Ste. 600
Washington, DC 20005
(202) 682-1300
dross@naacpldf.org

Stuart Naifeh*
Kathryn Sadasivan (ASB-517-E48T)
Brittany Carter*
Colin Burke*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
snaifeh@naacpldf.org
ksadasivan@naacpldf.org
bcarter@naacpldf.org
cburke@naacpldf.org

David Dunn*
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
david.dunn@hoganlovells.com

/s/ Sidney M. Jackson
Sidney M. Jackson (ASB-1462-K40W)
Nicki Lawsen (ASB-2602-C00K)
WIGGINS CHILDS PANTAZIS
 FISHER & GOLDFARB, LLC
301 19th Street North
Birmingham, AL 35203
(205) 341-0498
sjackson@wigginschilds.com

Davin M. Rosborough*
Theresa J. Lee*
Dayton Campbell-Harris*†
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St.
New York, NY 10004
(212) 549-2500
drosborough@aclu.org
tlee@aclu.org
dcampbell-harris@aclu.org

Allison Mollman (ASB-8397-A33C)
Laurel Haddix (ASB-4592-E20I)
AMERICAN CIVIL LIBERTIES
UNION OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106-0179
(334) 265-2754

Michael Turrill*
Harmony A. Gbe*
HOGAN LOVELLS US LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4600
michael.turrill@hoganlovells.com
harmony.gbe@hoganlovells.com

amollman@aclualabama.org

Shelita M. Stewart*
Jessica L. Ellsworth*
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600
shelita.stewart@hoganlovells.com

Blayne R. Thompson*
HOGAN LOVELLS US LLP
609 Main St., Suite 4200
Houston, TX 77002
(713) 632-1400
blayne.thompson@hoganlovells.com

*Counsel for Milligan Plaintiffs*
*Admitted Pro Hac Vice*
† Practice limited to federal court

s/ Abha Khanna
Abha Khanna*
Makeba Rutahindurwa*
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0177
AKhanna@elias.law
MRutahindurwa@elias.law

Lalitha D. Madduri*
**Elias Law Group LLP**
250 Massachusetts Ave, Suite 400
Washington, D.C. 20001
(202) 968-4490
LMadduri@elias.law

*Attorneys for Caster Plaintiffs*
*Admitted Pro Hac Vice*

Richard P. Rouco
(AL Bar. No. 6182-R76R)
**Quinn, Connor, Weaver, Davies & Rouco LLP**
Two North Twentieth
2-20th Street North, Suite 930
Birmingham, AL 35203
Phone: (205) 870-9989
Fax: (205) 803-4143
rrouco@qcwdr.com

10

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2025, I electronically filed the foregoing document via the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Abha Khanna
Counsel for *Caster Plaintiffs*