FILED

2025 Feb-18  PM 09:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |
|---|---|
| EVAN MILLIGAN, *et al.*, | |
| *Plaintiffs*, | Case No. 2:21-cv-01530-AMM |
| v. | THREE-JUDGE COURT |
| WES ALLEN, *et al.*, | |
| *Defendants*. | |
| MARCUS CASTER, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No.: 2:21-cv-1536-AMM |
| WES ALLEN, *et al.*, | |
| *Defendants*. | |

**STATE DEFENDANTS' JOINT RESPONSE TO *MILLIGAN* AND *CASTER* PLAINTIFFS' JOINT MOTION TO PREVENT THEM FROM CALLING *SINGLETON* PLAINTIFFS SENATOR BOBBY SINGLETON AND LEONETTE SLAY**

Arguing prejudicial surprise, Plaintiffs ask this Court to preclude the State Defendants from calling witnesses that Plaintiffs themselves disclosed as trial witnesses. Mere seconds before Ms. Leonette Slay was set to testify in the *Singleton* Plaintiffs' affirmative case, the *Milligan* and *Caster* Plaintiffs objected to including her testimony in the records in *Milligan* and *Caster*. *See Milligan* Doc. 330 at 7;

*Caster* Doc. 272 at 7. They did so for the first time in these cases despite including Ms. Slay and Senator Singleton on a revised witness list "on behalf of all Plaintiff groups" that was provided to Defendants by email. Ex. A (Plaintiffs' Revised Witness List Email). Their objection at trial thus came with no prior specific notice to the State Defendants; to the contrary, State Defendants had been notified that *all* Plaintiff groups intended to call Ms. Slay and may have called Senator Singleton. Then, with knowledge that the State Defendants intended to call Ms. Slay on February 18, 2025 and Senator Singleton later this week, the *Milligan* and *Caster* Plaintiffs did not file the motion at issue here until the evening of February 17, 2025.

While the *Milligan* and *Caster* Plaintiffs claim lack of notice and surprise, that's hardly possible when they disclosed these witnesses as trial witnesses themselves. In any event, the witnesses at issue are plaintiffs in *Singleton*, a case being heard alongside theirs and that has been heard alongside theirs for several years now. Indeed, Senator Singleton's testimony from the preliminary injunction proceedings was included in all three cases without objection. The State Defendants maintained throughout this litigation a right to call any witness disclosed by the other parties. Putting aside Plaintiffs' joint revised witness list, the *Singleton* Plaintiffs disclosed both Ms. Slay and Senator Singleton on their filed witness lists, and the *Milligan* Plaintiffs themselves also disclosed Senator Singleton on their filed witness

2

list. The State Defendants' catchall in their witness list (like the ones in Plaintiffs' lists) was sufficient. Plaintiffs cannot demonstrate prejudicial surprise.

At any rate, Fed. Rule Civ. P. 37(c)(1) supports allowing Ms. Slay's and Senator Singleton's testimony anyway. Substantial justification exists because the State Defendants had no reason to believe that they could not cross-examine Ms. Slay and Senator Singleton in all three cases until Plaintiffs' eleventh-hour objections to witnesses that they had disclosed themselves. And including their testimony would be harmless because Plaintiffs have had ample notice as to the substance of these already-disclosed witnesses' testimony. At bottom, the State Defendants would be prejudiced if they could not call Ms. Slay and Senator Singleton as part of their case in chief. The *Milligan* and *Caster* Plaintiffs' motion should be denied.

## I.     Both Ms. Slay and Senator Singleton were properly disclosed.

That Plaintiffs themselves disclosed Ms. Slay and Senator Singleton as trial witnesses renders further analysis unnecessary. In a January 29, 2024 email, Mr. Ross—"[o]n behalf of *all Plaintiff groups*"— provided a "revised witness list" to State Defendants by email that listed Ms. Slay as a will-call witness and Senator Singleton as a may-call witness. Ex. A (emphasis added). Counsel for all three Plaintiff groups were included on this email. *Id.* Moreover, Plaintiffs' "reserve[d] the right to call any witnesses on any party's witness list (as noted in our filed witness

lists." *Id.* at 2. Having themselves disclosed the witnesses to whom they only now object for the first time, Plaintiffs can hardly claim prejudicial surprise. The Court need proceed no further to deny Plaintiffs' belated motion to exclude their own disclosed witnesses.

In any event, the State Defendants filed an identical witness list in all three cases, each bearing the style of all three cases. In each case, the State Defendants "reserve[d] the right to call witnesses identified by other parties to this case[.]" *E.g.*, *Milligan* Doc. 395 at 4. This language was sufficient. Plaintiffs' argument that this language did not provide them notice contradicts their conduct in this case. The *Milligan* and *Caster* Plaintiffs used similar catchalls. *See* Ex. A at 2 ("[W]e reserve the right to call any witnesses on any party's witness list (as noted in our filed witness lists)."); *Milligan* Doc. 393 at 2–3 (identifying "Any witnesses listed or called by any Defendants or any other Plaintiffs in *Caster* or *Singleton* or any witnesses otherwise necessary for rebuttal"); *Caster* Doc. 309 at 3 ("And Plaintiffs reserve the right to call any witness disclosed by another party to this consolidated case.").

Nor did the catchall's reference to "this case" deprive Plaintiffs of notice. "[T]his case" was the three cases listed in the style of the State Defendants' three identical witness lists. Indeed, Plaintiffs' objection rings hollow when the *Caster* Plaintiffs referred to this matter as "this consolidated case" in their witness catchall.

*Caster* Doc. 309 at 3. And the catchall's reference to "other parties" would make no sense under Plaintiffs' cramped reading.

It is not just the trial witness lists that matter. The *Milligan* and *Caster* Plaintiffs begin their motion by invoking the State Defendants' duty to disclose pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), suggesting the State Defendants failed to meet that duty. The State Defendants provided initial disclosures in January 2023. Their first supplement, in April 2023, "reserve[d] the right to call any witness disclosed by any other party." Ex. B at 49 (State Defendants' Disclosures). Then, their second, third, fourth, fifth, sixth, and seventh supplements "reserve[d] the right to call and cross-examine any witnesses listed by any other party." *See, e.g.*, *id.* at 58. Every disclosure contained all three styles at the top, and each was served on counsel for all three cases simultaneously. *See, e.g.*, *id.* at 62, 68. And even if Plaintiffs' reading were correct, the *Milligan* Plaintiffs' disclosures also listed Senator Singleton. Ex. C at 5 (*Milligan* Plaintiffs' Disclosures).

Finally, the State Defendants deposed both Ms. Slay and Senator Singleton during the discovery phase of these cases. *Milligan* and *Caster* had counsel at Senator Singleton's July 29, 2024 deposition. Ex. D at 5, 6 (Singleton Deposition Excerpts). While they did not appear for Ms. Slay's July 16, 2024 deposition, the State Defendants served both groups with a notice of Ms. Slay's deposition, and that notice bore the styles of all three cases. Ex. E (Slay Service Email); Ex. F (Slay

Deposition Notice). It was Plaintiffs' decision to not attend. Indeed, one or both of the Plaintiffs groups attended the depositions of other *Singleton* witnesses, even as they claim prejudice that they were not at Ms. Slay's deposition. *See* Ex. D (Singleton – Ms. Lee for *Milligan* & Ms. Rutahindurwa for *Caster*); Ex. G (Frederickson – Ms. Jasrasaria for *Caster*); Ex. H (Riser – Ms. Khanna for *Caster*); Ex. I (Andrews – Mr. Burke, Ms. Sadasivan, & Mr. Jackson for *Milligan*); Ex. J (Smitherman – Ms. Sadasivan for *Milligan*).

The *Milligan* and *Caster* Plaintiffs were on notice from at least the earliest disclosures that the State Defendants might call Ms. Slay and Senator Singleton.

## II.    Even if State Defendants did not properly disclose, lack of disclosure would have been both substantially justified and harmless.

The State Defendants properly disclosed Ms. Slay and Senator Singleton, but Rule 37(c)(1) permits their testimony regardless. An undisclosed witness may testify if the failure to disclose was "substantially justified" *or* "harmless." FED. R. CIV. P. 37(c)(1). "[R]efusing to admit evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules." *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) (citations omitted).

A substantial justification would exist here. "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action."

*Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 812 (11th Cir. 2017) (quoting *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997)). And "a genuine dispute concerning compliance" with the disclosure requirement "satisfies the test for substantial justification." *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995) (citing *Pierce v. Underwood*, 487 U.S. 552 (1988)).

Substantial justification exists here because the State Defendants had no prior notice that Ms. Slay's and Senator Singleton's testimony would not be coming into all three cases. Indeed, Plaintiffs' own disclosures of these witnesses and their use of provisions on their own disclosures and witness lists providing for calling witnesses from any of the three actions provided no notice to State Defendants that Plaintiffs would then object to similar disclosures. Moreover, for both the 2022 and 2023 preliminary injunction hearings, the Court considered all the evidence adduced in each of the three cases. *See Milligan* Doc. 107 at 19; Doc. 272 at 3. That was the default, and the default continued until the *Milligan* and *Caster* Plaintiffs objected at trial to Ms. Slay's testimony coming in and filed the present motion.

That objection was a surprise because neither group of Plaintiffs objected when they included Ms. Slay and Senator Singleton on a joint updated witness list "[o]n behalf of all Plaintiffs' groups." Ex. A at 1. The State Defendants had a good-faith belief that their crosses of all Plaintiffs' disclosed witnesses—including Ms. Slay and Senator Singleton—would come into all three cases. And they had no

reason to suspect that the *Milligan* and *Caster* Plaintiffs would attempt to cordon off the testimony of a select few *Singleton* witnesses from the rest of the generally admissible evidence.

Nor does Ms. Slay's and Senator Singleton's potential testimony prejudice the *Milligan* and *Caster* Plaintiffs. "Illustrative examples" of harmlessness include "late disclosures of a potential witness known to all parties" and "a trial witness already listed by the adverse party." *Gangon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 197 (1st Cir. 2006) (discussing the Advisory Committee notes to the 1993 amendments to Rule 37). Both apply here.

The witnesses at issue are Plaintiffs in the *Singleton* case, and the *Milligan* Plaintiffs themselves disclosed Senator Singleton. Plaintiffs cannot seriously claim that they lack notice of the substance of Ms. Slay's and Senator Singleton's testimony. They certainly knew enough to know that they don't want their testimonies in their cases. For Ms. Slay, even if they have not read her testimony from a deposition that they chose not to attend, they heard the testimony the State Defendants would adduce from Ms. Slay when she testified last week. As for Senator Singleton, both groups heard his testimony at the 2022 preliminary injunction hearing, and both groups of Plaintiffs had an attorney at his deposition, *see* Ex. D.[1]

---

[1] Additionally, both Plaintiff groups had counsel present during the 2023 *Singleton* hearing at which Senator Singleton testified (and was cross-examined) concerning the 2023 Enacted Plan.

### III.  Ms. Slay's and Senator Singleton's testimony is important and relevant.

Testimony must, of course, be relevant to be admissible. Though "importance" is a factor for deciding whether a district court abused its discretion by excluding an undisclosed witness, *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004), Rule 37(c)(1) does not mention it as part of the initial exclusion inquiry for the district court (which considers instead only whether the failure to disclose was either "substantially justified" or "harmless"). Regardless, both witnesses' testimony is important and relevant to the first *Gingles* precondition and the totality of the circumstances. That the State Defendants expected to elicit this testimony on cross does not render it unimportant. *Contra Milligan* Doc. 453 at 6, 7.

Ms. Slay—a Jefferson County voter of roughly two decades—offers helpful testimony on the downsides of splitting counties. While some counties must be split to equalize population, Mobile County has not been a county that has been historically split. Ms. Slay's testimony focused on the unique downsides associated with splitting a county between two districts with representatives of different parties and that testimony goes to whether CD2 is reasonably configured. Ms. Slay's explanation for why she prefers her county to remain whole shows that the

---

While they were not parties to that hearing with the ability to cross-examine Senator Singleton, their attendance certainly puts them on actual notice as to the expected contents of his testimony.

justifications for keeping Mobile County whole—far from being tenuous—are obvious to voters themselves.

Additionally, Ms. Slay's observation of political cooperation between white and black voters in Jefferson County bears on the improved "opportunity to participate in the political process" for black Alabamians. *Chisom v. Roemer*, 501 U.S. 380, 397 (1991). Plaintiffs' suggestion that on-the-ground observation from an Alabama voter "means little" and "cannot overcome" expert RPV analysis goes to weight, not relevance. *See* Doc. 363 at 6–7. Regardless, her testimony goes well beyond the second and third *Gingles* preconditions.

Senator Singleton—a Democratic Senator representing portions of the Black Belt—can provide additional perspective on nonracial communities of interest in Alabama and black Alabamians' opportunity to participate in the political process. Senator Singleton's observations in the Black Belt are relevant to the reasonableness of splitting Mobile from Baldwin to connect it to "farflung segments of a racial group." *LULAC*, 548 U.S. at 433; *Milligan* Doc. 220 at 56. He can also speak to unique challenges and needs of this distinct rural region versus those in urban Mobile, the legislative processes involved in passing legislation such as the plan at issue, as well as the State's responsiveness to the needs of the Black Belt with respect to broadband, healthcare, and transportation.

*    *    *

The State Defendants (and Plaintiffs themselves) properly disclosed Ms. Slay and Senator Singleton. Even if they hadn't, Rule 37(c)(1) prevents the exclusion of their testimony. This Court should deny the *Milligan* and *Caster* Plaintiffs' motion.

Respectfully submitted,

Steve Marshall
  *Attorney General*

Edmund G. LaCour Jr. (ASB-9182-U81L)
  *Solicitor General*

Soren Geiger (ASB-0336-T31L)
  *Assistant Solicitor General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

/s/ Brenton M. Smith
Richard D. Mink (ASB-4802-M76R)
Misty S. Fairbanks Messick (ASB-1813-T71F)
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
Scott Woodard (ASB-1001-F94C)
Matthew E. Duggan (ASB-1512-D00L)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov
Soren.Geiger@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Richard.Mink@AlabamaAG.gov

Misty.Messick@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov
Scott.Woodard@AlabamaAG.gov
Matt.Duggan@AlabamaAG.gov
***Counsel for Secretary of State Allen***


/s/ Michael P. Taunton
J. Dorman Walker (ASB-9154-R81J)
BALCH & BINGHAM LLP
Post Office Box 78 (36101)
445 Dexter Avenue, Suite 8000
Montgomery, Alabama 36104
Telephone: (334) 269-3138
DWalker@Balch.com

Michael P. Taunton (ASB-6833-H00S)
Riley Kate Lancaster (ASB-1002-X86W)
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 251-8100
MTaunton@Balch.com
RLancaster@Balch.com

***Counsel for Sen. Livington & Rep. Pringle***

## CERTIFICATE OF SERVICE

I certify that on February 18, 2024, I electronically filed the foregoing notice with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ Brenton M. Smith
*Counsel for Secretary of State Allen*