FILED
2025 Aug-07  PM 04:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARCUS CASTER**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-01536-AMM** |
| | ) | |
| **WES ALLEN, in his official** | ) | |
| **capacity as Alabama Secretary of** | ) | |
| **State**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## INJUNCTION AND FINAL JUDGMENT

The Court issued findings of fact, conclusions of law, and an injunction on May 8, 2025. Doc. 401. In addition, the Court **ADOPTS** the recitation of the parties' arguments and agreements, findings of fact, and conclusions of law explained in the remedial order entered contemporaneously in *Milligan v. Allen*, Case No. 2:21-cv-1530-AMM (appended to this Order as Exhibit A) as though they were set forth in full herein. Accordingly, the Court **PERMANENTLY ENJOINS** Alabama Secretary of State Wes Allen, and his successors in office, from conducting any elections according to Alabama's 2023 Plan. The Court further **ORDERS** Secretary Allen, and his successors in office, to administer Alabama's congressional elections using Special Master Remedial Plan 3 (appended to this Order as Exhibit B) until Alabama enacts a new congressional districting plan based on 2030 census data. This mandatory injunction **EXPIRES** upon that enactment.

Final judgment is **ENTERED** in favor of the *Caster* Plaintiffs and against the Defendants on the *Caster* Plaintiffs' claim under Section Two of the Voting Rights Act of 1965, 52 U.S.C. § 10301; 42 U.S.C. § 1983. The Court **RETAINS JURISDICTION** over this case until the expiration of the mandatory injunction for the purpose of enforcing this judgment and ruling on appropriate post-trial applications.

**DONE** and **ORDERED** this 7th day of August, 2025.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EVAN MILLIGAN,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 2:21-cv-01530-AMM** |
| | ) | |
| **v.** | ) | **THREE-JUDGE COURT** |
| | ) | |
| **WES ALLEN, in his official** | ) | |
| **capacity as Alabama Secretary of** | ) | |
| **State,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

Before MARCUS, Circuit Judge, MANASCO and MOORER, District Judges.

PER CURIAM:

## ORDER

This congressional redistricting case is once again before the Court for further remedial proceedings. From the enactment of the Voting Rights Act in 1965 until the Supreme Court's decision in *Shelby County v. Holder* in 2013, Alabama was required to preclear its congressional districting plans with federal authorities before putting them into use. 570 U.S. 529, 537, 556–57 (2013); *see* 52 U.S.C. § 10304. Now, the *Milligan* Plaintiffs move this Court to bail Alabama back into federal preclearance under Section 3(c) of the Voting Rights Act for congressional redistricting "until 60 days after the Alabama Legislature enacts a congressional plan under the 2030 census or a period of approximately seven years." Doc. 485 at 436, ¶ 1173; Doc. 329 at 77; *see* 52 U.S.C. § 10302(c). Alternatively, they ask us to retain

jurisdiction over the case for at least that period.

For the reasons explained below, the application for bail-in relief is **DENIED WITHOUT PREJUDICE**, and the Court **RETAINS JURISDICTION** over this case (and by separate order the related case *Singleton v. Allen*, Case No. 2:21-cv-1291-AMM) until Alabama enacts a congressional districting plan based on 2030 census data.[1]

## I.   BACKGROUND

After two preliminary injunctions and a lengthy trial, in May 2025 the Court enjoined Alabama Secretary of State Wes Allen, and his successors in office, "from conducting any elections according to Alabama's 2023 Plan" and ruled "that the 2023 Plan violates both Section Two of the Voting Rights Act and the Fourteenth Amendment to the United States Constitution." Doc. 490 at 16. On Plaintiffs' Section Two claim, we found that "the 2023 Plan unlawfully dilute[d] Black voting strength by consigning it to one majority-Black district despite Alabama's Black population plainly being numerous and compact enough, and voting in Alabama racially polarized enough, to readily support an additional opportunity district." *Id.* at 11. We also determined that the Alabama Legislature intentionally discriminated

---

[1] Judge Manasco will retain jurisdiction over the other related case, *Caster v. Allen*, Case No. 2:21-cv-1536-AMM, for the same period.

on account of race in violation of the Fourteenth Amendment – "the purpose of the design of the 2023 Plan was to crack Black voters across congressional districts in a manner that [made] it impossible to create two districts in which they have an opportunity to elect candidates of their choice." *Id.* at 15.

On May 28, 2025, the Defendants filed a statement concerning remedial proceedings, in which:

- The legislative defendants Senator Steve Livingston and Representative Chris Pringle ("the Legislators") (Co-Chairs of the Permanent Legislative Committee on Reapportionment) "state[d] that both they and leadership for both chambers of the Alabama Legislature will voluntarily forgo any rights that they may have to attempt to draw an additional congressional district map as part of remedial proceedings in this case," subject to their rights on appeal.

- The Legislators further "represent[ed] in good faith that neither they nor leadership for either chamber of the Alabama Legislature have any intention of passing any additional congressional district maps before receiving 2030 census data."

Doc. 493 ¶¶ 3, 5–6.

On June 9, 2025, the parties filed a joint status report, in which:

- The Defendants ("the State") "represented to the Court and continue to represent to the Court that the Special Master Plan 3 [("Special Master Plan")] will remain in place for the 2026, 2028 and 2030 congressional elections (as well as all special or other congressional elections prior to the adoption of a new congressional district map based on 2030 census data), subject to [the State's] rights on appeal."

- The State "further represent[ed] . . . that [it] will not challenge on appeal

3

the duration of an injunction that requires the Secretary of State to use the [Special Master] Plan for the 2026, 2028, and 2030 congressional elections (as well as all special or other congressional elections prior to the adoption of a new congressional district map based on 2030 census data).”

- The *Milligan* Plaintiffs, *Singleton* Plaintiffs, and *Caster* Plaintiffs “agree[d] that an injunction barring the Secretary of State from administering Alabama’s congressional elections according to the 2023 Plan and ordering him to administer congressional elections according to the [Special Master] Plan . . . is a full remedy to the Section 2 violation identified by this Court in the May 8, 2025 Order.”

- The parties stated that “[a]s to the *Milligan* Plaintiffs’ request for Section 3(c) relief and/or continuing jurisdiction over potential challenges to a post-2030 census plan, the *Milligan* Plaintiffs and Defendants [did] not come to an agreement that would obviate the need for further briefing on those issues.”

Doc. 497 ¶¶ 1–4.

In its opposition to bail-in, the State argues that (1) “Section 3(c) is not triggered because [the *Milligan*] Plaintiffs failed to show multiple constitutional violations justifying equitable relief”; (2) “[p]reclearance is inappropriate and unconstitutional absent pervasive, flagrant, rampant, and widespread voting discrimination that makes case-by-case litigation inadequate”; and (3) the Court should not retain jurisdiction until 60 days after Alabama enacts a congressional districting plan based on 2030 census data as an exercise of the Court’s equitable power because that “requested remedy would be virtually unprecedented” and is an effort “to obtain preclearance by another name.” Doc. 498 at 10, 18, 28, 30 (emphasis

4

omitted).

The United States of America filed a statement of interest also opposing bail-in. Doc. 499. The United States argues (1) that "[a] single violation of the constitutional right to vote cannot suffice" for Section 3(c) relief; (2) that the *Milligan* Plaintiffs' "bail-in request relates to a single violation – the adoption of Alabama's Congressional redistricting plan"; and (3) that the Court should deny the request to exercise its equitable power because "Alabama's acceptance of the remedial Congressional plan has foreclosed Section 3(c) relief" and the State's agreement "to not pass any other additional congressional district maps before receiving the 2030 census data or otherwise participate in mid-cycle redistricting" "afford[s] the *Milligan* Plaintiffs full relief in this case." Doc. 499 at 13, 16–17 (quoting Doc. 498 at 5).

In support of bail-in, the *Milligan* Plaintiffs assert that (1) "one or more constitutional violations in a single case suffices to bail-in a jurisdiction"; (2) "even if Section 3(c) requires multiple findings of discriminatory intent, the record and recent Alabama history allow for such a finding here"; (3) "[t]he record here meets or beats" the records before other federal courts that imposed Section 3(c) relief or retained jurisdiction; (4) though the "Court does not need to find that conditions present in Alabama now are identical to those in 1965 to impose the limited bail-in

5

requested here . . . even a cursory inquiry highlights many startling similarities between these periods"; (5) there is not a presumption against Section 3(c) relief in a case where a constitutional violation is found; (6) "even if [the *Milligan*] Plaintiffs were required to prove that ordinary litigation is inadequate to protect the right to vote, Alabama's bad-faith conduct in this case and earlier reveals that 'case-by-case litigation' has proven 'inadequate' to overcome 'persistent discrimination'"; and (7) they do not "concede that a court order maintaining the current map through 2030 is sufficient to remedy the Fourteenth Amendment violation." Doc. 502 at 7, 9, 16, 21–22, 24 (emphasis omitted) (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 328 (1966)).

The *Milligan* Plaintiffs request that if we deny Section 3(c) relief, we should exercise this Court's "inherent equitable power to retain jurisdiction over challenges to Alabama's congressional maps through the next census cycle." *Id.* at 25.

On July 29, 2025, the Court held a hearing on the *Milligan* Plaintiffs' application. At the hearing, those Plaintiffs "emphasize[d] that [they] are asking for a very narrow form of preclearance review" — "that this Court put the State back under preclearance for a period of roughly seven years in which [the Court] would only require the State to preclear congressional redistricting plans." Doc. 508 at 6.

We inquired extensively at the hearing about the timeframe of the *Milligan*

6

Plaintiffs' request that if we deny bail-in, we retain jurisdiction over the case until at least 60 days after Alabama enacts a map based on 2030 census data, or through the 2030 census cycle. *See id.* at 12–14. The *Milligan* Plaintiffs explained that they "certainly don't have an objection to" the Court's retention of jurisdiction only until the day that Alabama enacts a map after the 2030 census, *id.* at 12, but described such a ruling as affording "incomplete relief for the constitutional violation" without preclearance "[b]ecause of the threat of backsliding" as evidenced by "the actions that Alabama took in this case and because of the potential of Alabama getting a freebie as it did in this case [for the 2022 election]," *id.* at 16. Put differently, the *Milligan* Plaintiffs expressed their concern that if the Court retains jurisdiction only until Alabama enacts a plan based on the 2030 census, and if that plan discriminates based on race, the State would be able to use an unlawful plan for the 2032 election in the absence of a preclearance remedy if new litigation does not move quickly enough.

We further asked the *Milligan* Plaintiffs whether the practical effect of their Section 3(c) application would be that this Court would be required to supervise congressional redistricting in Alabama until 2041, if a legal challenge were filed within 60 days of Alabama's enactment of its 2030-cycle map. *See id.* at 12–14. The *Milligan* Plaintiffs replied that it would not be necessary for the Court "to hold [onto]

7

this case forever" so long as the State did not "choos[e] to violate the Voting Rights Act or the Constitution again," and so long as there was no "backsliding." *Id.* at 13. They further suggested that they are not asking this Court to retain jurisdiction for fifteen years. *See id.* at 14. But when pressed on whether that is "the net effect of exactly what [they]'re asking for," the *Milligan* Plaintiffs responded by redirecting the Court back to the request for bail-in. *Id.*

For its part, the State repeatedly conceded that this Court has jurisdiction to enforce its orders, including the May 2025 permanent injunction and any mandatory injunction entered on remedy, regardless of whether the Court retains jurisdiction and/or bails Alabama back into federal preclearance. *See, e.g.*, *id.* at 46–47, 63–64. Nevertheless, the State urged the Court throughout the hearing neither to retain jurisdiction over this case nor to invoke the bail-in remedy found in Section 3(c). *See id.* at 44–45. At the end of the day, the State conceded that it "does not have serious qualms with" the Court retaining jurisdiction through the 2030 election. *Id.* at 46.

The Legislators, in turn, represented "that the Legislature is out of the map-drawing business outside of the context of this litigation" and that "the [pending] appeal in this case will determine what map is used for the rest of this decade." *Id.* at 65–66. They argued "that those representations may mean that . . . preclearance is

8

inappropriate" because it is designed "to serve as a remedy when litigation is not up to the task" and "litigants can never actually get the relief they have been promised by the Court." *Id.* at 66.

All parties, including the *Caster* and *Singleton* Plaintiffs, reiterated their agreement that a mandatory injunction ordering the Secretary and his successors in office to administer Alabama's congressional elections based on the Special Master Plan until Alabama enacts a new congressional districting plan based on 2030 census data is a complete remedy to the Section Two violation identified in the Court's May 2025 order. *See id.* at 15, 26–27, 35–37, 64, 66. The State also reiterated its agreement that (subject to its appellate rights as to that order) it "would not contest the . . . durational element of that mandatory injunction." *Id.* at 38, 66. In light of these agreements, the State urged that "any additional remedy [would not] be appropriate under the words of Section 3(c)." *Id.* at 38; *see also id.* at 66.

The United States did not appear at the hearing.

## II.    ANALYSIS

Longstanding legal rules dictate the role of the Court at this remedial stage. Any injunction entered by the Court must be "remedial in nature" and designed "to restore the victims of discriminatory conduct to the position they would have occupied in the absence of such conduct." *Milliken v. Bradley*, 433 U.S. 267, 280

(1977) (emphasis omitted) (quoting *Milliken v. Bradley*, 418 U.S. 717, 746 (1974)). "[O]ne of the most important considerations governing the exercise of equitable power is a proper respect for the integrity and function of local government institutions." *Missouri v. Jenkins*, 495 U.S. 33, 51 (1990). "[A]ppropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). This is especially true since "[t]he Constitution entrusts States with the job of designing congressional districts." *Cooper v. Harris*, 581 U.S. 285, 291 (2017); *accord Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 6 (2024). Accordingly, we have taken care to calibrate the equitable relief in this case (and in the related cases) to remedy the serious constitutional and statutory violations we identified in the least intrusive and most restrained manner possible, and no more.

As we have explained at length already, "the Special Master Plan satisfied all constitutional and statutory requirements while hewing as closely as reasonably possible to the 2023 Plan," was drawn race-blind, and resulted in a reasonably compact remedial opportunity district (the Black share of the voting age population in that district is 48.69%). Doc. 490 at 8–9, 70, 72, 544; *see also* Doc. 311 at 36–44. We are satisfied that the Special Master Plan remedies unlawful racial vote dilution without violating the Fourteenth Amendment.

10

Accordingly, we agree with the parties that in addition to the injunction we issued barring the use of Alabama's 2023 Plan, an injunction ordering the Secretary and his successors in office to administer Alabama's congressional elections according to the Special Master Plan until Alabama enacts a new congressional districting plan based on 2030 census data provides a complete remedy to the Section Two violation we identified in our May 2025 Order.

We also find it appropriate for us to retain jurisdiction over this case (and the related cases) for the duration of that injunction. We do so for three reasons. *First*, retaining jurisdiction is a normal result in redistricting cases and Section Two cases, even in the absence of a finding that the State intentionally discriminated on account of race. *See, e.g.*, *North Carolina v. Covington*, 585 U.S. 969, 976 (2018) (per curiam) (holding that "the District Court properly retained jurisdiction" when "some of the new districts [drawn by the legislature] were mere continuations of the old, gerrymandered districts").[2]

---

[2] *See also United States v. City of West Monroe*, No. 21-cv-00988 (W.D. La. Apr. 15, 2021), ECF No. 5, at 7 ("This Court shall retain jurisdiction over this matter to enforce the provisions of this Decree and for such further relief as may be appropriate.") (for nine years); *United States v. Chamberlain Sch. Dist.*, No. 20-cv-04084 (D.S.D. June 18, 2020), ECF No. 4, at 8 ("This Court shall retain jurisdiction over this matter to enforce the provisions of this Decree and for such further relief as may be appropriate.") (for three election cycles over three years); *United States*

11

*v. City of Eastpointe*, No. 17-cv-10079 (E.D. Mich. June 26, 2019), ECF No. 64, at 6 ("This Court shall retain jurisdiction over this matter to enforce the provisions of the Decree and for such further relief as may be appropriate.") (for four years); *United States v. Town of Lake Park*, No. 09-cv-80507 (S.D. Fla. Oct. 26, 2009), ECF No. 39, at 5 ("This Court shall retain jurisdiction over this matter to enforce the provisions of the Decree and for such further relief as may be appropriate under the Voting Rights Act and the United States Constitution."); *United States v. Salem* County, No. 08-cv-03726 (D.N.J. July 29, 2008), ECF No. 2, at 9 ("The Court shall retain jurisdiction of this case to enter further relief or such other orders as may be necessary for the effectuation of the terms of this agreement and to ensure compliance with Sections 2, 4(e) and 208 of the Voting Rights Act.") (for nearly three years); *United States v. Sch. Bd. of Osceola Cnty.*, No. 08-cv-00582 (M.D. Fla. Apr. 23, 2008), ECF No. 6, at 6 ("This Court shall retain jurisdiction through the 2010 elections to enforce the provisions of the Decree and for such further relief as may be appropriate.") (for two years); *United States v. Georgetown Cnty. Sch. Dist.*, No. 08-cv-00889 (D.S.C. Mar. 21, 2008), ECF No. 5, at 6 ("This Court shall retain jurisdiction over this matter to enforce the provisions of the Decree and for such further relief as may be appropriate. If the local legislative delegation fails to enact local legislation embodying a districting plan of the kind required by this Decree, this Court shall retain jurisdiction and order into effect a method of election and districting plan that satisfies the terms of this Decree and the legal standards in existence at that time, including those standards under the Voting Rights Act and the United States Constitution.") (for two years); *United States v. City of Philadelphia*, No. 06-cv-04592 (E.D. Pa. June 1, 2007), ECF No. 37, at 1 ("It is further ordered that this Court shall retain jurisdiction over this matter until July 1, 2009, and shall have the authority to enforce the settlement agreement among the parties." (emphasis omitted)) (for two years); *United States v. Village of Port Chester*, No. 06-cv-15173 (S.D.N.Y. Dec. 22, 2009), ECF No. 119, at 6 ("The Court shall retain jurisdiction through three election cycles . . . to enter further relief or such other orders as may be necessary to effectuate the terms of this Decree and to ensure compliance with Section 2 of the Voting Rights Act.") (for nearly seven years, covering three election cycles); *United States v. Long County*, No. 06-cv-0040 (S.D. Ga. Feb. 10, 2006), ECF No. 6, at 5 ("The Court shall retain jurisdiction of this case to enter further relief or such other orders as may be necessary for the effectuation of the terms of this agreement and to ensure compliance with Section 2 of the Voting Rights Act.") (for nearly three years).

12

*Second*, our retention of jurisdiction will ensure that we can enter further orders as may become necessary to enforce the relief that we awarded in May 2025 as well as the relief we award today. We expect that such further orders will be unnecessary. For the time being, and subject to their appellate rights, (1) the Secretary has agreed to be bound by a mandatory injunction until Alabama enacts a 2030-cycle map, and (2) the Legislature has repeatedly represented to this Court that it will not redraw Alabama's congressional map before the 2030 census. But if future Secretaries or Legislatures do not adhere to these representations and agreements, retention of jurisdiction will ensure our ability to promptly address any change in their posture.

*Third*, as a practical matter, our retention of jurisdiction largely obviates any need for us to consider invoking Section 3(c) of the Voting Rights Act and bailing Alabama back into federal preclearance. So long as the Legislature does not pass any legislation that would violate the injunctive relief we have entered, and the Secretary abides by our injunctions, we can discern no compelling reason to tread into such intrusive waters. As for the *Milligan* Plaintiffs' concern about Alabama's 2032 congressional elections, we see no need to prematurely inject the federal government into an election that postdates the Secretary's and Legislature's concessions by seven years. And we will not, in an unrestrained attempt to resolve

13

any hypothetical issue that may arise far down the road, assign to our Court the exceedingly intrusive task of supervising Alabama's congressional elections for the next fifteen years. This litigation was filed in November 2021, and neither the rules of equity nor federal law supplies a basis for us to keep the issue before this Court for two decades.

We have no doubt that the remedial rulings we have entered fully redress the constitutional and statutory violations we have found. We do no more than enter a remedy designed to restore the victims of discriminatory conduct to the position they would have occupied in the absence of such conduct. Accordingly, we decline at this time and on these facts to bail Alabama back into federal preclearance.

## III.    CONCLUSION

For the foregoing reasons, the *Milligan* Plaintiffs' application for bail-in relief under Section 3(c) of the Voting Rights Act is **DENIED WITHOUT PREJUDICE**, and the Court **RETAINS JURISDICTION** over this case until the day that Alabama enacts a new congressional districting plan based on 2030 census data.

A final judgment will enter accordingly.

**DONE** and **ORDERED** this 7th day of August, 2025.

**STANLEY MARCUS**
UNITED STATES CIRCUIT JUDGE

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

**TERRY F. MOORER**
UNITED STATES DISTRICT JUDGE

15

# EXHIBIT B

# Remedial Plan 3

