FILED

2026 May-14  AM 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

Cite as:  608 U. S. ____ (2026)        1

# SUPREME COURT OF THE UNITED STATES

WES ALLEN, ALABAMA SECRETARY OF STATE,
ET AL.

25–243                    *v.*

MARCUS CASTER, ET AL.

ON PETITION FOR A WRIT OF CERTIORARI BEFORE JUDGMENT
TO THE UNITED STATES COURT OF APPEALS FOR THE
ELEVENTH CIRCUIT


WES ALLEN, ALABAMA SECRETARY OF STATE,
ET AL.

25–273                    *v.*

BOBBY SINGLETON, ET AL.


WES ALLEN, ALABAMA SECRETARY OF STATE,
ET AL.

25–274                    *v.*

EVAN MILLIGAN, ET AL.

ON APPEALS FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA


Nos. 25–243, 25–273 and 25–274.   Decided May 11, 2026

The motions to expedite are granted.  The petition for a writ of certiorari before judgment in No. 25–243 is granted. The judgment of the United States District Court for the Northern District of Alabama in that case is vacated, and the case is remanded to the United States Court of Appeals for the Eleventh Circuit with instructions to remand to the District Court for further consideration in light of *Louisiana* v. *Callais*, 608 U. S. ___ (2026).  The judgments in No. 25–273 and No. 25–274 are vacated, and the cases are remanded  to  the  United  States  District  Court  for  the

2 ALLEN *v.* CASTER

SOTOMAYOR, J., dissenting

Northern District of Alabama for further consideration in light of *Louisiana* v. *Callais*, 608 U. S. ___ (2026). The judgments will be issued forthwith pursuant to Rule 45.3.

JUSTICE SOTOMAYOR, with whom JUSTICE KAGAN and JUSTICE JACKSON join, dissenting.

Today, the Court vacates a District Court order enjoining Alabama's 2023 Redistricting Plan and remands for reconsideration in light of the Court's new interpretation of §2 of the Voting Rights Act in *Louisiana* v. *Callais*, 608 U. S. ___ (2026). There is no reason to do so. In addition to holding that Alabama's 2023 Redistricting Plan violates §2, the District Court held, in one of the three cases before this Court, that Alabama violated the Fourteenth Amendment by intentionally diluting the votes of Black voters in Alabama. That constitutional finding of intentional discrimination is independent of, and unaffected by, any of the legal issues discussed in *Callais*. Vacatur is thus inappropriate and will cause only confusion as Alabamians begin to vote in the elections scheduled for next week. I respectfully dissent.

This is not the first time that this litigation has come before the Court. Following the 2020 census, Alabama redrew its congressional districts. Plaintiffs then filed these three cases, and a three-judge District Court preliminary enjoined Alabama's first plan. This Court affirmed that injunction in *Allen* v. *Milligan*, 599 U. S. 1 (2023), holding that Alabama violated §2 of the Voting Rights Act, 52 U. S. C. §10301, when it adopted a congressional districting plan that unlawfully diluted Black Alabamians' votes by splitting them across multiple congressional districts. *Id.*, at 9–10. In doing so, this Court also affirmed the District Court's order instructing Alabama to remedy this identified racial discrimination by drawing a new map containing two districts in which Black voters would have an opportunity to elect a representative of their choice, commonly referred

Cite as: 608 U. S. ____ (2026)          3

SOTOMAYOR, J., dissenting

to as "opportunity districts." See 782 F. Supp. 3d 1092, 1126 (ND Ala. 2025) (quoting the preliminary injunction).

Then came round two, which is now before this Court. Rather than draw a map with two opportunity districts, Alabama adopted the 2023 Redistricting Plan, which contained just one. The District Court then held an 11-day trial on a renewed challenge to the legality of this new map. It heard testimony from 51 witnesses, received nearly 800 exhibits, and considered volume upon volume of written submissions. At the end of that trial, the District Court concluded "with great reluctance and dismay and even greater restraint" that Alabama had not merely spurned the opportunity to remedy past discrimination, but in fact had intentionally violated the Fourteenth Amendment. *Id*., at 1118.

In a 268-page opinion, the District Court explained that the enormous record was "replete with sharp departures from (and some outright conflicts with) Alabama's traditional districting guidelines," as the State fashioned redistricting criteria from whole cloth that it had never previously employed. *Id*., at 1343; see *id*., at 1343–1344. The State, the District Court said, had also conjured legislative findings out of "thin air," *id*., at 1345, in "the dead of night," *id*., at 1117, that "exalt[ed]" certain White communities while "remaining silent on the heritage of all other communities of interest in Alabama (including the Black Belt)," *id*., at 1344. The District Court observed that the result of this tortured legislative process was a precisely engineered set of redistricting rules and criteria that made it "mathematically impossible to create a second opportunity district." *Id*., at 1340; see *id*., at 1356–1357. In short, the record showed that Alabama made an intentional choice to perpetuate and entrench, rather than remedy and uproot, the racial discrimination that the District Court had previously found and that this Court had affirmed. The District Court thus permanently enjoined Alabama's 2023 Redistricting

4                    ALLEN *v.* CASTER

SOTOMAYOR, J., dissenting

Plan and instituted a remedial map drawn without any reference to race.

Nothing in the District Court's Fourteenth Amendment analysis is affected by this Court's opinion in *Callais*. Most obviously, *Callais* changed the legal standard for vote-dilution claims under §2. See 608 U. S., at ___ (slip op., at 19) ("[W]e must understand exactly what §2 of the Voting Rights Act demands"). It said not a word about the standard for Fourteenth Amendment intentional-discrimination claims like the one that the District Court decided on remand in round two.

*Callais* also insisted that this Court's prior decision in *Allen* remains good law. See *id.*, at ___ (slip op., at 36) ("[W]e have not overruled *Allen*"). These cases are, of course, *Allen*. So if *Allen* is good law anywhere, then it must be good law here. This Court's finding of racially discriminatory vote dilution is an inextricable, permanent feature of this case, and Alabama's willful decision to respond by entrenching rather than remedying that dilution is, as the District Court correctly recognized, evidence of discriminatory intent.

Even if *Callais* had something to say about the evidence necessary to establish discriminatory intent, it still would not be appropriate to vacate the decision below at this time. That is because Alabama's congressional primary election is next week, and vacating the District Court's injunction will immediately replace the current map with Alabama's 2023 Redistricting Plan until the District Court acts, even though voting has already begun. Vacatur is an equitable remedy, and the Court should not lightly wield it to unleash chaos and to confuse voters. See *U. S. Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, 513 U. S. 18, 26 (1994) ("[W]hen federal courts contemplate equitable relief" like vacatur, they "must also take account of the public interest").

Cite as: 608 U. S. ____ (2026)                                  5

SOTOMAYOR, J., dissenting

If the Court must act now, it should at least affirm the District Court's order as to the finding of intentional discrimination in *Allen* v. *Milligan*. Factual findings like discriminatory intent are reviewed for clear error, meaning that if a district court's factual determination is "'plausible' in light of the full record," then that determination "must govern." *Cooper* v. *Harris*, 581 U. S. 285, 293 (2017) (quoting *Anderson* v. *Bessemer City*, 470 U. S. 564, 574 (1985)). On this record, the District Court's finding of discriminatory intent, resulting from a comprehensive examination of Alabama's transparent, intentional attempt to limit Black voting power despite this Court's earlier decision in *Allen*, is more than plausible. It is further bolstered by the District Court's thoughtful consideration of the role partisan interests may have played in the redistricting process and extensive discussion of the presumption of legislative good faith. See, *e.g.*, 782 F. Supp. 3d, at 1117, 1346 (considering the record in "extreme service of the presumption of legislative good faith" but ultimately concluding that, if "this record is insufficient to rebut the strong presumption of legislative good faith," then it is unlikely that "the presumption is ever rebuttable").

*     *     *

The Court today unceremoniously discards the District Court's meticulously documented and supported discriminatory-intent finding and careful remedial order without any sound basis for doing so and without regard for the confusion that will surely ensue. As with all vacaturs of this kind from this Court, the District Court remains free on remand to decide for itself whether *Callais* has any bearing on its Fourteenth Amendment analysis or if its prior reasoning is unaffected by that decision.